## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| SOUTHWESTERN PAYROLL SERVICE, Inc.; | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | **Case No:** 1:19-cv-1349 (GLS/CFH) |
| PIONEER BANCORP, INC., a Maryland State Financial Institution | ) | **Judge:** _____ |
| PIONEER BANK, a New York Stock Bank; | ) | |
| MICHAEL T. MANN, an individual; | ) | |
| VALUEWISE CORPORATION d/b/a | ) | **JURY TRIAL DEMANDED** |
| Apogee, d/b/a Optix Consulting, and d/b/a | ) | |
| Primacy Search Group, a Delaware Corporation;) | | |
| MYPAYROLLHR, LLC, a Delaware limited liability Company; and | ) | |
| Cloud Payroll, LLC, a Delaware limited liability company; | ) | |
| | ) | |
| Defendants. | ) | |

### VERIFIED COMPLAINT

**COMES NOW** the Plaintiff, Southwestern Payroll Service, Inc., by and through its undersigned counsel of record, and for its complaint against the Defendant hereby submits the following:

### JURISDICTION AND VENUE

1. Plaintiff Southwestern Payroll Service, Inc. ("Southwestern Payroll") is an Oklahoma Corporation with its principal place of business in Tulsa, Oklahoma. Southwestern Payroll is subject to Court supervision in Tulsa County, Oklahoma, and is controlled by C. David Rhoades, as Receiver.

2. Defendant Pioneer Bancorp, Inc. is a foreign bank, incorporated in Maryland, with its principal place of business in Albany, New York. Pioneer Bancorp, Inc. is the holding company for Defendant Pioneer Bank.

3.     Defendant Pioneer Bank is a stock bank organized and existing under the laws of the State of New York. Based upon Plaintiff's information, and belief, both Pioneer Bancorp, Inc. and Pioneer Bank were involved in the actions and allegations which follow, and will collectively be referred to herein as "Pioneer."

4.     Defendant Michael Mann ("Mann") is a citizen of the State of New York.

5.     Defendant Valuewise Corporation d/b/a Apogee d/b/a Optix Consulting d/b/a Primacy Search Group ("Valuewise") is a Delaware corporation, with its principal place of business located at 855 Route 146, Suite 220 and/or 240, Clifton Park, New York 12065.

6.     Defendant MyPayrollHR, LLC ("MyPayrollHR") is a Delaware limited liability company with its principal place of business located in Clifton Park, New York. Upon Plaintiff's information, and belief, none of its manager/members are citizens of the State of Oklahoma.

7.     Defendant Cloud Payroll, LLC ("Cloud Payroll") is a Delaware limited liability company with its principal place of business located in Clifton Park, New York. Upon Plaintiff's information, and belief, none of its manager/members are citizens of the State of Oklahoma.

8.     Upon information and belief, Mann controls and/or owns Valuewise, MyPayrollHR, and Cloud Payroll (collectively, the "Mann Defendants.")

9.     The conduct giving rise to the causes of action herein occurred in substantial part in the Northern District of New York.

10.    This Court has jurisdiction of this action pursuant to 28 USC § 1332(a)(1) in that this is an action between citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

11.    Venue is proper in the Northern District of New York pursuant to 28 USC § 1391(b)(1&2).

## FACTUAL ALLEGATIONS

12.     Southwestern Payroll is a payroll compliance and support company which contracts with employer-clients to provide payroll processing services, including providing payroll checks to the employer-client's employees, and collecting, processing, and remitting an employer-client's withheld payroll taxes to the appropriate taxing authorities in an accurate and timely fashion.

13.     Prior to 2017, non-party Jeffery Darrin Alred ("Alred") was the sole owner of Southwestern Payroll.

14.     On or about April 21, 2017, Mann, through Cloud Payroll, which is wholly owned by Valuewise, purchased 51% of the outstanding stock of Southwestern Payroll from Alred. Mann was and is the sole owner of Valuewise Corporation.

15.     Upon information, and belief, Pioneer provided the financing for the purchase of the majority interest in Southwestern Payroll.   As part of the purchase, one or more of the Mann Defendants insisted that Southwestern Payroll use the Mann Defendants' bank, Defendant Pioneer, to house client tax trust funds as an interim step during payroll tax processing. Upon information, and belief, Pioneer insisted on this provision in the relationship with Southwestern Payroll in order to provide financing for Cloud Payroll's purchase of its controlling interest in Southwestern Payroll.

16.     Payroll tax processing involves the automated clearing house ("ACH") transfer of a payroll company's clients' federal, state, and local taxes associated with a particular payroll into a dedicated account at a bank.   After the payroll clients' tax trust funds are withdrawn on a particular payroll date, the funds are held in escrow in a bank account until they are due to be paid to various taxing authorities.   At that point, another ACH transaction occurs in order to transfer the money from the holding bank account to the appropriate taxing authority.

17.     Because Pioneer insisted that Southwestern Payroll clients' federal, state, and local tax trust funds (hereinafter, the "Client Tax Trust Funds")[1] be held in its bank account after the purchase was complete, then the procedure employed would be upon processing a payroll at Southwestern Payroll, the Client Tax Trust Funds were withdrawn from the clients' bank accounts and were initially placed in an account under the control of Southwestern Payroll at Prosperity Bank in Tulsa, Oklahoma.   Thereafter, the Client Tax Trust Funds would be transferred to an account at First Premier Bank in Sioux Falls, South Dakota.  The Client Tax Trust Funds would then be transferred to an account at Pioneer, where the funds would remain until they were due to a particular taxing authority.  Finally, an ACH processor, based on instructions from Cloud Payroll staff, would transfer the Client Tax Trust Funds from the Pioneer account to the account of the appropriate taxing authority(ies).

