## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

SOUTHWESTERN PAYROLL SERVICE, INC.

*Plaintiff,*

v.

PIONEER BANCORP INC.; PIONEER BANK;
MICHAEL T. MANN; VALUEWISE
CORPORATION d/b/a APOGEE d/b/a OPTIX
CONSULTING, and d/b/a PRIMACY SEARCH
GROUP; MYPAYROLLHR.COM, LLC; CLOUD
PAYROLL LLC; ROSS PERSONNEL
CONSULTANTS, INC., ALWAYS LIVE
HOLDINGS, LLC; KANINGO, LLC; HIRE FLUX,
LLC; HIRE FLUX HOLDINGS, LLC; VIVERANT
LLC and HEUTMAKER BUSINESS ADVISORS,
LLC,

*Defendants.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Case No. 1:19-cv-1349 (FJS/CFH)

**VERIFIED AMENDED
COMPLAINT**

**COMES NOW** the Plaintiff, Southwestern Payroll Service, Inc., through its undersigned counsel of record, and pursuant to Fed. R. Civ. P. 15(a)(1)(B), for its Amended Complaint against the Defendants hereby submits the following:

## JURISDICTION AND VENUE

1.      Plaintiff Southwestern Payroll Service, Inc. ("Southwestern Payroll") is an Oklahoma Corporation with its principal place of business in Tulsa, Oklahoma.  Southwestern Payroll is subject to Court supervision in Tulsa County, Oklahoma, and is controlled by C. David Rhoades, as Receiver.

2.      Defendant Pioneer Bancorp, Inc. is a foreign bank, incorporated in Maryland, with its principal place of business in Albany, New York. Pioneer Bancorp, Inc. is the holding company for Defendant Pioneer Bank.

3.      Defendant Pioneer Bank is a stock bank organized and existing under the laws of the State of New York having an address at 652 Albany Shaker Road, Albany, NY 12180. Based upon Plaintiff's information, and belief, both Pioneer Bancorp, Inc. and Pioneer Bank were involved in the actions and allegations which follow, and will collectively be referred to herein as "Pioneer."

4.      Defendant Michael Mann ("Mann") is a citizen of the State of New York.

5.      Defendant Valuewise Corporation d/b/a Apogee d/b/a Optix Consulting d/b/a Primacy Search Group ("Valuewise") is a Delaware corporation, with its principal place of business located at 855 Route 146, Suite 220 and/or 240, Clifton Park, New York 12065.

6.      Defendant MyPayrollHR, LLC ("MyPayrollHR") is a Delaware limited liability company with its principal place of business located in Clifton Park, New York. Upon Plaintiff's information, and belief, none of its manager/members are citizens of the State of Oklahoma.

7.      Defendant Cloud Payroll, LLC ("Cloud Payroll") is a Delaware limited liability company with its principal place of business located at 855 Route 146, Suite 220 and/or 240, Clifton Park, New York 12065. Upon information and belief, none of its manager/members are citizens of the State of Oklahoma.

8.      Defendant Ross Personnel Consultants, Inc. ("Ross") is a Connecticut corporation with its principal place of business located at 855 Route 146, Suite 220 and/or 240, Clifton Park, New York 12065.

9.       Defendant Always Live Holdings, LLC ("Always Live") is a Delaware limited liability company with its principal place of business located at 855 Route 146, Suite 220 and/or 240, Clifton Park, New York 12065. Upon Plaintiff's information, and belief, none of its manager/members are citizens of the State of Oklahoma.

10.      Defendant Kaningo, LLC ("Kaningo") is a Delaware limited liability company with its principal place of business located at 855 Route 146, Suite 220 and/or 240, Clifton Park, New York 12065. Upon Plaintiff's information, and belief, none of its manager/members are citizens of the State of Oklahoma.

11.      Defendant Hire Flux, LLC ("Hire Flux") is a Delaware limited liability company with its principal place of business located at 855 Route 146, Suite 220 and/or 240, Clifton Park, New York 12065. Upon Plaintiff's information, and belief, none of its manager/members are citizens of the State of Oklahoma.

12.      Defendant Hire Flux Holdings, LLC ("Hire Flux Holdings") is a Delaware limited liability company with its principal place of business located at 855 Route 146, Suite 220 and/or 240, Clifton Park, New York 12065. Upon Plaintiff's information, and belief, none of its manager/members are citizens of the State of Oklahoma.

13.      Defendant Viverant LLC ("Viverant") is a New York limited liability company with its principal place of business located at 855 Route 146, Suite 220 and/or 240, Clifton Park, New York 12065. Upon Plaintiff's information, and belief, none of its manager/members are citizens of the State of Oklahoma.

