**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

**SOUTHWESTERN PAYROLL SERVICE, INC.,**

                 **Plaintiff,**

          v.                                     1:19-CV-1349
                                                    (FJS/CFH)

**PIONEER BANCORP, INC.; PIONEER BANK;**
**MICHAEL T. MANN; VALUEWISE CORPORATION,**
*d/b/a Apogee, d/b/a Optix Consulting, d/b/a Primary Search Group*; **MYPAYROLLHR.COM, LLC; CLOUD PAYROLL, LLC; ROSS PERSONNEL CONSULTANTS, INC.; ALWAYS LIVE HOLDINGS, LLC; KANINGO, LLC; HIRE FLUX, LLC; HIRE FLUX HOLDINGS, LLC; VIVERANT LLC; and HEUTMAKER BUSINESS ADVISORS, LLC,**

                 **Defendants.**

---

| **APPEARANCES** | **OF COUNSEL** |
|---|---|
| **COOPER, ERVING & SAVAGE LLP**<br>39 North Pearl Street<br>4th Floor<br>Albany, New York 12207<br>Attorneys for Plaintiff<br>Southwestern Payroll Service, Inc. | **MICHAEL A. KORNSTEIN, ESQ.** |
| **BAUM GLASS JAYNE & CARWILE PLLC**<br>401 S. Boston Avenue<br>Suite 2300<br>Tulsa, Oklahoma 74103<br>Attorneys for Plaintiff<br>Southwestern Payroll Service, Inc. | **ANDREW JAYNE, ESQ.** |
| **DLA PIPER LLP**<br>677 Broadway – Suite 1205<br>Albany, New York 12207<br>Attorneys for Defendants<br>Pioneer Bancorp, Inc. and<br>Pioneer Bank | **JEFFREY D. KUHN, ESQ.**<br>**ROBERT J. ALESSI, ESQ.** |

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Pending before the Court is Defendants Pioneer Bancorp, Inc.'s and Pioneer Bank's motion to dismiss the third cause of action in Plaintiff's complaint for failure to state a claim pursuant to Rule 12(b)(6) and failure to plead fraud with particularity pursuant to Rule 9(b) of the Federal Rules of Civil Procedure. *See* Dkt. No. 41.

### II. BACKGROUND

Southwestern Payroll Service, Inc. ("Plaintiff") is a payroll compliance and support company that contracts with employer-clients to provide payroll processing services. *See* Dkt. No. 25, Amended Compl., at ¶ 20.[1] Those services include providing payroll checks to the employer-client's employees and collecting, processing, and remitting an employer-client's withheld payroll taxes to the appropriate taxing authorities in an accurate and timely fashion. *See id.* Generally, Plaintiff processes payroll taxes by withdrawing a payroll client's tax trust funds from the client's bank on a particular payroll date and placing the funds in escrow in a bank account until they are due to be paid to the various taxing authorities. *See id.* at ¶ 21.

Michael Mann ("Defendant Mann") owns or controls several payroll and related companies, including Defendants Valuewise, MyPayrollHR, Cloud Payroll, Ross, Always Live, Kaningo, Hire Flux, Hire Flux Holdings, Viverant, and Heutmaker. *See id.* at ¶ 15. On or about April 21, 2017, Defendant Mann, through Defendant Cloud Payroll, LLC—which is

---

[1]Since this is a motion to dismiss, the Court relies upon the factual allegations in Plaintiff's Amended Complaint and accepts them as true for purposes of this motion.

wholly owned by Defendant Valuewise, which is wholly owned by Defendant Mann—purchased 51% of Plaintiff's outstanding stock. *See id.* at ¶ 24. Plaintiff alleges that Defendants Pioneer Bank and Pioneer Bancorp, Inc. (hereinafter collectively referred to as "Defendant Pioneer") provided the financing for Defendant Mann's majority interest in Plaintiff. *See id.* at ¶ 25.

