**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

SOUTHWESTERN PAYROLL SERVICE, INC.

     *Plaintiff,*

 v.

PIONEER BANCORP INC.; PIONEER BANK; MICHAEL T. MANN; VALUEWISE CORPORATION d/b/a APOGEE d/b/a OPTIX CONSULTING, and d/b/a PRIMACY SEARCH GROUP; MYPAYROLLHR.COM, LLC; CLOUD PAYROLL LLC; ROSS PERSONNEL CONSULTANTS, INC., ALWAYS LIVE HOLDINGS, LLC; KANINGO, LLC; HIRE FLUX, LLC; HIRE FLUX HOLDINGS, LLC; VIVERANT LLC and HEUTMAKER BUSINESS ADVISORS, LLC,

     *Defendants.*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Case No. 1:19-cv-1349 (FJS/CFH)

**VERIFIED SECOND AMENDED COMPLAINT[1]**

  **COMES NOW** the Plaintiff, Southwestern Payroll Service, Inc., through its undersigned counsel of record, and pursuant to Fed. R. Civ. P. 15(a)(1)(B), for its Second Amended Complaint against the Defendants hereby submits the following:

       <u>**JURISDICTION AND VENUE**</u>

  1. Plaintiff Southwestern Payroll Service, Inc. ("Southwestern Payroll") is an Oklahoma Corporation with its principal place of business in Tulsa, Oklahoma.  Southwestern

---

[1] The instant Verified Second Amended Petition is the same version attached as an exhibit to its Motion for Leave To Amend, Doc. No. 53.4, with the exception of minor typographical corrections.  The Court's Order granting Plaintiff leave to amend, Doc. No. 71, permits Plaintiff only to assert fraud allegations based upon the special facts doctrine. Plaintiff has left references herein to any confidential or fiduciary duty-based fraud allegations solely for the purpose of preserving those issues for appeal.  Plaintiff acknowledges that the Court has already ruled on that issue and is not asserting that fraud claims based on any confidential or fiduciary relationship are active claims in the case.  Thus, a Motion to Dismiss on this is issue is not necessary in light of the Court's prior ruling.

Payroll is subject to Court supervision in Tulsa County, Oklahoma, and is controlled by C. David Rhoades, as Receiver.

2.    Defendant Pioneer Bancorp, Inc. is a foreign bank, incorporated in Maryland, with its principal place of business in Albany, New York. Pioneer Bancorp, Inc. is the holding company for Defendant Pioneer Bank.

3.    Defendant Pioneer Bank is a stock bank organized and existing under the laws of the State of New York having an address at 652 Albany Shaker Road, Albany, NY 12180. Based upon Plaintiff's information, and belief, both Pioneer Bancorp, Inc. and Pioneer Bank were involved in the actions and allegations which follow, and will collectively be referred to herein as "Pioneer."

4.    Defendant Michael Mann ("Mann") is a citizen of the State of New York.

5.    Defendant Valuewise Corporation d/b/a Apogee d/b/a Optix Consulting d/b/a Primacy Search Group ("Valuewise") is a Delaware corporation, with its principal place of business located at 855 Route 146, Suite 220 and/or 240, Clifton Park, New York 12065.

6.    Defendant MyPayrollHR, LLC ("MyPayrollHR") is a Delaware limited liability company with its principal place of business located in Clifton Park, New York. Upon Plaintiff's information, and belief, none of its manager/members are citizens of the State of Oklahoma.

7.    Defendant Cloud Payroll, LLC ("Cloud Payroll") is a Delaware limited liability company with its principal place of business located at 855 Route 146, Suite 220 and/or 240, Clifton Park, New York 12065. Upon information and belief, none of its manager/members are citizens of the State of Oklahoma.

8.     Defendant Ross Personnel Consultants, Inc. ("Ross") is a Connecticut corporation with its principal place of business located at 855 Route 146, Suite 220 and/or 240, Clifton Park, New York 12065.

9.     Defendant Always Live Holdings, LLC ("Always Live") is a Delaware limited liability company with its principal place of business located at 855 Route 146, Suite 220 and/or 240, Clifton Park, New York 12065. Upon Plaintiff's information, and belief, none of its manager/members are citizens of the State of Oklahoma.

10.    Defendant Kaningo, LLC ("Kaningo") is a Delaware limited liability company with its principal place of business located at 855 Route 146, Suite 220 and/or 240, Clifton Park, New York 12065. Upon Plaintiff's information, and belief, none of its manager/members are citizens of the State of Oklahoma.

11.    Defendant Hire Flux, LLC ("Hire Flux") is a Delaware limited liability company with its principal place of business located at 855 Route 146, Suite 220 and/or 240, Clifton Park, New York 12065. Upon Plaintiff's information, and belief, none of its manager/members are citizens of the State of Oklahoma.

12.    Defendant Hire Flux Holdings, LLC ("Hire Flux Holdings") is a Delaware limited liability company with its principal place of business located at 855 Route 146, Suite 220 and/or 240, Clifton Park, New York 12065. Upon Plaintiff's information, and belief, none of its manager/members are citizens of the State of Oklahoma.

