**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

━━━━━━━━━━━━━━━━━━━━━━━━━━

SOUTHWESTERN PAYROLL
SERVICE, INC.

|                              |                    |
|------------------------------|--------------------|
|                 Plaintiff,   | 1:19-CV-01349      |
|         v.                   | (FJS/CFH)          |

PIONEER BANCORP, INC., et al.,

                 Defendants.


━━━━━━━━━━━━━━━━━━━━━━━━━━


**APPEARANCES:**                    **OF COUNSEL:**

COOPER, ERVING LAW FIRM             MICHAEL A. KORNSTEIN, ESQ.
39 North Pearl Street
4th Floor
Albany, NY 12207

BAUM GLASS JAYNE CARWILE &          ANDREW JAYNE, ESQ.
PETERS PLLC
401 S. Boston Avenue
Ste 2000
Tulsa, OK 74103
Attorneys for plaintiff

GREENBERG TRAURIG, LLP              CYNTHIA E. NEIDL, ESQ.
54 State Street - 6th Floor
Albany, NY 12207
Attorney for proposed intervenor-plaintiff

DLA PIPER LLP                       JEFFREY D. KUHN, ESQ.
677 Broadway - Suite 1205           ROBERT J. ALESSI, ESQ.
Albany, NY 12207-9705
Attorneys for defendants Pioneer Bank
and Pioneer Bancorp, Inc.

**REPORT-RECOMMENDATION AND ORDER**[1]

Currently pending before the Court is a motion to intervene filed pursuant to

Federal Rule of Civil Procedure ("FED. R. CIV. P.") 24 on behalf of proposed Intervenor-

Plaintiff National Payment Corporation.  See Dkt. No. 23.  For the reasons that follow, it

is recommended that the motion to intervene be granted.

## I.  Background

### A.  Facts[2]

This matter is one of at least two civil actions currently pending before the Court

and which arises out of the abrupt closure of several employment and payroll

companies that were owned or controlled by Defendant Michael Mann ("Defendant

Mann").[3]  See Cachet Fin. Servs. v. MyPayrollHR et al., No. 1:19-CV-1181 (FJS/CFH)

(N.D.N.Y., filed 9/23/2019); see also Simmons, et al. v. Cachet Fin. Servs., et al., No.

---

[1] Several courts in the Second Circuit have held that motions for leave to intervene are non-dispositive, and thus suitable for final disposition by a magistrate judge even in the absence of consent of the parties and the proposed intervenor.  See, e.g., PPC Broadband, Inc. v. Corning Optical Commc'ns RF, LLC, No. 5:12-CV-911 (GLS/DEP), 2014 WL 4199244, at *6 (N.D.N.Y. Aug. 21, 2014) (collecting cases).  Although the Second Circuit has not squarely addressed this issue, two cases seem to suggest that a motion for leave to intervene falls outside of a magistrate judge's authority in the absence of the express consent of the parties. See N.Y. Chinese TV Programs, Inc. v. U.E. Enters., Inc., 996 F.2d 21, 24-25 (2d Cir. 1993) ("Without the consent of the 'intervenors', the magistrate judge's order has the effect only of a report and recommendation to the district judge[.]"); accord, Stackhouse v. McKnight, 168 F. App'x 464, 466 (2d Cir. 2006) (summary order) (noting the "'critical role of consent' in permitting a magistrate judge to adjudicate a motion to intervene).  In light of this lack of clarity—and in overabundance of caution—this opinion has been formatted as a Report-Recommendation and Order to Senior District Judge Frederick J. Scullin.

[2]  The factual recitation is drawn from all documents presently filed with the Court in this matter, as well as certain public filings, including those made in a related state court action initiated by the Pioneer Defendants.  See infra.

[3] Defendant Mann owned, or otherwise controlled, several payroll and personnel-related companies, including Defendants Cloud Payroll, LLC ("Cloud Payroll"), Valuewise Corporation d/b/a Apogee d/b/a Optix Consulting d/b/a Primacy Search Group ("Valuewise"), MyPayrollHR, LLC, Ross Personnel Consultants, Inc., Always Live Holdings, LLC, Kaningo, LLC, Hire Flux, LLC, Hire Flux Holdings, LLC, Viverant LLC, and Heutmaker Business Advisors, LLC.  See Dkt. No. 72 at 2-4.

2:19-CV-01624 (GMN/VCF) (D. Nev., filed 9/23/2019).  Central to the parties' dispute is

a bank account, ending in 2440, and which is alleged to have held millions of dollars in

escrow tax funds on behalf of thousands of non-party employers (hereinafter, "Account

No. 2440").  See Dkt. No. 72 ("Second Amended Complaint" or "SAC"); see also Dkt.

