**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

━━━━━━━━━━━━━━━━━━━━━━━━━━

SOUTHWESTERN PAYROLL SERVICE,                    1:19-CV-1349
INC.,                                                                       (FJS/CFH)

                                        Plaintiff,

                    v.

PIONEER BANCORP, et al.,

                                        Defendants.

━━━━━━━━━━━━━━━━━━━━━━━━━━

NATIONAL PAYMENT CORPORATION,                    1:19-CV-1349
                                                                          (FJS/CFH)
                              Intervenor-Plaintiff,

                    v.

PIONEER BANCORP, et al.,

                                        Defendants.

━━━━━━━━━━━━━━━━━━━━━━━━━━

**APPEARANCES:**                                              **OF COUNSEL:**

Cooper, Erving Law Firm                               MICHAEL A. KORNSTEIN, ESQ.
39 North Pearl Street, 4th Fl.
Albany, New York 12207
Attorneys for plaintiff Southwestern
Payroll Service, Inc.

Baum Glass Jayne Carwile & Peters PLLC      ANDREW JAYNE, ESQ.
401 S. Boston Avenue, Ste. 2000
Tulsa, Oklahoma 74103
Attorneys for plaintiff Southwestern
Payroll Service, Inc.

Greenberg Traurig, LLP                               CYNTHIA E. NEIDEL, ESQ.
54 State Street, 6th Fl.
Albany, New York 12207
Attorneys for intervenor-plaintiff
National Payment Corporation

DLA Piper LLP                                             ROBERT J. ALESSI, ESQ.

667 Broadway, Ste. 1205
Albany, New York 12207-9705
Attorneys for defendants Pioneer Bancorp, Inc.;
Pioneer Bank

**CHRISTIAN F. HUMMEL**
**UNITED STATES MAGISTRATE JUDGE**

**MEMORANDUM-DECISION & ORDER**[1]

**I. Background**

Presently pending before the Court are the following motions: (1) plaintiff

Southwestern Payroll Service, Inc.'s ("Southwestern") motion to amend the second

amended complaint, dkt. no. 153; (2) plaintiff-intervenor National Payment Corporation's

("NatPay") motion to amend the complaint; and (3) plaintiff NatPay's letter request

seeking the Court's assistance in determining whether NatPay and Southwestern's

proposed amended complaints and expert reports need to be filed under seal pursuant

to the protective order, dkt. no. 147.  Defendants Pioneer Bancorp, Inc. and Pioneer

Bank (collectively "Pioneer" or "defendants") opposed the motions to amend

Southwestern's and NatPay's complaints.  See Dkt. No. 160.  With permission of the

Court, plaintiffs jointly replied, dkt. no. 164, and Pioneer filed a sur-reply.  See Dkt. No.

---

[1] "Courts in this Circuit generally treat a magistrate judge's decision to deny a plaintiff's request to amend as nondispositive."  Brooks v. Hogan, No. 915CV00090BKSTWD, 2018 WL 10322882, at *3 (N.D.N.Y. Oct. 4, 2018) (citing Fielding v. Tollaksen, 510 F.3d 175, 178 (2d Cir. 2007) ("As a matter of case management, a district judge may refer nondispositive motions, such as a motion to amend the complaint, to a magistrate judge for decision without the parties' consent.")).  "[T]he proper classification as dispositive or non-dispositive of a motion for leave to file an amended complaint is not settled within the Second Circuit." ICM Controls Corp. v. Honeywell Int'l, Inc., No. 512CV1766LEKATB, 2019 WL 7631075, at *7 (N.D.N.Y. Dec. 3, 2019) (quoting Rivers v. N.Y. City Hous. Auth., No. 11-CV-5065, 2014 WL 12829494, at *3 (E.D.N.Y. Nov. 17, 2014)). "However, the weight of authority' within this Circuit classifies a motion to amend a pleading as non-dispositive, and the Second Circuit has stated in dictum and in an unpublished opinion that motions to amend are non-dispositive." Id. (quoting Rivers, 2014 WL 128294, at *3 (internal quotation marks omitted)).

165.  Familiarity with the facts underlying these cases is presumed and will not be repeated here beyond the limited extent necessary to address the instant motions.

## II. Southwestern's Motion to Amend

### A.  Relevant Legal Standards

Pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 15(a)(2), "leave to amend a complaint should be freely given in the absence of any apparent or declared reason to not grant leave to amend, such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of the amendment."  Yennard v. Herkimer BOCES, 241 F. Supp. 3d 346, 361 (N.D.N.Y. 2017), amended on other grounds and superseded by 2017 WL 11317859 (N.D.N.Y. Mar. 27, 2017) (citing Foman v. Davis, 371 U.S. 178 (1962)). However, "[t]he Second Circuit has held that Rule 16's more exacting 'good cause' standard is properly applied in instances where a motion to amend is filed after the expiration of a court's scheduling order deadline for the amendment of the pleadings." BCA, LLC v. Ulster County, No. 1:08-CV-149 (GLS/RFT), 2009 WL 10721011, at *1 (N.D.N.Y. May 6, 2009) (citing Parker v. Columbia Pictures Indus., 204 F.3d 326, 339 (2d Cir. 2000); Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 243 (2d Cir. 2007)).  Further, "[a] plaintiff may establish 'good cause' if the proposed amendment 'rests on information that was not available prior to the deadline to amend the pleadings.'"  Kotler v. Bosco, No. 9:17-CV-0394 (GTS/ML), 2019 WL 12291097, at *3

3

(N.D.N.Y. Nov. 4, 2019) (quoting <u>Volunteer Fire Ass'n of Tappan, Inc. v. County of Rockland</u>, No. 09-CV-4622, 2010 WL 4968247, at *4 (S.D.N.Y. Nov. 24, 2010)).

In determining whether good cause exists, "the primary consideration is whether the moving party can demonstrate diligence."  <u>Kassner</u>, 496 F.3d at 244.  However, "[t]he district court, in the exercise of its discretion under Rule 16(b), also may consider other relevant factors including . . . whether allowing the amendment of the pleading at this stage of the litigation will prejudice defendants."  <u>Id.</u>  "However, the absence of prejudice to the non-moving party "is not alone sufficient to satisfy the good cause requirement of Rule 16(b).'"  <u>BCA, LLC</u>, 2009 WL 10721011, at *2 (quoting <u>Intn'l Media Films, Inc. v. Lucas Entm't, Inc.</u>, No. 7 Civ. 1178, 2008 WL 781823, at *2 (S.D.N.Y. Mar. 20, 2008)).  "If the moving party is able to establish good cause, only then should the Court 'consider whether the proposed amendment would be futile, unduly prejudicial, or otherwise improper based on the Rule 15(a) standards that otherwise govern motions to amend.'"  <u>Kotler</u>, 2019 WL 12291097, at *3 (quoting <u>Parker</u>, 204 F.3d at 340).  "Nevertheless, even if a court finds good cause for plaintiff's delay, it may still deny a motion to amend a complaint on the basis of prejudice to the defendant or futility."  <u>Mason Tenders Dist. Council of Greater New York v. Phase Constr. Servs., Inc.</u>, 318 F.R.D. 28, 36 (S.D.N.Y. 2016) (citation omitted).

When it comes to adding a party to a complaint after the expiration of the scheduling order's deadline for joinder of parties,

> just as with a Rule 15(a) motion to add a claim, if a Rule 21 motion to add a party after the scheduling deadline did not have to meet the good cause requirement of Rule 16(b), the scheduling order would be rendered meaningless. For this reason, numerous courts have held that Rule 16(b) is applicable to a motion to add a party. <u>See</u>, <u>e.g.</u>, <u>Sosa</u>, 133 F.3d at 1419; <u>Johnson v. Mammoth Recreations. Inc.</u>, 975 F.2d 604, 608 (9th Cir.1992);

4

> <u>Deal v. Yurack</u>, No. 9:04-CV-0072 (LEK/DEP), 2007 WL 2789615, at *6 (N.D.N.Y. Sept. 24, 2007); <u>Datastrip Int'l Ltd. v. Intacta Techs., Inc.</u>, 253 F.Supp.2d 1308, 1317 (N.D.Ga. 2003) ("Courts evaluating motions to amend [to add a party] must apply the good cause rubric of Rule 16 before considering whether amendments are proper under Rule 15 or 21.").

<u>Int'l Media Films, Inc.</u>, 2008 WL 781823, at *3.

### B. Arguments

#### 1. Southwestern's Arguments[2]

##### a. Timeliness

Southwestern argues that a third amended complaint is needed to:

> (1) clarify, modify and add substance to the factual allegations that support causes of action pled in Plaintiff's Second Amended Complaint; (2) add causes of action against Pioneer Bank ('Pioneer') for violations of federal RICO[3] statutes and aiding and abetting conversion and fraud; and (3) add Granite Solutions Groupe, Inc., ('Granite Solutions') as a plaintiff in this case.

Dkt. No. 153-5 at 6.  Southwestern addresses first the question of timeliness.  The Scheduling Order in this consolidated action set the deadline for joinder and for the filing of amended pleadings as December 18, 2020.  <u>See</u> Dkt. No. 112.  Southwestern argues that its delay in bringing this motion for leave to file a third amended complaint is due solely to Pioneer's delay in producing discovery materials.  Dkt. No. 153-5 at 13-14.  Essentially, Southwestern argues that requests for extensions of the discovery deadline

---

[2]  NatPay raises essentially the same arguments and presents substantially similar – and at many points, identical – proposed amended complaints.  Thus, with judicial efficiency in mind, the Court will set forth a detailed review largely of Southwestern's proposed third amended complaint with citations only to Southwestern's complaint, excepting any instance where the complaints have more than minor, nonsubstantive differences. Accordingly, unless otherwise stated, the Court's analysis of Southwestern's proposed third amended complaint and NatPay's proposed amended complaint will be consolidated.
[3] Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1986 (hereafter "RICO").

were "necessitated by Pioneer's belated production of documents."[4]  Id.  Pioneer made

its initial production on December 31, 2020 (73,576 documents), after requesting an

extension of time to respond to plaintiffs' demands and interrogatories.  See Dkt. No.

