**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

━━━━━━━━━━━━━━━━━━━━━━━━━

SOUTHWESTERN PAYROLL SERVICE,
INC., et al.

|  |  |  |
|---|---|---|
| | Plaintiffs, | 1:19-CV-01349 |
| v. | | (FJS/CFH) |

PIONEER BANK, et al.,

|  |  |
|---|---|
| | Defendants. |

━━━━━━━━━━━━━━━━━━━━━━━━━

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| Cooper, Erving Law Firm<br>39 North Pearl Street, 4th Fl.<br>Albany, New York 12207<br>Attorneys for plaintiff Southwestern Payroll<br>Service, Inc. | MICHAEL A. KORNSTEIN, ESQ. |
| Baum Glass Jayne Carwile & Peters PLLC<br>401 S. Boston Avenue, Ste. 2000<br>Tulsa, Oklahoma<br>Attorneys for plaintiff Southwestern Payroll<br>Service, Inc. | ANDREW JAYNE, ESQ. |
| Greenberg Traurig, LLP<br>54 State Street, 6th Fl.<br>Albany, New York 12207<br>Attorneys for intervenor plaintiff National<br>Payment Corporation | CYNTHIA E. NEIDEL, ESQ. |
| DLA Piper LLP<br>1251 Avenue of the Americas<br>Ste 27th Floor<br>New York, New York 10020<br>Attorneys for defendant Pioneer | ROBERT J. ALESSI, ESQ. |

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

**MEMORANDUM-DECISION & ORDER**

Presently before the Court is a motion by plaintiff Southwestern Payroll Service, Inc. ("Southwestern") and Intervenor-Plaintiff National Payment Corporation ("NatPay") seeking an order permitting them to take four additional depositions pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P.") 26(b), 30(a)(2).  <u>See</u> Dkt. No. 178. Defendants opposed the motion.  <u>See</u> Dkt. No. 180.  Plaintiffs replied.  <u>See</u> Dkt. No. 182.

## I. Background[1]

It is no secret to the Court, or anyone who reads the briefs in the many discovery motions[2] filed in this action, that counsel for parties have a less than amicable relationship.  Despite being seasoned attorneys, they appear unable to work out many aspects of routine discovery without Court intervention and significant use of the Court's resources.

As to the instant motion, in July 2021, plaintiffs deposed four current and four former Pioneer employees.  Plaintiffs contend that, due a "technical issue" with Pioneer's discovery, "that had caused Pioneer to fail to produce thousands of documents . . . [T]he parties agreed that Plaintiffs would identify witnesses for a first round of depositions, and Pioneer would prioritize its forthcoming productions based on those witnesses."  Dkt. No. 178-4.  In an August 6, 2021, e-mail to defendants, plaintiffs

---

[1]  The claims underlying plaintiffs' complaint are well-known to the parties and will not be repeated here. For details regarding the bases of plaintiffs' action, reference is made to the second amended complaint and the "preliminary statement" in plaintiffs' brief.  <u>See</u> Dkt. No. 72; Dkt. No. 178-4 at 4.
[2] In addition to this motion, there has been one recently decided and another discovery motion still pending before this court.  <u>See</u> Dkt. Nos. 178, 179, 186.

identified and advised defendants of their desire to depose thirteen current or former Pioneer employees.  In response, on August 18, 2021, Pioneer informed plaintiff it opposed more than ten depositions.

On September 15, 2021, the Court held a conference to address a variety of discovery issues.  See Text Min. Entry dated Sept. 15, 2021.  As relevant here, the Court granted plaintiff leave to depose five additional Pioneer witnesses and a nonparty witness.  See id. Plaintiffs chose to depose Trudy Seeber, David Hunn, Chief Administrative Officer and General Counsel Frank Sarratori, and Sandra Dedrick.  See Dkt. No. 178-4 at 8.  All but Ms. Seeber's deposition occurred in December 2021, as Ms. Seeber's deposition was delayed due to her maternity leave.  See id.

On February 16, 2022, Southwestern asked defendants to consent to further depositions, specifically (1) Pioneer employees (a) CEO/President Thomas Amell, Chief Financial Officer/Executive Vice President Patrick Hughes, and "Deposit & ACH System Expert" Kim Catello; and (2) two non-party, out-of-state witnesses, former CEO of MyPayroll John Reinke[3] and President of Cachet Financial Services Aberash Asfaw.  See Dkt. Nos. 178-4 at 8; 178-2.  Plaintiffs proposed limiting some of the depositions to five hours and for the nonparty depositions to occur over Zoom.  See id. at 9.  Defendants declined to consent, and motion practice followed.  For the reasons that follow, plaintiffs' motion seeking leave to take four additional depositions is granted.

## II. **Legal Standard**

---

3   Plaintiffs no longer seek Mr. Reinke's deposition.  See generally Dkt. No. 182.

Fed. R. Civ. P. 30(a)(2) provides, absent stipulation between the parties, "[a] party must obtain leave of court, which shall be granted to the extent consistent with the principles stated in Rule 26(b)(2), if . . . the deposition would result in more than 10 depositions being taken under this rule or Rule 31 by the plaintiffs or by the defendants . . . ."

> The purpose of Rule 30(a)(2)(A) is to "enable courts to maintain a 'tighter rein' on the extent of discovery and to minimize the potential cost of '[w]ide-ranging discovery' . . . ." Whittingham v. Amherst Coll., 163 F.R.D. 170, 171-72 (D.Mass.1995) (citation omitted). Accordingly, "[t]he mere fact that many individuals may have discoverable information does not necessarily entitle a party to depose each such individual." Dixon v. Certainteed Corp., 164 F.R.D. 685, 692 (D.Kan.1996).

