IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SOUTHWESTERN PAYROLL SERVICE, INC.<br><br>                *Plaintiff*,<br><br>   v.<br><br>PIONEER BANCORP INC.; PIONEER BANK; MICHAEL T. MANN; VALUEWISE CORPORATION d/b/a APOGEE d/b/a OPTIX CONSULTING, and d/b/a PRIMACY SEARCH GROUP; MYPAYROLLHR.COM, LLC; CLOUD PAYROLL LLC; ROSS PERSONNEL CONSULTANTS, INC., ALWAYS LIVE HOLDINGS, LLC; KANINGO, LLC; HIRE FLUX, LLC; HIRE FLUX HOLDINGS, LLC; VIVERANT LLC and HEUTMAKER BUSINESS ADVISORS, LLC,<br><br>                *Defendants*.<br><br>NATIONAL PAYMENT CORPORATION,<br><br>                *Intervenor-Plaintiff*,<br><br>   v.<br><br>PIONEER BANCORP INC.; PIONEER BANK; MICHAEL T. MANN; VALUEWISE CORPORATION; MYPAYROLLHR.COM, LLC; CLOUD PAYROLL LLC; ROSS PERSONNEL CONSULTANTS, INC., ALWAYS LIVE HOLDINGS, LLC; KANINGO, LLC; HIRE FLUX, LLC; HIRE FLUX HOLDINGS, LLC; VIVERANT LLC; and HEUTMAKER BUSINESS ADVISORS, LLC,<br><br>                *Defendants*. | Case No. 1:19-cv-1349 (FJS/CFH) |

**DECLARATION OF CYNTHIA NEIDL IN OPPOSITION TO THE PIONEER
DEFENDANTS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

      Cynthia Neidl, pursuant to 28 U.S.C. § 1746(2), declares under penalty of perjury the following:

      1.      I am an attorney licensed to practice law in the State of New York and a member in good standing of the bar of the United States District Court for the Northern District of New

York. I am a shareholder with the law firm Greenberg Traurig, LLP, attorneys for Intervenor-Plaintiff National Payment Corporation ("NatPay"). As such, I am fully familiar with the facts herein.

2. I submit this declaration in opposition to the motion to compel the production of documents filed by Defendants Pioneer Bancorp, Inc. and Pioneer Bank (collectively, "Pioneer").

**Relevant Background**

3. Pioneer served its First Request for Production of Documents on November 23, 2020. A copy of Pioneer's First Request for the Production of Documents is attached to the Declaration of Steven Rosato ("Rosato Decl.") as Exhibit 1 (Dkt. No. 239-3).

4. Included among the various requests were the following four overly broad requests:

> Request No. 59: All documents or communications relating to any permits, licenses, certificates, registrations, or other authorizations held by NatPay that were issued or approved by governmental entities, including without limitation governmental authorizations for NatPay to operate as a money processor, payment processor, money transmitter, or similar regulated business.
>
> Request No. 60: All documents or communications relating to any filings by NatPay with governmental regulatory agencies.
>
> Request No. 70: All documents or communications relating to NatPay's financial statements for the calendar or fiscal years 2015, 2016, 2017, 2018, 2019, and 2020.
>
> Request No. 71: All documents or communications relating to NatPay's federal or state income tax returns for the years 2015, 2016, 2017, 2018, 2019, and 2020.

5. On January 15, 2021, NatPay served its objections and responses to Pioneer's requests, as well as responsive documents. A copy of NatPay's objections and responses to Pioneer's First Request for Production of Documents is attached to the Rosato Declaration as Exhibit 2 (Dkt. No. 239-4).

6. With respect to Request Nos. 59, 60, 70 and 71, NatPay set forth several objections, requested that Pioneer explain the relevance of the requested documents, and offered to confer with Pioneer to resolve any disputes.

7. On March 10, 2021, I participated in a meet and confer with Pioneer's former attorneys, Robert Kuhn and Jennifer Feldman, and Andrew Jayne, counsel to Plaintiff Southwestern Payroll Service, Inc. ("SWP"), to address, among other things, certain of NatPay's objections to Pioneer's requests for production.

