**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

SOUTHWESTERN PAYROLL SERVICE,
INC., et al.,

|  |  |  |
|---|---|---|
| | Plaintiffs, | 1:19-CV-01349 |
| v. | | (FJS/CFH) |

PIONEER BANK, et al.,

Defendants.

_____

NATIONAL PAYMENT CORPORATION,

Intervenor-Plaintiff,

v.

PIONEER BANCORP, et al.,

Defendants.

_____

**APPEARANCES:**                              **OF COUNSEL:**

Cooper, Erving Law Firm                   MICHAEL A. KORNSTEIN, ESQ.
39 North Pearl Street, 4th Fl.
Albany, New York 12207
Attorneys for plaintiff-counter defendant
Southwestern Payroll Service, Inc.

Baum Glass Jayne Carwile & Peters PLLC    ANDREW JAYNE, ESQ.
401 S. Boston Avenue, Ste. 2000
Tulsa, Oklahoma
Attorneys for plaintiff-counter defendant
Southwestern Payroll Service, Inc.

Greenberg Traurig, LLP                    CYNTHIA E. NEIDEL, ESQ.
54 State Street, 6th Fl.
Albany, New York 12207
Attorneys for intervenor plaintiff National
Payment Corporation

DLA Piper LLP                                ROBERT J. ALESSI, ESQ.
1251 Avenue of the Americas                  COURTNEY SALESKI, ESQ.
Ste 27th Floor
New York, New York 10020
Attorneys for defendant-
counterclaimant Pioneer Bank,
Pioneer Bancorp, Inc.

Zeichner Ellman & Krause LLP                 KENNETH C. RUDD, ESQ.
730 Third Avenue
New York, New York 10017
Attorneys for Respondent
Bank of America, N.A.

Federal Deposit Insurance Corporation        DANIEL H. KURTENBACH, ESQ.
3501 Fairfax Drive
Arlington, Virginia 22226
Attorneys for Intervenor FDIC

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

## MEMORANDUM-DECISION & ORDER

Presently before the Court is defendants Pioneer Bancorp. Inc. and Pioneer

Bank's (collectively "Pioneer") motion to compel intervenor-plaintiff National Payment

Corporation ("NatPay"), pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.")

37(a)(3)(B)(iv), to produce documents responsive to Pioneer's requests for production,

numbered 59, 60, and 70.  See Dkt. No. 239.  NatPay opposes.  See Dkt. No. 261.  For

the reasons that follow, the motion is granted in part and denied in part.


I.  **Legal Standard**

Unless otherwise limited by court order, the scope of discovery is as follows:

Parties may obtain discovery regarding any nonprivileged matter that is
relevant to any party's claim or defense and proportional to the needs of
the case, considering the importance of the issues at stake in the action,
the amount in controversy, the parties' relative access to relevant

2

information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

FED. R. CIV. P. 26(b)(1).  Rule 37(a)(3)(B)(iv) provides:

(3) Specific Motions.

* * *

(B) To compel a Discovery Response.  A party seeking discovery may move for an order compelling an answer, designation, production, or inspection.  This motion may be made if:

* * *

(iv) a party fails to produce documents or fails to respond that inspection will be permitted – or fails to permit inspection – as requested under Rule 34.

FED. R. CIV. P. 37(a)(3)(B)(iv).  "For purposes of this subdivision (a), an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond."  FED. R. CIV. P. 37(a)(4).  Motions to compel, pursuant to Fed. R. Civ. P. 37, are left to the sound discretion of the court.  See United States v. Sanders, 211 F.3d 711, 720 (2d Cir. 2000).

