**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**SOUTHWESTERN PAYROLL SERVICE, INC. and**
**GRANITE SOLUTIONS GROUPE, INC.,**

                            **Plaintiffs,**

**NATIONAL PAYMENT CORPORATION,**

                            **Intervenor-Plaintiff,**

                    **v.**                                    **1:19-CV-1349**
                                                              **(FJS/PJE)**

**PIONEER BANCORP, INC.; PIONEER BANK;**
**MICHAEL T. MANN; VALUEWISE CORPORATION**
*doing business as Apogee doing business as Optix*
*Consulting doing business as Primary Search*
*Group*; **MYPAYROLLHR.COM, LLC; CLOUD**
**PAYROLL, LLC; ROSS PERSONNEL CONSULTANTS,**
**INC.; ALWAYS LIVE HOLDINGS, LLC; KANINGO, LLC;**
**HIRE FLUX, LLC; HIRE FLUX HOLDINGS, LLC;**
**VIVERANT, LLC; and HEUTMAKER BUSINESS**
**ADVISORS, LLC,**

                            **Defendants.**
_____

**APPEARANCES**                        **OF COUNSEL**

**COOPER ERVING & SAVAGE LLP**        **MICHAEL A. KORNSTEIN, ESQ.**
20 Corporate Woods Boulevard
Suite 501
Albany, New York 12211
Attorney for Plaintiffs Southwestern
Payroll Service, Inc. and
Granite Solutions Groupe, Inc.

**JAYNE PETERS MCVICKER**          **ANDREW JAYNE, ESQ.**
**BURKE ASKEW & PARKER**
401 South Boston Avenue – Suite 2000
Tulsa, Oklahoma 74103
Attorney for Plaintiffs Southwestern
Payroll Service, Inc. and
Granite Solutions Groupe, Inc.

**WALTER D. HASKINS, P.C.**          **WALTER D. HASKINS, ESQ.**
311 East 11th Street
Tulsa, Oklahoma 74103
Attorney for Plaintiffs Southwestern
Payroll Service, Inc. and
Granite Solutions Groupe, Inc.

**GREENBERG TRAURIG, LLP**          **CYNTHIA E. NEIDL, ESQ.**
54 State Street – 6th Floor          **JENNIFER TOMSEN, ESQ.**
Albany, New York 12207               **JULIE A. YEDOWITZ, ESQ.**
        - and -                      **ROLAND GARCIA, ESQ.**
1000 Louisiana – Suite 6700
Houston, Texas 77002
Attorneys for Intervenor-Plaintiff
National Payment Corporation

**DLA PIPER LLP (US)**               **ROBERT J. ALESSI, ESQ.**
1251 Avenue of the Americas          **COURTNEY SALESKI, ESQ.**
Ste 27th Floor                       **M. DAVID JOSEFOVITS, ESQ.**
New York, New York 10020             **STEVEN M. ROSATO, ESQ.**
        - and -
1650 Market Street – Suite 5000
Philadelphia, Pennsylvania 19103
Attorneys for Defendants Pioneer
Bancorp, Inc. and Pioneer Bank

**HODGSON RUSS LLP**                 **MICHAEL D. ZAHLER, ESQ.**
677 Broadway – Suite 401
Albany, New York 12207
Attorney for Defendant Pioneer
Bancorp, Inc. and Pioneer Bank


**SCULLIN, Senior Judge**

**MEMORANDUM- DECISION AND ORDER[1]**

**I. INTRODUCTION**

Pending before the Court are Defendants Pioneer Bancorp, Inc. and Pioneer Bank (hereinafter collectively referred to as "Defendant Pioneer")'s two motions to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(h)(3) of the Federal Rules of Civil Procedure. *See* Dkt. Nos. 340, 352. Defendant Pioneer moved to dismiss all Intervenor-Plaintiff National Payment Corporation (hereinafter referred to as "Intervenor-Plaintiff NatPay")'s claims against it for lack of Article III standing. *See* Dkt. No. 340. Defendant Pioneer also moved to dismiss Plaintiffs Southwestern Payroll Service, Inc (hereinafter referred to as "Plaintiff Southwestern Payroll") and Granite Solutions Groupe, Inc (hereinafter referred to as "Plaintiff Granite Solutions")'s declaratory judgement, conversion, negligence/gross negligence, aiding and abetting conversion, and unjust enrichment claims against it for lack of Article III standing. *See* Dkt. No. 352.

**II. BACKGROUND**

**A.     Factual Background**

In this long-running action, Plaintiff Southwestern Payroll, Plaintiff Granite Solutions, and Intervenor-Plaintiff NatPay seek to hold Defendant Pioneer, among others, responsible for erroneously holding money allocated to pay federal and state payroll taxes, so that it could repay

---

[1] References to page numbers of documents in the record are to the page numbers that the Court's Electronic Case Filing System generates, which can be found in the upper right corner of those pages.

itself for its losses incurred in its business relationship with Defendant Michael Mann and his various Defendant businesses.[2]  *See generally* Dkt. No. 232, NatPay's First Amended Intervenor-Complaint; Dkt. No. 245, Plaintiffs' Third Amended Complaint.  Defendant Pioneer allegedly sought to pay itself after discovering that Defendant Mann had committed fraud by improperly manipulating his various payroll businesses' accounts with Defendant Pioneer and other banks for the purpose of obtaining large loans and increased banking privileges, including Remote Deposit Capture ("RDC") privileges that allowed Defendant Mann to obtain "same day availability of deposited funds – as opposed to the ordinary one-day/next day availability of the deposited funds."  *See* Dkt. No. 258, Def. Pioneer's Amended Answer to NatPay's FAIC, at ¶ 603; *see generally* Dkt. No. 51, Memorandum-Decision and Order dated April 16, 2020, at 4.[3]

Plaintiff Southwestern Payroll "is a payroll compliance and support company" that provides its employer-clients "payroll processing services, including providing payroll checks to the employer-client's employees, and collecting, processing, and remitting an employer-client's withheld payroll taxes to the appropriate taxing authorities[.]"[4]  *See* Dkt. No. 245 at ¶ 77.  This

---

[2] Defendant Mann and his Defendant businesses are Defendants alongside Defendant Pioneer, and Defendant Pioneer has asserted cross-claims against Defendant Mann and his Defendant businesses.  *See* Dkt. No. 332, Defendant Pioneer's Amended Answer with Crossclaims.  Neither Defendant Mann nor his Defendant businesses have appeared in this action.  The main Defendant, who has filed the pending dispositive motions, is Defendant Pioneer.