18.     On or about September 4, 2019, Alred received notice that Mann had resigned from any officer position within Valuewise Corporation and CloudPayroll, LLC, effective immediately. Shortly thereafter, Southwestern Payroll learned that Pioneer had already frozen all accounts it held which were associated with Mann, including those trust accounts retaining the Client Tax Trust Funds. Over the course of the next several weeks, various news and media outlets reported that Mann had committed fraud by taking out various fraudulent loans with Pioneer and other banks.  There are also allegations that Mann was improperly manipulating various payroll accounts held with Pioneer.  Michael Mann was indicted in this district for bank fraud in violation of 18 U.S.C. § 1344 on or about September 20, 2019.

---

[1] "Whenever any person is required to collect or withhold any internal revenue tax from any other person and to pay over such tax to the United States, the amount of tax so collected or withheld shall be held to be a special fund in trust for the United States ...." 26 U.S.C. § 7501.

19.     Because of this activity surrounding the majority shareholder in Southwestern Payroll, on September 10, 2019, the District Court of Tulsa County, State of Oklahoma, appointed C. David Rhoades as a receiver over Southwestern Payroll on an emergency basis.  On September 27, 2019, the District Court of Tulsa County, State of Oklahoma, made C. David Rhoades' appointment as receiver over Southwestern Payroll permanent.  A copy of the permanent Order appointing C. David Rhoades as receiver is attached hereto as Exhibit "1".

20.     Thereafter, upon further investigation, Southwestern Payroll has learned that Pioneer actually froze outgoing ACH transactions from the account where the Client Tax Trust Funds were held on August 30, 2019.  However, Pioneer continued to receive and deposit incoming Client Tax Trust Funds through September 4, 2019.  From August 30, 2019 through September 4, 2019, Pioneer received ACH transactions of Southwestern Payroll's Client Tax Trust Funds totaling $6,740,339.63.  However, since their deposit and because Pioneer froze all outgoing transactions, these funds have not been paid to the appropriate taxing authority.

21.     Southwestern Payroll has made demand upon Pioneer to return and/or properly remit these Client Tax Trust Funds. However, Pioneer has failed and refused to respond to Southwestern Payroll's demands.

22.     In addition to the $6,740,339.63 in Client Tax Trust Funds which were deposited with Pioneer between August 30, 2019 and September 4, 2019, there is also an additional $3,069,627.45 in Client Tax Trust Funds which were deposited with Pioneer prior to the account being frozen.  These were Client Tax Trust Funds collected and deposited with Pioneer up to August 29, 2019, but had not yet been paid to the appropriate taxing authority because they had not yet become due.

23.     Pioneer has failed and refused to return $9,809,967.08 in Client Trust Tax Funds so they can be remitted to the appropriate taxing authority(ies).

24.     There are Client Tax Trust Funds in addition the specific amounts referenced above which Pioneer is improperly refusing to return to Southwestern Payroll.  Southwestern Payroll is diligently performing an accounting to precisely identify these additional sums.  It is taking Southwestern Payroll substantially longer to perform this audit because Pioneer has refused to provide any information to assist Southwestern Payroll in its audit.

25.     Pioneer has also sued Mann, Valuewise, and Cloud Payroll, among other defendants, in a case styled *Pioneer Bank v. Michael T. Mann et al*, Index No. 907160-19, pending in the Supreme Court of the State of New York, County of Albany.  This lawsuit against Mann does not allege any fraudulent activity on the part of Mann or the Mann Defendants; it only alleges breach of a loan agreement dated August 12, 2019, eighteen (18) days before Pioneer froze outgoing ACH transactions.

26.     Upon Southwestern Payroll's information, and belief, one or all of the Mann Defendants, in order to qualify for the loans advanced to him/it/them, and thereafter, improperly and illegally manipulated funds held with bank accounts at Pioneer, including the bank account funds wherein the Client Tax Trust Funds were deposited.

### FIRST CAUSE OF ACTION: CONVERSION – PIONEER

27.     Southwestern Payroll incorporates the allegations contained in paragraphs 12 through 26 above as if fully recited herein.

28.     Pioneer, through its deliberate and intentional freezing of the account which holds the Client Tax Trust Funds, has wrongfully converted $9,809,967.08 of Southwestern Payroll's Client Tax Trust Funds, plus those additional amounts which will be identified during the course

of Southwestern Payroll's audit referenced above, and continues to exercise unauthorized and wrongful possession and control over the Client Tax Trust Funds to the exclusion of Southwestern Payroll who, by virtue of its contractual relationship with its employer-clients, has the right to possess same and ensure their timely remittance to the appropriate taxing authorities.

29.     Pioneer knew and knows that the Client Tax Trust Funds are not the property of Mann or the Mann Defendants, or of Pioneer, and the funds cannot be used to offset any losses from Pioneer's poor business decision to loan Mann, or the Mann Defendants, money.

30.     Pioneer has failed and refused to return or properly remit the Client Tax Trust Funds at issue herein, causing Southwestern Payroll to suffer damages, including but not limited to those penalties and interest which have accrued and will continue to accrue until the Client Tax Trust Funds are paid. Southwestern Payroll seeks all damages allowable by law against Pioneer for its wrongful and unauthorized possession and control over the Client Tax Trust Funds, including $9,809,967.08, penalties and interest assessed and to be assessed from the taxing authorities, interest, costs, attorney fees, and that Pioneer be required to disgorge any interest or profits it has earned by way of its wrongful retention of the Client Tax Trust Funds.

### SECOND CAUSE OF ACTION: FRAUD – PIONEER

31.     Southwestern Payroll incorporates the allegations contained in paragraphs 12 through 26 above as if fully recited herein.

32.     On August 30, 2019, Pioneer froze outgoing ACH transactions on the Client Tax Trust Funds account. However, Pioneer continued to allow incoming transactions into the account through September 4, 2019.