14.      Defendant Heutmaker Business Advisors, LLC ("Heutmaker") is a Delaware limited liability company with its principal place of business located at 855 Route 146, Suite 220

and/or 240, Clifton Park, New York 12065. Upon Plaintiff's information, and belief, none of its manager/members are citizens of the State of Oklahoma.

15.     Upon information and belief, Mann controls and/or owns Valuewise, MyPayrollHR, Cloud Payroll, Ross, Always Live, Kaningo, Hire Flux, Hire Flux Holdings, Viverant, and Heutmaker (collectively, the "Mann Defendants").

16.     Upon information and belief, Mann and the Mann Defendants are parties to a Loan and Security Agreement, dated August 12, 2019, together with Pioneer.

17.     The conduct giving rise to the causes of action herein occurred in substantial part in the Northern District of New York.

18.     This Court has jurisdiction of this action pursuant to 28 USC § 1332(a)(1) in that this is an action between citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

19.     Venue is proper in the Northern District of New York pursuant to 28 USC § 1391(b)(1&2).

## FACTUAL ALLEGATIONS

20.     Southwestern Payroll is a payroll compliance and support company which contracts with employer-clients to provide payroll processing services, including providing payroll checks to the employer-client's employees, and collecting, processing, and remitting an employer-client's withheld payroll taxes to the appropriate taxing authorities in an accurate and timely fashion.

21.     Payroll tax processing involves the automated clearing house ("ACH") transfer of a payroll company's clients' federal, state, and local taxes associated with a particular payroll into a dedicated account at a bank.  After the payroll clients' tax trust funds are withdrawn from the clients' bank account on a particular payroll date, the funds are held in escrow in a bank account

until they are due to be paid to various taxing authorities.  At that point, another ACH transaction occurs in order to transfer the money from the holding bank account to the appropriate taxing authority.

22.     Failure to transfer payroll taxes to their appropriate taxing authority results in penalties and interest assessments.

23.     Prior to 2017, non-party Jeffery Darrin Alred ("Alred") was the sole owner of Southwestern Payroll.

24.     On or about April 21, 2017, Mann, through Cloud Payroll, which is wholly owned by Valuewise, purchased 51% of the outstanding stock of Southwestern Payroll from Alred. Mann was and is the sole owner of Valuewise Corporation.

25.     Upon information and belief, Pioneer provided the financing for the purchase of the majority interest in Southwestern Payroll.   As part of the purchase, Mann and/or Pioneer, insisted that Southwestern Payroll use Pioneer to house Southwestern Payroll clients' federal, state, and local tax trust funds (hereinafter the "Client Tax Trust Funds")[1] as an interim step during payroll tax processing. Upon information and belief, Pioneer insisted on this provision in the relationship with Southwestern Payroll as a condition of financing for Cloud Payroll's purchase of its controlling interest in Southwestern Payroll.

26.     Pioneer presumably insisted on this arrangement so it would receive the interest, or "float," the Client Tax Trust Funds generated from the time they are collected from the employers and deposited into the Pioneer account, until such time as they are withdrawn from the account to be paid to the appropriate taxing authorities.

---

[1] "Whenever any person is required to collect or withhold any internal revenue tax from any other person and to pay over such tax to the United States, the amount of tax so collected or withheld shall be held to be a special fund in trust for the United States …." 26 U.S.C. § 7501.

27.    Because Pioneer insisted that the Client Tax Trust Funds be held in its bank account after Mann purchased Southwestern Payroll, the procedure employed was as follows: upon processing a payroll at Southwestern Payroll, the Client Tax Trust Funds were withdrawn from the clients' bank accounts and were initially placed in an account under the control of Southwestern Payroll at Prosperity Bank in Tulsa, Oklahoma.  This initial step was generated by an ACH transfer initiated by Prosperity Bank.  Thereafter, National Payment Corporation ("NatPay"), a third-party ACH service provider, would transfer the Client Tax Trust Funds to an account at First Premier Bank in Sioux Falls, South Dakota.  NatPay would then transfer the Client Tax Trust Funds to an account at Pioneer ending in 2440, where the funds would remain until they were due to a particular taxing authority.  The ACH transactions sent to Pioneer by NatPay from the First Premier Bank account carried a batch description identifying the type of tax payment they represented, either as "TAX PAY" or "TAX COL", and were thus known to Pioneer as Client Tax Trust Funds. When the funds were due to a particular taxing authority, NatPay, based on instructions from Cloud Payroll, would transfer the Client Tax Trust Funds from the Pioneer account back to First Premier Bank, and then to the appropriate taxing authority(ies).