As part of the purchase, either Defendant Mann or Defendant Pioneer insisted that Plaintiff use Defendant Pioneer to house its clients' federal, state, and local tax trust funds ("Client Tax Trust Funds") as an interim step during payroll tax processing. *See id.* Presumably, the purpose of this arrangement was so Defendant Pioneer would receive the interest that the Client Tax Trust Funds generated from the time they were collected from the employers and deposited into the account until they were withdrawn from the account to be paid to the appropriate taxing authorities. *See id.* at ¶ 26.

The payroll tax process is complicated, and the funds are transferred several times. Initially, after the funds were withdrawn from the clients' bank accounts, they would be placed in an account at Prosperity Bank in Tulsa, Oklahoma. *See id.* at ¶ 27. From there, a third-party tax processing service provider, National Payment Corporation ("NatPay"), would transfer the funds to an account at First Premier Bank in Sioux Falls, South Dakota. *See id.* Next, NatPay would transfer the funds to an account at Defendant Pioneer, ending in 2440, where the funds would remain until they were due to a particular taxing authority. *See id.* When the funds were due, NatPay, based on instructions from Defendant Cloud Payroll, LLC, would transfer the Client Tax Trust Funds from Defendant Pioneer back to First Premier Bank, and then to the appropriate taxing authorities. *See id.*

On or about September 4, 2019, Plaintiff learned that Defendant Mann had resigned from his officer positions within Defendants Valuewise Corporation and Cloud Payroll, LLC. *See id.* at ¶ 28.  Shortly thereafter, Plaintiff learned that Defendant Pioneer had already frozen all accounts it held that were associated with Defendant Mann, including the 2440 account retaining the Client Tax Trust Funds.  *See id.*  Plaintiff learned that Defendant Mann allegedly committed fraud by taking out various fraudulent loans with Defendant Pioneer and other banks and by improperly manipulating various payroll accounts held with Defendant Pioneer.  *See id.*

According to Plaintiff, Defendant Pioneer froze *outgoing* payroll tax processing transactions from the 2440 account effective August 30, 2019, but it continued to receive and deposit *incoming* Client Tax Trust Funds through at least September 4, 2019.  *See id.* at ¶ 30.  In that six-day period, Defendant Pioneer received $6,740,339.63 in Client Tax Trust Funds from Plaintiff.  *See id.*  An additional $3,069,627.45 in Client Tax Trust Funds were also in the account, having been deposited prior to the account's freeze.  *See id.* at ¶ 31.  Plaintiff contends that Defendant Pioneer has refused to return the $9,809,967.08 in Client Tax Trust Funds, and the funds have not been remitted to the appropriate taxing authorities.  *See id.* at ¶ 32.

On October 31, 2019, Plaintiff filed its complaint in the instant action.  *See generally* Dkt. No. 1, Compl.  Subsequently, Plaintiff filed an amended complaint on December 10, 2019, which included six causes of action against Defendant Pioneer and six causes of action against Defendant Mann and his companies.  *See generally* Dkt. No. 25 at ¶¶ 37-97.  Defendant Pioneer filed the pending motion on January 10, 2020, seeking only to dismiss Plaintiff's third cause of action against it for "actual and constructive fraud."  *See* Dkt. No. 41.

### III. DISCUSSION

#### A. Legal standard governing motions to dismiss

A motion to dismiss pursuant to Rule 12(b)(6) "challenges only the 'legal feasibility' of a complaint." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 558 (2d Cir. 2016) (quoting *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting [*Bell Atl. Corp. v. Twombly*, 550 U.S. 544,] 570, 127 S. Ct. 1955). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations … a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.] …" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and quotations omitted). "Determining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted). When making its decision, this court must "accept all well-pleaded facts as true and consider those facts in the light most favorable to the plaintiff." *Chapman v. N.Y. State Div. for Youth*, 546 F.3d 230, 235 (2d Cir. 2008) (citing *Patane v. Clark*, 508 F.3d 106, 111 (2d Cir. 2007) (per curiam)).