13.    Defendant Viverant LLC ("Viverant") is a New York limited liability company with its principal place of business located at 855 Route 146, Suite 220 and/or 240, Clifton Park, New York 12065. Upon Plaintiff's information, and belief, none of its manager/members are citizens of the State of Oklahoma.

14.     Defendant Heutmaker Business Advisors, LLC ("Heutmaker") is a Delaware limited liability company with its principal place of business located at 855 Route 146, Suite 220 and/or 240, Clifton Park, New York 12065. Upon Plaintiff's information, and belief, none of its manager/members are citizens of the State of Oklahoma.

15.     Upon information and belief, Mann controls and/or owns Valuewise, MyPayrollHR, Cloud Payroll, Ross, Always Live, Kaningo, Hire Flux, Hire Flux Holdings, Viverant, and Heutmaker (collectively, the "Mann Defendants").

16.     Upon information and belief, Mann and the Mann Defendants are parties to a Loan and Security Agreement, dated August 12, 2019, together with Pioneer.

17.     The conduct giving rise to the causes of action herein occurred in substantial part in the Northern District of New York.

18.     This Court has jurisdiction of this action pursuant to 28 USC § 1332(a)(1) in that this is an action between citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

19.     Venue is proper in the Northern District of New York pursuant to 28 USC § 1391(b)(1&2).

## FACTUAL ALLEGATIONS

20.     Southwestern Payroll is a payroll compliance and support company which contracts with employer-clients to provide payroll processing services, including providing payroll checks to the employer-client's employees, and collecting, processing, and remitting an employer-client's withheld payroll taxes to the appropriate taxing authorities in an accurate and timely fashion.

21.     Payroll tax processing involves the automated clearing house ("ACH") transfer of a payroll company's clients' federal, state, and local taxes associated with a particular payroll into

a dedicated account at a bank.  After the payroll clients' tax trust funds are withdrawn from the clients' bank account on a particular payroll date, the funds are held in escrow in a bank account until they are due to be paid to various taxing authorities.  At that point, another ACH transaction occurs in order to transfer the money from the holding bank account to the appropriate taxing authority.

22.     Failure to timely transfer payroll taxes to their appropriate taxing authority results in penalties and interest assessments.  Federal withholding taxes and most state payroll taxes are due within three (3) days of the payroll being run, and federal and state unemployment taxes are due quarterly.

23.     Prior to 2017, non-party Jeffery Darin Alred ("Alred") was the sole owner of Southwestern Payroll.

24.     On or about April 21, 2017, Mann, through Cloud Payroll, which is wholly owned by Valuewise, purchased 51% of the outstanding stock of Southwestern Payroll from Alred. Mann was and/or is the sole owner of Valuewise Corporation. However, Mann was never involved in the day-to-day operations of Southwestern Payroll.  Even after the sale, all day to day operations of Southwestern Payroll were controlled by Alred and his staff of around thirty-five to forty employees, many of whom have been with the company for more than a decade.

25.     Upon information and belief, Pioneer provided the financing for Cloud Payroll's purchase of the majority interest in Southwestern Payroll.   As part of the purchase, Mann and/or Pioneer insisted that Southwestern Payroll use Pioneer to house Southwestern Payroll clients' federal, state, and local tax trust funds (hereinafter the "Client Tax Trust Funds") as an interim step during payroll tax processing.  Upon information and belief, Pioneer insisted on this provision

in the relationship with Southwestern Payroll as a condition of financing for Cloud Payroll's purchase of its controlling interest in Southwestern Payroll.

26.     Pioneer presumably insisted on this arrangement so it would receive the interest, or "float," the Client Tax Trust Funds generated from the time they were collected from the employers and deposited into the Pioneer account, until such time as they were withdrawn from the account to be paid to the appropriate taxing authorities.

27.     Because Pioneer insisted that the Client Tax Trust Funds be held in its bank account after Mann purchased Southwestern Payroll, the procedure employed was as follows: upon processing a payroll at Southwestern Payroll, the Client Tax Trust Funds were withdrawn from the clients' bank accounts and were initially placed in an account under the control of Southwestern Payroll at Prosperity Bank in Tulsa, Oklahoma.  This initial step was generated by an ACH transfer initiated by Prosperity Bank.  Thereafter, National Payment Corporation ("NatPay"), a third-party ACH service provider, would transfer the Client Tax Trust Funds to an account at First Premier Bank in Sioux Falls, South Dakota.  NatPay would then transfer the Client Tax Trust Funds to an account number at Pioneer ending in 2440  ("Account No. 2440"), where the funds would remain until they were due to a particular taxing authority.  The ACH transactions sent to Pioneer by NatPay from the First Premier Bank account carried a batch description identifying the type of tax payment they represented, either as "TAX PAY" or "TAX COL", and were thus known to Pioneer as Client Tax Trust Funds. When the funds were due to a particular taxing authority, NatPay, based on instructions from Cloud Payroll, would transfer the Client Tax Trust Funds from the Pioneer account back to First Premier Bank, and then to the appropriate taxing authority(ies).[2]

---

[2] This method of paying payroll taxes to a taxing authority is called the ACH Credit Method.  There is also a method called the EFT Debit Method, which involved the Cloud Payroll tax department logging into a taxing authority's software or website and initiating the payment.  The third method is simply generating a check to the taxing authority.