No. 23-2 (proposed Intervenor Complaint).

Plaintiff Southwestern Payroll Service, Inc. ("Southwestern") is an Oklahoma-

based company that contracts with employers to provide payroll services, including the

collection, processing, and remittance of the employer's "withheld payroll taxes to the

appropriate taxing authorities in an accurate and timely fashion."  See SAC at 1, 4.[4]

Southwestern utilizes an automated clearing house ("ACH") to transfer the employer's

payroll taxes into a dedicated bank account, where the funds are held in escrow until a

tax obligation becomes due to a local, state, or federal tax authority.  See id. at  4-5.

The failure to timely transfer those tax obligations can result in the assessment of

penalties and interest against the employer.[5]  See id. at 5.

On or about April 21, 2017, Defendant Mann—through Cloud Payroll, which is

wholly owned by Valuewise—purchased 51% of Southwestern's outstanding stock.

See SAC at 4-5.  Defendants Pioneer Bank and Pioneer Bancorp, Inc. (collectively,

"Pioneer Defendants")[6] provided the financing for that purchase.  See id. at 5.  As a

condition of that financing, Southwestern was required to hold the employer tax funds in

---

[4]  All citations to page numbers refer to the pagination generated by CM/ECF, rather than the page
numbers generated by the parties.

[5]  Plaintiff alleges that "[f]ederal withholding taxes and most state payroll taxes are due within three (3)
days of the payroll being run, and federal and state unemployment taxes are due quarterly."  SAC at 5.

[6]  In referring to Pioneer Bank and Pioneer Bancorp, Inc. collectively as the "Pioneer Defendants," the
undersigned does not intend to suggest that the two defendants share a legal identity.  See Dkt. No. 40 at
5 n.1.

Account No. 2440, an account that was held at the Pioneer Defendants.  See id. at 5-6.

As a result of this arrangement, the Pioneer Defendants received any interest generated

during the time that employer tax funds were held in Account No. 2440.  See id. at 6.

This financing requirement resulted in a series of ACH transactions that involved

proposed Intervenor National Payment Corporation ("NatPay"), a third-party ACH

service provider to Cloud Payroll.  See SAC at 6; Dkt. No. 23-2 at 8; Dkt. No. 23-4 at 1-

2.  *First*, the tax funds were transferred from an employer's account to Prosperity

Bank—located in Tulsa, Oklahoma—by an ACH transfer initiated by Prosperity Bank.

See SAC at 6.  *Second*, NatPay transferred the tax funds from Prosperity Bank to First

Premier Bank in Sioux Falls, South Dakota.  See id.; see also Dkt. No. 23-4 at 2.  *Third*,

NatPay transferred the tax funds from First Premier Bank to the Pioneer Defendants,

who then held the funds in Account No. 2440.  See SAC at 6.  According to both NatPay

and Southwest, the funds transferred to the Pioneer Defendants carried a description

that said either "TAX PAY" or "TAX COL."  Id.; Dkt. No. 23-4 at 13.

The tax funds remained in Account No. 2440 with the Pioneer Defendants until a

tax obligation was due to a particular taxing authority.  See SAC at 6.  NatPay then

transferred the funds from Account No. 2440 back to First Premier Bank and then from

First Premier Bank to the appropriate local, state, or federal taxing authority.  See id. at

6; Dkt. No. 23-4 at 4.  According to NatPay, it provided ACH services to Cloud Payroll

without issue for nearly two years.  See Dkt. No. 23-4 at 5.

On or about September 4, 2019, Southwestern learned that Defendant Mann had

resigned from his officer positions with Valuewise and Cloud Payroll and was unable to

be reached.  See SAC  at 7.  The same day, Southwestern also learned that a number

4

of employer tax obligations had not been paid. See id. Believing that Mann's accounts—including Account No. 2440—had been frozen entirely, Southwestern immediately stopped sending the tax funds to the Pioneer Defendants, and instead held those tax funds with Prosperity Bank. See id.

Additional investigation revealed that Account No. 2440 had only been *partially* frozen for a period of time; that is, the Pioneer Defendants froze only *outgoing* transactions—rather than *incoming* and *outgoing*. See SAC at 8; Dkt. No. 23-2 at 11. This partial freeze resulted in Account No. 2440 continuing to receive millions of additional dollars in employer tax funds via NatPay's ACH deposits.[7] See SAC at 8; Dkt. No. 23-2 at 11. In addition, the partial freeze resulted in 1,033 employers accumulating unpaid tax obligations.[8] See SAC at 7-8; Dkt. No. 23-2 at 11. Southwestern and NatPay both allege that the Pioneer Defendants have refused to