153-5 at 8.  Pioneer made a second production on February 26, 2021 (5,156

documents).  On April 12, 2021, plaintiff identified eight current and former employees it

sought to depose, and Pioneer provided dates, "several of which were after the May 28

deadline for service of Plaintiffs' expert disclosures."  Dkt. No. 153-5 at 9.

Southwestern highlights that on April 30, 2021, Pioneer disclosed that "due to

technical issues, Pioneer's initial email production was defective, and it had failed to

retrieve and produce documents responsive to Plaintiffs' initial requests. Dkt. No. 153-5

at at 8-9.  Pioneer's counsel indicated that Pioneer essentially had to redo its document

search, retrieval, and review process" and "could provide no estimate of how many

documents it had failed to produce or when such documents would be produced."  Id. at

9.  Southwestern provides that the May 6, 2021, joint deadline extension request "was

necessitated by Pioneer's delayed document production."  Id. at 9.

Southwestern details that Pioneer made further productions on May 26, 2021

(1,413 documents); June 11, 2021, June 15, 20201, and June 24, 2021 (collectively

≈6,700 documents); August 9, 2021[5] (≈15,680 documents); August 16, 2021 (≈2,547

documents), and August 20, 2021 (9,335 documents).  See Dkt. No. 153-5 at 9-10.  "On

August 27, 2021, [Southwestern] provided Pioneer with the proposed Third Amended

---

[4]  For a more detailed recounting of the deadlines in this case and the requests for extension, reference
is made to Southwestern's memorandum of law.  See Dkt. No. 153-5 at 8.
[5]  Southwestern provides that it notified Pioneer that "it appeared as thought a significant number of
privileged documents had been produced," in this production, and Pioneer "instructed that all documents
be destroyed."  Dkt. No. 153-5 at 10.  It is not fully clear to the Court exactly what Southwestern means by
"all documents," but it appears that it is referring to all documents in the August 9, 2021, production.

Complaint and requested Pioneer's consent to file it.  This was seven days after Pioneer purportedly completed its production of documents responsive to discovery issued in October and November of 2020."  Dkt. No. 153-5 at 10.  Southwestern filed its motion for leave to amend on October 8, 2021.  See generally Dkt. No. 153.   Pioneer "did not respond to Southwestern's request until the afternoon of September 9, 2021, when it indicated that it would not consent to Southwestern Payroll's request because 'the proposed amendments would be futile because the proposed new claims would be unable to withstand a motion to dismiss,'" and on September 10, 2021, Pioneer filed an opposition letter with the Court.  Id. at 10.  Southwestern also argues that it has attempted to diligently pursue discovery.  It argues that the amendments it seeks "are based on the documents that Pioneer has produce over nine months and the depositions from July of 2019 that got delayed solely because of Pioneer's inability to timely produce documents."  Id. at 14-15.[6]

### b. Futility: RICO, Aiding and Abetting Claims

Southwestern argues that its proposed amendments are not futile.  See generally Dkt. No. 153-5, Dkt. No. 164.  It argues that "many of the new allegations supplement, modify, or add to the causes of action already contained in Plaintiff's Second Amended Petition" stemming from "evidence . . . uncovered through discovery."  Dkt. No. 153-5 at 15.  Addressing the proposed causes of action for RICO violations pursuant to 18 U.S.C. §§ 1962(c), (d), Southwestern contends that they "can not [sic] only withstand a

---

[6]  Southwestern also points out that it was not until September 14, 2021, that Pioneer took its first deposition – of Mann – but that, at the time it filed its motion to amend, Pioneer had not taken any depositions of any of plaintiffs' employees. See Dkt. No. 153-5 at 11.

motion to dismiss for failure to state a claim," but "Plaintiffs have already established enough evidence through discovery to create questions of fact for a jury such that the claims will not be resolved on summary judgment." Id. at 15.

Addressing the proposed New York State aiding and abetting claims, Southwestern argues, "[a]iding and abetting liability is supported for both the torts of conversion and fraud." Dkt. No. 153-5 at 24. Southwestern provides that the proposed third amended complaint "pleads Pioneer's knowledge of those underlying torts [conversion and fraud], and that Pioneer provided substantial assistance to advance the commission of those torts." Id. at 26.

NatPay similarly argues that the proposed RICO claims are not futile because the claims "are supported by extensive factual allegations detailing the conduct on which the claims are based," indicating that Mann pleaded guilty to money laundering. Dkt. No. 155-8 at 23. NatPay argues that its proposed amended complaint sufficiently details the required factors of § 1962(c) insofar as it alleges that: (1) the "enterprise" was made up of Mann, the Mann Entities, and Pioneer; (2) Pioneer sufficiently participated in the enterprise by approving overdrafts and "encouraging" him to "divert the third-party tax funds from the 2440 Tax Account and the 0212 Client Accounts and later "took control of the Mann Entity accounts and the tax funds"; (3) without Pioneer's assistance, Mann would not have been able to engage in the "predicate act" of money laundering; and (4) Pioneer's actions were the proximate cause of NatPay's injuries insofar as its damages "flow directly from the Enterprise's failure to disclose": (a) Mann's diversion of tax funds from the 2440 account, (b) that Mann's accounts were partially

frozen, including withdrawals, and (c) diversion of third-party funds from the 2440 account.  Id. at 25-26.

NatPay also argues that it sufficiently alleged a RICO conspiracy claim under 1962(d) as the proposed amended complaint alleged that Pioneer "was not only aware of Mann's money laundering activities, but actively participated in those activities" through approving overdrafts, "encouraging him" to move money from the accounts, and then itself "diverting" tax funds "to itself and third parties."  Dkt. No. 155-8 at 27.

### c.  Adding New Party

Southwestern argues that its delay in seeking to add Granite Solutions as a plaintiff is an insufficient basis on which to deny its motion to amend as there is no bad faith or undue prejudice. See Dkt. No. 153-5 at 27. Southwestern contends that

> Granite Solutions knew from the start that it had a claim against a defunct, insolvent MyPayrollHR, but had no reason to know that Pioneer was the party wrongfully claiming entitlement to its tax trust funds.  In light of these facts, it is disingenuous for Pioneer to suggest that Granite Solutions knew or should have known of its claim against Pioneer sooner.

Id. at 28.  It argues that Granite Solutions "should not be punished because Southwestern Payroll filed suit so quickly in this case . . . less than two months from the date when Pioneer converted the payroll tax money."  Id. at 30.  Further, Southwestern asserts that Granite Solutions did not know until February 24, 2020, that the IRS did not receive tax liabilities as an "IRS employee" told Granite Solutions earlier "that it appeared its tax liabilities had been received."  Id. at 28.  Southwestern accuses Pioneer of "endeavor[ing] to keep employers such as Granite Solutions in the dark about its conversion of their tax trust funds for its own benefit[,]" in part by "fail[ing] to

disclose that Pioneer had seized the very funds these companies were trying to locate[,]" and failing to respond to Granite Solutions when it "contacted" Pioneer about what happened to its tax money."  Id. at 28-29.

Southwestern further contends that efficiency and preservation of judicial resources warrant the granting of this motion because

> Granite Solutions has agreed to use the same liability experts as Southwestern Payroll and will not ask to re-depose any witness.  If Granite Solution is required to file its own action, and it is not allowed to be consolidated into this case, it will be entitled to re-depose all of the witnesses in this case and issue new written discovery

which would be "an utter waste of judicial time and resources to require Granite Solutions to try a separate lawsuit, when its joinder here is perfectly suited."  Id. at 30. Southwestern assures the Court that Granite Solutions' claims "are nearly identical to the claims of Southwestern [] and NatPay."  Dkt. No. 153-5 at 27-28.

### b.  NatPay's Additional Proposed State Law Claims

NatPay's proposed amended complaint also seeks to (1) amend its Gross Negligence cause of action to add a claim for Negligence/Gross Negligence, and (2) amend the cause of action for Unjust Enrichment to Claim Unjust Enrichment/Money Had and Received and eliminates an accounting cause of action.  See Dkt. No. 155-8.

### 2.  Pioneer's Opposition

### a.  Timeliness Arguments

### i.  Timeliness of Motions to Amend

Pioneer argues that plaintiffs' proposed motionsto amend  must be denied because they have not demonstrated good cause for seeking to amend eight months after the expiration of the deadline set forth in the scheduling order for amended pleadings.  See Dkt. No. 160 at 50.  Pioneer argues that it "produced 78% of its total documents by February 26, 2021," and after it identified a technical issue in March 2021, it immediately notified plaintiffs and produced "additional documents" in June through August 2021.  Id.  Pioneer argues that its discovery disclosures cannot serve as the "primary basis" of the proposed amendments because the proposed amended complaints "each quote or reference information from 95 documents produced by Pioneer – and 81 of those documents (85%) were produced by Pioneer on December 31, 2020."  Id.  Further, the proposed amended complaints "reference only two documents produced by Pioneer after February 26, 2021, that Plaintiffs did not already have or were not otherwise publicly available on the internet – and neither of those documents are central to Plaintiffs' proposed amendments."  Id.  Thus, Pioneer argues, any information plaintiffs learned in documents produced after December 31, 2020, could not be the primary basis of the motions to amend.  Id.