Atkinson v. Goord, No. 01 CIV. 0761 LAK/HBP, 2009 WL 890682, at *1 (S.D.N.Y. Apr. 2, 2009); see also Walters v. T&D Towing Corp., No. CV 17-0681 (AKT), 2020 WL 7024350, at *1 (E.D.N.Y. Nov. 27, 2020) (citation omitted) (same).

The factors the Court considers in determining whether to permit a party to conduct greater than ten depositions include: (1) "whether the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive"; (2) "the party seeking the discovery has had ample opportunity to obtain the information by discovery in the action"; or (3) "the proposed discovery is outside the scope permitted by Rule 26(b)(1)." FED. R. CIV. P.(b)(2)(C). "A party that has exhausted the allotted depositions and specifically named those additional individuals it wishes to depose must also make a particularized showing of why the discovery is necessary." Gen. Elec. Co. v. Indem. Ins. Co. of N. Am., No. 3:06-CV-232 (CFD), 2006 WL 1525970, at *2 (D. Conn. May 25, 2006) (internal citation and quotation marks omitted); see also Commodity Futures

Trading Comm'n v. Commodity Inv. Grp., Inc., No. 05 CIV. 5741 (HB), 2005 WL

3030816, at *1 (S.D.N.Y. Nov. 10, 2005) ("A court has discretion to allow more than ten

depositions if the party who is seeking discovery has shown why it is necessary.").  "It is

the movant's burden 'to show the need for the additional depositions, but counsel's

judgment about how many depositions it needs is entitled to a good deal of deference.'

However, just because counsel believes a witness 'might have discoverable

information,' does not in and of itself give rise to an unfettered right to depose that

person."  Walsh v. Versa Cret Contracting Co., Inc., No. 21CV5697JMAJMW, 2022 WL

17540352, at *2 (E.D.N.Y. Nov. 16, 2022) (quoting United States v. Town of Oyster Bay,

No. CV-142317 (ADS) (SIL), 2016 WL 11265542, at *1 (E.D.N.Y. May 10, 2016) and

citing Commodity Futures Trading Comm'n v. Commodity Ind. Grp., Inc., No. 05 civ.

5741 (HB), 2005 WL 3030816, at *1 (S.D.N.Y. Nov. 10, 2005)).


### III.  **Arguments**[4]

At the time of the filing of the instant motion, plaintiffs had conducted thirteen

depositions.  These depositions involved Michael Mann, plus twelve depositions of

Pioneer witnesses, and they were awaiting scheduling of their final Pioneer witness,

who was on maternity leave.  In the instant motion, plaintiffs seek to conduct four further

depositions.  As indicated above, plaitniffs wish to depose: (1) Aberash Asfaw, (2)

Thomas Amell, (3) Patrick Hughes, and (4) Kim Catello.  See Dkt. No. 178-4.  "The

parties are in harmony on a single issue on this current motion: the applicable factors

for the court to consider."  Walsh v. Versa Cret Contracting Co., Inc., No. 21-CV-

---

[4]  The Court's citations to the parties' briefs is to the pagination generated by the Court's electronic filing system, CM/ECF, located at the header of each page.

5697(JMA/JMW), 2022 WL 17540352, at *2 (E.D.N.Y. Nov. 16, 2022).  On nearly all other grounds, they vehemently disagree.  See Dkt. No.s 178, 180, 182.

Plaintiffs argue that the depositions would be neither duplicative nor cumulative, and that the expected testimony is "highly relevant" and cannot be obtained from any other source.  See Dkt. No. 178-4 at 10.  Plaintiffs also argue that the fact that the prior deponents testified to having no knowledge does not mean that the testimony of the proposed deponents would be duplicative, as each deponent has "first-hand, relevant knowledge of significant events."  Dkt. No. 182 at 4.  Plaintiffs explain that of the twelve depositions it had completed, each deponent:

> (1) had significant contact with Mann; (2) assisted Mann in activities that were clearly relate to payroll processing; (3) were responsible for, among other things, reviewing Pioneer Bank accounts; (4) were involved in opening the Cloud Payroll accounts; and/or (5) were involved in Pioneer's 'set off' of funds from the Cloud Payroll account.

Dkt. No. 178-4 at 5.

Plaintiffs contend that Pioneers' witnesses "have provided contradicting testimony or were unable to provide any testimony at all concerning significant events at Pioneer occurring in late August/early September 2019."  Dkt. No. 178-4 at 11.  Plaintiff further propounds that Pioneer "should not be heard to complain about the requested depositions because . . . Pioneer's interrogatories failed to identify the individuals who made the decision to take the third-party tax funds."  Dkt. No. 178-4 at 11.  Plaintiffs further argue that Pioneer "was by law required to know what Mann was doing with his accounts, and that the documents demonstrate that Pioneer employees not only knew what he was doing, but they encouraged and helped him to do it."  Id. at 5-6.  Plaintiffs also indicate that their desire to seek these four depositions is "[p]rimarily as a result of

receiving new information during depositions taken in December[] 2021[.]"  Id. at 6.

They note that it was not until the depositions that they learned "that the decision to 'set

off' the funds was a group decision made by Mr. Sarratori, Mr. Amell, and Mr. Hughes."

Id. at 13.  Plaintiffs further contend that defendants have not produced any documents

"reflecting or relating to Pioneer's decision to set off the funds, including who made the

decision, when it was made, or the facts, if any, on which the decision was based."  Dkt.

No. 178-4 at 13.

Plaintiffs assert that Pioneer will not be prejudiced because, at the time of the

filing of the motion, Pioneer had not completed document production and had only

completed one deposition, and because they are prepared to proceed immediately with

depositions.  See Dkt. No. 178-4 at 11.  Regarding prejudice, plaintiffs question the

veracity and/or reasonableness of Pioneer's alleged expenses relating to the eight

depositions that have been completed and urge the Court to order Pioneer to provide

proof of these expenses.  See id.