8. With respect to Request Nos. 59 and 60, I explained that NatPay is a third-party ACH processor, is not a "money processor, payment processor, money transmitter" under federal law, New York law, or any other state laws, and therefore had no permits, licenses, etc., in this regard. I further explained that NatPay holds no permits, licenses, or other authorizations other than its registration with Florida as a Florida corporation.

9. Mr. Kuhn indicated that Pioneer was not seeking communications relating to NatPay's registration as a Florida corporation and identified no other documents responsive to Request Nos. 59 and 60 that were sought.

10. With respect to Request Nos. 70 and 71, I explained that NatPay was seeking only out-of-pocket losses, not damages for harm to its business or reputation. Pioneer's counsel agreed that NatPay did not need to produce documents responsive to Request Nos. 70 and 71.

11. Notably, Pioneer attorney Steven Rosato did not participate in the March 10, 2021 meet and confer, and therefore has no personal knowledge of the discussions that occurred during that meeting.

12. Mr. Rosato's allegation that, with respect to Request Nos. 59, 60, 70, and 71, "NatPay stood on its objections, with which Pioneer expressed its disagreement, and Pioneer reserved its right to revisit those objections at a later date as appropriate" is unsupported and false.

13. Indeed, Pioneer raised no issues with NatPay's objections or its production <u>for more than a year</u>.

14. In November 2020, likely due to Pioneer's actions causing the collapse of MyPayroll and certain affiliated payroll companies, the Texas Department of Banking ("Texas DOB") changed a long-standing policy concerning the application of its money transmission licensing law.

15. Specifically, the Texas DOB rescinded a legal opinion that exempted third-party ACH processors and payroll companies from the Texas money transmission licensing law.

16. After several months of discussions with NatPay, the Department took the position that NatPay was required under Texas law to obtain a money transmission license if it were to continue offering its third-party ACH services in Texas.

17. NatPay disagreed with the Texas DOB's determination, but ultimately agreed to obtain a Texas money transmission license rather than engage in costly and protracted litigation, and it did so in early 2022.

18. NatPay produced its Texas license and seven related documents on April 8, 2022, before the depositions of two NatPay witnesses that were to occur the following week, on April 11 and 13, 2022. One of the documents was NatPay's request for a temporary license, which included NatPay's Audited Financial Statements for 2019 and 2020. NatPay redacted the dollar amounts from the statements, but not descriptions and categories of information. NatPay's

witnesses were unfamiliar with the documents, and Pioneer's counsel did not use them during the depositions.

19. By letter dated April 29, 2022, Pioneer raised various discovery issues. Among other things, Pioneer complained that NatPay's production relating to its Texas license was "untimely," and demanded that NatPay produce any email communications, including internal emails, concerning the topic.

20. Pioneer also complained that NatPay had redacted information from NatPay's financial statements, arguing that:

> NatPay's operating history and financial performance are squarely at issue in this action as, among other things, they bear directly upon NatPay's claims of ignorance regarding the rights of banking institutions vis-à-vis funds on deposit in their accounts.

21. Pioneer also argued that redactions based on relevance were not permissible. A copy of Pioneer's April 29, 2022 letter is attached to the Rosato Declaration as Exhibit 6 (Dkt. No. 239-8).

22. By letter dated May 13, 2022, I indicated that NatPay was in the process of identifying any additional, non-privileged documents relating to its Texas license, and would soon produce such documents. I also stated that NatPay's financial information was not relevant to the litigation and would not be produced. A copy of the May 13, 2022 letter is attached to the Rosato Declaration as Exhibit 7 (Dkt. No. 239-9).

23. On August 22, 2022, NatPay served Amended Initial Disclosures that disclosed that NatPay's computation of damages was reflected in two specific documents that had been produced to Pioneer more than a year earlier. The documents produced by NatPay detail every transaction that resulted in a loss to NatPay. A true and correct copy of the relevant excerpt from NatPay's Amended Initial Disclosures is attached hereto as **Exhibit A**.