"To meet the initial burden, the moving party must 'demonstrate at least the possibility of a nexus between the information sought and the claims or defenses of a party[,]' which is a 'relatively low threshold.'"  United States ex rel. Rubar v. Hayner Hoyt Corp., No. 5:14-CV-830 (GLS/CFH), 2018 WL 4473358, at *2 (N.D.N.Y. Sept. 18, 2018) (quoting Member Services, Inc. v. Security Mut. Life Ins., 3:06-CV-1164 (TJM/DEP), 2007 WL 2907520, at *4 (N.D.N.Y. Oct. 3, 2007)).  "When objecting to a request for discovery, it is the objecting party's burden to show 'specifically how, despite the broad and liberal construction afforded the federal discovery rules, each [request] is not relevant or how each question is overly broad, [unduly] burdensome or oppressive by

submitting affidavits or offering evidence revealing the nature of the burden.'" Olin v. Rochester City Sch. Dist., 2019 WL 4643594, at *3 (W.D.N.Y. Sept. 24, 2019) (quoting Ruran v. Beth El Temple of W. Hartford, Inc., 226 F.R.D. 165, 167 (D. Conn. 2005))).

Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Relevancy to a subject matter is interpreted "broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978).

## II. **Discussion**[1]

### A. **Arguments**[2]

#### 1. **Unredacted Financial Statements**

Pioneer seeks the Court to compel NatPay to produce documents responsive to requests for production 59, 60, and 70. Arguing first as to its request relating to NatPay's unredacted financial statements from 2019 and 2020, Pioneer avers that the statements "are directly relevant to whether NatPay has in fact suffered a loss of over $3.8 million, as it claims in its complaint." Dkt. No. 239-1 at 16. Pioneer argues that the full financial statements are relevant to NatPay's claims of damages. See id. at 17. Pioneer asserts that NatPay's claim of $3.8 million in damages appears to be based "on the assertion that it may be liable to third parties, such as taxing authorities or employer-

---

[1] The parties' familiarity with the claims and procedural history in this case is presumed and will not be repeated here, except where deemed needed to review the pending motion.

[2] The Court's citations are to the pagination generated by the Court's electronic filing and case management system (CM/ECF), located at the header of each page.

clients of [Southwestern Payroll], for unpaid taxes." Id. at 19.   Pioneer opines that "one would expect such a contingent liability to be recorded in NatPay's financial statements[,]" and argues that it "is entitled to know whether NatPay has recorded such a liability or otherwise recognized a loss on its financial statement and should not be forced to rely solely on the testimony of [NatPay's corporate representative] Mr. Pereria." Id.  Pioneer also points to what it appears to claim to be conflicting statements from Mr. Pereria that NatPay "made its 'customer base whole' and that NatPay will "'have to pay'" the $3.8 million compared with his testimony that he was not aware of NatPay having made such payment(s).  Id.

Pioneer also points to its affirmative defense "on the grounds that NatPay's 'alleged damages are improperly based on purported harms to third parties[,]'" contending that "courts also recognize that a plaintiff's financial information may be relevant to the defendant's affirmative defenses." Dkt. No. 239-1 at 18 (quoting Dkt. No. 124 ¶174 and citing Franco v. 380 Second LLC, 2023 WL 2535214 (S.D.N.Y. Mar. 16, 2023)).

Pioneer argues that, in producing the redacted versions, NatPay "does not meaningfully dispute their relevance" but improperly redacts "the financial figures that would show whether NatPay has recognized any loss in connection with the events giving rise to this litigation."  Dkt. No. 239-1 at 17.  Pioneer argues that such redactions on relevance grounds are improper.  See id.

NatPay contends that Pioneer's request is "unquestionably overbroad" insofar as request for production number 70 seeks "'[a]ll documents or communications relating to NatPay's financial statements for the calendar or fiscal years 2015, 2016, 2017, 2018,

5

2019, and 2020.'"  Dkt. No. 261-6 at 11 (quoting Dkt. No. 239-3).  NatPay asserts that Pioneer has not met its burden of showing the relevance "of NatPay's financial statements over the course of six years, or the relevance of NatPay's financial statements for 2015 to 2018."  See id.  As to the unredacted 2019 and 2020 financial statements, NatPay argues that such records are not relevant because it is not seeking damages for "injury to its business or lost income or profits[,]" arguing that Pioneer "identifies no case where financial information was found to be relevant where the plaintiff sought recovery of monies wrongfully seized by the defendant[.]"  Id. at 13.  NatPay argues that because it seeks "the out-of-pocket losses it incurred directly as a result of Pioneer's misfeasance," and not breach of contract or damage to business, its financial statements are not relevant.  Id. at 14.