[3] Defendant Mann pled guilty to twelve counts in a Criminal Information on August 12, 2020, which included one count of conspiracy to commit wire fraud in violation of 18 U.S.C. §§ 1343 and 1349, one count of aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1), nine counts of bank fraud in violation of 18 U.S.C. § 1344, and one count of filing a false tax return in violation of 26 U.S.C. § 7206(1).  *See United States v. Mann*, 1:20-CR-199 (LEK), Dkt. No. 98.  Defendant Mann is currently serving a term of imprisonment of 144 months and will be on supervised release following his incarceration for a period of three years.  *See id.*

[4] Defendant Mann, through ownership of Defendant Cloud Payroll, which is wholly owned by Defendant Valuewise, of which Defendant Mann also had complete ownership, purchased 51% of the outstanding stock of Plaintiff Southwestern Payroll on or about April 21, 2017.  *See* Dkt.

payroll tax processing involves the Automated Clearing House ("ACH") transfer of a payroll company's clients' federal, state, and local taxes associated with a particular payroll into a dedicated bank account at a bank. *See id.* at 78. After the payroll clients' tax trust funds are withdrawn from the clients' bank account on a particular payroll date, the funds are held in escrow in a bank account until they are due to be paid to various taxing authorities. *See id.* Then, another ACH transaction occurs to transfer the money from the holding bank account to the appropriate taxing authority. *See id.* Although people often believe ACH transfers are instantaneous, the ACH processor transfers the money over a period of days, which gives banks an opportunity to reject the transaction. *See id.* at ¶ 79. After Defendant Mann/Defendant Cloud Payroll acquired a majority stake in Plaintiff Southwestern Payroll, Defendant Cloud Payroll began processing payroll tax obligations for Plaintiff Southwestern's employer-clients. *See* Dkt. No. 352-6, Alessi Decl., Exh. 4, at 3.

Intervenor-Plaintiff NatPay is a third-party ACH service provider and has been since its inception in 1991; its business, essentially, involves assisting its customers to move money electronically from one bank account to another. *See* Dkt. No. 232 at ¶¶ 76, 79. These transfers involve moving the money through Intervenor-Plaintiff NatPay's bank accounts, to the employers' payroll companies' bank accounts, back through Intervenor-Plaintiff NatPay's bank accounts, and then into the taxing authorities' accounts. *See id.* at ¶ 91.

---

No. 245 at ¶ 83. However, Plaintiff Southwestern Payroll alleges that Defendants Mann/Cloud Payroll/Valuewise were never involved in the day-to-day operations of Southwestern Payroll, and Plaintiff Southwestern Payroll continued to be controlled and operated by its ownership prior to the stock sale. *See id.* at 82-83. Alternatively, Defendant Pioneer asserts that Defendant Mann, as a majority shareholder of Plaintiff Southwestern Payroll, was a representative of Southwestern Payroll and has the right to represent its interests. *See* Dkt. No. 351-1 at 9.

Beginning in 2017, following Defendant Mann/Cloud Payroll's acquisition of a majority stake in Plaintiff Southwestern Payroll, the transfers generally would occur as follows: Plaintiff Southwestern Payroll's employer-clients would deposit funds into Plaintiff Southwestern Payroll's account and Defendant Cloud Payroll/Mann would -- using Intervenor-Plaintiff NatPay as its ACH processor -- initiate an ACH transfer of funds from Plaintiff Southwestern Payroll's account to Intervenor-Plaintiff NatPay's account at First Premier Bank; Intervenor-Plaintiff NatPay would then transfer the funds to an account controlled by Defendant Mann/MyPayrollHR/Cloud Payroll at Defendant Pioneer ending in 0212 or 2440. Finally, when payments to taxing authorities were requested or scheduled, Intervenor-Plaintiff NatPay would, based on instructions from Defendants Mann/Cloud Payroll, transfer the funds from Defendant Pioneer back to First Premier Bank and then to the taxing authorities. *See* Dkt. No. 340-1 at 8-9; *see also* Dkt. No. 352-1 at 9-10; Dkt. No. 232 ¶¶ 83-85, 86, 92-93.

Plaintiff-Intervenor NatPay maintained a bank account at First Premier Bank (hereafter the "Custodial Account"), that it used to hold the subject funds prior to transferring them to the intended taxing authority. *See* Dkt. No. 340-3, Exh. 1, First Premier-NatPay Agreement Addendum. Intervenor-Plaintiff NatPay and First Premier Bank had agreed that the Custodial Account was "for the exclusive use of customers of [Intervenor-Plaintiff NatPay]" and "all funds deposited therein [were to be] held by [First Premier Bank] for the exclusive benefit of the customers of [Plaintiff-Intervenor NatPay] and [held] separate from other accounts maintained by [Intervenor-Plaintiff NatPay] with [First Premier Bank]." *See* Dkt. No. 365-2, Exh. A, Pereira Decl., at 3. Intervenor-Plaintiff NatPay also agreed to "be held financially responsible for all ACH activity originated[; and it had to] maintain sufficient available funds in the [Custodial Account] to cover anticipated returned items from Debit transactions originated." *See id* at 6.

Last, the agreement required Intervenor-Plaintiff NatPay to indemnify First Premier Bank for "loss or liability" incurred arising from Intervenor-Plaintiff NatPay's account.[5]  *See id.* at 10.