33.     Consequently, from August 30, 2019 through September 4, 2019, Pioneer continued to receive incoming ACH transactions of Southwestern Payroll's Client Tax Trust funds,

knowing that it did not intend to pay those sums to the appropriate taxing authority, but retained those funds for itself in hopes that it could offset some of its losses based upon its poor business decision to loan money to Mann and/or the Mann Defendants.

34.     Pioneer knew, because it required the formation and use of the Client Tax Trust Funds account, that it was the intent of Southwestern Payroll that the Client Tax Trust Funds account be established for the purpose of collecting and holding the Client Tax Trust Funds, and materially misrepresented to Southwestern Payroll that the account would be used for this sole purpose. This material misrepresentation was made with the intent to induce Southwestern Payroll to place Client Tax Trust Funds in this account, upon which Southwestern Payroll justifiably relied to its detriment.

35.     Southwestern Payroll seeks all damages allowable by law against Pioneer for its fraudulent and wrongful collection and retention of the Client Tax Trust Funds, including $9,809,967.08, penalties and interest assessed and to be assessed from the taxing authorities, interest, costs, attorney fees, and that Pioneer be required to disgorge any interest it has earned by way of its fraudulent acquisition and retention of the Client Tax Trust Funds.

### THIRD CAUSE OF ACTION: GROSS NEGLIGENCE – PIONEER

36.     Southwestern Payroll incorporates the allegations contained in paragraphs 12 through 26 above as if fully recited herein.

37.     Pioneer owed a duty to Southwestern Payroll to keep and maintain the Client Tax Trust Funds as special trust funds pursuant to 26 U.S.C. § 7501. To the extent any of the Client Tax Trust Funds have been misappropriated, offset, stolen, or are missing as a result of any actions of Pioneer, Pioneer has grossly failed to adequately monitor and supervise the Client Tax Trust Funds, and this gross negligence and/or recklessness has caused damages to Southwestern Payroll.

38.     Southwestern Payroll seeks all damages allowable by law against Pioneer, including $9,809,967.08, penalties and interest assessed and to be assessed from the taxing authorities, interest, costs, attorney fees, and that Pioneer be required to disgorge any interest it has earned by way of its wrongful acquisition and retention of the Client Tax Trust Funds.

### FOURTH CAUSE OF ACTION: CONSTRUCTIVE TRUST – PIONEER

39.     Southwestern Payroll incorporates the allegations contained in paragraphs 12 through 26 above as if fully recited herein.

40.     Pioneer, acting in confidential capacities with Southwestern Payroll and others, promised to maintain an account for the benefit of Southwestern Payroll's Client Tax Trust Funds. Southwestern Payroll transferred its Client Tax Trust Funds in reliance upon that promise, and Pioneer would be unjustly enriched in now claiming that it can take those funds for itself in satisfaction of any security interest, or in satisfaction of loan obligations due from another, or in claiming that the Client Tax Trust Funds are anything but funds held in trust for remittance to their proper taxing authorities and agencies.

41.     Southwestern Payroll is entitled to a constructive trust preventing Pioneer from distributing any of the Client Tax Trust Funds other than to Southwestern Payroll directly or to the appropriate state, federal or local taxing authorities as directed by Southwestern Payroll.

### FIFTH CAUSE OF ACTION: ACCOUNTING – PIONEER

42.     Southwestern Payroll incorporates the allegations contained in paragraphs 12 through 26 above as if fully recited herein.

43.     Southwestern Payroll seeks an accounting from Pioneer detailing all activity on all accounts that are in any way associated with the Client Tax Trust Funds. The exact nature and

extent of the damages suffered by Southwestern Payroll is not fully known to Southwestern Payroll at this time and cannot be determined without the requested accounting.

### SIXTH CAUSE OF ACTION: CONVERSION – MANN DEFENDANTS

44.     Southwestern Payroll incorporates the allegations contained in paragraphs 12 through 26 above as if fully recited herein.

45.     The Mann Defendants, through their deliberate and intentional manipulation of the Client Tax Trust Funds account and/or transferring of monies out of that account to other Mann-related accounts, has and continues to exercise unauthorized and wrongful possession and control over the Client Tax Trust Funds to the exclusion of Southwestern Payroll who, by virtue of its contractual relationship with its employer-clients, has the right to possess same and ensure their timely remittance to the appropriate taxing authorities.

46.     The Mann Defendants knew and know that the Client Tax Trust Funds at issue in this lawsuit are not the property of Mann or the Mann Defendants, and that funds were not and cannot be used to offset any debt obligations incurred by Mann or the Mann Defendants nor used for any other purpose.

47.     The Mann Defendants, through their wrongful and unauthorized manipulation and/or transferring of the Client Tax Trust Funds, have caused Southwestern Payroll to suffer damages, including but not limited to those penalties and interest which have accrued and will continue to accrue until the Client Tax Trust Funds are paid. Southwestern Payroll seeks all damages allowable by law against the Mann Defendants, including $9,809,967.08, penalties and interest assessed and to be assessed from the taxing authorities, interest, costs, and attorney fees, and that the Mann Defendants be required to disgorge any interest or profits they might have earned by way of their wrongful retention of the Client Tax Trust Funds.

## SEVENTH CAUSE OF ACTION: FRAUD – MANN DEFENDANTS

48.     Southwestern Payroll incorporates the allegations contained in paragraphs 12 through 26 above as if fully recited herein.

49.     The Mann Defendants worked with Southwestern Payroll to establish the Client Tax Trust Funds account with Pioneer. The Mann Defendants knew that it was the intent of Southwestern Payroll that this account be established for the sole purpose of collecting and holding the Client Tax Trust Funds, and materially misrepresented to Southwestern Payroll that the account would be used for this sole purpose, despite later manipulating the Client Tax Trust Funds account and/or otherwise transferring those funds to other Mann Defendant accounts in order to obtain other unrelated and fraudulent loans with Pioneer. This material misrepresentation was made with the intent to induce Southwestern Payroll to place Client Tax Trust Funds in this account, upon which Southwestern Payroll justifiably relied to its ultimate detriment.