28.    On or about September 4, 2019, Alred received notice that Mann had resigned from any officer position within Valuewise Corporation and CloudPayroll, LLC, effective immediately. Shortly thereafter, Southwestern Payroll learned that Pioneer had already frozen all accounts it held which were associated with Mann, including the 2440 account retaining the Client Tax Trust Funds. Over the course of the next several weeks, various news and media outlets reported that Mann had committed fraud by taking out various fraudulent loans with Pioneer and other banks. There are also allegations that Mann was improperly manipulating various payroll accounts held

with Pioneer.  Michael Mann was indicted in this district for bank fraud in violation of 18 U.S.C.

§ 1344 on or about September 20, 2019.

29.    Because of this activity surrounding the majority shareholder in Southwestern

Payroll, on September 10, 2019, the District Court of Tulsa County, State of Oklahoma, appointed

C. David Rhoades as a receiver over Southwestern Payroll on an emergency basis.  On September

27, 2019, the District Court of Tulsa County, State of Oklahoma, made C. David Rhoades'

appointment as receiver over Southwestern Payroll permanent.  *See* Doc. No. 1 at Exhibit 1.

30.    Thereafter, upon further investigation, Southwestern Payroll has learned that

Pioneer actually froze *outgoing* ACH transactions from the 2440 account where the Client Tax

Trust Funds were held effective August 30, 2019.[2]  However, Pioneer continued to receive and

deposit incoming Client Tax Trust Funds through at least September 4, 2019.  From August 30,

2019 through September 4, 2019, Pioneer received ACH transactions of Southwestern Payroll's

Client Tax Trust Funds totaling $6,740,339.63.  However, since Pioneer froze all outgoing

transactions, these funds have not been paid to the appropriate taxing authorities.  By selecting

August 30, 2019 as the effective date to freeze *outgoing* ACH transactions, but continue to receive

*incoming* ACH transactions, Pioneer was able to maximize the amount of Client Tax Trust Funds

that could be impounded into Pioneer over a short period of time. August 30, 2019 was a Friday.

That means Pioneer would receive Client Tax Trust Funds on monthly payrolls, semi-monthly

payrolls, weekly payrolls, and bi-weekly payrolls that ran on that Friday. The only clients who

would not be impacted by Pioneer's freeze of *outgoing* transactions on August 30, 2019, would be

those clients which had a bi-weekly payroll that ran on the following Friday.

---

[2] Southwestern Payroll is not sure at this point whether Pioneer initiated the freeze on August 30, 2019, or if Pioneer initiated the freeze on September 3, 2018, and retroactively prevented payment of Client Tax Trust Funds to the appropriate taxing authority beginning August 30, 2019.  Thus, Southwestern Payroll will refer to the freeze as "effective" August 30, 2019.

31.     In addition to the $6,740,339.63 in Client Tax Trust Funds which were deposited with Pioneer between August 30, 2019 and September 4, 2019, there is also an additional $3,069,627.45 in Client Tax Trust Funds which were deposited with Pioneer prior to the 2440 account being frozen.  These were Client Tax Trust Funds collected during the third quarter and deposited with Pioneer up to August 29, 2019, but which had not yet been paid to the appropriate taxing authorities because they had not yet become due.

32.     Southwestern Payroll has made demand upon Pioneer to return and/or properly remit these Client Tax Trust Funds. However, Pioneer has failed and refused to return the $9,809,967.08 in Client Trust Tax Funds so they can be remitted to the appropriate taxing authorities.

33.     There are potentially Client Tax Trust Funds in addition the specific amounts referenced above which Pioneer is improperly refusing to return to Southwestern Payroll. Southwestern Payroll is diligently performing an accounting to precisely identify these additional sums.  It is taking Southwestern Payroll substantially longer to perform this audit because Pioneer has refused to provide any information to assist Southwestern Payroll in its audit.

34.     Pioneer's supposed justification for refusal to return or pay out the Client Tax Trust Funds is based on the following:

      a. On August 12, 2019, Pioneer extended a $42 million revolving line of credit ("Loan") to the Mann Defendants, and Mann guaranteed the Loan. According to Pioneer, the Loan documents granted Pioneer a blanket lien against all of the borrowers' assets, including any of their bank accounts;

b.  Of course, at the time of the Loan, Mann, the Mann Defendants, and Pioneer knew that the 2440 account was a tax trust funds account, and that neither Mann nor any of the Mann Defendants could pledge the same as collateral for any loan;

c.  a mere fifteen or so days after the $42 million Loan was purportedly made, Pioneer, froze all outgoing transactions out of accounts associated with Mann and/or the Mann Defendants, including the 2440 account, and immediately swept the account and seized the funds as purported "collateral" for the Loan;