### B. Plaintiff's actual and constructive fraud claim against Defendant Pioneer

"Under New York law, a plaintiff alleging fraud must show five elements by clear and convincing evidence: '(1) a material misrepresentation or omission of fact (2) made by defendant with knowledge of its falsity (3) and intent to defraud; (4) reasonable reliance on the part of plaintiff; and (5) resulting damage to the plaintiff.'" *Herzfeld v. JPMorgan Chase Bank, N.A.*, 354 F. App'x 488, 489 (2d Cir. 2009) (summary order) (quoting *Crigger v. Fahnestock & Co.*, 443 F.3d 230, 234 (2d Cir. 2006)); (citing *Gaidon v. Guardian Life Ins. Co.*, 94 N.Y.2d 330, 348-50, 704 N.Y.S.2d 177, 725 N.E.2d 598 (1999)). "As the New York Court of Appeals has cautioned, '[t]he elements of fraud are narrowly defined,' and '[n]ot every misrepresentation or omission rises to the level of fraud.'" *Id.* (quoting *Gaidon*, 94 N.Y.2d at 349-50, 704 N.Y.S.2d 177, 725 N.E.2d 598); (citing *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co.*, 375 F.3d 168, 187 (2d Cir. 2004)).

Importantly, an omission or "concealment of facts supports a cause of action for fraud only if the non-disclosing party has a duty to disclose." *Remington Rand Corp. v. Amsterdam-Rotterdam Bank, N.V.*, 68 F.3d 1478, 1483 (2d Cir. 1995) (citations and footnote omitted). "Such a duty ordinarily arises where the parties are in a fiduciary or other relationship signifying a heightened level of trust." *Id.* (citations omitted). "In the absence of a fiduciary relationship, a duty to disclose may arise if: (1) one party makes a partial or ambiguous statement that requires additional disclosure to avoid misleading the other party, … ; or (2) 'one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge.' …" *Id.* at 1484 (internal citation and quotation omitted). "In either case, a disclosure duty ripens only when it becomes apparent to the non-

disclosing party that another party is operating under a mistaken perception of a material fact." *Id.* (citation omitted).

Defendant Pioneer asserts that the Court should dismiss Plaintiff's actual and constructive fraud claim because it did not have a duty to disclose that outgoing payments from Plaintiff's account were frozen on August 30, 2019. *See generally* Dkt. No. 41-1, Def. Pioneer's Memorandum in Support, at 15-21. To the contrary, Plaintiff contends that Defendant Pioneer had a duty to disclose because the parties had a fiduciary relationship and because the "special facts doctrine" applies. *See generally*, Pl's Memorandum in Opposition, Dkt. No. 46.

### 1. *Fiduciary relationship*

"'[T]he relationship between a bank and its depositor is one of debtor and creditor[.]'" *Greenberg, Trager & Herbst, LLP v. HSBC Bank USA*, 17 N.Y.3d 565, 578 (2011) (quoting *Brigham v. McCabe*, 20 N.Y.2d 525, 530 (1967)); (citing *Solicitor for Affairs of His Majesty's Treasury v. Bankers Trust Co.*, 304 N.Y. 282, 291 (1952)). "It is well established that absent specific contractual language or circumstances to the contrary, the ordinary relationship between a creditor and debtor does not rise to the level of imposing a fiduciary duty upon the creditor." *Gorham-Dimaggio v. Countrywide Home Loans, Inc.*, 592 F. Supp. 2d 283, 294 (N.D.N.Y. 2008) (citations omitted). Thus, "the bank-depositor agreement standing alone creates no fiduciary relationship between the parties." *Tevdorachvili v. Chase Manhattan Bank*, 103 F. Supp. 2d 632, 640 (E.D.N.Y. 2000) (citing *Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank*, 731 F.2d 112, 122 (2d Cir. 1984) (holding that under New York law the "usual relationship" of bank and depositor is based on contractual principles, and involves no fiduciary duty from bank to depositor)).