28.     Pioneer knew that the funds held in Account No. 2440 were Client Tax Trust Funds. Mann specifically discussed the fact that the funds were client tax trust funds with Dave Blessing, an account manager at Pioneer, and others at Pioneer.  John Reinke, who was the CEO of Cloud Payroll, witnessed the conversation with Dave Blessing.

29.     On or about **September 4, 2019**, after the Labor Day holiday weekend, Alred received a call from John Reinke advising that Mann had resigned from any officer position within Valuewise Corporation and CloudPayroll, LLC, effective immediately.  Mr. Reinke also explained that Mann could not be reached.  Alred had no notice, prior to **September 4, 2019**, that anything was out of the ordinary with respect to Mann, the Mann Defendants, the Client Tax Trust Funds, or the normal processes through which those funds were deposited, and later paid out of, Account No. 2440. Immediately after this call, Alred began investigating to determine if there were any internal problems with the processing of payrolls or the payment of payroll taxes to the appropriate taxing authorities.  As part of his investigation, Alred began checking with taxing authorities to see if individual tax payments had been made.  As soon as he learned through contacts with the taxing authorities that some tax payments were not being made because Pioneer had frozen the account, Southwestern Payroll immediately stopped sending additional Client Tax Trust Funds to Pioneer. Instead, it began using Prosperity Bank in Tulsa, Oklahoma, to hold the Client Tax Trust Funds before they were paid to the taxing authorities. All of this happened in a matter of hours. It was not possible, exercising ordinary intelligence, for Alred and Southwestern Payroll to have discovered what Pioneer was doing any sooner.

30.     Because of the suspicious activities surrounding Mann, Southwestern Payroll, on September 10, 2019, in the District Court of Tulsa County, State of Oklahoma, requested that C. David Rhoades be appointed as a receiver over Southwestern Payroll on an emergency basis.  On

September 27, 2019, the District Court of Tulsa County, State of Oklahoma, made C. David Rhoades' appointment as receiver over Southwestern Payroll permanent. *See* Doc. No. 1 at Ex. 1.

31.     Upon further investigation in the days following September 4, 2019, Southwestern Payroll learned that Pioneer, **beginning on August 30, 2019**, had actually frozen only *outgoing* ACH transactions from Account No. 2440 where the Client Tax Trust Funds were held.[3]   But Pioneer continued to receive and deposit incoming Client Tax Trust Funds through at least September 4, 2019.  From August 30, 2019 through September 4, 2019, Pioneer received ACH transactions of Southwestern Payroll's Client Tax Trust Funds totaling $6,740,339.63.  However, since Pioneer froze all outgoing transactions, these funds have not been paid to the appropriate taxing authorities.  At the time Pioneer initiated a freeze on *outgoing* transactions only, but continued to accept as incoming transactions an additional $6,740,339.63 into Account No. 2440, it knew Southwestern Payroll was acting on the basis of mistaken knowledge that the funds would be permitted to leave the account just as they had come in, and would be paid over to the appropriate taxing authorities.

32.     By selecting August 30, 2019 as the effective date to freeze *outgoing* ACH transactions, but continue to receive *incoming* ACH transactions, Pioneer was able to maximize the amount of Client Tax Trust Funds that could be impounded into Pioneer over a short period of time. August 30, 2019 was a Friday. That means Pioneer would receive Client Tax Trust Funds on monthly payrolls, semi-monthly payrolls, weekly payrolls, and bi-weekly payrolls that ran on that Friday. The only clients who would not be impacted by Pioneer's freeze of *outgoing* transactions

---

[3] Southwestern Payroll is not sure at this point whether Pioneer initiated the freeze on August 30, 2019, or if Pioneer initiated the freeze on September 3, 2018, and retroactively prevented payment of Client Tax Trust Funds to the appropriate taxing authority beginning August 30, 2019.  Thus, Southwestern Payroll will refer to the freeze as "effective" August 30, 2019.

on August 30, 2019, would be those clients having a bi-weekly payroll that ran on the following Friday.

33.     In addition to the $6,740,339.63 in Client Tax Trust Funds which were deposited with Pioneer between August 30, 2019 and September 4, 2019, there is also an additional $3,069,627.45 in Client Tax Trust Funds which were deposited with Pioneer prior to Account No. 2440 being frozen.  These were Client Tax Trust Funds collected during the third quarter and deposited with Pioneer up to August 29, 2019, but which had not yet been paid to the appropriate taxing authorities, because they had not yet become due.