---

[7] In their opposition papers, the Pioneer Defendants observe that the "dollar figures in NatPay's [p]roposed Complaint and [Southwestern]'s [Second] Amended Complaint are completely different." Dkt. No. 40 at 16; compare SAC at 8 ($6,740,339.63), with Dkt. No. 23-2 at 11 ($8,497,094.12). This discrepancy appears to be the result of allegations that cover different—but overlapping—time periods. According to Southwest, the Pioneer Defendants received an additional $6,740,339.63 in employer tax funds between August 30, 2019 through September 4, 2019. See Dkt. No. 72 at 8. According to NatPay, the Pioneer Defendants received an additional $8,497,094.12 in employer tax funds between September 3, 2019 and September 5, 2019. See Dkt. No. 23-2 at 11.

[8] According to NatPay, the accumulation of unpaid tax obligations were the result of the following deposits:

| Date | Amount | Number of Employers |
|---|---|---|
| September 3, 2019 | $3,002,116.21 | 304 |
| September 4, 2019 | $452,975.37 | 134 |
| September 6, 2019 | $3,817,970.10 | 468 |
| September 9, 2019 | $451,058.89 | 127 |
| | | |
| **Total** | **$7,724,120.57** | **1,033** |

Dkt. No. 23-2 at 11-12. The undersigned notes that there is very minor discrepancy between the total dollar figure set forth in NatPay's proposed Complaint and the dollar figure calculated above. See id. (alleging that the Pioneer Defendants "prevented the withdrawal of $7,724,120.65 in tax funds of about 1,033 employers from the Cloud account").

return the employer tax funds so that the outstanding tax obligations could be paid on behalf of the impacted employers.[9]  SAC at 10; see also Dkt. No. 23-2 at 15.

## B.  The State Court Action

On October 18, 2019, the Pioneer Defendants commenced an action in Supreme Court, Albany County to recover under a revolving line of credit facility ("the Loan"), which had been extended to Defendant Mann and his various payroll companies on August 12, 2019.  See Dkt. No. 23-1 at 1-2; see also Pioneer Bank v. Mann et al., Index No. 907160-19 (Sup. Ct., Albany County, filed 10/18/2019).  Shortly after the action was initiated, Defendant Mann agreed to a "Consent Judgment" in the amount of $35,839,912.81—plus pre-judgment and post-judgment interest—which represented the full amount of the Pioneer Defendants' claims.  See Dkt. No. 23-1 at 2.  On November 19, 2019, the Hon. Richard M. Platkin, A.J.S.C., signed the Consent Judgment, which was then entered in the office of the Albany County Clerk on November 20, 2019 without a hearing or appearances.  See id.

On November 20, 2019—following the entry of the Consent Judgement—NatPay wrote to Justice Platkin to provide notice of its intent to intervene in the action to obtain "a temporary receiver with respect to [Account No. 2440] . . . and other relief."  Dkt. No. 23-1 at 2.  In a response to Justice Platkin the following day, counsel for the Pioneer Defendants indicated that Account No. 2440 had already been seized as "'collateral' for the Loan and pursuant to its 'set off rights' with respect to the Loan."  Dkt. No. 23-1 at 2

---

[9]  The United States has commenced an action pursuant to 26 U.S.C. § 7401 against Cloud Payroll and the Pioneer Defendants to, inter alia, recover the employer tax funds that were obligated to be paid to the United States.  See United States v. Pioneer Bank, et al., No. 1:20-CV-00487 (DNH/DJS) (N.D.N.Y., filed 04/30/2020).

6

(citing Dkt. No. 23-3); see also Dkt. No. 23-3 ("All amounts held in, or received or
deposited into, the [Account No. 2440] were subject to [the] Pioneer [Defendants']
security interest and its right of set off.").

Counsel for the Pioneer Defendants also indicated that Account No. 2440 was
identified in bank "records as a general deposit account[,]" rather than a "'settlement,'
trust or custodial account" for the tax obligations for the employers. Dkt. No. 23-3 at 1;
see also id. at 4-12 ("Terms and Conditions" of Account No. 2440). NatPay alleges that
prior to receiving this letter on November 21, 2019, NatPay erroneously believed that
Account No. 2440 had been frozen—as is alleged by Southwestern in the Second
Amended Complaint—rather than seized as collateral for the Loan. See Dkt. No. 23-1
at 2; see also id. at 4 ("NatPay is bringing this motion [to intervene] after having learned,
on November 21, 2019, that [the Pioneer Defendants] did not actually freeze [Account
No. 2440], but rather that it seized any funds in the account as purported 'collateral' for
the Loan.").