Replying to the argument that the vast majority of its production occurred on December 31, 2020, and that the proposed amendments reference only two documents produced after February 26, 2021, Southwestern asserts that Pioneer's argument does not account for the fact that it took significant time and resources to digest the disclosures.  Dkt. No. 154 at 2-3.

NatPay contends that it has established good cause because regardless of when Pioneer overturned discovery, "[r]eviewing the documents and understanding their input

11

took substantial time as well as the assistance of Plaintiffs' experts," and the documents "or absence of certain documents from Pioneer's productions[] also raised significant questions that could only be answered by Pioneer's witnesses" through depositions. Dkt. No. 155-8 at 16.  As an example, NatPay points out that it was not until it reviewed the discovery that it learned that there was more than one Pioneer account involved or that "significant amount of [] funds [withdrawn from NatPay's account] were actually seized by Pioneer and not, as NatPay had originally pled, sent to taxing authorities."  Id. at 15.  NatPay asserts that the facts underlying the new claims in the proposed amended complaint "were unknown to NatPay until discovery in this case."  Id. at 16.

### ii.  Granite Solutions

Southwestern's motion to amend argues that delay alone is not sufficient reason to deny the addition of Granite Solutions as a plaintiff as Southwestern has not acted in bad faith and Pioneer will not be prejudiced.  See Dkt. No. 153-5 at 27. Pioneer argues that Southwestern has not shown good cause for delaying insofar as it seeks to amend to join Granite Solutions as a plaintiff eight months after the expiration of the deadline.  See Dkt. No. 160 at 53.  Pioneer notes that Granite Solutions has not moved to intervene under Rule 24.   See id. at 53.  Pioneer contends that Southwestern's briefing "erroneously focuses on Granite Solutions' supposed diligence . . . [b]ut Granite Solutions is not the movant[.]"  Id. at 54.  It argues that Rule 16(b)'s good cause requirement applies.  See id. at 53.  Pioneer further argues that Southwestern's failure to explain "why it could not have identified nor moved to join

Granite Solutions as a plaintiff prior to December 18, 2020," means that Southwestern failed to demonstrate good cause.  Id.[7]

### b.  Merits Arguments

Pioneer argues that plaintiffs' proposed claims are all futile.  As to the proposed RICO § 1962(c) claims asserting that "Pioneer engaged in racketeering through 'predicate acts' of money laundering in violation of 18 U.S.C. §§ 1966-57", Pioneer argues these must fail because plaintiffs failed to allege that the transactions in question "involved proceeds of any 'specified unlawful activity,'" and that the "alleged laundering occurred in the same transactions through which the funds were purportedly stolen/diverted in the first place, which is not money laundering as a matter of law."  Dkt. No. 160 at 12.  Next, Pioneer contends that the alleged "'assistance' to the purported RICO enterprise through routine banking services cannot qualify as 'conducting' or 'directing' a RICO enterprise." Id.  Lastly, Pioneer contends that plaintiffs did not plead that the money laundering was the proximate cause of plaintiffs' alleged injuries.  Id.  Pioneer argues that plaintiffs also failed to set forth viable RICO § 1962(c) claim which "also means Plaintiffs' proposed RICO § 1962(d) claims automatically fail and are futile." Dkt. No. 160 at 12.

Addressing the proposed aiding and abetting claims, Pioneer argues that plaintiffs have not pleaded (1) "with particularity an underlying fraud by Mann that Pioneer aided and abetted," (2) "facts giving rise to a strong inference of Pioneer's

---

[7] Pioneer continues by addressing the argument in the hypothetical event that Granite Solutions had moved to intervene under Rule 24, arguing that such a motion would have been untimely.  Dkt. No. 160 at 54, 54 n.8.  As the Court agrees that any Rule 24 motion would have been untimely and that a Rule 24 motion is not presently before the Court, it will not address this argument.

'actual knowledge' of fraud by Mann," and (3) "that Pioneer provided 'substantial assistance' to a fraud by Mann." Dkt. No. 160 at 12.  As to the proposed aiding and abetting conversion claims, Pioneer argues plaintiffs do not meet any of the elements insofar as the proposed pleadings fail to "allege the existence of a primary conversion by Mann that Pioneer aided and abetted," meaning "there was no primary conversion . . . for Pioneer to have 'actual knowledge' of or provide 'substantial assistance' to." Id. Further, Pioneer asserts that the aiding and abetting conversion claims are "impermissibly duplicative of Plaintiffs' existing conversion claims against Pioneer." Id. at 13.

Next, Pioneer contends that insofar as the" extremely lengthy proposed amended complaints" contain factual allegations relevant to the proposed RICO and aiding and abetting claims, such factual allegations also need to be rejected as futile. Dkt. No. 160 at 13.  Similarly, Pioneer argues that proposed facts relating to the "federal Bank Secrecy Act, Anti-Money Laundering, or other banking regulations or statutes" or to a 2019 letter from Pioneer's attorney to the National Automated Clearing House Association ("NACHA") must be rejected as futile. Id.

### III.  Discussion

#### A.  Delay in Bringing Motions to Amend: Good Cause Analysis

##### 1.  Amending the Complaints

The Court finds that plaintiffs have demonstrated good cause for their delay in seeking to amend their complaints as it relates to seeking to add causes of action.

"Where delayed discovery prevented a party from discovering facts sufficient to support a cause of action, a party must show that it acted diligently upon learning the new facts." Mason Tenders Dist. Council of Greater New York v. Phase Constr. Servs., Inc., 318 F.R.D. 28, 37 (S.D.N.Y. 2016) (citing Enzymotec Ltd. v. NBTY, Inc., 754 F.Supp. 2d 527, 537 (E.D.N.Y. 2010)).

Although the Court acknowledges Pioneer's arguments that 85% of the documents the proposed amended complaints cite or reference had been produced by December 31, 2020, and plaintiffs cite from just two documents that Pioneer produced after February 21, 2021, "that plaintiffs did not already have or were not otherwise publicly available on the internet," Pioneer does not address plaintiffs' arguments that (1) the extensions of the discovery deadline were due to Pioneer's delayed document production, and (2) the substantial disclosure took time to address and review, and much of it needed interpretation by experts or deponents.  See Dkt. No. 153-5 at 8-9. Indeed, the December 31, 2020, production amounted to 73,476 documents.  See Dkt. No. 160 at 52.  Pioneer does not address (and, thus, does not dispute) these practical realities: first, that after the majority of discovery was produced by December 31, 2020, it was still months before parties could schedule depositions and before discovery was fully produced; and second, given the vast amount of discovery material produced, it necessarily took time for plaintiffs to digest the materials produced.[8]  On balance, the Court concludes that plaintiffs have demonstrated good cause for their delay in filing their motions to amend insofar as they seek to add further causes of action.  The Court finds otherwise insofar as plaintiffs seek to add a new plaintiff, as discussed below.

---

[8]  The Court cautions, however, that large discovery productions, without more, do not amount to good cause sufficient to warrant belated motions to amend.

## 2.  Adding Granite Solutions as a Plaintiff[9]

As to whether Southwestern demonstrates good cause for seeking to add Granite Solutions as a plaintiff in this action, the Court finds it has not.  As noted above, in responding to Southwestern's opposition, Southwestern applies the standard as if Granite Solutions moved to intervene under Rule 24; however, the movant was Southwestern, and under Rules 15 and 21.[10]   Thus, as Pioneer rightly notes, the appropriate assessment is whether Southwestern, as the movant, demonstrated good cause for the delay in adding Granite Solutions. "[A] finding of good cause depends on the diligence of the moving party.  In other words, the movant must show that the deadlines cannot be reasonably met despite its diligence." Lincoln v. Potter, 418 F. Supp.2d 443, 454 (S.D.N.Y. 2006) (citing Robinson v. The Town of Colonie, 91-CV-1355, 1993 WL 19116, at *3 (N.D.N.Y. June 3, 1993) (additional citation omitted)); see Parker, 204 F.3d 326 (same).

The Court agrees that Southwestern has failed to set forth good cause, as required under Rule 16(b), for adding Granite Solutions as a plaintiff.  Although the Court acknowledges Southwestern's argument recounting Granite Solutions' alleged diligence in seeking to discover this case, dkt. no. 153-5 at 28-30, absent from its motion is a discussion Southwestern's due diligence.  Although it may be a difficult task for Southwestern to demonstrate its *own* diligence in seeking to join Granite Solutions as a plaintiff before December 18, 2020, as the movant, that is its burden.  Even in

---

[9]  Southwestern submitted a supplemental affidavit from Granite Solutions that it did not seek to include with its original motion.  See Dkt. No. 164-1 at 2.

[10]  "Although the Second Circuit has not spoken directly on the issue, courts have found that the good cause standard of Rule 16 should be applied to requests to add parties under Rule 21 after a deadline in a scheduling order." Lawrence v. Starbucks Corp., No. 08-Civ. 3734 (LTS/JCF), 2009 WL 4794247, at n.4 (S.D.N.Y. Dec. 10, 2009) (citing Int'l Media Films, Inc. v. Lucas Ent. Inc., No. 07 Civ. 1178, 2008 WL 781823, at *I-3 (S.D.N.Y. March 20, 2008)).

reply, Southwestern does not address its own diligence in seeking to add Granite Solutions as a plaintiff and confusingly sets forth the Rule 24 motion to intervene standard, yet there is no motion to intervene before this Court.