Defendants argue that plaintiffs should not be granted leave to take additional

depositions because (1) they would be duplicative and cumulative, (2) would cause

defendants prejudice, and (3) two of the proposed deponents – Tom Amell and Patrick

Hughes – are protected by the Apex Witness Doctrine.[5]  See generally Dkt. No. 180.  In

several iterations of the same argument, defendants lambast plaintiffs, contending that

"there is no credible evidence that anyone at Pioneer knew that Account 2440 was

---

[5]     Defendants also lambast plaintiffs for submitting their motion for additional depositions without
specific references/exhibits of the relevant depositions.  The Court agrees that these deposition
transcripts, in relevant part and with appropriate citations, absolutely should have been submitted in
support of the motion.  Counsel for plaintiffs' statement about confidentiality does not address the issue
when plaintiffs could have sought to have the documents sealed/redacted.  See Dkt. No. 182-1 at 2-3.
Counsel fails to explain why they would have been unable to seek to file the documents under seal.  See
id.

being used by Mann to process third-party payroll[,]" and that "[e]ach of the current and former Pioneer employees already deposed testified that they were unaware that Mann was violating Pioneer's policy (and his own written statements) by using Account 2440 to process thirty-party payroll.  The additional witnesses Plaintiffs seek to depose could only confirm this[.]"  Dkt. No. 180 at 9.  Defendants contend that of the eight Pioneer witnesses plaintiffs deposed in the first round of depositions, "[n]ot a single one of these deponents provided any testimony to support Plaintiffs' fact-free narrative that Pioneer was somehow aware of the original nature of these funds in the hands of other parties, or that Pioneer knew of Mann's illegal activity and took actions to support and encourage it."  Dkt. No. 180 at 9-10.  Defendants cite Mann's deposition testimony, in which he conceded that he "consistently and repeatedly lied to Pioneer" over several years by "overstating his companies' revenue and receivable through the generation of fake invoices"; "submitting falsified documents" to obtain a $42 million line of credit"; never "disclosed to any person at Pioneer" before September 4, 2019, that he "had submitted falsified documents to the bank"; "actively took steps to conceal his check-kiting scheme from Pioneer"; and "provide[d] false explanations for overdrafts" and, to avoid suspicion, "moved funds into the account to cover the overdraft" "by the time he contacted Pioneer[.]"  Dkt. No. 180 at 10.  Defendants contend that plaintiff "squander[ed] the depositions afforded to it under the Federal Rules[.]"  Id. at 13.

Finally, defendants dispute much of plaintiffs' recitation of the depositions, contending that plaintiffs mischaracterize them, and argue the fact that the deponents' "recollections do[] not align with Plaintiffs' preferred narrative is not a basis" upon which further depositions should be permitted.  Dkt. No. 180 at 14-15.  Defendants also argue

8

that the testimony from the depositions that have already occurred – Fogarty, Sarratori, Mann do not conflict with one another.  See id. at 14-17.


## IV.  **Analysis**

### A.  **Duplicative or Cumulative**

Plaintiffs have demonstrated that the four depositions sought are neither duplicative or cumulative, as will be discussed in greater detail below.  The Court further agrees that even if the proposed deponents will be testifying about the same subject matter, same conversations, or are posed the same questions, their experiences, roles, and memories associated with these events likely differ, are unique, and identical information cannot be obtained from another source.


#### 1.  **Aberash Asfaw**

Ms. Asfaw is the President of Cachet who "contracted with MyPayroll/Cloud Payroll to provide ACH services, and was impacted when Pioneer froze the Mann Entity accounts.  Plaintiff contends that on September 4, 2019, Ms. Asfaw's participated in "an extended phone call" with Mr. Amell, Mr. Sarratori, and John Reinke, former CEO of Cloud Payroll, but that despite testifying about this conversation, Mr. Sarratori "had a limited (and self-serving) recollection of the call" which "is established by his testimony." Dkt. No. 182 at 5; Dkt. No. 178-4 at 11-12.

Plaintiffs contend that Ms. Asfaw "will testify that during that call, Mr. Amell and Mr. Sarratori were told in no uncertain terms that Pioneer had frozen accounts that held

third-party payroll and payroll tax dollars, and that the accounts should be unfrozen so that payroll and tax funds could be properly paid."  Dkt. No. 178-4 at 11.

Defendants argue that Ms. Asfaw;s testimony would be duplicative and cumulative because Mr. Sarratori did not testify that he did "not distinctly recall the conversation," but only that he did not recall the specific date.  Dkt. No. 180 at 14. Defendants contend that Mr. Sarratori testified that he recalled a conversation in September 2019 with a Chachet representative who purported to be 'associated' with Michael Mann, that Mr. Amell was in his office, that the Cachet representative told him that "he had a security interest in our accounts[,]" that he told the representative to "provide me with proof of the security interest, we'll take a look at it," but that he did not receive any further communications from the representative.  Id. at 14-15.  Defendants contend that Mr. Sarratori testified that no one on the calls said the funds in those account were payroll or tax funds.