24. Several months later, on September 21, 2022, Pioneer responded to my May 13 letter, this time demanding that NatPay produce all documents responsive to Request Nos. 59, 60, and 70.

25. Pioneer argued that NatPay's objection to Request No. 70 on relevance grounds was "unfounded" and reiterated its argument that redactions on relevance grounds is impermissible. Pioneer demanded that NatPay confirm that all documents relating to NatPay's "licensing as a money transmitter" had been produced and, further, that NatPay produce all documents responsive to Request Nos. 59 and 60. A copy of the September 21, 2022 letter is attached to the Rosato Declaration as Exhibit 8 (Dkt. No. 239-10).

26. On October 19 and 20, 2022, Pioneer deposed Steven Pereira, NatPay's General Manager, in his personal capacity and as NatPay's corporate designee. A true and correct copy of Pioneer's Amended Notice of FRCP 30(b)(6) Deposition of Plaintiff National Payment Corporation is attached hereto as **Exhibit B**.

27. Pioneer's Amended Notice does not include in the "Subject Matter Areas" any information concerning whether NatPay is a "money transmitter" within the meaning of state or federal law. The only area concerning damages concerned the "calculation of SWP's alleged damages as set forth in the Complaint." (*See id.* ¶ 23.)

28. Pioneer did not question Mr. Pereira concerning the documents identified by NatPay in its Amended Initial Disclosures as reflecting NatPay's computation of damages.

29. Mr. Pereira testified that NatPay had received a letter in early October from the State of Illinois, requesting information about NatPay's operations. Mr. Pereira also testified at length about NatPay's out-of-pocket losses, explaining that Pioneer caused the loss of $3.8 million from NatPay's settlement account, and that while NatPay does not "own" the funds in the account,

NatPay is responsible for the funds and must absorb any losses in the account. A true and correct excerpt from Mr. Pereira's Rule 30(b)(6) deposition is attached hereto as **Exhibit C**.

30. To eliminate any dispute with Pioneer with respect to certain documents referenced by Mr. Pereira during his depositions, I produced, among other things, the letter from the Illinois Department of Financial and Professional Regulation ("IDFPR") on October 25, 2022, with the following disclaimer:

> This document is not responsive to any of Pioneer's requests and is not relevant to the parties' claims and defenses. NatPay reserves all of its rights with respect to the admissibility of the document as well as its objections to Pioneer's requests for production.

A copy of the IDFPR letter to NatPay is attached to the Rosato Declaration as Exhibit 11 (Dkt. No. 239-13). A copy of my October 25, 2022 cover letter is attached to the Rosato Declaration as Exhibit 10 (Dkt. No. 239-12).

31. Also on October 25, 2022, I responded to Pioneer's September 21 letter. I reiterated that NatPay's financial information was not relevant to this litigation, and that redaction of NatPay's financial information was proper under the circumstances. I also indicated that NatPay had produced its communications with the Texas Department of Banking relating to its Texas license, and that no other state or agency had required NatPay to obtain any permits, licenses, etc. A copy of the October 25, 2022 letter is attached hereto as **Exhibit D**.

32. The parties held a telephone conference on December 19, 2022 to address various discovery issues, including Pioneer's demand for all documents responsive to Request Nos. 60, 61, 70, and 71. During the call, Pioneer argued that NatPay's financial statements were relevant because "Mr. Pereira testified that the funds in the First Premier account would not be listed on NatPay's balance sheet because they are not assets of the company." A copy of a December 19,

2022 email from Pioneer counsel purporting to summarize the December 19, 2022 call is attached hereto as **Exhibit E**.

33. By letter dated February 2, 2023, I summarized the parties' discussions relating to these requests and indicated that NatPay was maintaining its objections to Request No. 70 and 71, and would not produce NatPay's response letter to the IDFPR, since the "letter requests extensive information and documentation relating to NatPay's operations from its inception in 1991 through the present." A copy of the February 2, 2023 letter is attached to the Rosato Declaration as Exhibit 12 (Dkt. No. 239-14.)

I declare under penalty of perjury that the foregoing is true and correct. Executed on May 12, 2023.

                                                    Cynthia Neidl