NatPay contends that Pioneer mischaracterizes its damages theory, arguing that it is "not based on some contingent liability for unpaid taxes, but rather is based on losses that occurred when Pioneer improperly returned debit transactions causing NatPay's settlement account to fund the credit side of various transactions."  See Dkt. No. 261-6 at 15 (quoting Dkt. No. 239-1 at 19).  NatPay avers that its redactions to the audited 2019 and 2020 financials statements "do not refer to any 'contingent liability' or to any particular loss[,]" arguing that "Pioneer fails to point to any specific redaction that might omit relevant information and has not established that the redacted information is relevant to any issue in this case."  Id. at 16.   NatPay further argues that, should the Court compel it to overturn unredacted financials statements, it should also "direct Pioneer to produce in unredacted form all documents it has produced with 'non-responsive content' redactions."  Id.

Although Pioneer does not make specific arguments with respect to years 2015 through 2018, which alone can be sufficient to deem any request with respect to these years abandoned, the Court still concludes that Pioneer has not met its burden of demonstrating relevance with respect to NatPay's financial statements and communications from 2015 to 2018.[3]

## 2. **Governmental Authorizations/Communications**

Pioneer contends that it is entitled to receive production of NatPay's communications with the IDFPR "relating to its investigation into whether NatPay was operating illegally as an unlicensed money transmitter in Illinois."  Dkt. No. 239-1 at 20.  Because it has asserted an unclean hands affirmative defense, Pioneer contends, "that alone is sufficient to establish the relevance of the requested documents under the plain text of Rule 26."  Id.  It contends that "[d]ocuments or communications with regulators, including the IDFPR, concerning whether NatPay was unlawfully operating as an unlicensed money transmitter in their jurisdictions unquestionably are relevant to that defense."  Id. at 21.  Further, Pioneer argues that NatPay's

> operation as an unlicensed money transmitter is also relevant to Pioneer's RICO counterclaims against SWP (and potential counterclaims against NatPay), as one of the underlying predicates for those claims is SWP's operation as an unlicensed money transmitter.  Given that NatPay and SWP performed substantially the same function – moving money on behalf of third parties –whether NatPay was operating as an unlicensed money transmitter bears directly upon whether SWP also was doing so.

Dkt. No. 239-1 at 20, 22.  Pioneer contends that Mr. Pereria "testified that NatPay's status as a money transmitter in Texas and potentially other states is relevant to whether SWP qualifies as a money transmitter, including because each of these two

---

[3]  Southwestern's second amended complaint states that the loan in question was issued in 2019.  See Dkt. No. 72 at 4.

parties is involved in moving the funds of their employer-clients."  Id. at 22.  "In other words, if NatPay is a money transmitter with regard to the funds, then ipso facto SWP is a money transmitter with regard to the same funds."  Id.

Pioneer next asserts that NatPay's refusal to produce these communications on confidentiality grounds is improper.  See Dkt. No. 239-1 at 23.  It contends that 20 ILCS 2105/2105-117, which Pioneer contends NatPay cites as a basis for its objection, "does not authorize NatPay to withhold relevant information on confidentiality grounds, and is not applicable because "NatPay has not claimed that it is 'a licensee, registrant, or applicant' or a license in Illinois[,]" but, regardless, the statute does not restrict the ability to disclose information it provides to IDFPR.  Id.