Defendant Pioneer is a bank that had a longstanding business relationship with Defendant Mann, including -- through his various Defendant businesses -- a total of thirty-four bank accounts; a loan to Defendant Valuewise which, by August 12, 2019, had increased to $42 million; and a non-revolving line of credit/term loan.  *See* Dkt. No. 245 at ¶¶ 96-103.  On August 30, 2019, Bank of America froze Defendant Mann's accounts and returned and called back 36 checks Defendant Mann had written, which caused Defendant Mann's accounts at Defendant Pioneer to be severely overdrawn; Defendant Pioneer then suspended all of the accounts Defendant Mann had open at Defendant Pioneer.  *See* Dkt. No. 340-1 at 9-10.  On September 4, 2019, Defendant Pioneer initiated a process of manually reviewing all attempted credits and debits into the suspended accounts, in which it accepted credits but denied debits from the First Premier Bank Account for transfers Intervenor-Plaintiff NatPay initiated; Defendant Pioneer also initiated an account overdraft recovery setoff against multiple accounts controlled by Defendant Mann to partially recover the overdrafts/negative net balances in the Mann Entity accounts.  *See*

---

[5] "The ACH Agreement [between First Premier Bank and NatPay] requires NatPay to 'provide immediately available collected funds to cover any credit entry initiated by it not later than Settlement Date applicable thereto.'"  [*See* Dkt. No. 365-1, Pereira Decl., at ¶ 23; Dkt. No. 365-2, Exh. A, at 10, ¶ 7.]  The ACH agreement also requires NatPay to indemnify First Premier Bank in the event a debit (withdrawal) entry is rejected after the corresponding credit (deposit) entry has been made.

> The Company will promptly provide immediately available funds to indemnify the Bank if any debit entry is rejected after the Bank has permitted the Company to withdraw immediately-available funds in the amount thereof or if any adjustment memorandum that relates to any such entry is received by the Bank."

*See* Dkt. No. 365 at 9 (quoting [Dkt. No. 365-1 at] ¶ 24[; Dkt. No. 365-2] at 10, ¶ 11.).

*id.* at 10.  Plaintiff Southwestern Payroll asserts that Defendant Pioneer, as "the illegal scheme came crashing down," "seize[d] nearly $10M of Southwestern Payroll's employer-client payroll tax funds."  *See* Dkt. No. 346-1 at 8.

Plaintiff Granite Solutions is a financial services consulting firm based in San Francisco, California.  *See* Dkt. No. 232 at ¶ 90.  Beginning in 2014, at all pertinent times, Plaintiff Granite Solutions contracted with Defendant MyPayrollHR, a company operated and controlled by Defendant Mann, as its third-party payroll provider.  *See id.* at 91.  Plaintiff Granite Solutions asserts that, when "the illegal scheme came crashing down," Defendant Pioneer seized "nearly $500,000 of [its own] payroll tax funds."  *See* Dkt. No. 346-1 at 8.

Intervenor-Plaintiff NatPay asserts that, when it "debited/withdrew $4,329,563.94 from the Cloud Payroll 2440 Account on August 30 and September 3, it deposited those funds with the appropriate taxing authorities . . . [and w]hen Pioneer ultimately returned NatPay's debit entries, it caused NatPay to fund the deposits."  *See* Dkt. No. 365 at 12.  Intervenor-Plaintiff NatPay and its bank, First Premier Bank, attempted to roll back some deposits; but, ultimately, First Premier Bank suffered a loss because it, with Intervenor-Plaintiff NatPay, had to fund the deposits.  *See id.* at 12-13.  Intervenor-Plaintiff NatPay asserts it is contractually obligated to indemnify First Premier Bank for this loss, which resulted from Defendant Pioneer's partial freeze and seizure of the deposited funds.  *See id.* at 12-13.  Intervenor-Plaintiff NatPay asserts it has "incurred direct, out-of-pocket losses in the amount totaling at least $3,884,114.49" and that whether successful or not in this litigation, "it will reimburse/indemnify First Premier for all losses pursuant to the parties' ACH agreement."  *See id.* at 13.

**B.      Procedural Background**

Plaintiff Southwestern Payroll filed this action on October 31, 2019; the Court permitted

Plaintiff Granite Solutions to join as a co-plaintiff; and Plaintiffs together filed their third

Amended Complaint, the operative complaint, on April 26, 2023.  *See* Dkt. No. 1, Compl.; *see*

*also* Dkt. No. 245.  Plaintiffs bring the following claims:

> (1) Declaratory Judgement against Defendant Pioneer;
>
> (2) Conversion against all Defendants;
>
> (3) Fraud, asserted only by Plaintiff Southwestern Payroll, against all Defendants;
>
> (4) Fraud against all Defendants;
>
> (5) Negligence/Gross Negligence against all Defendants;
>
> (6) Unjust Enrichment/Money Had and Received against Defendant Pioneer;
>
> (7) Violation of Racketeer Influenced & Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), against all Defendants;
>
> (8) Violation of RICO, 18 U.S.C. § 1962(d), against all Defendants;
>
> (9) Aiding and Abetting Conversion against Defendant Pioneer; and
>
> (10) Aiding and Abetting Fraud against Defendant Pioneer.

*See* Dkt. No. 245 at ¶¶ 393-499.

This Court permitted NatPay to intervene in this action; and, after its intervention,

Intervenor-Plaintiff NatPay filed an Amended Complaint, its operative complaint, on April 13,

2023.  *See* Dkt. No. 150, Memorandum-Decision and Order dated October 6, 2020 (accepting

Magistrate Judge Hummel's recommendation that the Court grant NatPay's motion to intervene);

*see also* Dkt. No. 232.  Intervenor-Plaintiff NatPay brings the following claims:

> (1) Declaratory Judgement against Defendant Pioneer;
>
> (2) Conversion against all Defendants;
>
> (3) Fraud against all Defendants;

(4) Negligence/Gross Negligence against all Defendants;

(5) Unjust Enrichment/Money Had and Received against Defendant Pioneer;

(6) Violation of RICO, 18 U.S.C. § 1962(c), against all Defendants;

(7) Violation of RICO, 18 U.S.C. § 1962(d), against all Defendants;

(8) Aiding and Abetting Conversion against Defendant Pioneer; and

(9) Aiding and Abetting Fraud against Defendant Pioneer.