50.     Southwestern Payroll seeks all damages allowable by law against the Mann Defendants for their fraudulent and wrongful collection, retention, and manipulation of the Client Tax Trust Funds, including $9,809,967.08, penalties and interest assessed and to be assessed from the taxing authorities, interest, costs, attorney fees, and that the Mann Defendants be required to disgorge any interest they have earned by way of their fraudulent acquisition, retention, and/or manipulation of the Client Tax Trust Funds and/or the Client Tax Trust Funds account.

## EIGHTH CAUSE OF ACTION: GROSS NEGLIGENCE – MANN DEFENDANTS

51.     Southwestern Payroll incorporates the allegations contained in paragraphs 12 through 26 above as if fully recited herein.

52.     The Mann Defendants owed a duty to Southwestern Payroll to keep and maintain the Client Tax Trust Funds as special trust funds pursuant to 26 U.S.C. § 7501. To the extent that

any of the Client Tax Trust Funds have been misappropriated, stolen, or are missing as a result of any actions of the Mann Defendants, then the Mann Defendants have grossly failed to adequately operate, manage, and control the Client Tax Trust Funds, this gross negligence and/or recklessness has caused damages to Southwestern Payroll.

53.     Southwestern Payroll seeks all damages allowable by law against the Mann Defendants, including $9,809,967.08, penalties and interest assessed and to be assessed from the taxing authorities, interest, costs, attorney fees, and that the Mann Defendants be required to disgorge any interest they have earned by way of their mismanagement of the Client Tax Trust Funds.

### NINTH CAUSE OF ACTION: CONSTRUCTIVE TRUST – MANN DEFENDANTS

54.     Southwestern Payroll incorporates the allegations contained in paragraphs 12 through 26 above as if fully recited herein.

55.     The Mann Defendants, acting in confidential capacities with Southwestern Payroll, promised to maintain an account for the benefit of Southwestern Payroll's Client Tax Trust Funds. Southwestern Payroll transferred its Client Tax Trust Funds in reliance upon that promise, and the Mann Defendants would be unjustly enriched in manipulating and/or otherwise applying those funds for any other purpose, or in claiming that the Client Tax Trust Funds are anything but funds held in trust for remittance to their proper taxing authorities and agencies.

56.     Southwestern Payroll is entitled to a constructive trust preventing the Mann Defendants from distributing any of the Client Tax Trust Funds they might still retain control over, other than to the appropriate state, federal or local taxing authorities.

**TENTH CAUSE OF ACTION: ACCOUNTING – MANN DEFENDANTS**

57.      Southwestern Payroll incorporates the allegations contained in paragraphs 12 through 26 above as if fully recited herein.

58.      Southwestern Payroll seeks an accounting from the Mann Defendants detailing all activity on all accounts that are in any way associated with the Client Tax Trust Funds or Southwestern Payroll. The exact nature and extent of the damages suffered by Southwestern Payroll, and what portion of the Client Tax Trust Funds might still be held and controlled by the Mann Defendants, is not fully known to Southwestern Payroll at this time and cannot be determined without the requested accounting.

**PUNITIVE DAMAGES – ALL DEFENDANTS**

59.      Southwestern Payroll incorporates the allegations contained in paragraphs 12 through 26 above as if fully recited herein.

60.      The Defendants' acts and failures to act with respect to the Client Tax Trust Funds as alleged herein have been sufficiently wanton, reckless, and malicious as to justify an award of punitive damages to deter them and other similarity situated parties from so acting in the future.

**WHEREFORE**, premises considered, Southwestern Payroll Service, Inc. seeks money damages in the form of a judgment in its favor and against the Defendants as set forth herein, including a money judgment in the amount of $9,809,967.08 plus any additional sums of Client Tax Trust Funds, to be determined, which were remitted on behalf of Southwestern Payroll's clients but have not been paid to the proper taxing authorities, for any and all past due penalties and interest which may be imposed for failure to timely remit the Client Tax Trust Funds to their respective taxing authorities, interest, costs, attorney fees, punitive damages, and other damages that have not heretofore been identified, as well as that the Defendants be required to disgorge any

interest or profits gained by them through their wrongful acquisition and/or retention of the Client

Tax Trust Funds, and seeks the imposition of a constructive trust and an accounting as requested

under its fourth, fifth, ninth, and tenth causes of action, along with any other and further relief

deemed just and equitable by the Court and Jury.


Respectfully submitted,


Michael A. Kornstein, Esq.
Bar Roll No. 103178
COOPER ERVING & SAVAGE LLP
LOCAL COUNSEL FOR PLAINITFF
39 North Pearl Street, 4th Floor
Albany, NY 12207
Telephone: (518) 449-3900
mkornstein@coopererving.com


Andrew C. Jayne, Esq.
(*pending pro hac vice admission*)
BAUM GLASS JAYNE & CARWILE
Attorneys for Plaintiff
Mid-Continent Tower
401 S. Boston Ave., Suite 2300
Tulsa, Oklahoma 74103
Telephone: (918) 938-7944
ajayne@bgjclaw.com


CES277789

## **VERIFICATION**

STATE OF OKLAHOMA )
                           ) ss.
COUNTY OF TULSA )

       C. David Rhoades, of lawful age, being first duly sworn, states that he, as the Court appointed Receiver over Southwestern Payroll Service, Inc., is authorized to make this verification: that he has read the above and foregoing Verified Complaint, and the statements contained therein are true and correct to the best of his knowledge, information, and belief.

                                   C. David Rhoades, Receiver
                                   Southwestern Payroll Service, Inc.

       Subscribed and sworn to before me this 30th day of October, 2019.