d.  On September 11, 2019, more than a full week after partially freezing the 2440 account, and after it had already seized the millions of dollars of Client Tax Trust Funds, Pioneer sent Mann and/or the Mann Defendants a "default" notice, purporting to demand payment on the Loan;

e.  On or about October 18, 2019, Pioneer sued Mann and the Mann Defendants (excluding Viverant), in a case styled *Pioneer Bank v. Michael T. Mann et al*, Index No. 907160-19, in the Supreme Court of the State of New York, County of Albany, for breach of the Loan agreement(s) (the "State Court Case").  Nowhere in the filings did Pioneer disclose that it had already helped itself to the Client Tax Trust Funds as a claimed offset of the defaulted Loan;

f.  Based upon other court filings in the State Court Case, Mann willingly met with agents of Pioneer, and on behalf of himself and the Mann Defendants, accepted service of Pioneer's complaint and simultaneously executed a consent judgment in favor of Pioneer, conceding the full amount sought by Pioneer - $35,490,894.90, plus interest;

g.  Pioneer, Mann, and the Mann Defendants entered into the State Court Case's consent judgment notwithstanding Mann's obligation to challenge Pioneer's claims to the Client Tax Trust Funds, and notwithstanding Pioneer's knowledge that it had offset the Loan with funds that did not belong to Mann or the Mann Defendants.

35.    As a result of Defendants' actions as set forth above, Southwestern Payroll's customers have received late payment notices from various taxing authorities, and have in turn made demand upon Southwestern Payroll to pay the unpaid taxes, along with the penalties and interests that have accrued and will continue to accrue. Further, Southwestern Payroll has lost customers as a result of Southwestern Payroll's inability to remit these now long past due Client Tax Trust Funds on their customers' behalves.

36.    Despite federal and state investigations, civil suits and public outrage, Pioneer is unapologetic for its part in Mann's collapse, the substantial harm caused to thousands of employers throughout the United States, and its wrongful seizure and retention of millions of dollars in Client Tax Trust Funds.

### FIRST CAUSE OF ACTION: DECLARATORY JUDGMENT – ALL DEFENDANTS

37.    Southwestern Payroll incorporates the allegations contained in paragraphs 1 through 36 above as if fully recited herein.

38.    Southwestern Payroll transferred at least $9,809,967.08 in Client Tax Trust Funds into the 2440 account at Pioneer that were never withdrawn for payment of taxes.

39.    Pioneer has seized these Client Tax Trust Funds, claiming that the funds were pledged as collateral for the Loan.

40.     Mann and the Mann Defendants have not challenged Pioneer's ability to seize the Client Tax Trust Funds, and are working with Pioneer in order that the tax funds be used to reduce the amount owed by Mann and the Mann Defendants to Pioneer.

41.     Southwestern Payroll's employer-clients have demanded that Southwestern Payroll return the Client Tax Trust Funds to Southwestern Payroll, or otherwise remit the funds to the appropriate taxing authorities as directed by Southwestern Payroll.

42.     This case involves an actual, substantial controversy between the parties.

43.     Southwestern Payroll seeks a declaration with respect to the rights of the parties vis-à-vis the Client Tax Trust Funds, and specifically a declaration that Pioneer wrongfully seized the Client Tax Trust Funds and that it must release such funds to Southwestern Payroll for payment to the appropriate taxing jurisdictions, and disgorge any interest or profits it has earned by way of its wrongful retention of the tax funds.

## SECOND CAUSE OF ACTION: CONVERSION – PIONEER

44.     Southwestern Payroll incorporates the allegations contained in paragraphs 1 through 43 above as if fully recited herein.

45.     Pioneer, through its deliberate and intentional freezing of the account which holds the Client Tax Trust Funds and seizing them for itself as a claimed set off against the Loan, has wrongfully converted $9,809,967.08 of Southwestern Payroll's Client Tax Trust Funds, plus those additional amounts which will be identified during the course of Southwestern Payroll's audit referenced above, and continues to exercise unauthorized and wrongful possession and control over the Client Tax Trust Funds to the exclusion of Southwestern Payroll who, by virtue of its contractual relationship with its employer-clients, has the right to possess same and ensure their timely remittance to the appropriate taxing authorities.

46.     Pioneer knew and knows that the Client Tax Trust Funds are not the property of Mann or the Mann Defendants, or of Pioneer, and that the funds could not be pledged as collateral or used to offset any losses by Pioneer under the Loan, or otherwise.