Here, Plaintiff merely alleged that Defendant "Pioneer had a confidential and fiduciary relationship with [Plaintiff] by virtue of its receipt and holding of [Plaintiff]'s Client Tax Trust Funds." *See* Dkt. No. 25 at ¶ 49. Plaintiff did not allege any specific contractual language or circumstances that would indicate the parties intended to impose a fiduciary duty upon Defendant Pioneer. Nor did it cite to any cases showing that a bank's holding tax trust funds creates a fiduciary relationship with the depositor. As such, the Court finds that the default rule applies. The relationship between a bank and a depositor does not create a fiduciary relationship that would impose on Defendant Pioneer a duty to disclose to Plaintiff that it had frozen outgoing payments from the Client Tax Trust Funds account.

### 2. *Special facts doctrine*

Plaintiff alleges in its response that Defendant Pioneer had a duty to disclose under the special facts doctrine. *See* Dkt. No. 46 at 17-22. As stated above, the special facts doctrine applies when "one party has superior knowledge that is not readily available/accessible to the other party and that party knows the other party is acting on the basis of mistaken knowledge." *Gander Mt. Co. v. Islip U-Slip LLC*, 923 F. Supp. 2d 351, 366 (N.D.N.Y. 2013) (citations omitted). "To establish 'superior knowledge', [the] plaintiff must prove that the material fact was information peculiarly within the knowledge of the defendant, and that the information was not such that could have been discovered by the plaintiff through the 'exercise of ordinary intelligence[.]'" *Id.* (quoting *Jana L.* [*v. West 129th Street Realty Corp.*], 22 A.D.3d [274,] 277, 802 N.Y.S.2d 132 [(1st Dep't 2005)] (citations omitted)). "Where there is no fiduciary relationship that would impose a duty to disclose, a party's mere silence without some act which deceived the other party cannot constitute a concealment that is actionable as fraud." *Id.* at 366-67 (citation omitted).

Defendant Pioneer correctly points out that Plaintiff did not allege in its Amended Complaint that the omitted information could not have been discovered by the exercise of ordinary intelligence.  *See* Dkt. No. 48, Def. Pioneer's Reply, at 12.  Similarly, Plaintiff did not allege that it made any inquiries to determine whether the Client Tax Trust Funds account was operating normally or if outgoing payments had been frozen.  Furthermore, Plaintiff alleged that, on or around September 4, 2019, it learned that Defendant Pioneer had frozen all accounts associated with Defendant Mann.  *See* Dkt. No. 25 at ¶ 28.  Plaintiff did not indicate in its Amended Complaint how it learned this information.  However, in its Memorandum in Opposition, Plaintiff asserted that "[it] *learned on its own* that tax payments were not being made, and it stopped sending Client Tax Trust Funds to [Defendant] Pioneer."  *See* Dkt. No. 46 at 21 (emphasis added).

It's unclear how, exactly, Plaintiff learned on its own about the frozen account.  It could have received notice from the tax collecting authorities, from its clients, or it could have discovered this information on its own after Defendant Mann, Plaintiff's 51% shareholder, resigned from his officer positions within Defendants Valuewise Corporation and Cloud Payroll, LLC.  *See* Dkt. No. 25 at ¶ 28.  No matter how Plaintiff discovered that its outgoing payments through the Client Tax Trust Funds account were frozen, it was clearly able to discover it using ordinary intelligence.  Because Plaintiff has not satisfied this prong of the special facts doctrine, the Court finds that it does not apply to create a duty on the part of Defendant Pioneer to disclose information about the frozen account.[2]

---

[2] Since the Court finds that Plaintiff failed to allege that Defendant Pioneer had a duty to disclose based on a fiduciary relationship or under the special facts doctrine, the Court does not reach the merits of Defendant Pioneer's alternative argument that Plaintiff has not pled its third cause of action with sufficient particularity pursuant to Federal Rule of Civil Procedure 9(b).

## IV. CONCLUSION

After carefully considering the entire file in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants Pioneer Bancorp, Inc.'s and Pioneer Bank's motion to dismiss Plaintiff's third cause of action for actual and constructive fraud, *see* Dkt. No. 41, is **GRANTED**; and the Court further

**ORDERS** that this matter is referred to Magistrate Judge Hummel for all further pretrial matters.

**IT IS SO ORDERED.**

Dated: April 16, 2020
       Syracuse, New York

_____
Frederick J. Scullin, Jr.
Senior United States District Judge