34.     Pioneer's supposed justification for refusal to return or pay out the Client Tax Trust Funds is based on the following:

    a.  On **August 12, 2019**, Pioneer extended a $42 million revolving line of credit ("Loan") to the Mann Defendants, and Mann guaranteed the Loan. According to Pioneer, the Loan documents granted Pioneer a blanket lien against all of the borrowers' assets, including any of their bank accounts;

    b.  Of course, at the time of the Loan, Mann, the Mann Defendants, and Pioneer knew that the 2440 account was a tax trust funds account, and that neither Mann nor any of the Mann Defendants could pledge the same as collateral for any loan;

    c.  a mere **fifteen or so days** after the $42 million Loan was purportedly made, Pioneer froze all outgoing transactions out of accounts associated with Mann and/or the Mann Defendants, including Account No. 2440, and immediately swept the account and seized the funds as purported "collateral" for the Loan;

    d.  On September 11, 2019, more than a full week after partially freezing Account No. 2440, and after it had already seized the millions of dollars of Client Tax Trust

Funds, Pioneer sent Mann and/or the Mann Defendants a "default" notice, purporting to demand payment on the Loan;

e.   On or about October 18, 2019, Pioneer sued Mann and the Mann Defendants (excluding Viverant), in a case styled *Pioneer Bank v. Michael T. Mann et al*, Index No. 907160-19, in the Supreme Court of the State of New York, County of Albany, for breach of the Loan agreement(s) (the "State Court Case").   Nowhere in the filings did Pioneer disclose that it had already helped itself to the Client Tax Trust Funds as a claimed offset of the defaulted Loan;

f.   Thereafter, Mann executed a consent judgment in favor of Pioneer, conceding the full amount sought by Pioneer - $35,490,894.90, plus interest;

35.   Southwestern Payroll has made demand upon Pioneer to return and/or properly remit these Client Tax Trust Funds. However, Pioneer has failed and refused to return the $9,809,967.08[4] in Client Trust Tax Funds so they can be remitted to the appropriate taxing authorities.

36.   Prior to filing the original Verified Complaint in this case, Southwestern Payroll's Receiver tried to communicate with Frank Sarratori, Executive Vice President, Chief Administrative Officer, and General Counsel at Pioneer, to gather information about what Pioneer had done in this case.  Mr. Sarratori would not speak with the Receiver about the issues, and instead referred the Receiver to outside counsel for Pioneer, who would not provide documents or information.  Southwestern Payroll had to gather all of the above information and numbers for itself by looking at the transactions in the payroll tax software and then trying to discern which tax payments actually made it to the taxing authorities.

---

[4] Pioneer did the same thing to all of Mann's other payroll companies.  However, all of those payroll companies have gone out of business because of the outcry from the payroll clients after Pioneer claimed their tax payments.

37.     There are potentially Client Tax Trust Funds in addition to the specific amounts referenced above which Pioneer is improperly refusing to return to Southwestern Payroll. Southwestern Payroll is diligently performing an accounting to precisely identify these additional sums.  It is taking Southwestern Payroll substantially longer to perform this audit because Pioneer has refused to provide any information to assist Southwestern Payroll in its audit.

38.     The procedure for how a payroll company pays Client Tax Trust Funds to the taxing authorities is how virtually all payroll taxes are paid in this country. Virtually all payroll taxes sit is some bank in this country for a period of time after the taxes are withdrawn from an employers' bank account, but before they are paid to the taxing authority.  There are billions, if not trillions, of dollars each year that sit in a bank account for a period of time before they are paid to taxing authorities.  If these funds are not considered tax trust funds by virtue of the statute cited herein or by special circumstances, every one of us who pay our payroll taxes through payroll deductions are subject to having banks like Pioneer sweep or take tax collections to satisfy someone else's debt.

39.     As a result of Defendants' actions as set forth above, Southwestern Payroll's customers have received late payment notices from various taxing authorities, and have in turn made demand upon Southwestern Payroll to pay the unpaid taxes, along with the penalties and interest that accrued and will continue to accrue. Further, Southwestern Payroll has lost numerous customers as a result of Southwestern Payroll's inability to remit these now long past due Client Tax Trust Funds on their customers' behalves.  Southwestern Payroll has also been sued by several clients because the Client Tax Trust Funds were not paid to the appropriate taxing authority. Without question, Southwestern Payroll will continue to lose clients and there will be more

lawsuits against Southwestern Payroll to come because of the conduct of Pioneer. The Internal Revenue Service has filed suit against Pioneer as well.

40.     Despite federal and state investigations, civil suits, and public outrage, Pioneer is unapologetic for its part in Mann's collapse, the substantial harm caused to thousands of employers throughout the United States, and its wrongful seizure and retention of millions of dollars in Client Tax Trust Funds.

## **FIRST CAUSE OF ACTION: DECLARATORY JUDGMENT – ALL DEFENDANTS**

41.     Southwestern Payroll incorporates the allegations contained in paragraphs 1 through 40 above as if fully recited herein.

42.     Southwestern Payroll transferred at least $9,809,967.08 in Client Tax Trust Funds into Account No. 2440 at Pioneer that were never withdrawn for payment of taxes.

43.     Pioneer has seized these Client Tax Trust Funds, claiming that the funds were pledged as collateral for the Loan.