## C. Procedural History

Southwestern commenced this action by the filing of a Complaint on October 31,
2019, which was followed by the filing of an Amended Complaint on December 10,
2019. See Dkt. Nos. 1, 25. In lieu of filing an answer, the Pioneer Defendants filed a
partial motion to dismiss, which was opposed by Southwestern. See Dkt. Nos. 41, 45-
46, 48. On April 16, 2020, Senior District Judge Frederick J. Scullin granted the partial
motion, which resulted in the dismissal of the third cause of action for actual and

constructive fraud  See Dkt. No. 51; see also Dkt. No. 25 at 12-14 (third cause of action).

On April 30, 2020, Southwestern filed a motion for, inter alia leave to file a Second Amended Complaint, which the Pioneer Defendants opposed.  See Dkt. Nos. 53, 58, 65.  By Memorandum-Decision and Order dated July 7, 2020, Judge Scullin, inter alia, granted that motion, which enabled Southwestern to proceed with the filing of a Second Amended Complaint on July 16, 2020.  See Dkt. No. 71; see also SAC.  On July 30, 2020, the Pioneer Defendants filed an Answer.  Dkt. No. 74.

On December 10, 2019, NatPay filed the present motion to intervene.[10]  See Dkt. No. 23.  On January 10, 2020, the Pioneer Defendants filed papers in opposition to the motion.  See Dkt. No. 40.  Based upon the Court's briefing schedule, NatPay filed a reply in further support of the motion on January 17, 2020.  See Dkt. Nos 28, 42.


### III.  Discussion

In support of its motion to intervene, NatPay invokes FED. R. CIV. P. 24(a), which governs intervention as of right, and FED. R. CIV. P. 24(b), which governs intervention by permission.  See Dkt. No. 23.  NatPay argues that (1) its motion is timely, (2) NatPay has a direct, substantial, and legally protectable interest because it was responsible for the transfer of tax funds to the Pioneer Defendants; (3) NatPay's interests could be impaired by the disposition of funds in this action; and (4) Southwestern does not adequately represent the interest of NatPay.  See Dkt. No. 23-5 at 8-11; see also FED. R. CIV. P. 24(a).  NatPay also argues that it should be granted permission to intervene

---

[10]  In its motion papers, NatPay's counsel indicates that Southwestern has consented to NatPay's proposed intervention.  See Dkt. No. 23-1 at 4.

because the claims that it proposes to bring are premised on the same facts and set of circumstances that give rise to the claims asserted by Southwestern and no party would be prejudiced by its intervention.  See Dkt. No. 23-5 at 12; see also FED. R. CIV. P. 24(b).

In opposition, the Pioneer Defendants do not seriously dispute that NatPay's intervention motion is timely or that Southwestern does not adequately represent NatPay's interests.  See Dkt. No. 40 at 10.  Instead, the Pioneer Defendants argue that NatPay failed to demonstrate that it has a significant interest or that the significant interest would be impaired if it were not permitted to intervene.  See Dkt. No. 40 at 10-18; see also FED. R. CIV. P. 24(a).  The Pioneer Defendants also argue that the permissive motion fails for the same reasons that the motion as of right fails.  See Dkt. No. 40 at 19; see also FED. R. CIV. P. 24(b).

## A.  Legal Standard under FED. R. CIV. P. 24(a)

FED. R. CIV. P. 24(a) provides, in pertinent part, that

> [o]n timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

FED. R. CIV. P. 24(a)(2).  Therefore, in order to intervene as of right, the proposed intervenor must: "(1) file a timely motion; (2) show an interest in the litigation; (3) show that its interest may be impaired by the disposition of the action; and (4) show that its interest is not adequately protected by the parties to the action."  In re Holocaust Victim

Assets Litig., 225 F.3d 191, 197 (2d Cir. 2000) (citing Catanzano v. Wing, 103 F.3d 223, 232 (2d Cir. 1996)).  "Denial of the motion to intervene is proper if any of these requirements is not met."  D'Amato v. Deutsche Bank, 236 F.3d 78, 84 (2d Cir. 2001); see MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc., 471 F.3d 377, 389 (2d Cir. 2006) (noting that a motion to intervene under FED. R. CIV. P. 24(a) is granted only when all four conditions are met).

A proposed intervenor cannot satisfy the test for intervention as of right under FED. R. CIV. P. 24(a) unless the proposed intervenor can also be deemed a necessary party under FED. R. CIV. P. 19(a).  See MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc., 471 F.3d 377, 389 (2d Cir. 2006); see also Fisher v. Tice, No. 15-CV-0955 (LAK/DF), 2015 WL 6916624, at *5 (S.D.N.Y. Oct. 26, 2015) ("It thus stands to reason that, if a proposed intervenor can satisfy the Rule 24(a)(2) requirements, then the proposed intervenor should be considered no less necessary to the court's resolution of the parties' dispute than a "required party" would be, under Rule 19.").  This is because FED. R. CIV. P. 19(a) and FED. R. CIV. P. 24(a)(2) were intended to mirror one another. See FED. R. CIV. P. 24 advisory committee's note to 1966 amendment ("Intervention of right is here seen to be a kind of counterpart to Rule 19(a)(2)(i). . . . The [1966] amendment provides that an applicant is entitled to intervene in an action when his position is comparable to that of a person under Rule 19(a)(2)(i).").