Although the Court acknowledges Southwestern's argument on judicial time and resources insofar as it argues that Granite Solutions claims are "nearly identical" to Southwestern and NatPay's, and Granite Solutions "has agreed to use the same liability experts as Southwestern Payroll and will not as to re-depose any witnesses," the Court will not overlook that Southwestern has chosen to approach adding Granite Solutions as a party through a motion to amend and has not met its burden of demonstrating that standard.  See Parker, 204 F.3d at 340 (holding that good cause depends primarily on the "diligence of the moving party.").  In light of Southwestern's failure to demonstrate its own due diligence in seeking to add Granite Solutions, the Court need not reach prejudice to defendant.[11]  Accordingly, insofar as Southwestern's motion to amend seeks to add Granite Solutions as a plaintiff, that motion is denied for failure to demonstrate good cause for the delay.

## B.  Futility Analysis

### 1. RICO

"Courts look with particular scrutiny at claims for a civil RICO, given RICO's damaging effects on the reputations of individuals alleged to be engaged in RICO enterprises and conspiracies."  Mackin v. Auberger, 59 F. Supp. 3d at 528 (W.D.N.Y.

---

[11]  Further, "the mere absence of prejudice, bad faith, futility, or similar factors is not sufficient to constitute good cause.'" Pedinol Pharmacal, Inc. v. Rising Pharms., Inc., No. CV062120LDWAKT, 2007 WL 9710391, at *2 (E.D.N.Y. Oct. 5, 2007) (quoting Rapture Shipping Ltd. v. Allround Fuel Trading Chemoil B.V., No. 03-CV-738, 2006 WL 3057294, at *2 (S.D.N.Y. Oct. 27, 2006)).

2014) (quoting Spiteri v. Russo, No 12-CV-2780 (MKB/RLM), 2013 WL 4806960, at *45 (E.D.N.Y. Sept. 7, 2013)).  The Court determines that plaintiffs have failed to demonstrate the requirements of sections 1962(c), (d) for the reasons set forth in defendants' submissions.  To that reasoning, the Court adds the following discussion.

### a.  RICO § 1962(c)[12]

### i. Predicate Act

Plaintiffs' proposed amended complaints argue that Pioneer violated § 1962(c).  "To state a claim under § 1962(c), "'a plaintiff must allege (1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity, as well as injury to business or property as a result of the RICO violation.'" Pierce v. Homecomings Fin., LLC, No. 1:17-CV-882(BKS/CFH), 2017 WL 5991750, at *2 (N.D.N.Y. Dec. 4, 2017) (quoting Lundy v. Catholic Health Sys. of Long Island Inc., 711 F.3d 106, 119 (2d Cir. 2013)).  "Racketeering activity consists of the commission of a predicate act." Id. (citation omitted).  "Predicate acts are those that are 'indictable under specified federal statutes . . . as well as certain crimes chargeable under state law.'" Entretelas Americanas S.A. v. Soler, 840 F. App'x 601, 603 (2d Cir. 2020) (summary order), as amended (Jan. 7, 2021) (quoting RJR Nabisco, Inc. v. Eur. Cmty., __U.S.__,136 S. Ct. 2090, 2096 (internal quotation marks omitted)).  Section 1961(1) provides a list of "racketeering"

---

[12] "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c).

activity that constitutes a "predicate act."  Beck v. Prupis, 529 U.S. 494, 497 n.2

(2000).

> Regarding the second element, an "enterprise" includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). To allege an enterprise, a plaintiff must allege an "ongoing organization, formal or informal" and that "the various associates function as a continuing unit."

Israel v. City of Syracuse, No. 5:21-CV-0915(DNH/ML), 2021 WL 4777256, at *4

(N.D.N.Y. Sept. 16, 2021), report and recommendation adopted, No. 5:21-CV-

915, 2021 WL 4773232 (N.D.N.Y. Oct. 13, 2021).

> Regarding the third and fourth elements, to sufficiently allege a "pattern of racketeering activity,"[13] a plaintiff must allege at least two acts of "racketeering activity" that occur within ten years of each other. 18 U.S.C. § 1961(5). "Racketeering activity" refers to the predicate acts necessary to establish a RICO claim and includes extortion. See 18 U.S.C. § 1961(1) (listing predicate acts that constitute a racketeering activity). To qualify as a "pattern" of racketeering activity, the predicate acts "must be from the crimes listed in [Section] 1961(1) and they must be 'related, and ... amount to or pose a threat of continued criminal activity.'" Westester Cnty. Indep. Party v. Astorino, 137 F. Supp. 3d 586, 608 (S.D.N.Y. 2015) (emphasis in original) (quoting Cofacredit, S.A. v. Windsor Plumbing Supply Co., 187 F.3d 229, 242 (2d Cir. 1999)). "'It is this factor of continuity plus relationship which combines to produce a pattern.'" H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 239 (1989) (emphasis in original) (quoting Sedima, 473 U.S. at 496 n.4).

Israel, 2021 WL 4777256, at *5.

> Plaintiffs contend in their motions to amend that Pioneer engaged in "predicate

acts of money laundering" by providing necessary approvals and encouraging Mann to

---

[13] "To meet this so-called 'continuity' requirement, a 'plaintiff in a RICO action must allege either an open-ended pattern of racketeering activity (i.e., past criminal conduct coupled with a threat of future criminal conduct) or a closed-ended pattern of racketeering activity (i.e., past criminal conduct extending over a substantial period of time).'" Grace Int'l Assembly of God v. Festa, 797 F. App'x 603, 605 (2d Cir. 2019) (summary order) (quoting First Capital Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 180 (2d Cir. 2004)).

transfer money from the tax accounts.  See Dkt. No. 153-3 at 100; Dkt. No. 153-2 at 96-98.  However, as Pioneer argues, plaintiffs have not pleaded the elements of money laundering under Section §§ 1956, 1957.  A defendant commits money laundering when

> knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity – knowing that the transaction is designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity.

18 U.S.C. § 1956(a)(1)(B)(i).  To state a claim for money laundering under RICO,

> a plaintiff must show that "defendant (1) engaged in a financial transaction that in fact involved the proceeds of a specified unlawful activity, (2) knew that the transaction involved such proceeds, and (3) either intended to promote the carrying on of a specified unlawful activity or knew the transaction was designed to conceal or disguise the nature, location, source, ownership, or control of the proceeds."

Allstate Ins. Co. v. Abramov, 16-CV-1465-AMD/SJB, 2020 WL 1172697, at *7 (E.D.N.Y. Feb. 21, 2020), report and recommendation adopted, 2020 WL 1166498 (E.D.N.Y. Mar. 11, 2020) (quoting All State Ins. Co. v. Afanasyev, 12-CV-2423 (JBW/CLP), 2016 WL 1156769, at *9 (E.D.N.Y. Feb. 11, 2016)).  Section 1956(c)(7)(a) defines unspecified unlawful activity as "any act or activity constituting an offense listed in section 1961(1) of this title except an act which is indictable under subchapter II of chapter 53 of title 31."  What the proposed amended complaints lack is any allegation that a specified unlawful activity generated the proceeds involved in the transactions.

Plaintiffs argue in their joint reply that the unspecified unlawful activity they allege is not theft or money laundering, rather, it is "a fraudulent scheme – admitted to by Mann – whereby he, through his payroll companies from about 2014 through September 2019, induced [Southwestern] and thousands of employers throughout the

country to entrust MyPayroll and Cloud Payroll with payroll and tax payments." Dkt. No. 164 at 4.  Further, plaintiffs allege that in furtherance of the scheme, Mann "[a]lso caused Cloud Payroll to induce NatPay to facilitate the wire transfer of tax funds from employers' accounts to the payroll accounts at Pioneer Bank." Dkt. No. 164 at 4-5. They argue -- for the first time in their joint reply -- that wire fraud in violation of 19 U.S.C. § 1343 often serves as the "specified unlawful activity under the money laundering statute." Id. at 5.  Plaintiffs contend that the "detailed allegations concerning the nature and mechanics of the fraudulent scheme, as well as the use of wires in furtherance of the scheme, are sufficient under Rule 9(b)."  Id.  "That the PACs do not describe each fraudulent communication by Mann or the Mann Entity Defendants over the course of six years is of no moment under these circumstances."  Id. at 5 (citing Lewis Fam. Grp. Fund LP v. JS Barkats PLLC, 16-CV-5225, 2021 WL 1203383, at *7 (S.D.N.Y. Mar. 31, 2021) (additional citations omitted).

"Courts have repeatedly warned against attempts by plaintiffs 'to mold their claims to the RICO form even though their injuries do not fall within those intended to be addressed by the Act.'" Bigsby v. Barclays Cap. Real Est., Inc., 170 F. Supp. 3d 568, 575 (S.D.N.Y. 2016) (quoting Lefkowitz v. Reissman, No. 12-CV-8703 (RA), 2014 WL 925410, at *4 (S.D.N.Y. Mar. 7, 2014) (additional citation omitted)). "The alleged predicate act[] of . . .  wire fraud 'merit[s] particular scrutiny,' lest the courts allow the RICO statute "to federalize garden-variety state common law claims," Id. (quoting Gross v. Waywell, 628 F.Supp. 2d 475, 483 (S.D.N.Y.2009) (additional citations omitted); Faryniarz v. Ramirez, No. 3:13-CV-01064 (CSH), 2015 WL 6872439, at *8 (D. Conn. Nov. 9, 2015)(citations omitted) ([a]llegations merit particular scrutiny where the

predicate acts are mail and wire fraud, and where the use of mail or wires to communicate is not in and of itself illegal, unlike other predicate acts such as murder or extortion.").