Although Mr. Sarratori testified about the September 4, 2019, telephone conversation, plaintiffs have presented a likelihood that his recollection differs and conflicts with that of Ms. Asfaw's.  See Dkt. No. 182 at 5.  Plaintiffs contend that Ms. Asfaw will likely testify that Pioneer representatives were informed on that call that the accounts contained payroll and payroll tax dollars, whereas Mr. Sarratori testified that a Chachet representative told him that it "had a security interest" in the accounts.  Dkt. No. 178-4 at 11-12; Dkt. No. 180 at 14.  It is difficult to say that the testimony would be duplicative and cumulative where plaintiffs seek to compare the Pioneer witness' recollection against a non-Pioneer witness' recollection where there is apparent evidence that their recollections of the same conversation differ significantly.  Further,

Mr. Sarratori could not recall the exact date of this phone call, and plaintiffs suggest that the date of the call is relevant as the parties dispute when Pioneer made the determination to off-set the funds.  Compare Dkt. No. 180 at 13-15 with Dkt. No. 182 at 5.  In sum, plaintiffs have demonstrated that Ms. Asfaw's testimony is relevant and is neither duplicative or cumulative.  Accordingly, plaintiffs are permitted to take her deposition.

### 2. **Tom Amell**

Plaintiffs argue that Mr. Amell's testimony is warranted as Pioneer has produced no documents "reflecting or relating to Pioneer's decision to set off the funds, including who made the decision, when it was made, or the facts, if any, on which the decision was based."  Dkt. No. 178-4 at 13.  Plaintiffs provide that Pioneer contended that Mr. Sarratori directed the set off, assisted by Mr. Hughes and Mr. Hunn, but were not then informed that Mr. Amell was involved in making the determination with Mr. Sarratori and Mr.Hughes on September 4, 2019.  Dkt. No. 178-4 at 12.  In July 2021, through deposing Pioneer Senior Executives Joseph Fleming and Ellen Fogerty – who testified that they "were not involved in the decision to 'set off' the funds" and had "no knowledge regarding much of anything around the time Mann's fraud was exposed and Pioneer seized the payroll tax funds" – plaintiffs contend they learned that Mr. Amell was present and that the set off "was a group decision made by Mr. Sarratori, Mr. Amell, and Mr. Hughes."  Id. at 13.  Plaintiffs note that Ms. Fogerty's testimony regarding that meeting is in conflict with the testimony from Mr. Sarratori, and given that Mr. Amell was said to be present in that meeting, his testimony is needed to resolve the conflict.  Id.  Plaintiffs

contend that because "Mr. Sarratori claims not to recall what was said on the [September 4, 2019,] call, and does not recall speaking to Mr. Reinke, Mr. Amell's testimony is critical." Id. at 14.

Further, plaintiffs proffer several other reasons as to why Mr. Amell's testimony is needed. First, plaintiffs note that Mr. Amell received an e-mail from Mr. Mann on September 3, 2019, "indicating that there would be millions of dollars deposited in the 'tax account' the following day." Dkt. No. 178-4 at 14. Although Mr. Flemming and Mr. Sarratori "also received the email," neither "could recall receiving it or anything about it." Id. Plaintiffs seek to depose Mr. Amell about this e-mail "particularly since shortly after receiving it he decided to seize the third-party tax funds." Id. at 14. Second, plaintiffs wish to ask Mr. Amell about a September 4, 2019, meeting he attended with Mr. Mann, Mr. Mann's attorney, Mr. Sarratori, Mr. Hughes, and Pioneer's outside counsel. Id. Plaintiffs provide that Mr. Mann testified that he told Pioneer's outside counsel "that payroll and payroll tax funds were frozen in his accounts at Pioneer, and indicated that Pioneer should unfreeze the accounts or the payroll companies would implode." Id. Because Mr. Sarratori "testified that he does not remember who said what at the meeting, but . . . that 'someone' told Mann that Pioneer was seizing the funds in the Mann Entity accounts[,]" there is an inconsistency between Mr. Mann's testimony and Mr. Sarratori's testimony such that "Mr. Amell's recollections of this meeting" are significant. Id. at 14-15.

Defendants argue that Mr. Amell's testimony would be duplicative of Mr. Sarratori's testimony and argue that plaintiffs' arguments are inaccurate. See Dkt. No. 180 at 15-16. Defendants contend that Mr. Sarratori testified that the setoff decision

occurred on September 4, 2019; "explained the considerations taken into account in making that decision"; and testified that Ms. Catello and Carol Hayden "manually performed the setoff at the direction of David Hunn."  Dkt. No. 180 at 16.  They further dispute plaintiffs' claims that Ms. Fogarty's testimony conflicts with Mr. Sarratori's.  See id. at 16.  Defendants state that Ms. Fogarty "testified that David Blessing commented that he had not heard back from Mr. Mann at that [September 4, 2019,] meeting[,]" but contend that "[T]he mere fact that [Ms. Fogarty] does not recall other conversations that may have occurred does not contradict the testimony of Mr. Sarratori, who did recall those conversations." Id.

Inasmuch as plaintiffs seek to question Mr. Amell about the September 4, 2019, meeting involving Mr. Mann, Mr. Mann's attorney, Mr. Sarratori, Mr. Hughes, Mr. Amell, and Pioneer's outside counsel, defendants contend that "Mann specifically testified that no employees of Pioneer were involved in that conversation" and stated that "he had little direct communication with Pioneer employees on any topic, as he communicated with Pioneer 'through lawyers.'"  Dkt. No. 180 at 16-17.  Similarly, regarding the September 9, 2019, meeting between Pioneer and representatives from Berkshire Bank and Capital Bank, Pioneer argues that it did not "'indicate[] that they were still considering how to apply the $15.8 million'" but that the decision to perform the set off was made on September 4, 2019," and although Mr. Sarratori testified that he did not know whether "this decision had been communicated to Berkshire and Capital at that point," he "in no way indicated that Pioneer told these banks it was 'still considering' whether to perform the overdraft recovery/set off, as Plaintiffs claim."  Id. at 17.  Thus, Pioneer argues that Mr. Amell's testimony on this would be duplicative.  See id.