NatPay argues that its communications with the IDFPR are not responsive to any of the requests for production, arguing that despite Pioneer's "passing reference to Request Nos. 50 and 60 . . . , Pioneer does not affirmatively contend that NatPay's communications with the IDFPR fall within the scope of those requests."  Dkt. No. 261-17.  NatPay contends that such documents are not responsive to RFP 59 "since NatPay does not hold any permit, license, certificate, registration, or other authorization that was issued or approved by IDFPR or the State of Illinois.  The IDFPR has not determined that NatPay must obtain a money transmitter license under Illinois law and may never make that determination."  Id.   The documents are also unresponsive to RFP 60, NatPay argues, because it "has made no 'filings; with the IDFPR."  Id.  It alternatively argues that even if responsive, RFP 59 is "unquestionably overbroad in that it does not merely seek authorizations relating to money processing or transmission, but rather seeks '[a]ll documents and communications' over the course of more than seven years

relating to any governmental authorizations whatsoever." Id. at 18.  It argues that RFP

60 is similarly overbroad because it seeks "'[a]ll document and communications'" from a

seven-year period "concerning any 'filings' with government agencies." Id.  NatPay

points out that neither RFP "is limited to the money transmitter issue, and Pioneer offers

no basis for such broad requests." Id.

NatPay also contends that its response to the IDFPR is irrelevant to any claims

or defenses.  Although Pioneer argues that its response is relevant to its unclean hands

defense and counterclaims against Southwestern, "it is clear from the IFPR's letter has

[sic] made no determination regarding NatPay's status under Illinois law."  Dkt. No. 261-

6 at 18.  NatPay argues that its response "is not 'evidence that NatPay was operating as

an illegal money transmitter,'(Pioneer Mem. at 22) and will not lead to the discovery of

admissible evidence since IDFPR has made no determination concerning NatPay's

status." Id. at 19.

NatPay also argues that the Court should not compel its communication with the

IDFPR because Pioneer's unclean hands defense is "fatally defective."  Dkt. No. 261-6

at 19.  NatPay contends that Pioneer fails to identify which claims are subject to the

unclean hands defense, "nor does Pioneer provide any support for the notion that

NatPay;s failure to obtain an Illinois money transmitter license suffices to bar any of

NatPay's claims."  Dkt. No. 261-6 at 19.  NatPay contends that the unclean hands

defense does not apply because (1) "NatPay's lack of an Illinois money transmitter

license is not 'immoral,' 'unconscionable,' or 'brazen behavior'"; (2) the "lack of the

Illinois money transmitter license is not 'immediate[ly] and necessary[ily]' related to

NatPay's claims"; and (3) "NatPay is not 'attempting to charge [Pioneer] with liability for

some act in which [NatPay] itself participated or because of which [NatPay] is as fault as well as [Pioneer]."  Dkt. No. 261-6 at 22 (quoting Unicorn Crowdfunding, Inc., Keystone Driller Co., Puebla Palomo).

### 3.  Impact of Motion to Dismiss/Motion for Reconsideration

On December 21, 2023, the Court granted NatPay's motion to dismiss in its entirety, dismissing Pioneer's substantive RICO and RICO conspiracy counterclaims against NatPay and its RICO-based affirmative defenses.  See Dkt. No. 318.  At present, that matter is pending before this Court for reconsideration.   See Dkt. No. 322. Regardless of the outcome of the motion for reconsideration, it does not appear to the undersigned that the motion to compel is impacted because Pioneer contends that the unclean hands affirmative defense is based, at least in primary part, on its allegations that NatPay was operating as an unlicensed money transmitter, not based on its RICO claims.  On February 13, 2024, the Court issued a text order directing Pioneer and Natpay to advise the Court the impact, if any, of the Courts December 21, 2023, Motion to Dismiss for Failure to State a Claim (Dkt. No. 318) on Pioneers Motion to Compel Production of Documents (Dkt. No. 239)."  Dkt. No. 325.  NatPay responded, contending that the Motion to Dismiss "does not address NatPay's damages or Pioneer's standing defense," and does not impact the motion to compel.  Dkt. No. 328. NatPay, however, argues that requests 59 and 60 are mooted by the motion to dismiss because "Pioneer relied on its 'unclean hands' affirmative defense and its counterclaims against [Southwestern] in arguing that the requested materials are relevant."  Id. NatPay notes that in its answer, "Pioneer asserted two RICO-based affirmative

defenses and two RICO counterclaims, all of which are predicated on allegations that NatPay violated RICO."  Id.  NatPay contends that there are no remaining affirmative defenses that "are predicated on allegations that NatPay operated as an unlicensed money transmitter," rendering requests 59 and 60 moot.  Id. at 2-3.