*See* Dkt. No. 232 at ¶¶ 410-514.

The parties have completed discovery and have filed several dispositive motions. Currently pending before the Court are Defendant Pioneer's two motions to dismiss for lack of subject matter jurisdiction, specifically for lack of standing against Intervenor-Plaintiff NatPay and Plaintiffs. *See* Dkt. Nos. 340, 352.

First, Defendant Pioneer moves to dismiss Plaintiffs' declaratory judgement, conversion, negligence/gross negligence, aiding and abetting conversion, and unjust enrichment claims against it. *See* Dkt. No. 352; *see also* Dkt. No. 352-1, Pioneer's Memorandum of Law in Support of Dismissal against Plaintiffs; Dkt. No. 376, Pioneer's Reply Memorandum of Law in Support of Dismissal against Plaintiffs. Plaintiffs oppose Defendant Pioneer's motion. *See* Dkt. No. 363, Plaintiffs' Response Memorandum of Law in Opposition to Dismissal.

Second, Defendant Pioneer moves to dismiss all Intervenor-Plaintiff NatPay's claims against it. *See* Dkt. No. 340; *see also* Dkt. No. 340-1, Pioneer's Memorandum of Law in Support of Dismissal against NatPay; Dkt. No. 376, Pioneer's Reply Memorandum of Law in Support of Dismissal against NatPay. Intervenor-Plaintiff NatPay opposes Defendant Pioneer's motion. *See* Dkt. No. 365, NatPay's Response Memorandum of Law in Opposition to Dismissal.

The Court will address these two motions in turn.

## III. DISCUSSION

**A.    Defendant Pioneer's motion to dismiss Plaintiffs' declaratory judgment, conversion, negligence/gross negligence, aiding and abetting conversion, and unjust enrichment claims for lack of Article III standing**

Standing is "the irreducible constitutional minimum" that must be demonstrated for this Court to hear any case. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *see also* U.S. Const. art. III § 2.

> The limitation on the federal judicial power under the United States Constitution to "cases" and "controversies," U.S. Const. art. III, § 2, requires that the party invoking federal jurisdiction demonstrate "(1) *injury in fact*, which is a 'concrete and particularized' harm to a 'legally protected interest'; (2) *causation* in the form of a 'fairly traceable' connection between the asserted injury-in-fact and the alleged actions of the defendant; and (3) *redressability*, or a non-speculative likelihood that the injury can be remedied by the requested relief.'"

*Disabilities Advocs., Inc. v. New York Coal. for Quality Assisted Living, Inc.*, 675 F.3d 149, 156 (2d Cir. 2012) (quoting *W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*, 549 F.3d 100, 106-07 (2d Cir. 2008) (quoting *Lujan*, 504 U.S. at 560-61, 112 S. Ct. 2130)).

Here, Defendant Pioneer is challenging Plaintiffs' standing to assert claims relating to Defendant Pioneer's alleged set-off of the Cloud Payroll account, claiming that Plaintiffs do not have any injury-in-fact that would be redressed by a favorable ruling because Plaintiffs are not themselves entitled to the funds seized in the alleged set-off. *See generally* Dkt. Nos. 352-1, 378. Plaintiffs object, alleging that both Plaintiff Southwestern Payroll and Plaintiff Granite Solutions themselves have the required standing and, alternatively, that Plaintiff Southwestern Payroll can properly assert the third-party rights of its employer clients. *See generally* Dkt. No. 363.

### 1. Injury-in-fact

"[I]njury-in-fact is required to establish standing under Article III of the Constitution." *Beh v. Cmty. Care Companions Inc*., 1:19-CV-01417 - JLS (MJR), 2022 U.S. Dist. LEXIS 178794, *18 (W.D.N.Y. Sept. 29, 2022) (citing *Maddox v. Bank of New York Mellon Trust Co*., 19 F.4th 58, 62 (2d Cir. 2021)).  "To demonstrate an injury-in-fact, a plaintiff must show 'the invasion of a (1) legally protected interest that is (2) concrete and particularized and (3) actual or imminent, not conjectural or hypothetical.'" *Id.* (citing [*Maddox*, 19 F.4th at 62]).  "The injury in fact requirement is a 'low threshold' that 'helps to ensure that the plaintiff has a personal stake in the outcome of the controversy.'" *Omar Islamic Ctr. Inc. v. City of Meriden*, 633 F. Supp. 3d 600, 613 (D. Conn. 2022) (quoting *John v. Whole Foods Market Grp., Inc*., 858 F.3d 732, 736 (2d Cir. 2017) (internal quotation marks omitted)).

Here, Plaintiffs insist that they themselves were injured when Defendant Pioneer allegedly "unlawfully seized third-party funds under the pretext of a setoff."  *See* Dkt. No. 363 at 7.  Indeed, Plaintiff Granite Solutions had an actual, concrete, and legally protected interest in some of the funds that Defendant Pioneer allegedly seized because the funds were being held in the Cloud Payroll Account for the purpose of paying Plaintiff Granite Solutions' tax obligations. S*ee id.* (citing Dkt. No. 362-1, L'Abbe Decl.).

Furthermore, Plaintiff Southwestern Payroll asserts that, although it was not a direct owner of the funds held in the Cloud Payroll Account, it was injured by Defendant Pioneer's alleged seizure of the tax funds.  *See id.* at 7-8.  Plaintiff Southwestern Payroll argues its injuries included "direct business losses, including lost profits and diminution in value[,]" and exposure to liability from its clients – whose tax funds were seized by Defendant Pioneer.  *See id.* (citing

Dkt. No. 363-2, Exh. 1, Supplemental and Updated Written Report of Expert Testimony

Regarding Lost Profit Damages and/or Diminution in Value Damages by David R. Payne).