                                     Notary Public

My Commission Expires: _August 7, 2023_

SAMANTHA KNAPP
Notary Public in and for
**STATE OF OKLAHOMA**
Commission #07007513
Expires: August 7, 2023

15

# EXHIBIT 1

IN THE DISTRICT COURT IN AND FOR TULSA COUNTY
STATE OF OKLAHOMA

JEFFREY DARIN ALRED, individually and in his )
capacity as a stockholder of Southwestern )
Payroll Service, Inc., )
           )
        Plaintiff, )
           )
v. )
           ) Case No: CJ-2019-03516
           ) Judge Daman Cantrell
SOUTHWESTERN PAYROLL SERVICE, INC., )
an Oklahoma corporation, )
CLOUD PAYROLL, LLC, a Delaware )
limited liability )
company, VALUEWISE CORPORATION, a )
Delaware corporation, )
MICHAEL MANN, individually and in his )
capacity as a member/manager of )
CloudPayroll, LLC and his capacity )
as a stockholder of ValueWise Corporation, and )
PROSPERITY BANK, a Texas State Financial )
Institution, )
           )
        Defendants. )

DISTRICT COURT
**F I L E D**

SEP 27 2019

DON NEWBERRY, Court Clerk
STATE OF OKLA. TULSA COUNTY

## FINAL ORDER APPOINTING RECEIVER

On this _____ day of September, 2019, the Plaintiff's Petition for the Appointment of a

Receiver (the "Receiver Motion"), filed September 9, 2019, by Plaintiff, Jeffrey Darin Alred

("Plaintiff" or "Alred"), comes on for consideration to finalize the Receiver's appointment.

Plaintiff, Jeffrey Darin Alred, comes by and through his attorneys of record, John J.

Carwile and Andrew Jayne. The Court, having reviewed the pleadings and the relevant

documents, which provide that Alred, as a matter of right, is entitled to the appointment of a

receiver, and upon hearing arguments by counsel, finds that for good cause shown a receiver

should be and is hereby appointed over the Property (as defined in the Receiver Motion and hereafter) of Southwestern Payroll Service, Inc. and the Corporate Entity.  The Property, and the Corporate Entity, together with all other property obtained by the receiver as a result of this (or subsequent) Order of this Court, is collectively referred to herein as the ("Southwestern").

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED by the Court as follows:

1.      C. David Rhoades, of Tulsa, Oklahoma, is hereby appointed as receiver over the Southwestern and the operations of Southwestern. His temporary appointment became effective upon the filing herein by the Receiver of an undertaking in the sum of $250,000, conditioned as provided by law and the filing herein of his Oath as Receiver as provided by law.

2.      The Receiver is appointed under the authority of Okla. Stat. tit. 12 § 1551 and 18 § 1106 and 18 § 2039, and should be qualified, and is hereby ordered, authorized and directed to immediately take the Property into his possession and control. The Receiver shall have, without limitation, all of the powers of a Trustee, as provided by the United States Bankruptcy Code, as amended, and the Defendants and all persons claiming by, through and under them are ordered and directed to deliver to the Receiver forthwith, possession of (1) any tangible assets including but not limited to the day to day operations of Southwestern Payroll Service, Inc.  (2) any leases, contracts, agreements, books and records with respect to the operation of the Southwestern Assets, (3) all accounts at any financial institution and records relating to such accounts titled in the name of Southwestern Payroll Service, Inc.;  and/or  the Defendants  (only as it relates to the company operations; specifically excluding the personal books and records), and (4) reasonable access to all books, records and documents related to the Southwestern Assets, wherever located.

3.      The Receiver is ordered and authorized to manage the Assets to its best advantage and to collect and receive all accrued or accruing revenues, collections, accounts, income,

profits, rents and proceeds there from.  Out of all remaining revenues, collections, accounts, income, profits, rents and proceeds coming into his hands pursuant to the terms of this Order, said Receiver is authorized to pay the reasonable and necessary expenses required to carry on the business of administrating the Assets, including lease payments and obligations, all accumulated taxes on any property, insurance premiums, expenses for the operations of the Assets, expenses of any repairs necessary to preserve said property in good condition and to maintain all required licenses and certificates as well as permits for the operation of the Assets.  Any revenues obtained by the Receiver in excess of the approved expenses authorized above shall be held by the Receiver to await the further order of the Court.  Unless a loss is compensable by the Receiver's Bond the Receiver shall not be personally responsible for financials losses of the Assets.

4.      The Receiver is authorized and directed to obtain such licenses, permits, certificates, or other authorizations as may be required under state, federal or local law to operate, maintain and collect the revenues and income generated by the Estate.  Any state, county or local regulatory agencies shall issue the Receiver a temporary permit or license in order to maintain the going concern value of the Estate.  The Receiver shall proceed with the process of obtaining all required licenses and permits in a timely manner.  The agencies shall not require the Receiver to apply for a new license number, but to keep the old number in place.

5.      The Receiver is authorized to take and have complete and unfettered access to the business premises and records of Southwestern.

6.      The Receiver is authorized to employ such managers, agents, employees, servants, accountants and attorneys as may, in the Receiver's judgment, be advisable or necessary in carrying out his duties regarding the business of Southwestern.

7.     The Receiver is authorized to evaluate the operations of the Assets for the maximum dollar value for marketing to a potential purchaser, which could include the parties in this case.

8.     The Receiver is authorized to conduct a forensic accounting of Southwestern including but not limited to the property, liabilities and funds of the Assets.

9.     The Receiver is authorized to wind-up and dissolve Southwestern Payroll Service, Inc. under Okla. Stat. tit. 18 § 2039.

10.     Defendants shall provide to the Receiver a complete accounting of the funds taken from Southwestern and any explanations for the transactions.