47.     Pioneer has failed and refused to return or properly remit the Client Tax Trust Funds at issue herein, causing Southwestern Payroll to suffer damages, including, but not limited to, return of the Client Tax Trust Funds Pioneer is holding, penalties and interest which have accrued and will continue to accrue until the Client Tax Trust Funds are paid, and reputational harm and lost profits arising out of loss of Southwestern Payroll customers. Southwestern Payroll seeks all damages allowable by law against Pioneer for its wrongful and unauthorized possession and control over the Client Tax Trust Funds, including $9,809,967.08, penalties and interest assessed and to be assessed from the taxing authorities, lost profits, interest, costs, attorney fees, and that Pioneer be required to disgorge any interest or profits it has earned by way of its wrongful retention of the Client Tax Trust Funds.

### THIRD CAUSE OF ACTION: ACTUAL AND CONSTRUCTIVE FRAUD – PIONEER

48.     Southwestern Payroll incorporates the allegations contained in paragraphs 1 through 47 above as if fully recited herein.

49.     Pioneer had a confidential and fiduciary relationship with Southwestern Payroll by virtue of its receipt and holding of Southwestern Payroll's Client Tax Trust Funds.

50.     Without notifying Southwestern Payroll, effective August 30, 2019, Pioneer froze *outgoing* ACH transactions on the Client Tax Trust Funds account.  However, Pioneer continued to allow incoming transactions into the account through September 4, 2019. Pioneer did this purposefully to allow Client Tax Trust Funds to amass in the account, so that it could then claim any deposits for itself.

51.     Pioneer had a duty to immediately notify Southwestern Payroll of the freeze, but as a result of its failure to so notify Southwestern Payroll, Pioneer, from August 30, 2019 through September 4, 2019, continued to receive incoming ACH transactions of Southwestern Payroll's Client Tax Trust Funds, knowing that it did not intend to permit those sums to be paid to the appropriate taxing authorities, but retained those funds for itself in hopes that it could offset some or all of its losses against the Loan.

52.     Had Southwestern Payroll been promptly notified of the freeze to outgoing transactions, it would not have authorized the additional ACH transfers to the Client Tax Trust Funds Account.

53.     Pioneer knew that it was the intent of Southwestern Payroll that the Client Tax Trust Funds account be established for the purpose of collecting and holding the Client Tax Trust Funds, and by accepting inbound ACH transactions of Client Tax Trust Funds, materially misrepresented that the account would be used for this sole purpose. This material misrepresentation was made with the intent to induce Southwestern Payroll to continue to place Client Tax Trust Funds in this account, upon which Southwestern Payroll justifiably relied to its detriment.

54.     Further, in its partial freezing of the account, where Pioneer still permitted incoming transactions to be credited to the Client Tax Trust Funds Account (while keeping Southwestern Payroll in the dark about its freeze on outgoing transactions), Pioneer represented to Southwestern Payroll that everything was business as usual, but was instead building up its coffers with the intent of defrauding Southwestern Payroll by depriving it of the ability to pay out the Client Tax Trust Funds. Operating reasonably as it had done for months under the business-as-usual procedure, Southwestern Payroll authorized the deposit of the Client Tax Trust Funds into the 2440 account to its detriment. Put another way, Pioneer accepted all deposits into the account

knowing that Southwestern Payroll would rely on that acceptance as an indication that the account was not frozen, and would continue to make deposits to the account. Pioneer's conduct in partially freezing the account in this manner was unprecedented and unforeseeable by Southwestern Payroll, and Southwestern Payroll was reasonably justified in continuing to make deposits to the 2440 account, to its detriment.

55.     Southwestern Payroll seeks all damages allowable by law against Pioneer for its fraudulent and wrongful collection and retention of the Client Tax Trust Funds, including $9,809,967.08, penalties and interest assessed and to be assessed from the taxing authorities, loss of profits, damages for reputational harm, interest, costs, attorneys' fees, and that Pioneer be required to disgorge any interest it has earned by way of its fraudulent acquisition and retention of the Client Tax Trust Funds.

**FOURTH CAUSE OF ACTION: GROSS NEGLIGENCE – PIONEER**

56.     Southwestern Payroll incorporates the allegations contained in paragraphs 1 through 55 above as if fully recited herein.

57.     Pioneer owed a duty to Southwestern Payroll to keep and maintain the Client Tax Trust Funds as special trust funds pursuant to 26 U.S.C. § 7501, and other authorities.

58.     Pioneer has grossly failed to adequately monitor and supervise the Client Tax Trust Funds, and this gross negligence and/or recklessness has caused damages to Southwestern Payroll.

59.     According to Pioneer, Mann and the Mann Defendants pledged the 2440 account as collateral for the Loan, even though all Defendants knew that this account was a tax settlement account and could not be pledged as collateral for the Loan.

60.     In issuing the Loan, Pioneer had a duty to engage in credit underwriting and due diligence, and to ensure that the Mann Defendants had sufficient liquidity and assets with respect

to the Loan, and to ensure that any accounts that were pledged as collateral for the Loan did not include employer payroll or tax funds.