44.     Southwestern Payroll's employer-clients have demanded that Southwestern Payroll return the Client Tax Trust Funds to Southwestern Payroll, or otherwise remit the funds to the appropriate taxing authorities as directed by Southwestern Payroll.

45.     This case involves an actual, substantial controversy between the parties.

46.     Southwestern Payroll seeks a declaration with respect to the rights of the parties vis-à-vis the Client Tax Trust Funds, and specifically a declaration that Pioneer wrongfully seized the Client Tax Trust Funds and that it must release such funds to Southwestern Payroll for payment to the appropriate taxing jurisdictions, and disgorge any interest or profits it has earned by way of its wrongful retention of the tax funds.

## SECOND CAUSE OF ACTION: CONVERSION – PIONEER

47.     Southwestern Payroll incorporates the allegations contained in paragraphs 1 through 46 above as if fully recited herein.

48.     Pioneer, through its deliberate and intentional freezing of the account which holds the Client Tax Trust Funds and seizing them for itself as a claimed set off against the Loan, has wrongfully converted $9,809,967.08 of Southwestern Payroll's Client Tax Trust Funds, plus those additional amounts which will be identified during the course of Southwestern Payroll's audit referenced above, and continues to exercise unauthorized and wrongful possession and control over the Client Tax Trust Funds to the exclusion of Southwestern Payroll who, by virtue of its contractual relationship with its employer-clients, has the right to possess same and ensure their timely remittance to the appropriate taxing authorities.

49.     Pioneer knew and knows that the Client Tax Trust Funds are not the property of Mann or the Mann Defendants, or of Pioneer, and that the funds could not be pledged as collateral or used to offset any losses by Pioneer under the Loan, or otherwise.

50.     Pioneer has failed and refused to return or properly remit the Client Tax Trust Funds at issue herein, causing Southwestern Payroll to suffer damages, including, but not limited to, return of the Client Tax Trust Funds Pioneer is holding, penalties and interest which have accrued and will continue to accrue until the Client Tax Trust Funds are paid, and reputational harm and lost profits arising out of loss of Southwestern Payroll customers. Southwestern Payroll seeks all damages allowable by law against Pioneer for its wrongful and unauthorized possession and control over the Client Tax Trust Funds, including $9,809,967.08, penalties and interest assessed and to be assessed from the taxing authorities, lost profits, interest, costs, attorney fees, and that

Pioneer be required to disgorge any interest or profits it has earned by way of its wrongful retention of the Client Tax Trust Funds.

## THIRD CAUSE OF ACTION: ACTUAL AND CONSTRUCTIVE FRAUD – PIONEER

51.     Southwestern Payroll incorporates the allegations contained in paragraphs 1 through 50 above as if fully recited herein.

52.     Southwestern Payroll's fraud claim involves Client Tax Trust Funds which were deposited with Pioneer between August 30, 2019 and September 4, 2019.  These are the funds that came into Pioneer after it had already decided it was not going to allow the funds to be paid to the appropriate taxing authorities.  Instead of telling Southwestern Payroll or anyone else that there was an issue with Mann, Pioneer purposefully continued to accept Client Tax Trust Funds into Account No. 2440, but froze outgoing transactions to prevent the funds from being paid to the appropriate taxing authorities.

53.     This case is not simply a dispute about whether the Client Tax Trust Funds belong to Pioneer or the taxing authorities. Southwestern Payroll alleges that Pioneer purposefully stopped all outgoing ACH transactions from Account No. 2440, but allowed money to keep flowing into the account beginning August 30, 2019 and continuing until Southwestern Payroll discovered the partial freeze on September 4, 2019, in a purposeful and fraudulent attempt to obtain as much money as possible to satisfy the Loan, even though Pioneer knew the money in Account No. 2440 was not Mann or the Mann Defendants' money, but instead was money to be held in trust and remitted to the proper taxing authorities to which the funds were due.

54.     Pioneer had a duty to disclose to Southwestern Payroll its intention to freeze outgoing ACH transactions from Account No. 2440 based on Pioneer's superior knowledge of

Mann's activities and its fiduciary duty to allow Southwestern Payroll's Client Tax Trust Funds to be paid to taxing authorities.

55.     Pioneer's duties and relationships with respect to Account No. 2440 is established by statute, case law, and special circumstances.

56.     26 U.S.C. § 7501 provides:   "Whenever any person is required to collect or withhold any internal revenue tax from any other person and to pay over such tax to the United States, the amount of tax so collected or withheld shall be held to be a special fund in trust for the United States …."

57.     The United States Supreme Court has also found that payroll taxes, once collected, are to be held in trust.  In *Begier v. I.R.S*, 496 U.S. 53 (1990), the Court reviewed at what point a trust is created with respect to 26 U.S.C. § 7501. *Id.* The United States Supreme Court held that a trust for tax collections is created at the time wages are paid by an employer because it is at that point the tax withholding occurs. *Id.* at 61-62.

58.     Further, there are special facts which created a duty in Pioneer to disclose that it had frozen *outgoing* transactions from Account No. 2440 and/or a fiduciary and/or confidential relationship between Pioneer and Southwestern Payroll by virtue of Pioneer's receipt and holding of Southwestern Payroll's Client Tax Trust Funds.