### 1. Analysis under FED. R. CIV. P. 24(a)

The Pioneer Defendants do not seriously dispute that the intervention motion is timely or that Southwestern is unable to adequately protect NatPay's interests.  See

Dkt. No. 40.  As a result, whether NatPay may intervene as of right necessarily turns upon whether NatPay has met its burden of demonstrating that it has a substantial interest in the litigation and the substantial interest may be impaired by the disposition of the action.  See FED. R. CIV. P. 24(a)(2).

### a. Direct, Substantial, and Legally Protectable Interest

The Second Circuit has underscored that "for an interest to be cognizable under Rule 24, it must be direct, substantial, and legally protectable."  Floyd v. City of New York, 770 F.3d 1051, 1060 (2d Cir. 2014) (internal quotation marks omitted) (quoting Bridgeport Guardians, Inc. v. Delmonte, 602 F.3d 469, 473 (2d Cir. 2010)); Brennan v. N.Y.C. Bd. of Educ., 260 F.3d 123, 129 (2d Cir. 2001).  "In other words, '[a]n interest that is remote from the subject matter of the proceeding, or that is contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy the rule.'"  Floyd, 770 F.3d at 1060 (quoting Brennan, 260 F.3d at 129).

The precise nature of the interest required to intervene as of right has eluded precise and authoritative definition.  See 7C Wright, Miller & Kane, Federal Practice & Procedure § 1908.1 (3d ed.).  Courts have construed the nature of the interest broadly, however, to include "when the intervenor claims an identifiable interest in funds that are the subject of litigation," id. (collecting cases), or where the "claims arise out of the same transactions that are the subject of the instant case," Provident Bank v. Cmty. Home Mortg. Corp., No. 02-CV-5219 (DRH/JO), 2005 WL 1801654, at *3 (E.D.N.Y. July 28, 2005).

In opposing the motion, the Pioneer Defendants argue that NatPay does not have a protectable interest because its claims are barred by the third-party standing doctrine.  <u>See</u> Dkt. No. 40 at 11-15.  In so arguing, the Pioneer Defendants suggest that NatPay's claims are based solely upon the rights and interests of the non-party employers whose tax obligations were not paid.  <u>See</u> Dkt. No. 40 at 11-15.  Although it is true that the tax funds were owned by non-party employers, the argument fundamentally ignores the fact that NatPay is seeking to redress independent harms that it suffered as a result of, <u>inter alia</u>, the Pioneer Defendants' allegedly tortious conduct.  <u>See</u> Dkt. No. 23-2 at 14.  It cannot be said that the claims NatPay wishes to assert are too remote from the subject matter of this lawsuit. <u>See</u> <u>Floyd</u>, 770 F.3d at 1060 (quoting <u>Brennan</u>, 260 F.3d at 129).  NatPay's claims arise out of the same transactions that are the subject of the instant case and it is therefore plainly apparent that NatPay possesses the requisite substantial interest for seeking intervention as of right.  <u>See</u> <u>Provident Bank</u>, 2005 WL 1801654, at *3; <u>see also Berroyer v. United States</u>, 282 F.R.D. 299, 304 (E.D.N.Y. 2012) ("[I]t is unquestionable that [the proposed intervenor] has a direct interest in this action because [its] claims arise out of the same transaction and occurrence that is the subject of the instant case."); <u>Keybank, Nat'l Ass'n v. Quality Payroll Sys., Inc.</u>, No. 06-CV-3013 (JS)(AKT), 2007 WL 9710295, at *6 (E.D.N.Y. Mar. 30, 2007) ("Such accounts are the subject of the instant action. As such, the Intervenors interests in this suit are direct, substantial[,] and protectable.")

In addition, contrary to the Pioneer Defendants' argument, NatPay has provided sufficient factual detail regarding its claims.  <u>See</u> Dkt. No. 40 at 15-16.  After Cloud Payroll purchased a majority interest in Southwestern in 2017, NatPay was engaged to

provide "ACH data processing services for the payment of taxes via ACH to Cloud[

Payroll]'s employer-clients." Dkt. No. 23-2 at 9-10. The non-party employers expressly

authorized NatPay to perform this ACH service. See id. at 9.