What plaintiffs miss with their argument is that what is fatal is not that the proposed amended complaints fail to describe "all" of the fraudulent communications; rather, the failure to plead "proof of material representation" with sufficient "particularity." Williams, 889 F.3d at 124. It is well settled that "a plaintiff must: '(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent.'" Pierce, 2017 WL 5991750, at *3 (quoting Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 187 (2d Cir. 2004)).

In their reply, plaintiffs cite to the portions of the proposed amended complaints they purport support a claim for wire fraud being a predicate act.  See Dkt. No. 164 at 5 (citing Dkt. No. 155-2 ¶¶ 83-93, 228-77, 469-86; Dkt. No. 153-2 at §§ 77-89, 230-78, 461-77). However, as defendants make clear, the proposed amended complaints never set forth a claim that the predicate act is wire fraud.  Noticeably absent from both Southwestern's Proposed Third Amended Complaint and NatPay's Proposed Amended Complaint is any reference of "wire fraud" or § 1343.

Indeed, their motions to amend also do not identify wire fraud as a predicate act. It is not until the parties' reply that this argument is raised.  Even if they had raised it in their initial motions to amend, is well-established that parties cannot raise new claims or theories in their motion papers that were not included in the underlying proposed

amended pleading.  Further, "[i]t is hornbook law that new arguments and evidence are not properly presented in a reply memorandum of law."  Barrows v. Brinker Restaurant Corp., 5:19-CV-166 (GLS/ATB), 2020 WL 1511077, at *2 (N.D.N.Y. Mar. 30, 2020) (citing Zirogiannis v. Seterus, Inc., 221 F. Supp. 3d 292, 298 (E.D.N.Y. 2016), aff'd, 707 F'Appx 724 (2d Cir. 2017)).

To demonstrate wire fraud, a plaintiff must show "[(]1) 'a scheme to defraud'; [(]2) 'money or property as the object of the scheme'; and [(]3) 'use of the wires to further the scheme.'"  United States v. Jergensen, 8:16-CR-235 (BKS), 2017 WL 11458078 (N.D.N.Y. June 14, 2017) (quoting United States v. Shellef, 507 F.3d 82, 107 (2d Cir. 2007).  "[A] claim of wire fraud under the RICO statute must allege with specificity the alleged numerous uses of wires in furtherance of the fraud."  Segarra v. Messina, 153 F.R.D. 22, 27 (N.D.N.Y.), on reconsideration, 158 F.R.D. 230 (N.D.N.Y. 1994) (citing Crabtree v. Tristar Auto. Grp., Inc., 776 F. Supp. 155, 165 (S.D.N.Y. 1991)).

> Where as here, the [proposed amended complaint] sounds in the predicate act[] of . . .  wire fraud, the conduct of the defendant that allegedly constitutes fraud must be pleaded with particularity under Rule 9(b) of the Federal Rules of Civil Procedure. See Curtis v. Law Office of David M. Bushman, Esq., 443 Fed.Appx. 582, 584 (2d Cir. 2011) ("[A]ll allegations of fraudulent predicate acts[ ] are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b)."); Spiteri v. Russo, No. 12 cv 2780 (MKB) (RLM), 2013 WL 4806960, at *49 (E.D.N.Y. Sept. 7, 2013) (citing same). Thus, allegations of predicate mail and wire acts should (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent. Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993) (citing Cosmas v. Hassett, 886 F.2d 8, 11 (2d Cir. 1989)); see Spool v. World Child Int'l Adoption Agency, 520 F.3d 178, 185 (2d Cir. 2008). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally," FED. R. CIV. P. 9(b); however, a complaint "must nonetheless allege facts which give rise to a strong inference that the defendants possessed the requisite fraudulent intent." Cosmas v. Hassett, 886 F.2d at 12-13.

23

<u>Faryniarz v. Ramirez</u>, No. 3:13-CV-01064 (CSH), 2015 WL 6872439, at *7 (D. Conn. Nov. 9, 2015).

In citing case law to support their argument that such specificity is not required, plaintiffs cite cases involving multiple defendants, wherein the Court acknowledged that Rule 9(b) does not require "the temporal or geographic particulars of each mailing or wire transmission made in furtherance of the fraudulent scheme be stated with particularity," rather than plaintiff "delineate, with adequate particularity in the body of the complaint, the specific circumstances constituting the overall fraudulent scheme." Dkt. No. 164 at 5 (citing <u>Lewis Fam. Grp. Fund LP v. J S Barkats PLLC</u>, 16-CV-5255 (AJN/JLC), 2021 WL 1203383,at *7 (S.D.N.Y. Mar. 31, 2021) (quoting <u>Ctr. Cadillac, Inc. V. Bank Leumi Trust Co.</u>, 808 F. Supp. 213, 2209 (S.D.N.Y. 1992)).  These cases are not inconsistent with the Court's holding here because, although the cited cases suggest that Rule 9(b) may not require that the complaint specify the time, place, and content of *each* communication, these cases do not dispute that Rule 9(b) still requires that the allegations of wire fraud be pleaded with particularity.  Indeed, the Court is not requiring that the complaint set forth every single communication.  However, although the proposed amended complaints set forth various specific communications where Mann sought assistance from Pioneer employees involving the transfer of funds out of 0212 and 2440 accounts to "cover" overdrafts, none of them detail how Mann induced Southwestern and NatPay through a fraudulent scheme.  Thus, the proposed amended complaints' descriptions of the "fraudulent scheme" is insufficient.  Accordingly, the Court finds that plaintiffs' proposed amended complaints fail to meet the heightened

pleading requirements for Rule 9(b) insofar as they seek to plead a claim for predicate acts of money laundering with the "specified unlawful activity" being wire fraud.

### ii.  Conducting or Directing Enterprise

The Court concludes that plaintiffs have failed to sufficiently plead a RICO claim under section 1962(c) for failure to demonstrate that Pioneer meets the "operation and management" test for the reasons set forth in Pioneer's brief.  See Dkt. No. 160 at 25-31.  To that reasoning, the Court adds the following assessment.

"'[F]or RICO purposes, simply establishing the presence of an enterprise is not enough.'" Cassidy v. Madoff, No. 8:18-CV-00394 (BKS/DJS), 2018 WL 5792786, at *11 (N.D.N.Y. Nov. 5, 2018) (quoting First Capital Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 175 (2d Cir. 2004)).

> A plaintiff "must also allege that the defendants 'conduct[ed] or participate[d], directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.'" Id. at 175–76 (alterations in original) (quoting 18 U.S.C. § 1962(c)). This means that the RICO defendant must have "participated in the operation or management of the enterprise." Id. at 176 (quoting Azrielli v. Cohen Law Offices, 21 F.3d 512, 521 (2d Cir. 1994)). "In this Circuit, the 'operation or management' test typically has proven to be a relatively low hurdle for plaintiffs to clear," "especially at the pleading stage."[14] Id. at 176. "Ultimately, however, it is clear that the RICO defendant must have played 'some part in directing [the enterprise's] affairs.'" Id. (alteration in original) (quoting De Falco v. Bernas, 244 F.3d 286, 310 (2d Cir. 2001)). "Under this standard, a person may not be held liable merely for taking directions and performing tasks that are 'necessary and helpful to the enterprise,' or for providing 'goods and services that ultimately benefit the enterprise.'" Flexborrow LLC v. TD Auto Fin. LLC, 255 F.Supp.3d 406, 415 (E.D.N.Y. 2017) (quoting U.S. Fire Ins. Co. v. United Limousine Serv., Inc., 303 F.Supp.2d 432, 451-52 (S.D.N.Y. 2004)).

---

[14]   The Court acknowledges that courts in this District have also referred to the "operation and management requirement" as "a very difficult test to satisfy." Dubai Islamic Bank v. Citibank, NA, 256 F. Supp. 2d 159, 164 (S.D.N.Y. 2003).

Id.  Courts hold that "taking directions and performing tasks that are 'necessary and helpful to the enterprise' or for providing 'goods and services that ultimately benefit the enterprise' does not suffice to meet the operation and management requirement.  Id. at 11; see also Rosner v. Bank of China, 528 F. Supp.2d 419, 431 (S.D.N.Y. 2007) ("[The plaintiff]'s sole allegation is that [the defendant bank] provided banking services that aided in the perpetration of the fraudulent scheme.  Regardless of how indispensable or essential such services may have been, rendering a professional service by itself does not qualify as participation in a RICO enterprise."); Dep't of Economic Dev. v. Arthur Andersen & Co., 924 F. Supp. 449, 467-68 (S.D.N.Y. 1996) (holding that an outside professional who knowingly conceals the fraudulent activities of an enterprise cannot be found to have participated in the operation or management of a RICO enterprise); Indus. Bank of Latvia v. Baltic Fin. Corp., No. 93-CV-9032 (LLS), 1994 WL 286162, at *3 (S.D.N.Y. June 27, 1994) (dismissing RICO claim against bank and individual officers on basis that providing "banking services—even with knowledge of the fraud—is not enough to state a claim under § 1962(c)").