Although plaintiffs seek to question Mr. Amell on the same topics as other witnesses, such information is not available from other sources nor is it duplicative or cumulative because Mr. Amell would be testifying regarding his own specific and unique involvement, experiences, and recollection.  Although such differences would not justify additional depositions in every case, see, e.g., Atkinson v. Goord, No. 01 CIV. 0761 LAK/HBP, 2009 WL 890682, at *3 (S.D.N.Y. Apr. 2, 2009), it is warranted under the facts and circumstances presented here.  Mr. Amell contended that he was involved in the collective decision to perform the set-off of funds.  See Dkt. No. 182 at 5 (citing Amell Decl.).  Plaintiffs present evidence that Mr. Amell received Mr. Mann's e-mail regarding millions of dollars being deposited into a "tax account," and responded to this email by referring to Mr. Mann as a "criminal."  Dkt. No. 182-11.  This e-mail may reflect Mr. Amell's personal knowledge about the contents of the two Mann accounts in question.  As such information is relevant to plaintiffs' theory of the case and there is no apparent alternative source of this identical information, plaintiffs may depose Mr. Amell.

### 3.  **Patrick Hughes**

Plaintiffs next argue that Mr. Hughes' testimony is necessary and not duplicative or cumulative.  Specifically, plaintiffs contend that depositions that have occurred thus far revealed that Mr. Amell and Mr. Hughes declared that they collectively, with Frank Sarratori, decided to seize the funds in question.  See Dkt. No. 182 at 4.[6]  Plaintiffs

---

[6]  Plaintiffs are strongly advised that any future motions must be accompanied with pin citations to the record and copies of the documents they reference.  Although there are citations to records sprinkled throughout the brief, citations do not follow every allegation or statement, and this has created a burden for the Court.  It is not the Court's duty to search the record to find the facts, quotations, or similar that plaintiffs rely on to support their arguments.  Further, if the documents cited are part of discovery and not filed with the Court, it makes it impossible for the Court to verify the parties' statements.  As one example, plaintiffs provide, "[i]t is undisputed that, on September 4, 2019, Amell and Sarratori participated in a

argue that Mr. Hughes testimony would be neither duplicative nor cumulative because Mr. Sarratori was unable to answer when the decision to direct the set-off occurred and testify about the facts upon which the determination was based.  See Dkt. No. 178-4 at 16.  Plaintiffs suggest that it was Mr. Sarratori's deposition that alerted them to the fact that Mr. Hughes was involved in the decision to set-off the funds.  However, defendants argue that the interrogatory response provided that Mr. Sarratori directed the set off, but consulted and worked on that decision "primarily with Mr. Hughes . . . and David Hunn[.]"  Dkt. No. 180 at 22.

Regarding the 2019 FBI interview about which plaintiffs seek to ask of Mr. Hughes, defendants argue that Mr. Sarratori "testified definitively . . . that Pioneer did not 'have any idea that Michael Mann was housing payroll and payroll tax dollars for his payroll clients in accounts 0212 and 2440, before . . . September 30th, 2019[,]" and no Pioneer employee "'had any reason to believe" that Mann was using those accounts for payroll and tax dollars until "'somebody at the bank saw' the FBI complaint."  Id. at 17-18.

With respect to Mr. Hughes' memorandum to the board of directors, defendants contend that Mr. Sarratori's testimony "already dispelled Plaintiffs of any belief that this

---

telephone call with John Reinke, CEO of Cloud Payroll, and Aberash Asfaw, President of Cachet financial Services."  Dkt. No. 182 at 5.  As a second example: "Hughes also received the September 3 email from Mann indicating that millions of dollars would be deposited to the 'tax account,' as well as reports reflecting transactions in the Cloud 2440 account."  Dkt. No. 182 at 7.  A third example: "There is no dispute that Ms. Catello manually reviewed and processed hundreds of debit and credit transactions in the Cloud 2440 account . . . ."  Dkt. No. 182 at 7.  A fourth example: "In depositions occurring in December, Plaintiffs learned for the first time that the decision to 'set off' the funds was a group decision made by Mr. Sarratori, Mr. Amell, and Mr. Hughes."  Dkt. No. 178-4 at 13.

Proper briefing and professionalism demands that citations to this record used to support these claims follow such statements.  Should future motions suffer similar deficiency, they may be rejected by the undersigned.  As it relates to citing to confidential documents, see generally dkt. no. 182-1, as the Court previously indicated, supra n.6, plaintiffs could have sought, and should have sought, to file such exhibits under seal or, if including portions of confidential documents or testimony within the motion, to redact those portions on the docket.

memorandum 'indicates that the funds taken from the Mann Entity accounts were segregated in a Pioneer general ledger account, suggesting that the decision to 'set off' the funds occurred well after September 4, 2019.'" Dkt. No. 180 at 18. Defendants point to Mr. Sarratori's testimony that the memorandum "did not specifically refer to the overdraft recovery/setoff . . . because Mr. Hughes 'wrote this in his mind thinking we have $16 million that we've offset, and it's in a general ledger account" and that the funds "were later moved, and are now part of the bank's assets." Id.

As for an e-mail that Mr. Amell, Mr. Hughes, and others received on September 3, 2019, and "alleged communications with Mann in 2014 and 2017 regarding Mann's proposals that Pioneer perform payroll processing[,]" defendants argue that "Mr. Fleming and Mr. Sarratori have already been questioned about the April 3, 2019[,] email, and Mr. Sarartori, Mr. Fleming, and Ms. Dedrick all testified about the 2014 and 2017 communications with Mann." Dkt. No. 180 at 19. Defendants accuse plaintiffs of being "unsatisfied with the testimony elicited" which they argue does not warrant Mr. Hughes' deposition. Id. at 19.