Pioneer argues that all of its requests in the motion to compel are still relevant, regardless of the outcome of the motion to dismiss.  See generally Dkt. No. 329. Pioneer points out that it filed the motion to compel before it asserted the counterclaims this Court reviewed in its December 21, 2023, Decision & Order, and argues that the discovery at issue is "plainly relevant to numerous claims and defenses that predate the RICO counterclaims and that will remain in the case regardless of the outcome of the Pioneer Parties' Motion for Reconsideration and Leave to Amend."  See id. at 1-2.

Pioneer contends that the financial statements it seeks are "relevant to NatPay's claims for conversion and fraud as well as its theory of damages" because NatPay claimed a loss, but because discovery thus far shows, according to Pioneer, that it did not occur a monetary loss, it is "'entitled to know whether NatPay has recorded such a liability or otherwise recognized a loss on its financial statements and should not be forced to rely solely on the testimony of Mr. Pereira."  Dkt. No. 329 at 2-3.  Similarly, Pioneer contends that the financial statements "are directly relevant to Pioneer's standing defense" to show that NatPay "did not suffer a cognizable injury."  Id. at 3. Pioneer further argues that documents relating to "NatPay's operation as an unlicensed money transmitter are relevant not just to NatPay's liability, but to that of [Southwestern]."  Id.  Repeating its argument "whether NatPay was operating as an unlicensed money transmitter bears directly upon whether [Southwestern] also was

11

doing so," Pioneer contends that "communications between NatPay and Illinois regulators bear on Pioneer Bank's RICO counterclaims against SWP and the Pioneer Parties' defenses based on SWP's wrongdoing, all of which remain in the case." Id. Next, Pioneer contends that documents relating to NatPay's operations as an unlicensed money transmitter are relevant to Pioneer's contributory negligence defense. See id. at 3-4.  It contends that the communications in question "are relevant to the Pioneer Parties' defense that NatPay's own reckless disregard for the proper handling of employer-client funds contributed to any alleged injury."  Id. at 4.  Finally, Pioneer contends that the requested discovery "is relevant to the Pioneer Parties' affirmative defenses under the doctrines of in pari delicto and unclean hands, each of which is based on wrongdoing by NatPay that bars recovery against the Pioneer Parties."  Id. at 4.  Pioneer concedes that the Court dismissed these defenses, but argues that, even if the Court affirms its motion for reconsideration, Pioneer "expect[s] to reassert these defenses at summary judgment "and note that this Court "has never independently analyzed the merits of these affirmative defenses."  Id.

## B.  **Analysis**

As a threshold matter, NatPay opines, "Pioneer's request to compel is far broader than the two documents discussed in Pioneer's papers, and the motion should be denied since Pioneer did not even attempt to meet its burden of establishing the relevance of the requested materials."  Dkt. No. 261-6.  The Court agrees.  Although the requests for production in question (59, 60, and 70) seek a broad span of documents and time, Pioneer's motion to compel provides analysis for only two sets of documents:

(1) NatPay's unredacted financial statements from 2019 and 2020, and (2) NatPay's communication with the IDFPR.  The Court has carefully reviewed the parties' submissions and agrees with NatPay that, while the motion to compel purports to see responses to the requests for production, it includes no analysis or argument supporting documents beyond the 2019 and 2020 financial statements and NatPay's response with the IDFPR.  Given that Pioneer carries the initial burden of demonstrating relevance, and in failing to provide supported arguments to demonstrate the relevance of any other requests contained within RFP 59, 60, and 70, the motion is denied with respect to any communications or documents beyond the 2019 and 2020 financial statements and NatPay's response/communications with the IDFPR.  See United States ex rel. Rubar, 2018 WL 4473358, at *2; see also Farrell v. The United States Olympic & Paralympic Committee, et al. (FJS/CFH), 1:20-CV-1178, 2024 WL ___, Dkt. No. 279 at 10 (N.D.N.Y. Feb. 1, 2024) ("To the extent [the moving party] has made general arguments as to relevancy . . . such claims are not sufficient.  It is not the Court's job to read arguments specific to [requests for production] into [the movant]'s broad umbrella arguments.").  Thus, the Court considers only the arguments explicitly made and supported in Pioneer's motion to compel: those relating to NatPay's 2019 and 2020 financial statements and NatPay's communications/response to the IDFPR.