"The injury-in-fact element requires that the plaintiff be 'the proper party to bring this

suit[,]'" *i.e.*—that plaintiff "'has a "personal stake" in the alleged dispute. . . .'" *Carter v.*

*HealthPort Techs., LLC*, 822 F.3d 47, 55 (2d Cir. 2016) (quoting *Raines v. Byrd*, 521 U.S. 811,

818-819, 117 S. Ct. 2312, 138 L. Ed. 2d 849 (1997)). "Any monetary loss suffered by the

plaintiff satisfies this element; 'even a small financial loss' suffices." *Id.* (quoting *Natural*

*Resources Defense Council, Inc. v. United States Food & Drug Administration*, 710 F.3d 71, 85

(2d Cir. 2013)). "Further, a liability, including a contingent liability, may be a cognizable legal

injury." *Id.* (citing, *e.g.*, *Clinton v. City of New York*, 524 U.S. 417, 430-31, 118 S. Ct. 2091, 141

L. Ed. 2d 393 (1998); *E.M. v. New York City Department of Education*, 758 F.3d 442, 457 (2d

Cir. 2014); *Denney v. Deutsche Bank AG*, 443 F.3d 253, 265 (2d Cir. 2006)).

Both Plaintiff Granite Solutions and Plaintiff Southwestern Payroll certainty have

established that they have a sufficient personal stake in this action.  Plaintiff Granite Solutions,

which owned some of the funds that Defendant Pioneer took in the alleged set-off, has allegedly

suffered an injury in fact from Defendant Pioneer's actions.  Plaintiff Southwestern Payroll,

although not a direct owner of the funds that Defendant Pioneer took in the alleged set-off, has

allegedly suffered an injury -- both through direct business losses and through contingent

liability for the funds that their employer clients lost.  Therefore, the Court concludes that both

Plaintiffs have allegedly suffered an injury-in-fact and have a sufficient personal stake in this

action.[6]

---

[6] Defendant Pioneer's argument that the subject funds became its funds and that, therefore, Plaintiffs can have no injury-in-fact regarding the funds is an argument that pertains to the merits of this case regarding the status of the funds at the relevant times.  Therefore, the Court will

### 2. Causation

Defendant Pioneer does not argue that there is no causal connection between the Plaintiffs' alleged injury-in-fact and Defendant Pioneer's actions. Therefore, the Court will assume that causation, for purposes of determining Plaintiffs' Article III standing, has been sufficiently established.

### 3. Redressability

"To meet the redressability element of Article III standing, 'it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Dickerson v. Feldman*, 426 F. Supp. 2d 130, 136 (S.D.N.Y. 2006) (quoting *Lujan*, 504 U.S. at 561). "A plaintiff 'satisfies the redressability requirement when he shows that a favorable decision will relieve a discrete injury to himself. He need not show a favorable decision will relieve his every injury.'" *DIRECTV, LLC v. Nexstar Media Grp., Inc.*, 724 F. Supp. 3d 268, 276 (S.D.N.Y. 2024) (quoting *Chevron Corp. v. Donzinger*, 833 F.3d 74, 121 (2d Cir. 2016)).

Here, as to Plaintiff Granite Solutions, a return of the funds allegedly setoff/stolen which belong to Plaintiff Granite Solutions would redress its injury-in-fact. As to Plaintiff Southwestern Payroll, a monetary damages award would redress the alleged business losses it suffered because of Defendant Pioneer's alleged set-off of Southwestern Payroll's client funds,

---

address the issue of whether the account is a special account or not, and how resolution of this issue affects Plaintiffs' claims, in a separate Memorandum-Decision and Order, addressing the parties' motions for summary judgment.

and a return of the funds for which Plaintiff Southwestern Payroll is contingently liable would redress its alleged contingent liability.[7]

Therefore, the Court finds that Plaintiffs have sufficiently established their Article III standing to bring this action.[8]

## B.     Defendant Pioneer's motion to dismiss Intervenor-Plaintiff NatPay's claims for lack of Article III standing

"For all relief sought, there must be a litigant with standing, whether that litigant joins the lawsuit as a plaintiff, a coplaintiff, or an intervenor of right.  Thus, at the least, *an intervenor of right must demonstrate Article III standing* when it seeks additional relief beyond that which the plaintiff requests."  *Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2017) (emphasis added).

Here, the parties' arguments rest exclusively on the injury-in-fact prong of Article III standing.  Specifically, Defendant Pioneer's position boils down to the argument that Intervenor-Plaintiff "NatPay has failed to show that it suffered a distinct and palpable injury to itself[,]" because "NatPay did not own the funds at issue[.]"  *See* Dkt. No. 340-1 at 13; *see also generally* Dkt. No. 376.  Intervenor-Plaintiff NatPay, in response, argues that, although it does not own the funds in question, it "is contractually obligated to reimburse and indemnify First Premier Bank for all ACH transactions that result in any loss"; and, because "NatPay is ultimately responsible

---

[7] Defendant Pioneer's argument that Plaintiffs' injuries cannot be addressed because they seek ***all the funds***, and not only the funds in which they have a direct possessory interest, is a question better determined in the context of damages.  Here, any injury, even if it is a small financial loss, *Carter*, 822 F.3d at 55, is sufficient to satisfy a redressable injury-in-fact for standing purposes.

[8] In reaching this finding, the Court does not need to reach the arguments that Plaintiffs and Defendant Pioneer present in their memoranda in law regarding third-party standing and the prudential standing doctrine because Plaintiffs have established standing in their own right and do not need to establish standing based on a third party.

for any losses caused by Pioneer's wrongful debit returns and seizure of funds, NatPay has suffered an injury in fact and has standing[.]"  *See* Dkt. No. 365 at 5, 8-9, 13, 16.