11.     The Receiver shall have the right to issue subpoenas to obtain documents and records pertaining to the receivership, and conduct discovery in this action on behalf of the receivership estate ("Estate").  The Estate shall consist of all Assets and all other property over which the Receiver is appointed pursuant to this Order, all of which shall be held *in custodia legis* by this Court.

12.     In the event that any parties to this action have Assets in their possession that may be or were property of Southwestern, the parties shall identify those Assets and at the Receiver's discretion turn the Assets over to the Receiver for further disposition.

13.     The Receiver shall have the right to borrow funds, upon Motion and approval by this Court, as necessary to carry out the duties and responsibilities of the Receiver, including, without limitation, to defray operating expenses incurred in connection with the business of Southwestern.

14.     The Receiver is specifically vested with the discretion to be exercised in his business judgment to either continue the operations of the business of Southwestern in its

4

ordinary course to preserve its going concern value or to reduce such operations to the point of cessation.

15.     **The Parties and all other persons or entities served with a copy of this Order shall cooperate fully with and assist the Receiver in the performance of his duties** subject to a party's appropriate assertion of the Fifth Amendment privilege against self-incrimination, and other appropriate assertion of any other privilege or right.  This cooperation and assistance shall include, but not be limited to, the turnover of any and all assets, providing any information to the Receiver that the Receiver deems necessary to exercising the authority and discharging the responsibilities of the Receiver under this Order; providing any password required to access any computer or electronic files in any medium; turning over any Assets (cash or other tangible assets), and advising all persons who owe money to the Parties that all debts should be paid directly to the Receiver.

16.     Defendant's and all other managers, members, directors, officers, employees, agents, independent contractors and other natural or legal entities acting in concert with them are hereby enjoined from directly or indirectly transferring, dissipating or otherwise disposing of any of the property of the Estate and its proceeds, or from otherwise transferring, concealing, destroying or making any other disposition of any personal or corporate assets including, but not limited to, funds in bank or brokerage accounts, automobiles or any other real or personal property owned, possessed or controlled by any of them without prior authorization from the Court.

17.     The Receiver shall have the right to borrow funds by Receiver's Certificate up to $5,000,000 from a lender of the Receiver's choice, on terms agreeable to both parties, to carry out the duties and responsibilities of the Receiver, including, without limitation, to defray the operating costs of Southwestern and to defray any expenses incurred in connection with the

ordinary course of administration of Southwestern. This shall be secured by a first priority lien on Southwestern, subject only to the fees and expenses of the Receiver. If additional funds are required, then the Receiver shall file a Motion to issue additional Receiver's Certificates and receiver further approval by this Court.

18.     The Receiver shall, as part of his duties, analyze the Assets of the estate and proceed to find qualified buyers of the Assets on a free and clear basis, if that is his decision after appropriate analysis. The Receiver has the specific power to sell the Assets as a 'transfer' under Okla. Stat. tit. 12 § 1554. The Receiver will petition the Court for permission to enter into contracts for the Southwestern Assets that are deemed material in nature, but not for Assets whose value is less than $10,000 and not in the normal course of business.

19.     The Receiver is authorized in his sole discretion and without further order of the Court to remove any property from the Estate that he deems burdensome or of inconsequential value, whereupon such property shall re-vest in the appropriate Defendant. The Receiver has "the right to determine whether the assets are so burdensome or of such little value as to render the administration of the same unprofitable, and if he so determines the court may upon his petition authorize the abandonment of the worthless property." Helvey v. U.S. Bldg. & Loan Ass'n of Los Angeles, 184 P.2d 919, 921 (1947). "The Court may authorize a Receiver to abandon property pursuant to its broad equitable powers." Quilling v. Trade Partners, Inc., 2011 WL 4973870, at *2 (W.D. Mich. Sept. 30, 2011), report and recommendation adopted, 2011 WL 4973754 (W.D. Mich. Oct. 19, 2011). The Receiver is hereby authorized to abandon any or all of the Assets upon the Receiver's sole and independent determination that such assets are burdensome or of such little value as to render the administration of the same unprofitable. Upon such determination, the Receiver may at any time in his sole discretion upon the exercise of his business judgment file a Notice with the Court describing the property to be abandoned

6

and upon such filing, the described property shall be deemed abandoned from this Receivership Estate for all purposes.

20.     The Plaintiff requests that the Receiver's fee shall be $380 per hour or shall be entitled to two percent (2%) of the value of all of the transferred asset, whichever is higher. In addition, the Receiver shall be authorized to utilize others on his staff to assist him in the performance of such duties and shall be compensated for the time reasonably spent by such persons at their normal hourly rates which range from $50 to $350 per hour.  The Receiver is authorized to hire management and staff to operate Southwestern or retain existing management, which shall be deemed an expense of the Receiver.  The Receiver is authorized to retain any professionals deemed appropriate in his sole discretion such as attorneys, accountants, or appraisers (collectively the "Professionals") and shall be entitled to reimbursement for reasonable out-of-pocket costs and expenses including the reasonable fees, costs and expenses of the Professionals to the extent required by the Receiver in connection with the performance of his duties as specified herein and the staff, which may be modified by order of this Court upon proper motion, after notice and a hearing.  Unless otherwise ordered by the Court, the employment and payment of the Professionals shall not be subject to prior approval by this Court except as part of the Receiver's final accounting.

21.     The Receiver shall have as of the entry of this Order a valid and perfected lien on the Assets that are subject of this Order to secure payment to the Receiver of the fees and expenses of the Receiver that are approved by this Court (the "Receiver's Lien"). The Receiver's Lien granted hereby shall be a first lien with priority over all other liens, claims and interests. Dismissal of this case shall not affect the nature, extent or validity of the Receiver's Lien and shall be ineffective to divest this Court of jurisdiction to hear and approve any requested fees and expenses of the Receiver and to discharge the Receiver and any bond. This Court explicitly

7

retains jurisdiction despite any attempted dismissal to hear and rule on receivership-related issues. See Brown v. R. L. Bivings, 316 P.2d 855 (Okla. 1957).