61. Pioneer seized the Client Tax Trust Funds, purportedly as collateral for the Loan, and has refused to release the Client Tax Trust Funds, knowing that such funds were not the property of Mann or the Mann Defendants.

62. Pioneer in these respects has breached their duties to Southwestern Payroll, causing it damages.

63. Southwestern Payroll seeks all damages allowable by law against Pioneer, including $9,809,967.08, penalties and interest assessed and to be assessed from the taxing authorities, damages for reputational harm, loss of profits, interest, costs, attorneys' fees, and that Pioneer be required to disgorge any interest it has earned by way of its wrongful acquisition and retention of the Client Tax Trust Funds.

## FIFTH CAUSE OF ACTION: UNJUST ENRICHMENT AND CONSTRUCTIVE TRUST – PIONEER

64. Southwestern Payroll incorporates the allegations contained in paragraphs 1 through 63 above as if fully recited herein.

65. Pioneer, acting in confidential capacities with Southwestern Payroll and others, promised to maintain an account for the benefit of Southwestern Payroll's Client Tax Trust Funds. Southwestern Payroll transferred its Client Tax Trust Funds in reliance upon that promise.

66. By improperly refusing to release the Client Tax Trust Funds, Pioneer has been unjustly enriched.

67. Pioneer should be ordered to release the Client Tax Trust Funds for payment to the appropriate taxing jurisdictions, and to disgorge any interest or profits it has earned by way of its wrongful retention of the Client Tax Trust Funds.

68.     Additionally, Southwestern Payroll is entitled to a constructive trust with respect to the Client Tax Trust Funds, preventing Pioneer from distributing any of the Client Tax Trust Funds other than to Southwestern Payroll directly or to the appropriate state, federal or local taxing authorities as directed by Southwestern Payroll.

## SIXTH CAUSE OF ACTION: ACCOUNTING – PIONEER

69.     Southwestern Payroll incorporates the allegations contained in paragraphs 1 through 68 above as if fully recited herein.

70.     As participants in the same series of transactions related to the payment and withholding of taxes on behalf of taxpaying businesses, Pioneer and Southwestern Payroll maintained a confidential relationship.

71.     As part of this relationship, Pioneer owed a duty to Southwestern Payroll to treat the Client Tax Trust Funds account as a settlement account, and to allow tax funds deposited into the account to be withdrawn for payment to tax authorities.

72.     Southwestern Payroll seeks an accounting from Pioneer detailing all activity on all accounts that are in any way associated with the Client Tax Trust Funds. The exact nature and extent of the damages suffered by Southwestern Payroll is not fully known to Southwestern Payroll at this time and cannot be determined without the requested accounting.

## SEVENTH CAUSE OF ACTION: CONVERSION – MANN AND MANN DEFENDANTS

73.     Southwestern Payroll incorporates the allegations contained in paragraphs 1 through 72 above as if fully recited herein.

74.     Mann and the Mann Defendants, through their deliberate and intentional manipulation of the Client Tax Trust Funds account and/or transferring of monies out of that account to other Mann-related accounts, have and continue to exercise unauthorized and wrongful

possession and control over the Client Tax Trust Funds to the exclusion of Southwestern Payroll who, by virtue of its contractual relationship with its employer-clients, has the right to possess same and ensure their timely remittance to the appropriate taxing authorities.

75.     Mann and the Mann Defendants knew and know that the Client Tax Trust Funds at issue in this lawsuit are not the property of Mann or the Mann Defendants, and that funds were not and cannot be used to offset any debt obligations incurred by Mann or the Mann Defendants, nor used for any other purpose. Notwithstanding, Mann and the Mann Defendants have not challenged Pioneer's ability to seize Southwestern Payroll's Client Tax Trust Funds, and are working with Pioneer in order that the tax funds be used to reduce the amount owed by Mann and the Mann Defendants to Pioneer.

76.     Mann and the Mann Defendants have caused Southwestern Payroll to suffer damages, including but not limited to those penalties and interest which have accrued and will continue to accrue until the Client Tax Trust Funds are paid.

77.     Southwestern Payroll seeks all damages allowable by law against Mann and the Mann Defendants, including $9,809,967.08, penalties and interest assessed and to be assessed from the taxing authorities, damages for reputational harm, loss of profits, interest, costs, and attorneys' fees, and that Mann and the Mann Defendants be required to disgorge any interest or profits they might have earned by way of their wrongful retention of the Client Tax Trust Funds.