59.     Pioneer knew that the funds held in Account No. 2440 were Client Tax Trust Funds. Mann specifically discussed the fact that the funds were Client Tax Trust Funds with Dave Blessing, who was an account manager at Pioneer, and others at Pioneer.  John Reinke, who was CEO of Cloud Payroll, witnessed the conversation with Dave Blessing.  Further, Pioneer was privy to the batch designations for the daily ACH transactions as "TAX COL" or "TAX PAY." To the extent that Pioneer might contend that it and Mann/the Mann Defendants wanted to treat the Client

Tax Trust Funds account as a depository account, knowing its true nature was that of a tax trust funds account, Pioneer and Mann/the Mann Defendants have committed additional acts of fraud against Southwestern Payroll. This issue will be explored in deposition and discovery in this case.

60.     Pioneer had superior knowledge which was not readily available to Southwestern Payroll, namely that it had frozen only outgoing transactions from Account No. 2440 but was continuing to allow credits to the account, with the intent to use the accumulation of these funds to offset the Loan. Pioneer's success in accumulating as much money into Account No. 2440 as it possibly could, to offset the defaulted Loan and recover its losses, hinged on its ability to act in a clandestine manner. Pioneer knew that by only freezing outgoing transactions, but allowing incoming transactions to process into the account, Southwestern Payroll would continue to act on its mistaken belief that Account No. 2440 was operating as it always had – payroll taxes into the holding account for a time, and payroll taxes permitted to be paid out when due.

61.     There are literally hundreds or more than a thousand tax transactions that went in and out of Account No. 2440 each day, and there was no feasible way to monitor whether Pioneer would be honoring the ACH transactions in real time.  That simply does not and cannot happen in the payroll world where there are so many daily transactions.  It takes weeks, months, or in certain circumstances, quarters before a payroll company receives notice from taxing authorities that tax payments have not been made.  Southwestern Payroll could not have learned of what Pioneer did any sooner through the exercise of ordinary intelligence.  Southwestern Payroll only discovered the outgoing-only freeze through Alred's investigation on **September 4, 2019**, prompted by notice of Mann's resignation, and which was received only *after* Pioneer had already accepted the additional funds into Account No. 2440.

62.     Southwestern Payroll was reasonably operating under a mistaken belief of a material fact. Namely, Southwestern Payroll reasonably believed that if Pioneer accepted Client Tax Trust Funds, it would continue to allow the Client Tax Trust Funds to be paid to the appropriate taxing authorities, as it had done for years.

63.     Pioneer Bank knew the funds in Account No. 2440 were tax funds, and this situation is exactly the type of special fact or circumstance which created a duty for Pioneer to disclose its change in treatment of Account No. 2440 on August 30, 2019, and which establishes a confidential or fiduciary relationship sufficient for Southwestern Payroll to maintain a fraud claim.

64.     Southwestern Payroll does not have access to all the contracts and documents between Pioneer and Mann in order to plead whether the contracts create a fiduciary duty.

65.     Because Pioneer has failed and refused to provide documents and information, and because Southwestern Payroll has not been allowed to conduct discovery in this case, Pioneer is in a position of superior knowledge and Southwestern Payroll is handicapped in its ability to plead every single detail of what happened in this case.

66.     Additionally, Southwestern Payroll is a Defendant in *Cachet Financial Services v. MyPayrollHR, LLC et al.*, Case No. 1-19-CV-1181, pending in the United States District Court for the Northern District of New York.  In that case, Pioneer responded to a subpoena issued by Cachet Financial Services by producing the account records for Account No. 2440.  These records demonstrate exactly what Pioneer did between August 30, 2019 and September 4, 2019, and firmly establish and support Southwestern Payroll's fraud claims.  However, Southwestern Payroll did not have these records when it filed its Complaint or Amended Complaint, and could not use or reference the records in its Response to Pioneer's Motion to Dismiss the Amended Complaint

since the records were not referenced in the Amended Complaint.  Currently, the records are still under a protective order in Case No. 1-19-CV-1181.  Southwestern Payroll has moved to have the records removed from the protective order in Case No. 1-19-CV-1181 so it can candidly discuss the records in this case, but Pioneer has objected, and the motion to have the records removed from the protective order is still pending.

67.     Since discovery in this action was stayed pending the Court's decision on Pioneer's Motion to Dismiss, Southwestern Payroll was unable to obtain relevant documents in further support of its claim of fraud against Pioneer.

68.     Southwestern Payroll seeks all damages allowable by law against Pioneer for its fraudulent and wrongful collection and retention of the Client Tax Trust Funds, including $9,809,967.08, penalties and interest assessed and to be assessed from the taxing authorities, loss of profits, damages for reputational harm, interest, costs, attorneys' fees, and that Pioneer be required to disgorge any interest it has earned by way of its fraudulent acquisition and retention of the Client Tax Trust Funds.