In performing that service, NatPay transferred millions of dollars into Account No.

2440 and those funds were subsequently seized by the Pioneer Defendants as

collateral for the Loan. See Dkt. No. 23-2 at 11-14. Although the seized funds

belonged to the non-party employers, according to NatPay, the Pioneer Defendants

delayed in its rejection of debit entries by several days. See id. at 14. This delayed

rejection resulted in "nearly $4 million [being] withdrawn from NatPay's account and

deposited to the accounts of various taxing authorities without corresponding credit

entries to fund such payments." Id. at 14.

The undersigned agrees that "[t]he claims sought to be asserted by NatPay are

substantially similar to Southwestern's claims, all of which arise from the same

transactions and events." Dkt. No. 23-5 at 10; cf. Floyd v. City of New York, 302 F.R.D.

69 (S.D.N.Y. 2014) (rejecting intervention where the proposed intervenors did not have

any independent claims), aff'd,770 F.3d 1051 (2d Cir. 2014). As a result, NatPay has

met its burden of demonstrating that it has a direct, substantial, and legally protectable

interest in this litigation. See Floyd, 770 F.3d at 1060.


### b. Impairment of NatPay's Interest

NatPay must also demonstrate that the disposition of this action may impair or

impede its interests. See In re Holocaust Victim Assets Litig., 225 F.3d at 197 (citing

Catanzano, 103 F.3d 22 at 232). Generally, the "'mere fact that the first action may

decrease the ability of the intervenor to collect a potential judgment against the defendant is insufficient to be considered a substantial impairment of an interest for the purposes of Rule 24(a)(2).'" Brooks v. Sussex Cty. State Bank, 167 F.R.D. 347, 351 (N.D.N.Y. 1996) (quoting Jet Traders Inv. Corp. v. Tekair, Ltd., 89 F.R.D. 560, 570 (D.Del. 1981)). However, intervention has nonetheless been granted in "situations where a discrete, distinguishable fund exists and where the intervenor has some presently, legally enforceable interest in that fund or where his claim against that fund arises from the same factual basis as does the claim in the original action." Jet Traders Inv. Corp., 89 F.R.D. at 570.

In United States v. Alisal Water Corp., 370 F.3d 915 (9th Cir. 2004), a judgment creditor from a previous, unrelated action moved to intervene in an environmental action after the district court issued an order, which appointed a receiver and barred the enforcement of any action or lien against the receiver, or any property subject to the receivership, without prior court approval. See id. at 918. In affirming the denial of the judgment creditor's intervention motion, the Ninth Circuit shared in the district court's concern that permitting intervention in the case "would raise the specter of a complicated 'battle royal' among rival creditors[.]" Id.; see Glyn v. Roy Al Boat Mgmt. Corp., 897 F. Supp. 451, 453 (D.Haw. 1995) ("Were this court to agree that [the judgment creditor] could intervene . . . it would transform every civil suit before this court into a kind of exaggerated interpleader action where all potential creditors of all parties could assert their rights."). The Ninth Circuit also observed that the judgment creditor's sole interest in attempting to intervene was the prospective collectability of a debt and

14

such an interest was "several degrees removed from the [claims] . . . that are the backbone of this litigation." Alisal Water Corp., 370 F.3d at 920.

Here, by suggesting that NatPay is seeking to intervene only to ensure the future collectability of a judgment, see Dkt. No. 40 at 17-18, the Pioneer Defendants have understated that rationale underpinning NatPay's motion. NatPay is not merely a judgment creditor as the Ninth Circuit encountered in Alisal Water Corp. Rather, the nature of NatPay's intervention is predicated upon the fact that it too has incurred damages as a result of the same set of facts that give rise to this lawsuit. See Dkt. No. 23-4 at 12 ("In addition, as a result of Pioneer's partial freezing of the Cloud [Payroll] account, $3,811,570.99 was debited (withdrawn) from NatPay's accounts and credited (deposited) to the accounts of various taxing authorities. NatPay has no way of getting these funds back."). It cannot be said that NatPay's attempt to intervene in this action is "several degrees removed" from the claims in this lawsuit, as was the judgment creditor in Alisal Water Corp. Instead, the genesis of NatPay's claims—Account No. 2440—is part of the "backbone of this litigation." See Alisal Water Corp., 370 F.3d at 920 (noting that "an economic interest [that is] concrete and related to the underlying subject matter of the action" may be sufficient to permit intervention); cf. Lawsky v. Condor Capital Corp., No. 14-CV-2863( CM), 2014 WL 2109923, at *7 (S.D.N.Y. May 13, 2014) (holding that intervenors, who were secured lenders, had a sufficient interest in litigation); Peterson v. Islamic Republic of Iran, 290 F.R.D. 54, 59 (S.D.N.Y. 2013) (finding that judgment creditor had sufficient interest in the litigation); Abrams v. Occidental Petroleum Corp., 44 F.R.D. 543, 549 (S.D.N.Y. 1968) (granting intervention where the person claimed the "same fund" as the plaintiff sought in the action).