Here, plaintiffs contend that Pioneer "facilitated and participated in Mann's money-laundering scheme," Dkt. No. 153-2 at 53, through very frequent wire communications by transferring funds to cover overdrafts, waiving fees from overdrafts, assistance in paying checks, extending credit, "endors[ing] Mann's diversion of the third-party payroll and tax funds from the 0212 Tax Account and 2440 Tax Account to cover the overdrafts" "with no questions asked," and for later transferring funds out of the accounts and freezing Mann's accounts.  Dkt. No. 153-2 at 53, 54, 57, 58.  Plaintiffs further allege that there existed sufficient operation and management insofar as Pioneer

Bank "encouraged" Mann to transfer funds between accounts and then "took control of the payroll accounts" and diverted finds by wiring them to Berkshire Bank and Chemung Canal Trust Company.  Cf. Sundial Int'l Fund v. Delta Consultants, Inc., 923 F.Supp. 38, 41 (S.D.N.Y.1996) (dismissing RICO claims against individual bank officers and banks who held investors' deposits in fraud schemes because the banks did not solicit the investments or direct the affairs of the operation)

However, as stated, RICO liability does not lie "for taking directions and performing tasks that are 'necessary and helpful to the enterprise,' or for providing 'goods and services that ultimately benefit the enterprise.'" Cassidy, 2018 WL 5792786, at *11 (quoting Flexborrow LLC, 255 F.Supp.3d at 415).  Plaintiffs have not alleged any activity that amounts to operation and control as the tasks described amount to "taking directions and performing tasks" that are "necessary and helpful to the enterprise."  Id. Assuming as true that Pioneer knew that Mann was utilizing payroll taxes to "cover" shortages in his other accounts, knowledge of this fraud does not demonstrate that Pioneer participated in the operation or management of the enterprise.  See, e.g., Arthur Andersen & Co., 924 F. Supp. at 467-68.

Accordingly, plaintiffs have failed to sufficiently plead that Pioneer meets the "operation and management" test as required under section 1962(c).

### iii.  Proximate Cause

The Court finds that plaintiffs have failed to sufficiently plead that Pioneer was the proximate cause of their injury for the reasons stated in Pioneer's opposition papers. See Dkt. Nos. 160, 165.  To that reasoning, the Court adds the following assessment.

27

> RICO provides a civil remedy only to those persons injured "by reason of" a defendant's predicate acts. 18 U.S.C. § 1964(c). This requires a showing not only that the defendant's alleged RICO violation was the "but-for" or cause-in-fact of the plaintiff's injury, but also that the violation was the proximate cause. First Nationwide Bank, 27 F.3d at 769 (quoting Holmes v. Securities Investor Protection Corp., 503 U.S. 258, 268, 112 S.Ct. 1311 (1992)). "To show that an injury resulted 'by reason of' the defendant's action . . . the plaintiff must allege . . . that there was a direct relationship between the plaintiff's injury and the defendant's injurious conduct." Id. at 769. "[W]hen factors other than the defendant's [action(s)] are an intervening direct cause of a plaintiff's injury, that same injury cannot be said to have occurred by reason of the defendant's actions." Id.

Amsterdam Tobacco Inc. v. Philip Morris Inc., 107 F. Supp. 2d 210, 218-19 (S.D.N.Y. 2000). "'[I]n the RICO context, the focus is on the directness of the relationship between the conduct and the harm,' and whether the connection is attenuated by substantial intervening factors or third[-]party conduct." Doe v. Trump Corp., 385 F. Supp. 3d 265, 276 (S.D.N.Y. 2019) (quoting Hemi Group, LLC v. City of New York, N.Y., 559 U.S. 1, 12 (2010)). "The 'direct relationship' standard under RICO is stricter than the 'foreseeability' analysis for common-law causation." Zimmerman v. Poly Prep Country Day Sch., 888 F. Supp. 2d 317, 330–31 (E.D.N.Y. 2012) (citation omitted).  The "direct relationship" test is "rigorous and requires dismissal where substantial intervening factors attenuate the causal connection between the defendant's conduct and the plaintiff's injury."  Trump Corp., 385 F. Supp. 3d at 277.

The Court agrees with Pioneer that plaintiffs have failed to sufficiently set forth allegations of proximate cause first because their proposed amended complaints merely recite the legal standards.  See Hollander v. Flash Dancers Topless Club, 173 F. App'x 15, 18 (2d Cir. 2006) ("Merely restating the requirements of RICO in the form of an allegation does not suffice to state a claim without some factual allegation from which proximately caused financial injury may be inferred."); Dkt. No. 153-2 at ¶¶ 466-67, 472;

Dkt. No.155-2 at ¶¶ 474-75, 481.  Secondly, they fail to sufficiently plead proximate

cause because they do not plead that their injuries were proximately caused by Pioneer

rather than by Mann.  Accordingly, the Court concludes that plaintiffs have failed to

sufficiently plead proximate cause for RICO § 1962(c) as Rule 9(b) requires.

### b. RICO § 1962(d): RICO Conspiracy Claim[15]

Section 1962(d) makes it unlawful "to conspire to violate any of the provisions of

subsection (a), (b), or (c) of this section." 18 U.S.C. § 1962(d).   "As for 18 U.S.C. §

1962(d), '[b]ecause the core of a RICO civil conspiracy is an agreement to commit

predicate acts, a RICO civil conspiracy complaint, at the very least, must allege

specifically such an agreement.'" Tymoshenko v. Firtash, 57 F. Supp. 3d 311, 319-20

(S.D.N.Y. 2014) (quoting Hecht v. Commerce Clearing House, Inc., 897 F.2d 21, 25 (2d

Cir.1990)).

As the undersigned has concluded that plaintiff has failed to sufficiently plead the

elements for a RICO § 1962(c) claim, it follows that plaintiffs also have failed to

demonstrate a §1962(d) claim.  See, e.g., Caravella v. Hearthwood Homes Inc., No. 05-

CV-1529 (DRH), 2007 WL 2886507, at *11 (N.D.N.Y. Sept. 27, 2007) (quoting FD Prop.

Holding v. U.S. Traffic Corp., 206 F.Supp.2d 362, 373 (E.D.N.Y. 2002)

("'[B]ecause the RICO conspiracy claim is dependent upon the Section 1962(c) RICO

claim, dismissal of that claim mandates the dismissal of the RICO conspiracy claim.'").

---

[15] "It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."  18 U.S.C. § 1962(d).

Caravella v. Hearthwood Homes Inc., No. 05-CV-1529 DRH, 2007 WL 2886507, at *11 (N.D.N.Y. Sept. 27, 2007).  Accordingly, plaintiffs' proposed § 1962(d) conspiracy claims must fail.

### c. State Law Claims

### i. Aiding and Abetting Fraud

Next, plaintiffs' proposed amended complaints seek to add claims for aiding and abetting fraud.  The Court denies plaintiffs' motions to amend as it relates to the proposed aiding and abetting fraud claims for the reasons set forth in Pioneer's brief.  To those arguments, the Court adds the following assessment.

Plaintiffs allege that from "about 2014 through September 2019, Mann engaged in a fraudulent scheme whereby he induced third-party employers to enter into agreements pursuant to which Mann's payroll companies would . . . process payroll and tax payments."  Dkt. No. 153-2 at ¶ 492.  Further, plaintiffs contend that from 2017 to September 2019, "Mann engaged in a fraudulent scheme whereby he, through Cloud Payroll, induced [Southwestern] to collect third-party tax funds of its employer-clients, knowing his intent to money launder and check kite with those funds." Id. ¶ 493. Plaintiffs contend that Mann "failed to disclose to Plaintiffs that Mann would engage in money laundering by diverting and using the third-party tax funds deposited to the 0212 Tax Account and the 2440 Tax Account, and that Pioneer sanctioned, facilitated, and encouraged these actions."  Id.  Plaintiffs further allege that they "would never have contracted with Cloud Payroll . . . had they known that Mann would engage in money laundering by diverting and using the third-party tax funds deposited to the 0212 Tax

Account and the 2440 Tax Account, and that Pioneer would sanction, facilitate, and encourage these actions." Id. ¶ 495. They contend that Mann and Pioneer knew that the funds in the 0212 and 2440 were third-party tax funds "and should not be used for any purposes other than paying the tax/treasury funds to the appropriate taxing authorities." Id. ¶ 496. Further, the proposed amended complaints allege that Pioneer knew that Southwestern was collecting tax funds and was "operating under the belief that Mann was not diverting tax funds deposited to the Mann Entity Accounts for purposes other than paying third-party taxes." Id. ¶ 497.

Finally, plaintiffs contend that Pioneer "enabled, facilitated, and provided substantial assistance to Mann in committing fraud by, among other things": (1) "allowing and at times requiring Mann to move the third-party funds in the 0212 Tax Account and the 2440 Tax Account to other Mann Accounts to cover overdrafts"; (2) "allowing and at times requiring Mann to use the third-party funds in the 0212 Tax Account and the 2440 Tax Account to pay down the Valuewise Loan"; (3) "failing to report suspicious activities in Mann's Accounts to regulatory authorities"; (4) "allowing Mann to use the MyPayrollHR and CloudPayroll accounts as collateral for the Valuewise Loan and other loans extended to the Entity Defendants"; (5) "conspiring with Mann to ensure that Southwestern [] continued to transfer its employer-clients' tax funds to the 2440 Tax Account, knowing that Pioneer would use the tax funds to offset any debts of Mann or the Mann Entities to Pioneer; (6) "conspiring with Mann to ensure that third-party employers . . . continued to authorize its payroll service companies to collect, house, and timely remit its tax funds in the 2440 Tax Account, knowing that Pioneer would use the tax funds to reduce any debts of Mann or the Mann Entities to Pioneer,

and to reduce Pioneer's losses; (7) "converting the third-party funds in the 0212 Tax Account and the 2440 Tax Account on and after August 30, 2019"; and (8) "transferring third-party tax funds from the 2440 Tax Account to pay down the Valuewise Loan on or about September 4, 2019."  Dkt. No. 153-2 at 101-102.