The Court agrees that defendants have failed to show that Mr. Hughes' testimony would be duplicative or cumulative. Mr. Hughes was involved in the "collective" decision to off-set the funds. As for the September 4, 2019, memorandum, Mr. Sarratori testified to Mr. Hughes' state of mind in omitting reference to the set-off. See Dkt. No. 180 at 18. However, as Mr. Hughes drafted this memorandum and plaintiffs allege that he had personally received an e-mail from Mr. Mann stating that "millions of dollars would be deposited not the 'tax account,'" Mr. Sarratori's testimony that no one at Pioneer knew Mr. Mann was housing tax funds in the 0212 and 2440 accounts prior to

seeing the FBI complaint may be in conflict with Mr. Hughes' potential testimony. Dkt. No. 180 at 18; Dkt. No. 182 at 6-7. Plaintiffs are entitled to depose Mr. Hughes about his personal experience and personal knowledge about the accounts, this communication with Mann, as well as his preparation of the memorandum are of great relevance to plaintiffs' claims. As Mr. Hughes appears to have relevant and unique testimony on these matters that is not available from another source, plaintiffs are permitted to take Mr. Hughes' deposition.

### 4. **Kim Catello**

Plaintiffs contend that Ms. Catello's role at Pioneer as the "Deposit & ACH System Expert" is essential because, in that role, she reviewed "each and every debit and credit to all of the Mann Entity accounts, and either posted or returned the transactions," including "the returns and 'set off' of third-party tax funds at issue in this case." Dkt. No. 178-4 at 18. Plaintiffs argue that she is "the only person who can testify about that process, including who directed her and what instructions she was given," as well as "insight regarding Pioneer's posting, return, and related policies," which plaintiffs contend "other witnesses were unable to provide." Id. at 17-18. Plaintiffs opine that Pioneer's corporate representative "could not provide important technical details regarding Pioneer's suspension and review of the transactions in the accounts, the timing of various postings, including the 'set off' and various on-line banking transfers." Id. Plaintiffs assert that Pioneer advised them that Mr. Hunn "would address those issues," but "Mr. Hunn testified that it was Ms. Catello that performed the numerous operations on the accounts" and he could "not recall either his conversations with her or

with the individuals who gave him directions" and also "was unfamiliar with various reports created by Ms. Catello or that reflected transactions in the accounts on and after August 30, 2019." Id.  Mr. Hunn, plaintiffs claim, also "blamed Ms. Catello for certain irregularities in Pioneer's records." Id.  Plaintiffs argue that they should be permitted to depose Ms. Catello about these matters.

Defendants argue that Ms. Catello's deposition would be "wholly cumulative and unnecessary" because Ms. Catello's "sole involvement in this matter was her performance of the ministerial task of initiating the account overdraft recovery/setoff with respect to the Mann Entity Accounts." Dkt. No. 180 at 19.  Defendants assert that plaintiffs "omit to state . . . that Ms. Catello reported directly to and took instructions from Mr. Hunn, whom Plaintiffs already have deposed" and that Mr. Hunn testified that Ms. Catello "did not have discretion to perform such a setoff without specific instructions from him," the setoff "would have been processed in regard to our normal practice," he did not recall providing nontypical instructions to Ms. Catello, and that the transactions Ms. Catello was instructed to perform with respect to the setoff "'is a routine type of transaction' that would not have required detailed instructions.'" Id.  Defendants assert that they do not dispute that Ms. Catello performed these tasks and argue that Mr. Hunn already testified that he instructed Ms. Catello to perform them, so any testimony Ms. Catello could offer will be duplicative. See id. at 19-20.  Defendants further argue that plaintiffs had ample opportunity to obtain the information sought. See Dkt. No. 180 at 20.  They also contend that any potential benefit to plaintiffs is outweighed by the prejudice to defendants. See id. at 23.

18

Defendants have failed to demonstrate that Ms. Catello's testimony is duplicative or cumulative, that the matters on which she testifies can be obtained elsewhere, or that her deposition would cause defendants undue prejudice.  Although defendants point out that Mr. Hunn testified that Ms. Catello had no independent authority to take action, plaintiffs have shown that the matters about which they seek to ask her are relevant, nonduplicative, and noncumulative as Mr. Hunn was unable to testify as to specific instructions he provided Ms. Catello.  Although defendants argue that plaintiffs had "ample opportunity" to obtain this information, they do not explain with any degree of specificity how such information could have been otherwise obtained when Mr. Hunn was unable to answer and was unfamiliar with the reports she created nor could recall any specific instruction he gave to her regarding the set-off.  Although Mr. Hunn testified that he would not have provided instructions that differed from what was usual, given the absence of first-hand knowledge about the specific process with respect to the set-off in question and the direction given, Ms. Catello's testimony on her processing of the set off is neither duplicative nor cumulative.

The Court acknowledges that defendants dispute plaintiffs' allegation that Mr. Hunn testified to blaming Ms. Catello for any irregularities in Pioneer's records.  See Dkt. No. 180 at 24 n.9.  Indeed, plaintiffs have pointed to no specific portions of Mr. Hunn's deposition transcript showing such blame nor provide a detailed summary of such blame.[7]  See Dkt. No. 178-4 at 18.  As the Court is not presented with evidence that such dispute occurred, it will not consider this argument.  Regardless, as the Court finds that Ms. Catello's testimony is otherwise likely to be relevant, unique, and not

---

[7] Interestingly, plaintiffs' reply does not repeat this allegation.  See Dkt. No. 182 at 7.

duplicative or cumulative, this discrepancy is not terminal to plaintiffs' demand to depose Ms. Catello.  Accordingly, plaintiffs are permitted to proceed with this deposition.