The Court next notes that many of NatPay's arguments in opposition require the Court to weigh the merits of the claims underlying claims or defenses.  "At the motion to compel stage, the Court assesses the relevance of particular documents based upon their relevance to the claims and defenses that are currently part of the action, without deciding the merits of those claims and defenses."  4 MVR, LLC v. Warren W. Hill

Constr. Co., No. 12-cv-10674-DJC, 2015 WL 3932380, at *2, 2015 U.S. Dist. LEXIS 83312, at *6 (D. Mass. June 26, 2015). "A party may not resist discovery by challenging the merits of a claim or defense.  Discovery exists to determine if a claim or defense has merit; discovery does not exist to adjudicate the merits of claims and defenses that have not yet been substantiated."  Fed. Trade Comm'n v. AMG Servs., Inc., No. 2:12-CV-536-GMN-VCF, 2015 WL 5097526, at *8 (D. Nev. Aug. 28, 2015), enforcement denied sub nom. Fed. Trade Comm'n v. AMG Servs., No. 2:12-CV-536-GMN-VCF, 2015 WL 13674182 (D. Nev. Nov. 9, 2015) (citing See Republic of Argentina v. NML Capital, Ltd., 134 S.Ct. 2250, 2257–58 (2014)); see also Gratiot Ctr, LLC v. Lexington Ins. Co., No. 16-cv-14144, 2017 WL 6316909, *2, 2017 U.S. Dist. LEXIS 203033, *5 (E.D. Mich. Dec. 11, 2017) ("Generally speaking, the underlying merits of claims and affirmative defenses should not be litigated via a motion to compel."); but see Plumbers & Pipefitters Loc. 625 v. Nitro Constr. Servs., Inc., No. 2:18-CV-01097, 2019 WL 5295587, at *2 (S.D.W. Va. Oct. 18, 2019) ("Although discovery motions are not the appropriate battleground for deciding the merit of defenses, that issue can factor into the decision to award or deny expenses under Rule 37.") (citation omitted).  Accordingly, the Court will proceed by reviewing only the parties' arguments as to relevance and proportionality, not as to the underlying merits of the claims.

As to the unredacted financial documents from 2019 and 2020 (document request number 70), the Court finds that Pioneer has demonstrated "at least the possibility of a nexus between the information sought and the claims or defenses of a party[,]'"  United States ex rel. Rubar, 2018 WL 4473358, at *2.  Pioneer has shown "at

least the possibility" that the records could support its arguments that NatPay did not suffer a loss of $3.8 million.

To the extent NatPay argues that Pioneer's arguments are "far too broad" and notes that plaintiff "identifies no case where financial information as found to be relevant where the plaintiff sought recovery of monies wrongfully seized by defendants," NatPay's view is, in the Court's opinion, too narrow at the discovery stage.  NatPay contends that its financial statements will not reflect a loss or contingent loss, and argues that Pioneer's request for such documents reflects a misunderstanding or mischaracterization of NatPay's theory of the case.  However, although NatPay contends that its loss would not be reflected in its financial statements, as Pioneer argues, and the Court agrees, it should not be required to rely on Mr. Pereira's testimony that the loss would not be reflected in these financial statements.  See Dkt. No. 239-1 at 19.

Although, in so holding, it is possible NatPay assumes the Court is also "lack[ing] even a basic understanding of ACH transactions"; however, Pioneer met its initial, low burden of demonstrating relevance, and, in response NatPay has not demonstrated there is no possibility of a nexus to any claims or defenses. The Court reminds NatPay that discoverable materials do not equate to admissible materials, and that financial records are subject to a protective order.  To the extent NatPay asks the Court, in a one paragraph argument, to "direct Pioneer to produce in unredacted form all documents it has produced with 'non-responsive content' redactions," Dkt. No. 261-6 at 16, that request is denied as it was not made upon a proper motion.  Accordingly, within fourteen (14) days of the filing date of this Memorandum-Decision & Order, NatPay is to

produce to Pioneer unredacted versions of is 2019 and 2020 financial statements pursuant to document request number 70.