### *1. Preliminary Issues*

Before addressing Article III standing, the Court must first address Defendant Pioneer's objections to Intervenor-Plaintiff NatPay's "sudden shift" from claiming its own injury to First Premier Bank's injury, which Intervenor-Plaintiff NatPay is obligated to indemnify.  *See* Dkt. No. 376 at 6-10.  Defendant Pioneer argues that the Court should not permit Intervenor-Plaintiff NatPay's "sudden shift" because (1) Intervenor-Plaintiff NatPay is bound by its past interrogatory responses as judicial admissions; (2) Intervenor-Plaintiff NatPay's amended complaint identifies the funds at issue as "NatPay's funds" and does not identify First Premier Bank's alleged loss nor Intervenor-Plaintiff NatPay's obligation to indemnify First Premier Bank's alleged loss; (3) Intervenor-Plaintiff NatPay's amended disclosures required under Rule 26(a) fail to mention First Premier Bank or disclose a First Premier Bank representative as an individual with discoverable information; and (4), under the doctrine of judicial estoppel, Intervenor-Plaintiff NatPay's previous "categorical[] denial[ of] any third party standing issues, asserting that its 'claims simply do not rest on the rights of any third parties[]'" prevents Intervenor-Plaintiff NatPay from now relying on indemnification of First Premier Bank.  *See id.*

Defendant Pioneer argues that Intervenor-Plaintiff NatPay, in "its interrogatory responses regarding computation of damages[,]" never "even suggested that First Premier allegedly incurred a loss for which NatPay owed an indemnity obligation."  *See* Dkt. No. 376 at 8. Defendant Pioneer cites two interrogatory responses, first:

> **Interrogatory No. 8:** With respect to NatPay's claim for fraud as set forth in paragraph 117 to 125 of the Complaint, identify all

> facts and evidence upon which NatPay alleges that the Pioneer
> Parties made misrepresentations or material omissions of fact to
> NatPay, and *explain how NatPay has been damaged in reliance on*
> *those alleged misrepresentations or material omissions of fact.*[9]
>
> **Objections and Response:** [ . . . ]
>
> NatPay states that it incurred $3,884,114.49 in out-of-pocket losses
> due to Pioneer's "partial freezing of accounts, which resulted in
> NatPay's own funds to be deposited in accounts at Pioneer Bank, in
> accounts held by taxing authorities, or the accounts of third-party
> employers who timely returned the debits to their accounts.  For
> the details of these transactions, NatPay refers to documents
> labeled Bates Nos. NP0094033 and NP0094036.

*See* Dkt. No. 376, Exh. 12, Intervenor-Plaintiff NatPay's Objections and Responses to Defendant

Pioneer's Revised First Set of Interrogatories, at 3, 7 (emphasis added).  Second:

> **Interrogatory No. 23:** Provide a computation of each category of
> alleged damages that NatPay seeks to recover in this Action,
> including without limitation a detailed accounting of the alleged
> "$3.8 million in damages" described in paragraph 50 of the
> Amended Complaint and the "direct loss to NatPay" in the amount
> of $2,721,815.77" described in paragraph 361 of the Amended
> Complaint.
>
> **Objections and Response:** Subject to and without waiving the
> foregoing and general specific objections,[10] NatPay states that its
> computation of actual damages is reflected in NP0094036 and
> NP0094132.  NatPay will also seek pre-judgement interest at the

---

[9] Intervenor-Plaintiff NatPay objected to this interrogatory on the grounds that it had two discrete subparts, each of which constituted a separate interrogatory.  *See* Dkt. No. 376-2 at 3.  The response at issue here is to the second "subpart" regarding Intervenor-Plaintiff NatPay's alleged damages.

[10] Intervenor-Plaintiff NatPay makes several general objections to Defendant Pioneer's second set of interrogatories including the following: (1) they were "overly broad, unduly burdensome, or unreasonable in scope[;]" (2) they were "vague, ambiguous or fail to describe the information sought with reasonable particularity[;]" (3) "the disclosure of information would invade the privacy of [a] third party, would require NatPay to violate any confidentiality agreement [NatPay] has in place with any third party, or would require NatPay to violate state or federal laws[;]" (4) "they seek information beyond NatPay's possession, custody or control, or to the extent they purport to require NatPay to obtain information from another party or any non-parties[;]" and (5) they seek information that is publicly available or is in Pioneer's possession, custody, or control."  *See* Dkt. No. 391 at 2.

> statutory rate, attorneys' fees, treble damages, and punitive
> damages in amounts to be determined at or after trial.

*See* Dkt. No. 376-3, Exh. 13, Intervenor-Plaintiff NatPay's Objections and Responses to

Defendant Pioneer's Second Set of Interrogatories, at 3.  The documents mentioned in both

responses, NP0094036 and NP0094036, are spreadsheet documents which list credits/deposits

attempted by Intervenor-Plaintiff NatPay between August 30, 2019, and September 4, 2019.  *See,*

*e.g.,* Dkt. No. 376-4; Dkt. No. 376-5 (specifically totaling an alleged loss of $3,266,253.44 of

debits accepted by Pioneer to allegedly "set off" Pioneer's losses).

"'A judicial admission is a statement made by a party or its counsel which has the effect

of withdrawing a fact from contention and which binds the party making it throughout the course

of the proceeding.'"  *Rensselaer Polytechnic Inst. v. Amazon.com, Inc.*, 1:18-cv-549

(BKS/TWD), 2023 U.S. Dist. LEXIS 163947, *20-*21 (N.D.N.Y. Sept. 15, 2023) (quoting *In re*

*Motors Liquidation Co*., 957 F.3d 357, 360 (2d Cir. 2020) (citations omitted)).  "To constitute a

judicial admission, the statement must be one of fact -- a legal conclusion does not suffice."  *Id.*

at *21 (quotation marks and citations omitted) (emphasis in original).  "Further, to constitute a

judicial admission a statement must be 'intentional, clear, and unambiguous.'"  *Id.* (quotation

omitted).

"Courts have recognized that '[c]ontention interrogatories are treated as judicial

admissions which usually estop the responding party from later asserting positions not included

in its answers.'"  *Int'l Cards Co. v. Mastercard Int'l Inc.*, 13 Civ. 2576 (LGS), 2017 U.S. Dist.