22.    The injunctive relief granted herein may be modified or waived only by (1) written approval from the Receiver or his counsel or (2) by order of this Court upon proper motion, after notice and a hearing.

23.    The Receiver shall have the right upon notice and opportunity to any additional injunctive relief to enforce his rights under this Order or as otherwise authorized by statute or common law against the parties to this case after Court approval for any issue not contemplated herein. This Court may set a hearing upon any opposition to such a request on 3 days' notice.

24.    If any or all of the provisions of the Order are hereafter modified, vacated, or stayed, such modification, vacation, or stay shall not affect the validity or enforceability of the lien, priority or other protection authorized or created hereby.  Notwithstanding any such modification, vacation, or stay, the Receiver shall be entitled to all the rights, remedies, privileges, and benefits granted herein.

25.    To the extent permitted by law, the provisions of the Order shall be binding upon and inure to the benefit of the Receiver and all of the parties, their respective successors and assigns including any trustee hereinafter appointed as a representative of the estate herein, or of the estate in any subsequent proceedings under the Bankruptcy Code, and all creditors of Southwestern and other parties in interest.

26.    The Receiver may at any time by filing a motion upon notice to all parties, seek entry of a further order from the Court for such other and further authority as it may be deemed necessary or desirable by the Receiver for the administration, protection or benefit of the Estate.

27.    In order to promote judicial efficiency, all persons who receive actual or constructive notice of this Order are enjoined in any way from disturbing or in any way

8

interfering with the Receiver's administration of the Estate or from prosecuting any new proceedings (including collection or enforcement proceedings) that involve the Receiver or the Estate unless such person or persons first obtains the permission of this Court or the Receiver. All parties to this case and any other entity given notice of this Order are hereby enjoined from any and all of the following: (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against Southwestern, the Estate or the Receiver that was or could have been commenced before the entry of this Order or to recover a claim against Southwestern, the Estate or the Receiver that arose before the entry of this Order; (2) any act to obtain possession of or to exercise control over the Estate or any property thereof; (3) any act to create, perfect, or enforce any lien against the Estate or any property thereof; (4) any act to create, perfect, or enforce against the Estate or any property thereof any lien to the extent that such lien secures a claim that arose before the entry of this Order; (5) any act to collect, assess, or recover a claim against Southwestern, the Estate or any property thereof or the Receiver that arose before the entry of this Order; (6) amending or otherwise changing the operating agreements, partnership agreements, by-laws or other organizational documents of the Company in any manner; (7) amending or otherwise changing the operating agreements, partnership agreements, by-laws or other organizational documents of the Company in any manner; (8) the setoff of any debt owing to the of the Receivership Estate that arose before the entry of this Order against any claim against the of the Receivership Estate or the Receiver; or (9) the commencement or continuation of any actions on behalf of corporations after demand has been made upon directors to bring or defend such action and such demand has been refused or where it is shown that such a request would be futile and therefore unnecessary (commonly known as "Derivative Actions").

28.    Any and all creditors or parties in interest are directed to file any actions regarding the Defendants in Tulsa County and shall be part of this action.

29.    Utility companies and other providers of utility services, including without limitation, electricity, gas, water, sewage, waste water, recycling services, refuse, garbage, television/cable and telephone are directed not to demand security deposits or to discontinue service. The utility companies and other providers are also directed to assist in any and all requests made by the Receiver and/or staff in relation to any accounts in the name of Southwestern Payroll Service, Inc. and any and all of the addresses associated with the assets associated within. These requests include but are not limited to the turning on and off of utilities, the transfer of the utilities into the Receivership Estate, and any other requests made to assist the Receiver in his duties.

30.    **All persons or entities, including banks, controlling possession of any property of the Estate shall cooperate with the Receiver on the directions thereof.** Upon presentation of this order all persons, or entities, including banks, shall turn over all funds, operating bank account, safety deposit boxes related to or associated with Southwestern to the Receiver without delay and delete all designated signors on the bank account. Plaintiff further requests that any financial institution served with this Order shall cooperate in setting up the necessary bank accounts and/or transfer the accounts to the Receiver's care, custody and control under the original tax identification number associated with Southwestern Payroll Service, Inc.

31.    The Receiver may, but shall not be obligated in any manner to, prepare or file any delinquent, current or future state or federal income tax returns and shall not be individually held personally responsible for any local, state or federal income, property, payroll or other taxes of Southwestern  except for payroll or sales taxes incurred as a result of the Receiver's administration of the Estate. The Estate shall not constitute a separate or new taxpayer.

32.     The Receiver is empowered to file a voluntary petition for relief pursuant to 11 U.S.C. §301 et seq for Southwestern if such is deemed appropriate in the sole discretion of Receiver in the exercise of his business judgment.  The officers, directors, managers, members and/or shareholders are specifically enjoined from taking any action inconsistent with the terms of this Order and from authorizing any action by the Company inconsistent with the by-laws or operating agreement as of the entry of this Order.

33.     The Receiver shall have the sole power and authority, consistent with the terms of this Order, (i) to oversee and make all final decisions concerning the financial affairs relating to the Estate, (ii) to remove any existing employees, officers, managers, directors (collectively the "Personnel"), and identify and appoint qualified individuals to serve as members of the Board of Directors of the Defendant(s) including the Receiver as sole director, (iii) analyze, market and sell any or all of the Assets or any other property of the Estate, and (iv) manage and operate the Estate on a daily basis.

34.     The Receiver may at any time after the entry of this Order in his sole discretion upon the exercise of his business judgment determine that any or all of the key Personnel should be removed. Upon such determination, the Receiver may at any time in his sole discretion file a Notice with the Court identifying the key Personnel to be removed and any individuals appointed to replace the removed key Personnel and upon such filing, the identified key Personnel shall be deemed immediately removed from their position or office and any replacements shall be deemed immediately appointed.  The removal of any key Personnel shall be effective upon the filing of the Notice, regardless of whether any such individual has received a copy of the Notice.