## EIGHTH CAUSE OF ACTION: ACTUAL AND CONSTRUCTIVE FRAUD – MANN AND MANN DEFENDANTS

78.     Southwestern Payroll incorporates the allegations contained in paragraphs 1 through 77 above as if fully recited herein.

79.     Mann and the Mann Defendants had a confidential and fiduciary relationship with Southwestern Payroll by virtue of their 51% ownership interest in Southwestern Payroll and

through their equal responsibilities as Southwestern Payroll to hold the funds at issues as tax trust funds.

80.     Mann and the Mann Defendants worked with Southwestern Payroll to establish the Client Tax Trust Funds account with Pioneer. Mann and the Mann Defendants knew that it was the intent of Southwestern Payroll that this account be established for the sole purpose of collecting and holding the Client Tax Trust Funds, and materially misrepresented to Southwestern Payroll that the account would be used for this sole purpose, despite later manipulating the Client Tax Trust Funds account and/or otherwise transferring those funds to other Mann Defendant accounts in order to obtain other unrelated and fraudulent loans with Pioneer. This material misrepresentation was made with the intent to induce Southwestern Payroll to place Client Tax Trust Funds in this account, upon which Southwestern Payroll justifiably relied to its ultimate detriment.

81.     Further, Mann and the Mann Defendants enabled and ratified Pioneer's conduct.

82.     As a result thereof, Southwestern Payroll seeks all damages allowable by law against Mann and the Mann Defendants, including $9,809,967.08, penalties and interest assessed and to be assessed from the taxing authorities, damages for reputational harm and loss of profits, interest, costs, attorneys' fees, and that the Mann Defendants be required to disgorge any interest they have earned by way of their fraudulent acquisition, retention, and/or manipulation of the Client Tax Trust Funds and/or the Client Tax Trust Funds account.

## NINTH CAUSE OF ACTION: GROSS NEGLIGENCE – MANN AND MANN DEFENDANTS

83.     Southwestern Payroll incorporates the allegations contained in paragraphs 1 through 82 above as if fully recited herein.

84.     Mann and the Mann Defendants owed a duty to Southwestern Payroll to keep and maintain the Client Tax Trust Funds as special trust funds pursuant to 26 U.S.C. § 7501, and other authorities.

85.      Mann and the Mann Defendants have grossly failed to adequately operate, manage, and control the Client Tax Trust Funds, this gross negligence and/or recklessness has caused damages to Southwestern Payroll.

86.     Mann and the Mann Defendants purportedly pledged the 2440 account as collateral for the Loan, even though they knew that this account was a tax settlement account and could not be pledged as collateral for the Loan.

87.     Mann and the Mann Defendants had a duty to challenge Pioneer's conversion of the Client Tax Trust Funds, but instead have acquiesced in Pioneer's conduct.

88.     Mann and the Mann Defendants have breached their duties to Southwestern Payroll, causing it damages.

89.     Southwestern Payroll seeks all damages allowable by law against Mann and the Mann Defendants, including $9,809,967.08, penalties and interest assessed and to be assessed from the taxing authorities, reputational harm, interest, costs, attorneys' fees, and that Mann and the Mann Defendants be required to disgorge any interest they have earned by way of their wrongful acquisition and retention of the Client Tax Trust Funds.

**TENTH CAUSE OF ACTION: UNJUST ENRICHMENT AND CONSTRUCTIVE TRUST – MANN AND MANN DEFENDANTS**

90.     Southwestern Payroll incorporates the allegations contained in paragraphs 1 through 89 above as if fully recited herein.

91.     Mann and the Mann Defendants, acting in confidential capacities with Southwestern Payroll, promised to maintain an account for the benefit of Southwestern Payroll's

Client Tax Trust Funds. Southwestern Payroll transferred its Client Tax Trust Funds in reliance upon that promise.

92.     By purportedly allowing the Client Tax Trust Funds to serve as "collateral" for the Loan and to offset their obligations to Pioneer, Mann and the Mann Defendants have been unjustly enriched.

93.     Southwestern Payroll is entitled to a constructive trust preventing Mann and the Mann Defendants from distributing any of the Client Tax Trust Funds they might still retain control over, other than to Southwestern Payroll directly or to the appropriate state, federal or local taxing authorities as directed by Southwestern Payroll.

## ELEVENTH CAUSE OF ACTION: ACCOUNTING –<br>MANN AND MANN DEFENDANTS

94.     Southwestern Payroll incorporates the allegations contained in paragraphs 1 through 93 above as if fully recited herein.

95.     As participants in the same series of transactions related to the payment and withholding of taxes on behalf of taxpaying businesses, Mann, the Mann Defendants, and Southwestern Payroll maintained a confidential relationship.