### FOURTH CAUSE OF ACTION: GROSS NEGLIGENCE – PIONEER

69.     Southwestern Payroll incorporates the allegations contained in paragraphs 1 through 68 above as if fully recited herein.

70.     Pioneer owed a duty to Southwestern Payroll to keep and maintain the Client Tax Trust Funds as special trust funds pursuant to 26 U.S.C. § 7501, and other authorities.

71.     Pioneer has grossly failed to adequately monitor and supervise the Client Tax Trust Funds, and this gross negligence and/or recklessness has caused damages to Southwestern Payroll.

72.     According to Pioneer, Mann and the Mann Defendants pledged Account No. 2440 as collateral for the Loan, even though all Defendants knew that this account was a tax settlement account and could not be pledged as collateral for the Loan.

73.     In issuing the Loan, Pioneer had a duty to engage in credit underwriting and due diligence, and to ensure that the borrower had sufficient liquidity and assets with respect to the Loan, and to ensure that any accounts that were pledged as collateral for the Loan did not include employer payroll or tax funds.

74.     Pioneer seized the Client Tax Trust Funds, purportedly as collateral for the Loan, and has refused to release the Client Tax Trust Funds, knowing that such funds were not the property of the borrower.

75.     Further, Pioneer's conduct in taking the Client Tax Trust Funds to satisfy the debt of someone to whom the funds do not belong, and failing and refusing to return the funds upon request, is grossly negligent.

76.     Pioneer in these respects has breached their duties to Southwestern Payroll, causing it damages.

77.     Southwestern Payroll seeks all damages allowable by law against Pioneer, including $9,809,967.08, penalties and interest assessed and to be assessed from the taxing authorities, damages for reputational harm, loss of profits, interest, costs, attorneys' fees, and that Pioneer be required to disgorge any interest it has earned by way of its wrongful acquisition and retention of the Client Tax Trust Funds.

## FIFTH CAUSE OF ACTION: UNJUST ENRICHMENT AND CONSTRUCTIVE TRUST – PIONEER

78.     Southwestern Payroll incorporates the allegations contained in paragraphs 1 through 77 above as if fully recited herein.

79.     Pioneer, acting in confidential capacities with Southwestern Payroll and others, promised to maintain an account for the benefit of Southwestern Payroll's Client Tax Trust Funds. Southwestern Payroll transferred its Client Tax Trust Funds in reliance upon that promise.

80.     By improperly refusing to release the Client Tax Trust Funds, Pioneer has been unjustly enriched.

81.     Pioneer should be ordered to release the Client Tax Trust Funds for payment to the appropriate taxing jurisdictions, and to disgorge any interest or profits it has earned by way of its wrongful retention of the Client Tax Trust Funds.

82.     Additionally, Southwestern Payroll is entitled to a constructive trust with respect to the Client Tax Trust Funds, preventing Pioneer from distributing any of the Client Tax Trust Funds other than to Southwestern Payroll directly or to the appropriate state, federal or local taxing authorities as directed by Southwestern Payroll.

## SIXTH CAUSE OF ACTION: ACCOUNTING – PIONEER

83.     Southwestern Payroll incorporates the allegations contained in paragraphs 1 through 82 above as if fully recited herein.

84.     As participants in the same series of transactions related to the payment and withholding of taxes on behalf of taxpaying businesses, Pioneer and Southwestern Payroll maintained a confidential relationship.

85.     As part of this relationship, Pioneer owed a duty to Southwestern Payroll to treat the Client Tax Trust Funds account as a settlement account, and to allow tax funds deposited into the account to be withdrawn for payment to tax authorities.

86.     Southwestern Payroll seeks an accounting from Pioneer detailing all activity on all accounts that are in any way associated with the Client Tax Trust Funds. The exact nature and

extent of the damages suffered by Southwestern Payroll is not fully known to Southwestern Payroll at this time and cannot be determined without the requested accounting.

## SEVENTH CAUSE OF ACTION:  ACTUAL AND CONSTRUCTIVE FRAUD – MANN AND MANN DEFENDANTS

87.    Southwestern Payroll incorporates the allegations contained in paragraphs 1 through 86 above as if fully recited herein.

88.    Mann and the Mann Defendants had a confidential and fiduciary relationship with Southwestern Payroll by virtue of their 51% ownership interest in Southwestern Payroll and through their equal responsibilities as Southwestern Payroll to hold the funds at issues as tax trust funds.

89.    Mann and the Mann Defendants established the Client Tax Trust Funds account with Pioneer. Mann and the Mann Defendants knew that it was the intent of Southwestern Payroll that this account be established for the sole purpose of collecting and holding the Client Tax Trust Funds.  If Mann and Pioneer conspired together to treat Account No. 2440 as a depository account rather than a trust account so that Mann could take out larger loans with Pioneer when they both knew that the funds in that account were Client Tax Trust Funds, Mann materially misrepresented to Southwestern Payroll that the account would be used for the sole purpose of paying the Client Tax Trust Funds to the appropriate taxing authorities.  This material misrepresentation was made with the intent to induce Southwestern Payroll to place Client Tax Trust Funds in this account, upon which Southwestern Payroll justifiably relied to its ultimate detriment.