Based on the foregoing, the undersigned concludes that NatPay has carried its burden of demonstrating that it has a substantial interest in this litigation and that the interest may be impaired or impeded if it is not permitted to intervene.  It is therefore recommended that NatPay's motion for intervention as of right be granted.  In the event the Court disagrees with any of the foregoing, however, the undersigned offers the following analysis with respect to NatPay's alternative request for permissive intervention.

## B.  Legal Standard under FED. R. CIV. P. 24(b)

A party that does not qualify for intervention as a matter of right may request permissive intervention.  See FED. R. CIV. P. 24(b).  Permissive intervention may be granted "[u]pon timely application . . . when an applicant's claim or defense and the main actions have a question of law or fact in common."  Id.; see Comer v. Cisneros, 37 F.3d 775, 801 (2d Cir. 1994).  As a result, "Rule 24(b) necessarily vests broad discretion in the district court to determine the fairest and most efficient method of handling a case with multiple parties and claims."  Secs. & Exch. Comm'n v. Everest Mgmt. Corp., 475 F.2d 1236, 1240 (2d Cir. 1972); see Rosenshein v. Kleban, 918 F. Supp. 98, 106 (S.D.N.Y. 1996) ("The district court has broad discretion in resolving applications for permissive intervention." (citing New York News, Inc. v. Kheel, 972 F.2d 482, 487 (2d Cir. 1992)).  "[C]ourts applying Rule 24 'must be mindful that each intervention case is highly fact specific and tends to resist comparison to prior cases[.]' " Kamdem-Ouaffo v. Pepsico, Inc., 314 F.R.D. 130, 134 (S.D.N.Y. 2016) (quoting Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Ams., 262 F.R.D. 348, 352 (S.D.N.Y. 2009)).

In analyzing a motion for permissive intervention, "the words claim or defense are not to be read in a technical sense, but only require some interest on the part of the applicant." Dow Jones & Co, Inc. v. United States Dep't of Justice, 161 F.R.D. 247, 254 (S.D.N.Y. 1995) (citing Brooks v. Flagg Bros. Inc., 63 F.R.D. 409 (S.D.N.Y. 1974)). "Rule 24(b)(2) is satisfied 'where a single common question of law or fact is involved, despite factual differences between the parties.'" Commack Self-Serv. Kosher Meats, Inc. v. Rubin, 170 F.R.D. 93, 106 (E.D.N.Y. 1996) (quoting Rivera v. New York City Hous. Auth., No. 94-CV-4366, 1995 WL 375912, at *3 (S.D.N.Y. June 23, 1995)). Varying facts and circumstances may add to a court's understanding of the claims that are before it.  See Rivera, 1995 WL 375912, at *3

As the Pioneer Defendants observe, the Second Circuit has occasionally characterized the factors applicable to permissive intervention as being "[s]ubstantially the same" to those factors considered under FED. R. CIV. P.  24(a)(2).  See In re Bank of New York Derivative Litig., 320 F.3d 291, 300 n.5 (2d Cir. 2003) (citing H.L. Hayen Co. v. Siemens Med. Systems, Inc., 797 F.2d 85, 89 (2d Cir. 1986)); but see Citizens Against Casino Gambling in Erie Cty. v. Hogen, 417 F. App'x 49, 50 (2d Cir. 2011) (describing permissive intervention as "'discretionary with the trial court.'").  The principle consider, however, "is 'whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.'" United States Postal Serv. v. Brennan, 579 F.2d 188, 191 (2d Cir. 1978) (quoting FED. R. CIV. P. 24(b)(2)); see United States v. Pitney Bowes, Inc., 25 F.3d 66, 73 (2d Cir. 1994); 7C Wright, Miller & Kane, Federal Practice & Procedure § 1913 (3d ed.); see also AT&T Corp. v. Sprint Corp., 407 F.3d 560, 561-62 (2d Cir. 2005) ("When considering a request for permissive

intervention, a district court must 'consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.'" (quoting FED. R. CIV. P. 24(b)(3)).  "Additional relevant factors include the nature and extent of the intervenors interests, the degree to which those interests are adequately represented by other parties, and whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented."  H.L. Hayen Co., 797 F.2d at 89 (internal quotation marks omitted).