To establish liability for aiding and abetting fraud, a plaintiff must plead: "(1) the existence of a primary violation [fraud]; (2) actual knowledge of the violation by the aider and abettor; and (3) substantial assistance."  Ultra Dairy LLC v. Kondrat, 514 F. Supp. 3d 452, 458 (N.D.N.Y. 2021) (citing Kirschner v. Bennett, 648 F. Supp. 2d 525, 533 (S.D.N.Y. 2009)).  To demonstrate that a defendant aided and abetted fraud, a plaintiff must plead the existence of the underlying fraud with particularity. See Krys v. Klejna, 658 F. App'x 1, 5 (2d Cir. 2016) (summary order) (quoting Krys v. Pigott, 749 F.3d 117, 127 (2d Cir. 2014)); Tribune Co. v. Purcigliotti, 869 F.Supp. 1076, 1100 (S.D.N.Y. 1994) ("[T]he requirements of Rule 9(b) apply to allegations of aiding and abetting fraud.").  To plead fraud, a plaintiff must "'[d]etail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent.'"  Eternity Global Master Fund Lts. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 187 (2d Cir. 2004) (quoting Harsco Corp. v. Segui, 91 F3d 337, 348 (2d Cir. 1996)).

Here, the Court acknowledges that Mann pleaded guilty to money laundering and admitted to fraudulent conduct.  Thus, for purposes of reviewing this motion, the Court concludes that plaintiffs sufficiently demonstrated the existence of a primary violation – Mann's underlying fraud.  As detailed above, the proposed amended complaints allege

that Mann and Pioneer knew that the funds in accounts 0212 and 2440 were third-party employer tax funds, that Southwestern was not aware that Mann was using the funds for purposes other than paying the appropriate taxing authorities, and that Pioneer was aware that Mann was using the third-party funds, allowed the misuse, failed to report the misuse, conspired with Mann to continue this conduct "knowing that Pioneer would use the tax funds to offset any debts of Mann or the Mann Entities to Pioneer. See Dkt. No. 153-2 at 100-102. However, even though plaintiffs arguably have demonstrated the first element, because they fail to sufficiently meet the heightened pleading requirements relating to the remaining elements, their claim for aiding and abetting fraud must fail.

"Although the allegation of actual knowledge does not have to be based on defendant's explicit acknowledgment of the fraud, the burden of demonstrating actual knowledge is a heavy one and is subject to the heightened pleading standard of Rule 9(b)." IMG Fragrance Brands, LLC v. Houbigant, Inc., 759 F. Supp. 2d 363, 385 (S.D.N.Y. 2010) (citing Lerner v. Fleet Bank, N.A., 459 F.3d 273, 292-93 (2d Cir. 2006) (additional citations omitted). Here, plaintiffs have not demonstrated actual knowledge; instead, have they plead constructive knowledge. For example, to support their contentions that Pioneer knew that the funds in accounts 0212 and 2440 were third-party payroll tax funds, it points to: (1) the fact that the ACH credits/deposits were "[e]asily identifiable to Pioneer as third-party tax monies because each was labelled 'CLOUDPAYROLL/TAX COL' and included the name of the third-party employer to which payment was associated (Dkt. No. 153-2 ¶325); (2) that Mann told "Pioneer's outside counsel" on September 4, 2019, that "third-party payroll and tax funds were

housed in Mann Entity Accounts and should be released so that the payroll companies would not be rendered worthless" (Id. ¶ 326); (3) e-mails referring to the accounts in question as "the tax account" (Id. ¶ 321) ; (4) that Pioneer "deliberately ignored all the red flags in the Mann Entity accounts" that "evidenced that Mann was engaged in kiting" and failed to "perform[] the customer assessment or monitoring they were required to perform" Id. (¶ 291); (5) that Pioneer allowed Mann to move money from the 0212 account to cover negative balances in other accounts, assisting him in doing so, approving transfers out of accounts 2440 and 0212, and waiving associated overdraft fees (Id. ¶¶ 256-78); (6) requested from Pioneer employees "copies of checks made payable from MyPayrollHR accounts to taxing authorities" where the checks all "clearly indicated that the payment was made from the 0212 Tax Account or 2440 Tax Account on behalf of a specific third-party employer for third quarter taxes."(Id. ¶ 228); (7) e-mails between Mann and Pioneer employees referencing tax payments out of account 2440 (Id. ¶ 224); (8) debits to 0212 account "which identified a third-party employer" and used terms reflecting a third-party tax payment and reflected a third-party tax payment (Id. ¶ 221).

In reply, plaintiffs contend – without providing pin cites to the proposed amended complaints – that the proposed amended complaints "include factual allegations establishing not only constructive knowledge and Pioneer's recklessness, but also that Pioneer had actual knowledge of Mann's fraudulent scheme and provided Mann with substantial assistance in perpetuating this scheme." Dkt. No. 164 at 8.  The Court concludes that plaintiffs have demonstrated Pioneer's constructive knowledge of Mann's fraud or a negligent failure to identify the fraud and take action against it but have not

demonstrated Pioneer's actual knowledge, and, thus, have not met the heightened

pleading standards of Rule 9(b).  See Berdeaux v. OneCoin Ltd., 561 F. Supp. 3d 379,

2021 WL 4267693, at *8 (S.D.N.Y. 2021) (citation omitted) (holding that a bank's

"negligent failure to identify earning signs of fraudulent activity . . . even when such

signs converge to form a veritable forest of red flags" does not suffice to demonstrate

actual knowledge of the fraud); see also Nathel v. Siegal, No. 07 Civ. 10956, 2008 WL

4684171, at *12 (S.D.N.Y. Oct. 20, 2008) ("Even where a bank was on notice of 'red

flags' that indicated certain accounts may have been vehicles for fraudulent activity and

referred the case to its internal fraud unit, the bank had only suspicions but not actual

knowledge of fraud."); Nigerian Nat'l Petroleum, No. 98 Civ. 4960 (MBM), 1999 WL

558141, at *7  (allegations that a bank knowingly or recklessly disregarded several

"badges of fraud" in accounts involving millions of dollars did not give "rise to an

inference, let alone a 'strong inference,' that the bank actually knew of, and participated

in" the fraud); cf. Silvercreek Mgmt., Inc. v. Citigroup., Inc., 248 F. Supp.3d 428, 444

(S.D.N.Y. 2017) (finding that the plaintiff sufficiently pleaded actual knowledge through,

among other things, presenting evidence of e-mails acknowledging the transactions as

fraudulent).

  "Although a bank defendant may provide substantial assistance by failing to act

when it was required to act, '[a]bsent a confidential or fiduciary relationship between the

plaintiff and the aider and abettor, the inaction of the latter does not constitute

substantial assistance warranting aider and abettor liability.'"  Berdeaux, 561 F. Supp.

3d at 417 (quoting Ryan v. Hunton & Williams, No. 99-CV-5938 (JG), 2000 WL

1375265, at *10 (E.D.N.Y. 2000)).  "Put differently, inaction constitutes substantial

assistance for purposes of aiding and abetting liability only when the defendant owes a fiduciary duty directly to the plaintiff." Id. (citing Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d Cir. 2006)).  Here, insofar as plaintiffs seek to allege that Pioneer's failure to report Mann's conduct amounted to aiding and abetting fraud, such claims must fail because Pioneer owed no fiduciary duty to plaintiffs. See id. ("Because Plaintiffs were not [defendant] BNYM [The Bank of New York Mellon Corporation] customers, and because the Complaint has no allegations supporting any other duty running from BNYM to them, BNYM owed Plaintiffs no duty; for that reason, BNYM's alleged failure to take more exhaustive or efficacious measures following its investigation of [defendant] OneCoin does not, as a matter of law, demonstrate that BNYM provided substantial assistance to the fraud.").  Further, "[i]naction on the part of the alleged aider and abettor 'ordinarily should not be treated as substantial assistance, except when it was designed intentionally to aid the primary fraud or it was in conscious and reckless violation of a duty to act.'" Rosner v. Bank of China, No. 06-CV-13562, 2008 WL 5416380, at *5 (S.D.N.Y. Dec. 18, 2008), aff'd, 349 F. App'x 637 (2d Cir. 2009) (quoting Armstrong v. McAlpin, 699 F.2d 79, 91 (2d Cir. 1983)).

As Pioneer cannot be held liable for aiding and abetting fraud due to their failure to act, the Court must assess whether Pioneer's alleged direct involvement is plead sufficiently to allege substantial involvement.  "Substantial assistance occurs 'when a defendant affirmatively assists, or helps conceal, or fails to act when required to do so, thereby enabling the fraud . . . to occur.'" IMG Fragrance Brands, LLC, 759 F. Supp. 2d at 386 (quoting Nathel v. Siegal, 592 F.Supp.2d 452, 470) (additional citation and quotation marks omitted). The relevant question, therefore, is whether plaintiffs have

sufficiently pleaded that the transactions Pioneer performed were atypical or routine. See Berdeaux, 561 F. Supp. 3d at 416 n.35 (citing Berman v. Morgan Keegan & Co., 445 F. App'x 92, 96 (2d Cir. 2012) (summary order) and Heinert v. Bank of Am., N.A., 410 F. Supp. 3d 544 (W.D.N.Y. 2019) ("[P]laintiffs allege that the defendant banks 'assisted' the individual defendants by providing banking services, including making wire transfers, opening accounts, and clearing account holds. Such routine matters, even where they are performed with 'atypical' frequency, are insufficient to support an aiding and abetting claim.")).