On another matter, plaintiffs call into question defendants' claimed expenses associated with conducting depositions thus far.  Plaintiffs urge the Court to require defendants to submit proof of deposition expenses, noting that where defendants claim to have $200,000 in costs, plaintiffs' "combined costs associated with the depositions did not reach half that much, and Plaintiffs had to do the heavy lifting of taking the depositions."   Dkt. No. 140 at 5; Dkt. No. 178-4 at 11.  The Court finds plaintiffs' request for defendants to submit proof of costs unnecessary as it has no doubt that defendants are being truthful – albeit, perhaps, excessive and perhaps not approached as judiciously as possible – in their approach to deposition preparation and defense.  See Dkt. No. 178-4 at 11 (citing Dkt. No. 140 at 5).  However, given that the Court has concluded that the requested depositions are relevant and neither duplicative nor cumulative, in an attempt to lessen such costs, the Court will limit the depositions of Tom Amell, Patrick Hughes, and Kim Catello to five hours each and of Ms. Asfaw to two hours.[8]  Given the specific, focused matters on which these witnesses are predicted to testify, this should be more than sufficient time.  Plaintiffs are advised to approach these depositions with focus and with an eye toward brevity as the Court will not consider any requests for expansions of time or follow-up depositions.  Further, to the extent that conducting depositions through videoconferencing may lessen expenses, defendants are permitted to choose that option for all witnesses.

---

[8]  Plaintiffs proposed these time limits to defendants.  See Dkt. No. 178-3 at 2.

### B.  **Apex Witness Doctrine**

Defendants argue that the Apex Witness Doctrine bars Mr. Hughes and Mr. Amell's depositions.  See Dkt. No. 180 at 26.  Mr. Highes is Pioneer's CFO and Executive Vice President and Mr. Amell is Pioneer's CEO and President.  Defendants contend that plaintiffs have not met their burden of demonstrating that Mr. Hughes and Mr. Amell "each possess unique knowledge that would justify requiring them to sit for depositions."  Id. at 27.  Defendants further contend that plaintiffs failed to show that Mr. Hughes and Mr. Amell possess unique, first-hand knowledge and that there are no other sources from which the same information can be obtained.  See id.

Plaintiffs assert that the Apex Witness Doctrine does not bar Mr. Hughes' or Mr. Amell's depositions, and that defendants' "reliance on the apex doctrine is misplaced." Dkt. No. 178-4; Dkt. No. 182 at 8.  Plaintiffs contend that apex witness testimony is permitted where, "as here, the individual has personal knowledge of relevant facts or some unique knowledge that is relevant to the action."  Dkt. No. 178-4 at 19.  Plaintiffs opine that there "is no credible dispute that both Mr. Amell and Mr. Hughes possess highly-relevant, unique personal knowledge concerning Pioneer's decisions and actions between August 30 and September 5, 2019" as "Mr. Amell and Mr. Hughes made the decision to take and retain millions of dollars in third-party tax funds paid by thousands of innocent employers throughout the Country."  Id.  Plaintiffs argue in reply that defendants' case law is inapposite because in those cases "a senior official is not immune from being deposed if he or she was personally involved in relevant events and decisions."  Dkt. No. 182 at 8.  Contrasting one of defendants' cited cases, plaintiffs contend that, unlike in Bobo v. Wahcovia Sec., LLC, where the alleged apex witnesses

"submitted 'detailed affidavits' establishing that only one executive was involved in the decision-making process . . . [H]ere, in significant contrast, Amell and Hughes affirmatively allege that they made the 'collective decision' giving rise to this litigation." Id.

Due to the "possibility of business disruption and the potential for harassment, courts give special scrutiny to requests to depose high-ranking corporate and governmental officials, who are sometimes referred to as 'apex witnesses.'" Chevron Corp. v. Donziger, No. 11 Civ. 0691 (LAK), 2013 WL 1896932, at *1 (S.D.N.Y. May 7, 2013).  It has been said that Courts "disfavor requiring apex witnesses to sit for depositions."  Markowitz v. Precipart Corp., 20-CV-5033 (GRB) (JMW), 2022 WL 1508638, at *1 (E.D.N.Y. Apr. 15, 2022) (footnote citation omitted).

> An "Apex" deposition is one in which the party seeks to depose the
> highest level, or apex," of the corporate opponent, whether that officer has
> personal knowledge of the matters at issue in the case or not.  [A]pex
> depositions are disfavored in this Circuit 'unless [the executives] have
> personal knowledge of relevant facts of some unique knowledge that is
> relevant to the action[.]  Included in this concept is whether compelling the
> official's testimony would be cumulative to testimony from other sources
> within the subject enterprise.

All. Indus., Inc. v. Longyear Holding, Inc., No. 08CV490S, 2010 WL 4323071, at *4 (W.D.N.Y. Mar. 19, 2010) (internal citations omitted).  However, "[b]y no means" "does this create a deposition exemption for high-ranking officials."  Markowitz v. Percipart Corp., 20-CV-5033 (GRB/JMW), 2022 WL 1508638, at *1 (E.D.N.Y. Apr. 15, 2022). Indeed, Courts have emphasized that "it is important to excuse a witness from giving testimony only in compelling circumstances."  Chevron Corp., 2013 WL 1896932, at *1.

"When determining whether the deposition of a high-ranking corporate executive should be allowed, however, plaintiffs have no burden to show that deponents have any

22

relevant knowledge.  The reason is that exempting high-ranking executives would

create untenable tension with the goals of broad discovery." Markowitz, 2022 WL

1508630, at *2 (citing Hallmark Licensing LLC v. Dickens, Inc., 17-CV-2149 (SJF/AYS),

2018 WL 6573435, at *5 (E.D.N.Y. Dec. 13, 2018) (stating that courts "must 'begin with

the proposition that plaintiffs have no burden to show that the deponents have any

relevant knowledge.'") (quoting In re Garlock, 463 F. Supp. 2d 478, 481 (S.D.N.Y.