Next, the undersigned agrees with plaintiff that communications with the IDFPR are not responsive to request for production number 59 for the reasons set forth in NatPay's brief.  See Dkt. No. 261-6 at 17.  Indeed, request for production 59 seeks documents or communications "relating to any permits, licenses, certificates, registrations, or other authorizations held by NatPay that were issued or approved by governmental entities, including without limitation governmental authorizations for NatPay to operate as a money processor, payment processor, money transmitter, or similar regulated business"; however, it does not seek applications for a permit or other communications/ requests for information from governmental entities.    Dkt. No. 261-6 at 17.

However, the Court does not agree that the IDFPR communications would not be responsive to document request 60.  Although request 60 seeks documents or communications relating to any "filings" NatPay made with government agencies, to the extent NatPay contends that it has not made any "filings" with IDFPR.  However, request 60 sets forth no definition of filings nor does it limit it to "filings" relating to an application for a permit/license, certification, registration, or authorization."  Instead, request 60 seeks "all documents or communications relating to any filings by NatPay with governmental regulatory agencies."   Dkt. No. 261-6 at 17.  Such request is broad enough to reasonably include communications made with IDFPR in response to a request for information.  Filings can be reasonably interpreted to mean "submissions." Thus, the Court declines to deny the motion on this ground.  However, for the reasons

discussed below, however, review of the relevance of document request number 60 is premature at this time.

As to NatPay's communications with the IDFPR, request for production number 60, the undersigned concludes that it cannot make a determination as to the relevance of these documents at this time.  Although Pioneer argues that these documents are relevant, regardless of the Motion to Dismiss and the Motion for Reconsideration, Pioneer has presented that argument to the Court for review by arguing as such in its motion for reconsideration.  See Dkt. No. 329 at 2 n.2.  To make a determination as to whether discovery that is potentially relevant to its unclean hands defense while the Court is presently (1) determining whether to reconsider the dismissal of Pioneer's RICO/RICO-based affirmative defenses, (2) determining whether to assess Pioneer's argument that the unclean hands defense exists apart from the RICO/RICO-based claims, and (3) determining whether to permit amendment of the affirmative defenses would be premature.  See Dkt. No. Accordingly, the motion to compel, as it relates to request number 60, is denied with leave to renew following the Court's determination on the motion for reconsideration, dkt. no. 322, should the matter of the relevance of NatPay's communications with the IDFPR, pursuant document request 60, still be at issue following that determination.

### III.  **Conclusion**

Wherefore, for the reasons set forth herein, it is hereby:

**ORDERED**, that Pioneer's Motion to Compel, Dkt. No. 239, is **GRANTED IN PART AND DENIED IN PART**:

17

(1) the motion is GRANTED to the following extent: within fourteen (14) days of the filing date of this Memorandum-Decision & Order, NatPay is to produce to Pioneer unredacted versions of its 2019 and 2020 financial statements, pursuant to request for production number 70; and

(2) the motion is DENIED, <u>without</u> leave to renew, to the following extent: Pioneer's demand with respect to request for production number 59 is DENIED; and

(3) the motion is DENIED, <u>with</u> leave to request renewal based on the outcome of the Court's decision on the Motion for Reconsideration, with respect to request to request for production number 60 as it relates to NatPay's communications with the IDFPR; and it is further

**ORDERED**, that Pioneer's motion to compel is otherwise **DENIED**; and it is further

**ORDERED**, that NatPay's request that the Court "direct Pioneer to produce in unredacted form all documents it has produced with 'non-responsive content redactions is **DENIED**; and it is

**ORDERED**, that the Clerk serve this Memorandum-Decision & Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED**.

Dated: February 27, 2024
      Albany, New York

Christian F. Hummel
U.S. Magistrate Judge