LEXIS 43789, *10 (S.D.N.Y. Mar. 24, 2017) (quoting *In re Methyl Tertiary Butyl Ether*

*("MBTE") Prods. Liab. Litig.*, No. 08 Civ. 312, 2014 U.S. Dist. LEXIS 15966, 2014 WL 494522,

at *2 (S.D.N.Y. Feb. 6, 2014)).  However, "[p]reclusion is not mandatory and '[t]rial judges are

given broad discretion to relieve the parties from the consequences of judicial admissions in the

appropriate circumstances.'" *Id.* at n.1 (quoting *In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*, 379 F. Supp. 2d 348, 371 (S.D.N.Y. 2005); *see* 8B Charles Alan Wright, Arthur R. Miller, & Richard L. Marcus, *Federal Practice and Procedure* § 2181 (3d ed. 2010) ("Although interrogatory answers -- like other discovery responses -- may properly limit issues and foreclose avenues of proof, those consequences should only follow when appropriate."); *Grace v. United States*, 754 F. Supp. 585, 599 (W.D.N.Y. 2010) ("The Second Circuit has not ruled that interrogatory responses are binding judicial admissions . . . .")).  Defendant Pioneer essentially argues that the Court should preclude Intervenor-Plaintiff NatPay from arguing standing based on indemnity or liability for the funds at issue because it did not specify this argument in the two above-cited interrogatories.  *See* Dkt. No. 376 at 7-8.  However, Intervenor-Plaintiff NatPay, in response to Defendant Pioneer's interrogatory, did properly identify the funds at issue.  Indeed, the referenced spreadsheets specifically identify that the debits at issue were traveling through First Premier Bank Accounts.  *See* Dkt. Nos. 376-4, 376-5.  The Court, given the inherent factual complexity regarding the alleged ownership of the funds at issue, finds that this alleged failure to disclose the direct owner of the funds at issue was neither intentional, clear, nor unambiguous. Therefore, the Court holds that Intervenor-Plaintiff NatPay's interrogatories do not constitute judicial admissions that prevent Intervenor-Plaintiff NatPay from asserting its Article III standing.

Second, Defendant Pioneer argues that Intervenor-Plaintiff NatPay's amended complaint identifies the funds at issue as "NatPay's funds" and does not identify First Premier Bank's alleged loss or NatPay's obligation to indemnify First Premier Bank's alleged loss; therefore, Intervenor-Plaintiff NatPay should not be allowed to "introduce[e] an unpleaded theory of injury at this late stage."  *See* Dkt. No. 376 at 8-9; *see also* Dkt. No. 232 ¶¶ 358, 427, 430, 464, 467

(notably mostly referring to "Third-Party Employer tax funds and NatPay's funds").  Defendant

Pioneer's argument that Intervenor-Plaintiff NatPay's complaint "misrepresents those

underfunded payments from the First Premier Account injured NatPay" misconstrues the cited

paragraphs of Intervenor-Plaintiff NatPay's complaint, where the quoted language is almost

always in context referred to with "Third-Party Employer tax funds."  *See generally* Dkt. No.

232.  Taken as a whole, Intervenor-Plaintiff NatPay's complaint identifies the funds at issue.[11]

Therefore, the Court finds that Intervenor-Plaintiff NatPay is not "raising an unpleaded theory of

injury" because its complaint properly identifies the funds at issue.

Third, Defendant Pioneer argues that Intervenor-Plaintiff NatPay's amended disclosure,

required under Rule 26(a), failed to mention First Premier Bank or disclose a First Premier Bank

representative as an individual with discoverable information; and, therefore, the Court should

issue a "preclusionary sanction for failure to disclose under Rule 26(a)."  *See* Dkt. No. 376 at 9;

*see also* Dkt. No. 376-6, Exh. 16, Intervenor-Plaintiff NatPay's Amended Rule 26 Initial

Disclosures.

"Rule 26(a) requires parties to provide, among other things, 'the name . . . of each

individual likely to have discoverable information . . . that the disclosing party may use to

support its claims or defenses, unless the use would be solely for impeachment.'"

*Schneidermesser v. NYU Grossman Sch. of Med.*, 21 Civ. 7179 (DEH), 2024 U.S. Dist. LEXIS

159883, *4 (S.D.N.Y. Sept. 5, 2024) (quoting Fed. R. Civ. P. 26(a)(1)(A)(i)).  "'The party seeking

---

[11] Additionally, the Court notes that in the case that Defendant Pioneer cites to support its argument that the Court should not allow Intervenor-Plaintiff NatPay to "salvage Article III standing," the court was addressing a motion for summary judgment and not a motion to dismiss for lack of standing as in the present motion.  *See* Dkt. No. 376 at 8 (citing *Nagel v. Cnty. of Orange*, 2013 WL 1285465, at *5 (S.D.N.Y. Mar. 28, 2013) ("It is well-settled that a party may not raise new claims or theories of liability for the first time in opposition to summary judgement.")).

Rule 37 sanctions bears the burden of showing that the opposing party failed to timely disclose information.'" *Id.* at *5 (citing *New World Sols*.[, *Inc. v. NameMedia Inc.,*] 150 F. Supp. 3d [287,] 304 [(S.D.N.Y. 2015)]).  "To determine whether preclusion is warranted under Rule 37, a court must consider '(1) the party's explanation for the failure to comply with the disclosure requirement; (2) the importance of the testimony of the precluded witnesses; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new [evidence]; and (4) the possibility of a continuance.'" *Id.* (citing *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 296 (2d Cir. 2006) ("Design Strategy factors"); *Richmond v. General Nutrition Ctrs., Inc.*, No. 08 Civ. 3577, 2012 U.S. Dist. LEXIS 32070, 2012 WL 762307, at *6 (S.D.N.Y. 2012) (same)).

Defendant Pioneer fails to address any of these factors and, instead, merely complains that Intervenor-Plaintiff NatPay's Amended disclosures failed to mention First Premier Bank or disclose a representative of First Premier Bank as an individual with discoverable information. *See* Dkt. No. 376 at 9.  Indeed, the prejudice suffered by this lack of disclosure seems minimal, as Defendant Pioneer was seemingly aware that Plaintiff-Intervenor NatPay was contracting with its bank, First Premier Bank, to transfer the subject funds to Defendant Pioneer.  Therefore, the Court finds that Defendant Pioneer has failed to meet its burden to establish that it is entitled to a preclusionary sanction.