35.     The individual representatives of Southwestern Assets are hereby authorized and directed to perform all acts, take any action, and execute and comply with the terms of such other documents, instruments, and agreements, as Receiver may reasonably require as evidence of and

11

for the protection of the Estate or that may be otherwise deemed necessary by the Receiver to affect the term and conditions of this Order.

36.     The Receiver has a right to reject any contracts or leases related to the Southwestern as found in Sunflower Oil Co. v. Wilson, 142 U.S. 313, 322, 12 S. Ct. 235, 237, 35 L. Ed. 1025 (1892) and U.S. Trust Co. v. Wabash W. Ry. Co., 150 U.S. 287, 299-300, 14 S. Ct. 86, 90, 37 L. Ed. 1085 (1893).

37.     Communications among or between Professionals and Receiver as well as any counsel of interested parties, shall be privileged without any exceptions. Such privilege shall extend to any of the Receiver's staff.

38.     The Receiver has "the right to determine whether the assets are so burdensome or of such little value as to render the administration of the same unprofitable, and if he so determines the court may upon his petition authorize the abandonment of the worthless property." Helvey v. U.S. Bldg. & Loan Ass'n of Los Angeles, 184 P.2d 919, 921 (1947). "The Court may authorize a Receiver to abandon property pursuant to its broad equitable powers." Quilling v. Trade Partners, Inc., 2011 WL 4973870, at *2 (W.D. Mich. Sept. 30, 2011), report and recommendation adopted, 2011 WL 4973754 (W.D. Mich. Oct. 19, 2011).   The Receiver is hereby authorized to abandon any or all of the Assets upon the Receiver's sole and independent determination that such assets are burdensome or of such little value as to render the administration of the same unprofitable.  Upon such determination, the Receiver may at any time in his sole discretion upon the exercise of his business judgment file a Notice with the Court describing the property to be abandoned and upon such filing, the described property shall be deemed abandoned from this Receivership Estate for all purposes.

39.     All parties shall provide notice to the Receiver of any and all filings with this Court and hearing dates.

40.   The Court reserves the right to modify and supplement this order from time to time as may be deemed necessary and advisable.

41.   It is hereby requested by this Court that the New York Supreme Court and all counties in the State of New York shall recognize and honor the Orders of this Court.

42.   ALL PERSONS HAVING NOTICE OF THIS ORDER ARE HEREBY ADVISED THAT THE TERMS OF THIS ORDER, INCLUDING BUT NOT LIMITED TO THE INJUNCTIVE RELIEF GRANTED HEREIN, SHALL BE ENFORCEABLE BY CONTEMPT AS WELL AS ANY OTHER MEANS AUTHORIZED BY LAW.

ENTERED THIS 27 day of Sept, 2019, at 10:15 o'clock ____.m. CST.

DAMAN CANTRELL
_____
Judge of the District Court

Submitted by:

_____
John J. Carwile, OBA #10757
Andrew Jayne, OBA #19493
Baum Glass Jayne & Carwile
Mid Continent Tower
401 South Boston Avenue, Suite 2300
Tulsa, OK 74103
(918) 938-7944
(918) 938-7966
Attorneys for Plaintiff

13

Acknowledged:

C. David Rhoades
401 South Boston Avenue, Suite 2320
Tulsa, OK 74103
(918) 728-3340
(918) 582-7070 (fax)
cdrhoades@turnaroundpro.com
Receiver

## CERTIFICATE OF SERVICE

    The undersigned hereby certifies that on this ___ day of _____, 2019, a true and correct copy of the above and foregoing instrument was mailed by regular First-Class mail and certified-mail - return receipt requested to the following:

Southwestern Payroll Service, Inc.
c/o W. Kirk Clausing
Registered Agent
2021 South Lewis Avenue, Suite 240
Tulsa, OK 74104

Michael Mann
855 Route 146, Suite 220
Clifton Park, New York 12065

CloudPayroll, LLC
855 Route 146, Suite 220
Clifton Park, New York 12065

CloudPayroll, LLC
c/o National Register Agents, Inc.
Registered Agent
160 Greentree Drive, Suite 101
Dover, DE 19904

ValueWise Corporation
855 Route 146, Suite 220
Clifton Park, New York 12065

ValueWise Corporation
c/o National Register Agents, Inc.
Registered Agent
160 Greentree Drive, Suite 101
Dover, DE 19904

Tulsa County Board of Commissioners
500 South Denver Avenue
Tulsa, OK 74103

Southwestern Payroll Service, Inc.
11008 East 51st Street
Tulsa, OK 74146

Denis Semler
Tulsa County Treasurer
500 South Denver Avenue
3rd Floor
Tulsa, OK 74103

United States of America
Department of the Treasury
Internal Revenue Service
1111 Constitution Avenue, NW
Washington, DC 20224
-and-
Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001
-and-
U.S. Attorney for the
Northern District of Oklahoma
110 West 7th Street
Suite 300
Tulsa, OK 74119

Steve Kunzweiler
Tulsa County District Attorney
Tulsa County Courthouse
500 South Denver Avenue, Suite 900
Tulsa, OK 74103

Steve Soulé, Esq.
Hall Estill
320 South Boston Avenue, Suite 200
Tulsa, OK 74103
(918) 594-0400
(918) 594-0505 (fax)
Attorney for Prosperity Bank

_____

C. David Rhoades

16

I, Don Newberry, Court Clerk, for Tulsa County, Oklahoma,
hereby certify that the foregoing is a true, correct and full
copy of the instrument herewith set out as appears on record
in the Court Clerk's Office of Tulsa County, Oklahoma, this

SEP 27 2019

By_____
                        Deputy