96.     As part of this relationship, Mann and the Mann Defendants owed a duty to Southwestern Payroll to treat the Client Tax Trust Funds account as a settlement account, and to allow tax funds deposited into the account to be withdrawn for payment to tax authorities.

97.     Southwestern Payroll seeks an accounting from Mann and the Mann Defendants detailing all activity on all accounts that are in any way associated with the Client Tax Trust Funds or Southwestern Payroll. The exact nature and extent of the damages suffered by Southwestern Payroll, and what portion of the Client Tax Trust Funds might still be held and controlled by Mann

and/or the Mann Defendants, is not fully known to Southwestern Payroll at this time and cannot be determined without the requested accounting.

## PUNITIVE DAMAGES – ALL DEFENDANTS

98.     Southwestern Payroll incorporates the allegations contained in paragraphs 1 through 97 above as if fully recited herein.

99.     The Defendants' acts and failures to act with respect to the Client Tax Trust Funds as alleged herein have been sufficiently wanton, reckless, and malicious as to justify an award of punitive damages in favor of Southwestern Payroll, and against the Defendants, to deter them and other similarity situated parties from so acting in the future.

## JURY TRIAL DEMANDED

100.    Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Southwestern Payroll hereby requests a jury trial on all issues so triable.

**WHEREFORE**, premises considered, Southwestern Payroll Service, Inc. seeks a declaration with respect to the rights of the parties vis-à-vis the Client Tax Trust Funds, and specifically a declaration that Pioneer wrongfully seized the Client Tax Trust Funds and that it must release such funds to Southwestern Payroll for payment to the appropriate taxing jurisdictions, and disgorge any interest or profits it has earned by way of its wrongful retention of the Client Tax Trust Funds, money damages in the form of a judgment in its favor and against the Defendants as set forth herein, including a money judgment in the amount of $9,809,967.08 plus any additional sums of Client Tax Trust Funds, to be determined, which were remitted on behalf of Southwestern Payroll's clients but have not been paid to the proper taxing authorities, for any and all past due penalties and interest which may be imposed for failure to timely remit the Client Tax Trust Funds to their respective taxing authorities, for loss of profits to Southwestern Payroll

as a result of loss of customers, damages for reputational harm, interest, costs, attorney fees, punitive damages, and other damages that have not heretofore been identified, as well as that the Defendants be required to disgorge any interest or profits gained by them through their wrongful acquisition and/or retention of the Client Tax Trust Funds, and seeks the imposition of a constructive trust and an accounting as requested, along with any other and further relief deemed just and equitable by the Court and Jury.

Respectfully submitted,

By:    /s/ Andrew C. Jayne
        Andrew C. Jayne, OBA #19493
        BAUM GLASS JAYNE & CARWILE
        401 S. Boston Ave., Suite 2300
        Tulsa, Oklahoma 74103
        Telephone:  918/938.7944
        Facsimile:  918/938.7966
        Email:  ajayne@bgjclaw.com

-and-

        Michael A. Kornstein, Esq.
        Bar Roll No. 103178
        COOPER ERVING & SAVAGE LLP
        LOCAL COUNSEL FOR PLAINITFF
        39 North Pearl Street, 4th Floor
        Albany, NY 12207
        Telephone: (518) 449-3900
        mkornstein@coopererving.com

ATTORNEYS FOR PLAINTIFF
SOUTHWESTERN PAYROLL
SERVICE, INC.

## CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of December, 2019, I electronically transmitted the previous document to the Clerk of the Court using the ECF System for filing and transmittal of Notice of Electronic Filing was then made to the following ECF registrants:

Michael A. Kornstein – mkornstein@coopererving.com
*Local Counsel for Defendant Southwestern Payroll Service, Inc.*

Robert J. Alessi – Robert.alessi@us.dlapiper.com
Jeffrey D. Kuhn – Jeffrey.kuhn@us.dlapiper.com
*Counsel for Defendant Pioneer Bancorp, Inc., Pioneer Bank*

Cynthia E. Neidl – neidlc@gtlaw.com
*Counsel for non-party National Payment Corporation*

*s/ Andrew C. Jayne*

## VERIFICATION

STATE OF OKLAHOMA    )
                     ) ss.
COUNTY OF TULSA      )

C. David Rhoades, of lawful age, being first duly sworn, states that he, as the Court appointed Receiver over Southwestern Payroll Service, Inc., is authorized to make this verification: that he has read the above and foregoing Verified Amended Complaint, and the statements contained therein are true and correct to the best of his knowledge, information, and belief.

_____
C. David Rhoades, Receiver
Southwestern Payroll Service, Inc.

Subscribed and sworn to before me this 10th day of December, 2019.

_____
Notary Public

My Commission Expires: _7·28·21_



24