90.    As a result thereof, Southwestern Payroll seeks all damages allowable by law against Mann and the Mann Defendants, including $9,809,967.08, penalties and interest assessed and to be assessed from the taxing authorities, damages for reputational harm and loss of profits, interest, costs, attorneys' fees, and that the Mann Defendants be required to disgorge any interest

they have earned by way of their fraudulent acquisition, retention, and/or manipulation of the Client Tax Trust Funds and/or the Client Tax Trust Funds account.

## PUNITIVE DAMAGES – ALL DEFENDANTS

91.     Southwestern Payroll incorporates the allegations contained in paragraphs 1 through 90 above as if fully recited herein.

92.     The Defendants' acts and failures to act with respect to the Client Tax Trust Funds as alleged herein have been sufficiently wanton, reckless, and malicious as to justify an award of punitive damages in favor of Southwestern Payroll, and against the Defendants, to deter them and other similarity situated parties from so acting in the future.

## JURY TRIAL DEMANDED

93.     Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Southwestern Payroll hereby requests a jury trial on all issues so triable.

**WHEREFORE**, premises considered, Southwestern Payroll Service, Inc. seeks a declaration with respect to the rights of the parties vis-à-vis the Client Tax Trust Funds, and specifically a declaration that Pioneer wrongfully seized the Client Tax Trust Funds and that it must release such funds to Southwestern Payroll for payment to the appropriate taxing jurisdictions, and disgorge any interest or profits it has earned by way of its wrongful retention of the Client Tax Trust Funds, money damages in the form of a judgment in its favor and against the Defendants as set forth herein, including a money judgment in the amount of $9,809,967.08 plus any additional sums of Client Tax Trust Funds, to be determined, which were remitted on behalf of Southwestern Payroll's clients but have not been paid to the proper taxing authorities, for any and all past due penalties and interest which may be imposed for failure to timely remit the Client Tax Trust Funds to their respective taxing authorities, for loss of profits to Southwestern Payroll

as a result of loss of customers, damages for reputational harm, interest, costs, attorney fees, punitive damages, and other damages that have not heretofore been identified, as well as that the Defendants be required to disgorge any interest or profits gained by them through their wrongful acquisition and/or retention of the Client Tax Trust Funds, and seeks the imposition of a constructive trust and an accounting as requested, along with any other and further relief deemed just and equitable by the Court and Jury.

Respectfully submitted,

By:  *s/ Andrew C. Jayne*
Andrew C. Jayne, OBA #19493
BAUM GLASS JAYNE CARWILE & PETERS
401 S. Boston Ave., Suite 2000
Tulsa, Oklahoma 74103
Telephone:  918/938.7944
Email:  ajayne@bgjclaw.com

-and-

Walter D. Haskins, OBA #3964
Stephen J. Pontius, OBA #33587
ATKINSON, HASKINS, NELLIS,
BRITTINGHAM, GLADD & FIASCO
525 South Main, Suite 1500
Tulsa, OK 74103
Telephone: 918/582.8877
Email: whaskins@ahn-law.com
       spontius@ahn-law.com

-and-

Michael A. Kornstein, Esq.
Bar Roll No. 103178
COOPER ERVING & SAVAGE LLP
LOCAL COUNSEL FOR PLAINTIFF
39 North Pearl Street, 4th Floor
Albany, NY 12207
Telephone: (518) 449-3900
mkornstein@coopererving.com
ATTORNEYS FOR PLAINTIFF
SOUTHWESTERN PAYROLL
SERVICE, INC.

## CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of July, 2020, I electronically transmitted the previous document to the Clerk of the Court using the ECF System for filing and transmittal of Notice of Electronic Filing was then made to the following ECF registrants:

Michael A. Kornstein – mkornstein@coopererving.com
*Local Counsel for Defendant Southwestern Payroll Service, Inc.*

Robert J. Alessi – Robert.alessi@us.dlapiper.com
Jeffrey D. Kuhn – Jeffrey.kuhn@us.dlapiper.com
*Counsel for Defendant Pioneer Bancorp, Inc., Pioneer Bank*

Cynthia E. Neidl – neidlc@gtlaw.com
*Counsel for non-party National Payment Corporation*

*s/ Andrew C. Jayne*

# **VERIFICATION**

STATE OF OKLAHOMA    )
                                ) ss.
COUNTY OF TULSA        )

        C. David Rhoades, of lawful age, being first duly sworn, states that he, as the Court appointed Receiver over Southwestern Payroll Service, Inc., is authorized to make this verification: that he has read the above and foregoing Verified Second Amended Complaint, and the statements contained therein are true and correct to the best of his knowledge, information, and belief.

 

_____
C. David Rhoades, Receiver
Southwestern Payroll Service, Inc.

 

        Subscribed and sworn to before me this 16th day of July, 2020.

_____
Notary Public

My Commission Expires: _August 7, 2023_



SAMANTHA KNAPP
Notary Public in and for
STATE OF OKLAHOMA
Commission #07007513
Expires: August 7, 2023

1