## 2. Analysis under FED. R. CIV. P. 24(b)

In opposing NatPay's motion for intervention, the Pioneer Defendants seem to suggest that the denial of mandatory intervention must result in the denial of permissive intervention.  See Dkt. No. 40. at 21.  Although the factors under FED. R. CIV. P. 24(a)(2) and FED. R. CIV. P. 24(b)(2) as "**[s]ubstantially** the same," In re Bank of New York Derivative Litig., 320 F.3d at 300 n.5 (emphasis added), the Second Circuit has not yet suggested that the denial of mandatory intervention mandates denial of permissive intervention.  See, e.g., Commack Self-Serv. Kosher Meats, Inc. v. Rubin, 170 F.R.D. 93, 107 (E.D.N.Y. 1996) (denying mandatory intervention, by granting permissive intervention).  Because the Pioneer Defendants (incorrectly) presume that mandatory intervention must be denied here, they all but ignore the other factors that must be considered on a motion for permissive intervention.  See Point III.B.1, supra.

In any event, NatPay's request for permissive intervention comports with Fed. R. Civ. P. 24(b)(1) insofar as the NatPay intends to litigate common questions of law and

fact with those to be litigated by the parties.  It is true that "NatPay does not allege that it had contractual relationships with any of Cloud [Payroll]'s employer-clients," Dkt. No. 40 at 8, but the employer-clients expressly authorized NatPay to provide ACH services, see Dkt. No. 23-2 at 9.  As a result, NatPay was responsible for the collection and payment of local, state, and federal tax obligations on behalf of Cloud Payroll's employer-clients.  See Dkt. No. 23-2 at 2, 9.  Given NatPay's intimate knowledge of the specific transactions that give rise to this lawsuit, NatPay is uniquely situated to contribute relevant factual details that will undoubtedly assist the Court in addressing all of the issues raised by the parties.

In addition, there is no evidence from which the undersigned could conclude that NatPay's intervention would unduly delay the adjudication of the original parties' rights. See FED. R. CIV. P. 24(b)(3). The proposed intervention comes at a time when this action remains in its formative stage.  Indeed, as the result of the early motion practice, a Rule 16 conference has not yet been held and, similarly, a scheduling order has not been set by the Court.  See Dkt. No. 60 (adjourning Rule 16 conference without date).

Moreover, the undersigned is unable to conclude that the original parties would be prejudiced by NatPay's intervention.  See FED. R. CIV. P. 24(b)(3).  While the Pioneer Defendants did not address this factor, Southwestern has expressly consented to intervention.  See Dkt. No. 23-1 at 4; see also New York v. United States Dep't of Health & Human Servs., No. 19-CV-4676 (PAE), 2019 WL 3531960, at *7 (S.D.N.Y. Aug. 2, 2019) ("[T]here is no palpable harm in permitting this participation.").

Finally, considerations of fairness weigh soundly in favor of NatPay's intervention in light of its knowledge and strong interest in the subject matter of this action.  See

19

Miller v. Silbermann, 832 F. Supp. 663, 673-74 (S.D.N.Y. 1993). Likewise, rather than forcing NatPay to bring a separate action, which could result in piecemeal litigation, it is plain that judicial economy would be well-served if NatPay were permitted to intervene in this action.

It bears emphasizing here that a court has considerable and broad discretion in resolving applications for permissive intervention. See Everest Mgmt. Corp., 475 F.2d at 1240; Rosenshein, 918 F. Supp. at 106. Based upon the foregoing considerations, to the extent that the Court disagrees with the analysis set forth pursuant to FED. R. CIV. P. 24(a), it is recommended that, in the alternative, NatPay's motion to intervene by permission be granted.

### III. Conclusion

After a careful review the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, it is hereby

**RECOMMENDED** that the motion of proposed Intervenor-Plaintiff National Payment Corporation to intervene in this action (Dkt. No. 23) be **GRANTED**; and it is further

**ORDERED** that the Clerk of the Court serve a copy of this Report-Recommendation and Order on the parties in accordance with Local Rules.

**IT IS SO ORDERED.**

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE

APPELLATE REVIEW.  <u>Roldan v. Racette</u>, 984 F.2d 85, 89 (2d Cir. 1993); <u>Small v.</u>

<u>Sec'y of HHS</u>, 892 F.2d 15 (2d Cir. 1989); <u>see</u> <u>also</u> 28 U.S.C. § 636(b)(1); FED. R. CIV.

P. 6(a), 6(e), 72.[11]

      Dated: August 4, 2020
      Albany, New York

                           Christian F. Hummel
                           U.S. Magistrate Judge

---

[11]  If you are proceeding <u>pro</u> <u>se</u> and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation & Order was mailed to you to serve and file objections.  FED. R. CIV. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  <u>Id.</u> § 6(a)(1)(C).