The Court agrees with Pioneer that the proposed amended pleadings do not sufficiently plead substantial assistance insofar as the pleaded alleged involvement is conclusory and not sufficiently atypical.  Essentially, plaintiffs argue that Pioneer transferred funds between accounts when Mann requested such assistance, and, at times, "required" Mann to transfer funds from the 0212 and 2440 accounts; assisted Mann with accounts that were overdrawn or negative and waived associated fees; allowed plaintiff to use the 0212 and 2440 accounts as collateral to his loan; failed to report unusual or suspicious activity; and "conspired" with Mann to ensure that Southwestern continued to deposit its third-party employer payroll into the Pioneer accounts in order to later use these funds to offset Mann's debts.  Dkt. No. 153-2 ¶ 498; Dkt. No. 155-2 ¶ 513.

Accepting the allegation that Pioneer was aware that Mann's conduct was fraudulent, as the Court must at this stage, allowing or requesting Mann to transfer funds from accounts 2440 and 0212 to cover overdrafts, plaintiffs' allegations amount to a "but for" argument, "yet allegations of 'but for' causation are insufficient; an alleged

aider and abettor will be liable only where the plaintiff's injury is a direct or reasonably foreseeable result of the defendant's conduct." Rosner v. Bank of China, No. 06-CV-13562, 2008 WL 5416380, at *5 (S.D.N.Y. Dec. 18, 2008), aff'd, 349 F. App'x 637 (2d Cir. 2009). As pleaded, plaintiffs' proposed amended complaints establish that Mann used Pioneer's accounts "as vehicles for conducting . . . fraud" but provide "no support for [their] argument that [Pioneer]'s provision of banking services, without more, constitutes substantial assistance sufficient to state a claim against [Pioneer] for aiding and abetting fraud." Id. at 13.

Accordingly, as plaintiffs have not sufficiently pleaded with particularity the elements of actual knowledge and substantial assistance, their proposed aiding and abetting fraud claims cannot proceed.

### ii. Aiding and Abetting Conversion

Next, plaintiffs seek to amend their complaints to plead a claim for aiding and abetting conversion. The Court denies plaintiffs' motions to amend as it relates to the proposed aiding and abetting conversion claims for the reasons set forth in Pioneer's brief. See Dkt. No. 160. To those arguments, the Court adds the following assessment.

Pioneer argues that plaintiffs' aiding and abetting claims are "impermissibly duplicative" of their conversion claims. Dkt. No. 160 at 43. In reply, plaintiffs argue that the conversion claims are plead in the alternative "which is permitted under FRCP 8(a)(3) and is required at this juncture." Dkt. No. 164 at 7.

First, the proposed amended pleadings do not make at all clear that plaintiffs intended to plead aiding and abetting conversion in the alternative. See Dkt. Nos. 153-

2; 155-2.  Further, plaintiffs cite no authority for this contention and do not explain how they can alternatively plead conversion and aiding and abetting conversion against the same defendants.  As Pioneer cites, "[t]he purpose of an aiding and abetting claim is to draw in defendants who would not be liable on the main . . . claim but who are alleged to have actual knowledge of the [alleged underlying tort] and substantially assisted it." 380544 Canada, Inc. v. Aspen Tech., Inc., 633 F. Supp. 2d 15, 36 (S.D.N.Y. 2009).  As plaintiffs have already pleaded conversion claims in their operative pleadings and have failed to show why their proposed aiding and abetting claims are not duplicative of their conversion claims or plead in the alternative, nor provided sufficient support for an argument that such claims can be plead in the alternative, their proposed aiding and abetting conversion claims may not proceed.

### iii.  Gross Negligence

NatPay seeks to amend its fourth cause of action from a claim of negligence to "Negligence/Gross Negligence." See Dkt. No. 155-3 at 98-101; Dkt. No. 155-2 at 85-88. For the reasons set forth in Pioneer's opposition brief, dkt. no. 160 at 46-47, the Court agrees with Pioneer insofar as it argues that its alleged noncompliance with BSA, AML, or other banking regulations or statutes cannot serve as the basis for a negligence claim.  As NatPay's proposed amended complaint seeks to add factual allegations to support a gross negligence claim based upon allegations that Pioneer's actions were not in compliance with "federal and state law" and their various "duties," Dkt. No. 155-2 at 86, the Court declines to permit NatPay to amend its complaint to change its claim for negligence to one for gross negligence.

### iv. Unjust Enrichment: Money Had/Received

The Court finds that NatPay has demonstrated good cause to amend its complaint to amend its unjust enrichment claim.   Pioneer's general objection to this claim does not suffice.  Dkt. No. 160 at 45.  As NatPay contends that it was not aware that the tax funds were not paid to the taxing authorities until discovering this information through the discovery process, they have demonstrated good cause to amend to add this claim.  Furthermore, NatPay has demonstrated that the added allegations in the claims are sufficiently "directly related" to their existing unjust enrichment claim.  Accordingly, NatPay's motion to amend is granted to the very limited extent that it will be permitted to amend its claim for unjust enrichment as set forth in the proposed amended complaint, dkt. no. 155-2 at 88-89, without any other changes made.  Accordingly, NatPay will file and serve an amended complaint containing these amendments, but no other changes, within fourteen days of the filing date of this Memorandum-Decision & Order.

### v.  Further Leave to Amend

The Court notes that plaintiffs request of the Court the following:

> [t]o the extent the Court finds that Plaintiffs' claims lack specificity in any regard, Plaintiffs can promptly cure any issues and respectfully request that the Court permit Plaintiffs leave to do so.  Pioneer's suggestion that Plaintiffs should not be given leave to amend is unwarranted, since Pioneer merely challenges the sufficiency of the allegations.

Dkt. No. 164 at 8 n.5.  It is not clear whether plaintiffs' request is limited to their proposed aiding and abetting conversion claims or seeks to cover the entirety of the proposed amended complaints.  Although contained in a footnote in the section specific

40

to aiding and abetting claims, the language of the request is general and can be read to apply to all of the proposed claims.  Whether plaintiffs intended their requests to be limited to the aiding and abetting claims or had a more expansive approach in mind, the Court declines plaintiffs' invitation.  Plaintiffs had ample opportunity to craft their motions to amend and proposed amended pleadings – indeed, the proposed amended complaints are 104 (Southwestern) and 98 pages long (NatPay).  To the extent plaintiffs suggest that they can "promptly cure any issues," such a proposal does not cure the defects in the motions and proposed amended complaints properly and presently before the Court.  Further, plaintiffs' footnote does not demonstrate good cause for further amendments. The Court has determined that plaintiffs have not met their burdens and declines the opportunity to delay this matter even further to sua sponte provide plaintiffs yet another opportunity to amend their complaints.  See Dkt. No. 153-2; Dkt. No. 155-2.


## IV.  Plaintiffs' Letter Motion

As a final issue, the Court acknowledges NatPay's letter motion, filed on behalf of NatPay and Southwestern, "request[ing] the Court's assistance with a dispute regarding the filing of Plaintiffs' anticipated motions to amend their respective complaints."  Dkt. No. 147.  Pioneer responded,[16] and NatPay filed a reply.  See Dkt. Nos. 151, 152. Given that the proposed amended complaints and expert reports have since been filed, with minor redactions, and Pioneer has filed no objections since their filing, the Court finds the level of redactions proper and concludes that no further redactions are needed beyond those already included.  Indeed, in its response, Pioneer noted that it

---

[16]  The Court declines to address any arguments made on the underlying merits of plaintiffs' case. See generally Dkt. No. 151.

will neither move nor insist that Plaintiffs move to file Plaintiffs' proposed amended complaints or expert reports under seal pursuant to Local Rule 5.3.  Pioneer Bank will instead demonstrate in its opposition to Plaintiffs' upcoming motion for leave to amend that Plaintiffs' claims and allegations are legally and factually baseless.

Dkt. No. 152 at 5.  To the extent that Pioneer's response indicates instead that certain documents must be redacted, the Court notes that any document or portion of designated as confidential pursuant to the protective order should be given the protections set forth in the protective order.  Given that plaintiffs have since filed the motions to amend and proposed amended complaints and there has been no objection from defendants or indication that specific portions violate the protective order,[17] it is the Court's understanding that plaintiffs' letter motion seeking the Court's assistance in determining whether the motions to amend and proposed amended complaints need to be filed under seal can be denied as moot.

## V.  Conclusion

Wherefore, for the reasons set forth herein, it is hereby

**ORDERED**, that plaintiff Southwestern's motion to amend the complaint (Dkt. Nos. 153) is **DENIED**; and it is further

**ORDERED**, that plaintiff NatPay's motion to amend the complaint (dkt. no. 155) is **GRANTED**, to the limited extent that NatPay is permitted to amend its claim for Unjust Enrichment as set forth herein, and is otherwise **DENIED**; and it is further

**ORDERED,** that within fourteen (14) days of the filing date of this Memorandum-Decision & Order, NatPay is to file and serve its amended complaint with the

---

[17] The Court also points plaintiffs to the recent decision denying plaintiffs' motion to amend the protective order or "dedesignate" as confidential certain discovery disclosures.  See Dkt. No. 192.

amendments to the unjust enrichment claim, as set forth in the proposed amended complaint (dkt. no. 155-2 at 88-89), and no further amendments made; and it is further

**ORDERED**, that insofar as plaintiffs' joint reply is seeking further opportunity to amend NatPay's proposed amended complaint and Southwestern's proposed third amended complaint (dkt. no. Dkt. No. 164 at 8 n.5), that request is **DENIED**;

**ORDERED**, that plaintiff NatPay's letter motion (Dkt. No. 147) is **DENIED AS MOOT**; and it is further

**ORDERED**, that this Memorandum-Decision & Order be served on all parties.

**IT IS SO ORDERED**.

Dated: September 12, 2022
      Albany, New York

Christian F. Hummel
U.S. Magistrate Judge