2006)).   In making its determination,

> The Court considers the likelihood that the individual possesses relevant
> knowledge, whether another source could provide identical information,
> the possibility of harassment, and the potential disruption of business. See
> Treppel v. Biovail Corp., 03 Civ. 3002(PKL)(JCF), 2006 WL 468314, at *1-
> 2 (S.D.N.Y. Feb. 28, 2006); General Star Indem., 210 F.R.D. at 83. See,
> e.g., Chevron Corp., 2013 WL 1896932, at *1 (allowing the defendant's
> deposition of the plaintiff's CEO despite harassment concerns because
> there was "little doubt that [the CEO] has relevant knowledge," even if his
> knowledge was not necessarily unique).

Scott v. Chipotle Mexican Grill, Inc., 306 F.R.D. 120, 122 (S.D.N.Y. 2015).  "Where an

executive makes such claims [no unique knowledge or has busy schedule], the claim 'is

subject to testing by the examining party.'" Consolidated Rail Corp., 1993 WL 364471 at

*1; see also Chevron Corp., 2013 WL 1896932 at *1; Less v. Taber Instrument Corp.,

53 F.R.D. 645, 647 (W.D.N.Y. 1971) ("A claim that [the executive] has no knowledge of

any relevant facts should not be allowed to prevent his examination, since plaintiff is

entitled to test his lack of knowledge.  Likewise, the fact that [he] is a very busy

executive should not bar his examination.") (citations omitted)).

Plaintiffs do not dispute that Mr. Hughes and Mr. Amell are apex witnesses.

Instead, plaintiffs argue that they have personal, relevant, and unique knowledge.  See

Dkt. No. 178-4 at 19.  Plaintiffs have established that the testimonies of Mr. Hughes and

23

Mr. Amell are relevant to their claims in this action and have further demonstrated that they have unique personal knowledge.  As discussed above, although other Pioneer witnesses have testified about these topics, there is some conflict in the responses.  For example, defendants pointed to Mr. Sarratori as directing the set off, along with Mr. Hunn and Mr. Hughes; however, Mr. Hunn testified to not being involved in this decision and did not recall much about the set off decision, testifying he took direction from others.  Plaintiffs state that through the December 2021 depositions, they learned that Mr. Hughes took part in this decision.  As Mr. Hunn testifies to not being involved, recalled little, and indicated that he acted at others' direction, and because Mr. Sarratori recalled little about this determination, Mr. Hughes' testimony would be both relevant and unique.  Given that Pioneer witnesses pointed to these three individuals as the persons who were involved in the set-off, Mr. Hughes' testimony as to his decision-making process and involvement is unlikely to be obtained elsewhere.

In response to plaintiffs' demonstration that Mr. Hughes and Mr. Amell possess relevant, personal, and unique knowledge, defendants have not shown that another source could provide "identical information" on the specific matters about which plaintiffs seek to depose defendants.  Trepell v. Biovail Corp., No. 03 Civ. 2003 PKL JCF2006 WL 468314, at *2 (S.D.N.Y. Feb. 28, 2006) (citing General Star Indem. Co. v. Platinum Indem. Ltd., 210 F.R.D. 80, 83 (S.D.N.Y. 2002)).  Here, as defendants are wont to point out, plaintiffs have already pursued other sources.  Accordingly, the depositions of the Apex witnesses are necessary.

Moreover, the Court does not find plaintiffs to be motivated by harassment or that business would be inappropriately or unreasonably disrupted.  See generally General

Star Indem. Co., 210 F.R.D. at 83 ("'the fact that the witness has a busy schedule is simply not a basis for foreclosing otherwise proper discovery.'") (quoting CBS, Inc. v. Ahern, 102 F.R.D. 820, 822 (S.D.N.Y. 1984)).  To the extent defendants contend that they will suffer undue prejudice, the need for the depositions outweighs the risk of prejudice to defendants.  However, to mitigate the distruption to apex witnesses from and in an attempt to limit the costs, as is within its discretion, the Court the depositions of both Mr. Hughes and Mr. Amell shall not exceed five hours each.  Should it be more conducive to their schedules, Mr. Hughes and Mr. Amell shall be offered the option – but will not be required – to conduct their depositions by Zoom or other videoconferencing program.


### III. **Conclusion**

In sum, the Court finds that plaintiffs requested depositions are warranted for the reasons specified herein.  Plaintiffs are advised that, even if new and further information is disclosed through these additional depositions, the Court will not entertain further requests to conduct depositions.

Wherefore, it is hereby:

**ORDERED**, that plaintiffs' motion for leave to take additional depositions, Dkt. No. 178, is **GRANTED**.  Plaintiffs are permitted to depose Thomas Amell, Patrick Hughes, Kim Catello, and Aberash Asfaw.  The depositions of Mr. Amell, Mr. Hughes, and Ms. Catello are limited to five hours.  The deposition of Ms. Asfaw is limited to two hours.  Ms. Asfaw's deposition will occur by Zoom or similar videoconferencing software.  The remaining depositions may occur by Zoom or similar videoconferencing

software, depending on defendants' preference.  Parties are directed to meet and confer as soon as possible to set a schedule for completing depositions.  **Depositions are to be completed no later than April 30, 2023**.

      **IT IS SO ORDERED.**

      Dated: February 21, 2023
           Albany, New York

Christian F. Hummel
U.S. Magistrate Judge