Last, under the doctrine of judicial estoppel, Defendant Pioneer argues that Intervenor-Plaintiff NatPay's previous "categorical[] denial[ of] any third party standing issues, asserting that its 'claims simply do not rest on the rights of any third parties[]'" prevents Intervenor-Plaintiff NatPay from now relying on indemnification of First Premier Bank.  *See* Dkt. No. 376 at 9.  Indeed, in its reply memorandum of law in support of its motion to intervene, Intervenor-Plaintiff NatPay discussed prudential standing and asserted that the standing which it asserted to

intervene was its own standing, not that of a third party. *See* Dkt. No. 42, Intervenor-Plaintiff NatPay's Reply Memorandum of Law in Support of Intervention, at 7-8. However, Defendant Pioneer's contention that this should estop Intervenor-Plaintiff NatPay from now continuing to assert its standing is mistaken because, although Defendant Pioneer continues to argue that Intervenor-Plaintiff NatPay has no standing of its own and relies only on third-party standing, Intervenor-Plaintiff NatPay only argues it has standing because it is liable for the subject funds.

Although the doctrine of judicial estoppel does require this Court to hold parties to positions previously taken, the Court finds that judicial estoppel is inapplicable here as Intervenor-Plaintiff NatPay has not taken a contrary position. *See Ashmore v. CGI Grp., Inc.*, 923 F.3d 260, 272 (2d Cir. 2019) (stating that "[j]udicial estoppel is properly invoked where: (1) a party's later position is clearly inconsistent with its earlier position, and (2) the party's former position has been adopted in some way by the court in an earlier proceeding" (citing [*New Hampshire v. Maine*, 532 U.S. 742,] 750-51[, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001)])).

Therefore, the Court will consider Intervenor-Plaintiff NatPay's Article III standing.

### 2. Intervenor-Plaintiff NatPay's Injury-in-fact

"[A]n injury-in-fact is required to establish standing under Article III of the Constitution." *Beh,* 2022 U.S. Dist. LEXIS 178794, at *18 (citing *Maddox v. Bank of New York Mellon Trust Co.*, 19 F.4th 58, 62 (2d Cir. 2021)). "To demonstrate an injury-in-fact, a plaintiff must show 'the invasion of a (1) legally protected interest that is (2) concrete and particularized and (3) actual or imminent, not conjectural or hypothetical.'" *Id.* (quoting [*Maddox*, 19 F.4th at 62]). "The injury in fact requirement is a 'low threshold' that 'helps to ensure that the plaintiff has a personal stake in the outcome of the controversy.'" *Omar Islamic Ctr.*, 663 F. Supp. 3d at 613 (quoting *John v.*

*Whole Foods Market Grp., Inc.*, 858 F.3d 732, 736 (2d Cir. 2017) (internal quotation marks omitted)).

Here, Defendant Pioneer argues that Intervenor-Plaintiff NatPay has no "personal stake in the outcome of the controversy" because it had no direct possessory interest in the subject funds. *See* Dkt. No. 340-1 at 13; *see also generally* Dkt. No. 376. In response, Intervenor-Plaintiff NatPay argues that, although it did not directly own the subject funds, it is "liable for any losses" of the subject funds and therefore has "incurred an immediate, direct, and actual loss." *See* Dkt. No. 365 at 16 n.1.

To establish Article III standing, "a liability, including a contingent liability, may be a cognizable legal injury." *Carter*, 822 F.3d at 55 (citing, *e.g.*, *Clinton v. City of New York*, 524 U.S. 417, 430-31, 118 S. Ct. 2091, 141 L. Ed. 2d 393 (1998); *E.M. v. New York City Department of Education*, 758 F.3d 442, 457 (2d Cir. 2014); *Denney v. Deutsche Bank AG*, 443 F.3d 253, 265 (2d Cir. 2006)). Here, Intervenor-Plaintiff NatPay has sufficiently established contingent liability for the alleged funds at issue in the present action, specifically to its bank, First Premier Bank. Although Intervenor-Plaintiff NatPay does not own the specific funds at issue, it has identified subject funds for which it is contingently liable to a third-party. *See* Dkt. No. 365 at 16 n.1.

Defendant Pioneer makes no argument that Intervenor-Plaintiff NatPay has failed to establish causation and has not argued that, even if the Court finds injury-in-fact, Intervenor-Plaintiff NatPay's injury cannot be redressed.[12] Therefore, the Court finds that Intervenor-Plaintiff NatPay has sufficiently established its Article III standing.

---

[12] Defendant Pioneer also argues that the Court should dismiss Intervenor-Plaintiff NatPay's declaratory judgement claim for lack of a case or controversy, specifically because Intervenor-Plaintiff NatPay has not alleged direct ownership of the funds which Defendant Pioneer allegedly setoff. *See generally* Dkt. Nos. 340-1, 356. For the same reasons as stated above, and because Defendant Pioneer's alleged setoff involved funds for which Intervenor-Plaintiff NatPay may be

## IV. CONCLUSION

Having reviewed the entire file in this matter, the parties' submissions, and the applicable law and for the above stated reasons, the Court hereby

**ORDERS** that Defendant Pioneer's motion to dismiss Intervenor-Plaintiff NatPay's claims for lack of Article III standing pursuant to Rule 12(h)(3) of the Federal Rules of Civil Procedure, *see* Dkt. No. 340, is **DENIED**; and the Court further

**ORDERS** that Defendant Pioneer's motion to dismiss Plaintiffs' declaratory judgement, conversion, negligence/gross negligence, aiding and abetting conversion, and unjust enrichment claims for lack of Article III standing, pursuant to Rule 12(h)(3) of the Federal Rules of Civil Procedure, *see* Dkt. No. 352, is **DENIED**.

**IT IS SO ORDERED.**

Dated: June 25, 2025
      Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Judge

---

liable to First Premier Bank, the Court refuses to dismiss Intervenor-Plaintiff NatPay's declaratory judgement claim.