**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**SOUTHWESTERN PAYROLL SERVICE, INC. and**
**GRANITE SOLUTIONS GROUPE, INC.,**

                              **Plaintiffs,**

**NATIONAL PAYMENT CORPORATION,**

                        **Intervenor-Plaintiff,**

              **v.**                                        **1:19-CV-1349**
                                                            **(FJS/PJE)**
**PIONEER BANCORP, INC.; PIONEER BANK;**
**MICHAEL T. MANN; VALUEWISE CORPORATION**
*doing business as Apogee doing business as Optix*
*Consulting doing business as Primary Search Group*;
**MYPAYROLLHR.COM, LLC; CLOUD PAYROLL, LLC;**
**ROSS PERSONNEL CONSULTANTS, INC.; ALWAYS**
**LIVE HOLDINGS, LLC; KANINGO, LLC; HIRE**
**FLUX, LLC; HIRE FLUX HOLDINGS, LLC;**
**VIVERANT, LLC; and HEUTMAKER BUSINESS**
**ADVISORS, LLC,**

                              **Defendants.**
_____

**APPEARANCES**                          **OF COUNSEL**

**COOPER ERVING & SAVAGE LLP**           **MICHAEL A. KORNSTEIN, ESQ.**
20 Corporate Woods Boulevard – Suite 501
Albany, New York 12211
Attorney for Plaintiffs Southwestern
Payroll Service, Inc. and
Granite Solutions Groupe, Inc.

**JAYNE PETERS MCVICKER**                **ANDREW JAYNE, ESQ.**
**BURKE ASKEW & PARKER**
401 South Boston Avenue – Suite 2000
Tulsa, Oklahoma 74103
Attorney for Plaintiffs Southwestern
Payroll Service, Inc. and
Granite Solutions Groupe, Inc.

**WALTER D. HASKINS, P.C.**                    **WALTER D. HASKINS, ESQ.**
311 East 11th Street
Tulsa, Oklahoma 74120
Attorney of Plaintiffs Southwestern
Payroll Service, Inc. and
Granite Solutions Groupe, Inc.

**GREENBERG TRAURIG, LLP**                     **CYNTHIA E. NEIDL, ESQ.**
54 State Street, 6th Floor                     **JENNIFER TOMSEN, ESQ.**
Albany, New York 12207                         **JULIE A. YEDOWITZ, ESQ.**
    **-**  and -                               **ROLAND GARCIA, ESQ.**
1000 Louisiana – Suite 6700
Houston, Texas 77002
Attorneys for Intervenor-Plaintiff
National Payment Corporation

**DLA PIPER LLP (US)**                         **ROBERT J. ALESSI, ESQ.**
1251 Avenue of Americas                        **COURTNEY SALESKI, ESQ.**
Ste 27th Floor                                 **M. DAVID JOSEFOVITS, ESQ.**
New York, New York 10020                       **STEVEN M. ROSATO, ESQ.**
        -  and -
1650 Market Street – Suite 5000
Philadelphia, Pennsylvania 19103
Attorneys for Defendants Pioneer
Bancorp, Inc. and Pioneer Bank

**HODGSON RUSS LLP**                           **MICHAEL D. ZAHLER, ESQ.**
677 Broadway – Suite 401
Albany, New York 12207
Attorney for Defendants Pioneer
Bancorp, Inc. and Pioneer Bank

**SCULLIN, Senior Judge**

**MEMORANDUM-DECISION AND ORDER**[1]

## I. INTRODUCTION

The following motions are pending before the Court.  Defendant Pioneer Bancorp, Inc. and Pioneer Bank (hereinafter collectively referred to as "Defendant Pioneer")'s two motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  *See* Dkt. Nos. 341, 342.  Defendant Pioneer moves for summary judgment on all Plaintiff Southwestern Payroll Service, Inc. (hereinafter referred to as "Plaintiff Southwestern Payroll") and Plaintiff Granite Solutions Groupe, Inc. (hereinafter referred to as "Plaintiff Granite Solutions") (hereinafter referred to collectively as "Plaintiffs")s' claims against it.  *See* Dkt. No. 341.  Defendant Pioneer also moves for summary judgment on all Intervenor-Plaintiff National Payment Corporation (hereinafter referred to as "Intervenor-Plaintiff NatPay")'s claims against it.  *See* Dkt. No. 342.

In addition, Plaintiffs and Intervenor-Plaintiff NatPay move for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, on Defendant Pioneer's fourth affirmative defense and Defendant Pioneer's counterclaims against Plaintiff Southwestern Payroll and Intervenor-Plaintiff NatPay.  *See* Dkt. Nos. 346, 347.[2]

---

[1] References to page numbers of documents in the record are to the page numbers that the Court's Electronic Case Filing System generates, which can be found in the upper right corner of those pages.

[2] After Plaintiffs and Intervenor-Plaintiff NatPay moved for partial summary judgment, Defendant Pioneer filed a letter motion seeking to withdraw its fourth affirmative defense against them.  *See* Dkt. No. 382.

A defendant may properly withdraw an affirmative defense.  *See Douglas v. Albany Police Dep't*, 1:24-CV-807 (MAD/CFH), 2024 WL 4818626, *3 (N.D.N.Y. Nov. 18, 2024) (holding, on a motion to strike affirmative defenses, that the withdrawal of an affirmative defense moots that aspect of the motion to strike).  Consistent with this above-cited case law, **the Court *grants* Defendant Pioneer's request to withdraw its fourth affirmative defense.**  Thus, **the Court *denies* Plaintiffs' and Intervenor-Plaintiff NatPay's motion for summary**

## II. BACKGROUND[3]

Plaintiff Southwestern Payroll filed this action on October 31, 2019; the Court permitted Plaintiff Granite Solutions to join as a co-plaintiff; and Plaintiffs together filed their third Amended Complaint, the operative complaint, on April 26, 2023.  *See* Dkt. No. 1, Compl.; *see also* Dkt. No. 245, Third Amended Complaint.  Plaintiffs assert the following claims:

> (1) Declaratory Judgment against Defendant Pioneer;
>
> (2) Conversion against all Defendants;
>
> (3) Fraud, asserted only by Plaintiff Southwestern Payroll, against all Defendants;
>
> (4) Fraud against all Defendants;
>
> (5) Negligence/Gross Negligence against all Defendants;
>
> (6) Unjust Enrichment/Money Had and Received against Defendant Pioneer;
>
> (7) Violation of Racketeer Influenced & Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), against all Defendants;
>
> (8) Violation of RICO, 18 U.S.C. § 1962(d), against all Defendants;
>
> (9) Aiding and Abetting Conversion against Defendant Pioneer; and
>
> (10) Aiding and Abetting Fraud against Defendant Pioneer.

*See* Dkt. No. 245 at ¶¶ 393-499.

This Court permitted Intervenor-Plaintiff NatPay to intervene in this action; and, after its intervention, Intervenor-Plaintiff NatPay filed an Amended Complaint, its operative complaint, on April 13, 2023.  *See* Dkt. No. 150, Memorandum-Decision and Order dated Oct. 6, 2020

---

**judgment on Defendant Pioneer's fourth affirmative defense because Defendant Pioneer has withdrawn that affirmative defense.**

[3] The Court assumes the parties' familiarity with the relevant background and facts but nonetheless provides this brief background.

(accepting Magistrate Judge Hummel's recommendation that the Court grant NatPay's motion to intervene); *see also* Dkt. No. 232, Intervenor-Plaintiff Nat Pay's Amended Complaint.

Intervenor-Plaintiff NatPay asserts the following claims:

> (1) Declaratory Judgment against Defendant Pioneer;
>
> (2) Conversion against all Defendants;
>
> (3) Fraud against all Defendants;
>
> (4) Negligence/Gross Negligence against all Defendants;
>
> (5) Unjust Enrichment/Money Had and Received against Defendant Pioneer;
>
> (6) Violation of RICO, 18 U.S.C. § 1962(c), against all Defendants;
>
> (7) Violation of RICO, 18 U.S.C. § 1962(d), against all Defendants;
>
> (8) Aiding and Abetting Conversion against Defendant Pioneer; and
>
> (9) Aiding and Abetting Fraud against Defendant Pioneer.

*See* Dkt. No. 232 at ¶¶ 410-514.

Defendant Pioneer asserted the following counterclaims against Plaintiff Southwestern Payroll: fraud, a substantive RICO violation under § 1962(c), and a RICO conspiracy under § 1962(d).  *See* Dkt. No. 259 at ¶¶ 719-761.  Defendant Pioneer also asserted the following counterclaims against Intervenor-Plaintiff NatPay: a substantive RICO violation under § 1962(c) and a RICO conspiracy under § 1962(d).  *See* Dkt. No. 332 at ¶¶ 810-835.

Discovery has concluded; several dispositive motions are now before the Court.  *See* Dkt. Nos. 341, 342, 346, 347.[4]

---

[4] The Court  recently issued a Memorandum-Decision and Order addressing Defendant Pioneer's motions to dismiss for lack of Article III standing.  *See* Dkt. No. 392; *see also* Dkt. Nos. 340, 351.

# III. DISCUSSION

## A.    Defendant Pioneer's motion for summary judgment on Plaintiffs' claims

"Summary judgment should be granted only where 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Alexander & Alexander Servs., Inc. v. These Certain Underwriters at Lloyd's*, 136 F.3d 82, 86 (2d Cir. 1998) (citing Fed. R. Civ. Proc. 56(c); *Celotex Corp. v. Catrett*, 447 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). "All facts, inferences, and ambiguities must be viewed in a light most favorable to the nonmovant." *Id.* (citing *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986)).

Defendant Pioneer maintains the following positions in support of its motion for summary judgment on all Plaintiffs' claims: (1) the doctrine of *in pari delicto* entitles Defendant Pioneer to summary judgment as to all of Plaintiff Southwestern Payroll's claims; (2) the Cloud Payroll and MyPayroll HR accounts, under New York law, are general accounts; and, therefore, Plaintiffs lack any legal interest in the funds at issue as to all of Plaintiffs' claims; (3) Plaintiffs' RICO claims fail as a matter of fact and law; and (4) Plaintiffs have failed to establish any legally cognizable damages. *See generally* Dkt. Nos. 341-1, 379. To the contrary, Plaintiffs posit that all Defendant Pioneer's arguments fail or fall outside the scope of Rule 56 and urge this Court to permit all their claims to proceed to trial. *See generally* Dkt. No. 362.

### 1. The doctrine of *in pari delicto*

Defendant Pioneer asserts that Plaintiff Southwestern Payroll's own misconduct,[5] as well as Defendant Mann's misconduct imputed to Plaintiff Southwestern Payroll, prohibits Plaintiff Southwestern Payroll from bringing its claims against Defendant Pioneer. *See* Dkt. No. 341-1 at 14-20; *see also* Dkt. No. 379 at 8-11. Plaintiffs, in response, contend that the *in pari delicto* defense is not susceptible to summary judgment; and, even if it were, the adverse interest exception applies and prohibits Mann's conduct from being imputed to Plaintiff Southwestern Payroll. *See* Dkt. No. 362 at 10-15.

In *Kirschner v. KPMG LLP*, 15 N.Y.3d 446 (2010), the New York Court of Appeals, on certified questions from the Second Circuit, clarified New York law regarding the doctrine of *in pari delicto*, the imputation of an agent's knowledge and actions to the agent's principal, and the adverse interest exception to imputation. *See* 15 N.Y.3d at 462-69. The doctrine of *in pari delicto* is an affirmative defense under New York common law, s*ee id.* at 459 n.3; thus, this Court must properly adhere to the New York Court of Appeals' clarification of the doctrine. *See RocketFuel Blockchain Co. v. Ellenoff Grossman & Schole LLP*, 21-CV-1764 (VEC), 2022 U.S. Dist. LEXIS 4638, *4 n.2 (S.D.N.Y. Jan. 7, 2022) ("New York's choice of law rules require the Court to apply New York law to affirmative defenses to claims that are proceeding under New York law. *See, e.g., Granite Partners, L.P. v. Bear, Stearns & Co. Inc.*, 17 F. Supp. 2d 275, 306

---

[5] Defendant Pioneer only asserts the doctrine of *in pari delicto* as a bar to Plaintiff Southwestern Payroll's claims and not to Plaintiff Granite Solutions' claims. *See* Dkt. No. 341-1 at 14-20; *see also* Dkt. No. 379 at 8-11.

n.16 (S.D.N.Y. 1998) (holding New York law applied to the affirmative defense of *in pari delicto* because New York law applied to the substantive claim).").

"The doctrine of *in pari delicto*[6] mandates that the courts will not intercede to resolve a dispute between two wrongdoers." *Kirschner*, 15 N.Y.3d at 464 (stating that "[t]he doctrine survives because it serves [the] important public policy purposes" of (1) deterring illegality by "denying judicial relief to an admitted wrongdoer " and (2) avoiding the "entangle[ment of the] courts in disputes between wrongdoers.").

> The justice of the *in pari delicto* rule is most obvious where a willful wrongdoer is suing someone who is alleged to be merely negligent . . . [but] the principle also applie[s] where both parties acted willfully.  Indeed, the principle that a wrongdoer should not profit from his own misconduct is so strong in New York that [the Court of Appeals] ha[s] said the defense applies even in difficult cases and should not be "weakened by exceptions."

*Id.* (quoting *McConnell v. Commonwealth Pictures Corp.*, 7 NY2d 465, 470, 166 NE2d 494, 199 NYS2d 483 [1960] ["We are not working here with narrow questions of technical law.  We are applying fundamental concepts of morality and fair dealing *not to be weakened by exceptions*" (emphasis added)]; *see also Saratoga County Bank v. King*, 44 NY 87, 94 [1870] [characterizing the doctrine as "inflexible"]).

> Traditional agency principles play an important role in an *in pari delicto* analysis.  Of particular importance is a fundamental principle that has informed the law of agency and corporations for centuries; namely, the acts of agents, and the knowledge they acquire while acting within the scope of their authority are presumptively imputed to their principals[.]

---

[6] "The doctrine's full name is *in pari delicto potior est conditio defendentis*, meaning '[i]n a case of equal or mutual fault, the position of the[ defending party] is the better one[.]" *Kirschner*, 15 N.Y.3d at 464 n.4 (quoting Baena, 453 F.3d at 6 n 5 [internal quotation marks omitted]).

*Id.* at 465 (citing *Henry v. Allen*, 151 NY 1, 9, 45 NE 355 [1896] [imputation is [the] "general rule"]; *see also Craigie v. Hadley*, 99 NY 131, 1 NE 537 [1885]; *accord Center* [*v. Hampton Affiliates*], 66 NY2d [782,] 784 [(1985)]).  "[A] corporation 'is represented by its officers and agents, and their fraud in the course of the corporate dealings[] is in law the fraud of the corporation.'"  *Id.* (quotation and other citation omitted).  "When corporate officers carry out the everyday activities central to any company's operation and well-being . . . their conduct falls within the scope of their corporate authority[.] . . . And where conduct falls within the scope of the agents' authority, everything they know or do is imputed to their principals."  *Id.* at 465-66 (citation omitted).

Here, Plaintiffs do not directly dispute that Defendant Mann was, during some of the time he committed the underlying criminal fraud, an agent and representative of Plaintiff Southwestern Payroll.[7]  *See* Dkt. No. 362 at 10-11.  Plaintiffs instead contend that Plaintiff Southwestern Payroll was Defendant Mann's victim, not his principal, and thus the adverse interest exception applies.[8]  *See id.*

---

[7] Plaintiffs contest Defendant Pioneer's attempt to establish that Defendant Mann's use of "wrongfully-acquired funds to purchase an interest in Southwestern Payroll through Cloud Payroll" is proof that Plaintiff "Southwestern Payroll should be deemed to have been *in pari delicto* with Mann *before they started doing business together and before Mann held any interest in the company*."  *See* Dkt. No. 362 at 13.

[8] Defendant Pioneer also asserts that separate, unconnected, alleged misconduct by Plaintiff Southwestern Payroll alone warrants the application of the *in pari delicto* doctrine here.  *See* Dkt. No. 341-1 at n.2 (citations omitted).  Defendant Pioneer argues that Plaintiff Southwestern Payroll conducted business feloniously by operating as an unlicensed money transmitter and, through its representative Alred, intentionally concealed information.  *See id.*

Although Plaintiffs argue that these assertions of wrongful conduct are disputed and irrelevant to Plaintiffs' claims and the subject funds at issue, *see* Dkt. No. 362 at 13-14, the Court finds that there remains an issue of fact as to whether Plaintiff Southwestern Payroll's conduct, on its own, triggers the doctrine of *in pari delicto* and bars Plaintiffs' claims.

Under the adverse interest exception to the imputation rule, if "'the agent . . . *totally*

*abandoned* his principal's interests and [acted] *entirely* for his own or another's purposes'" then

the agent's knowledge and actions will not be imputed to the principal. *Kirschner*, 15 N.Y.3d at

466 (quotation omitted). This exception applies only "where the [agent's] misconduct benefits

only himself or a third party; *i.e.*, where the fraud is committed *against* [the] corporation rather

than on its behalf." *Id.* at 466-67. Thus, if "the corporate wrongdoer's fraudulent conduct

enables the business to survive--to attract investors and customers and raise funds for corporate

purposes"--or, in other words, if the fraud in any way benefits the corporation, the adverse

interest exception does not apply. *Id.* at 468 (citing *Banea* [*v. KPMG LLP*], 453 F.3d [1,] 7 [(1st

Cir. 2006)] ("A fraud by top management to overstate earnings, and so facilitate stock sales or

acquisitions, is not in the long-term interest of the company; but, like price-fixing, it profits the

company in the first instance.")). Indeed, "the mere fact that a corporation is forced to file for

bankruptcy does not determine whether its agents' conduct was, at the time it was committed,

adverse to the company." *Id.* at 468 (citation omitted). "Consistent with these principles, any

harm from the discovery of the fraud--rather than from the fraud itself--does not bear on whether

the adverse interest exception applies." *Id.* at 469.

Here, Defendant Pioneer asserts that Plaintiff Southwestern Payroll "benefitted from

[Defendant Mann's] conduct in myriad ways" including the following: (1) "Mann pa[id] off more

than $1.3 million in debt following [Defendant Mann/]Cloud Payroll's acquisition of its 51%

interest in" Plaintiff Southwestern Payroll with fraudulent funds; (2) Plaintiff Southwestern

Payroll's "revenues and profits *grew* annually, and [Plaintiff Southwestern Payroll] experienced a

net gain of more than 100 employer-clients[;]" (3) Plaintiff Southwestern Payroll was "provided

access to funds in [Defendant] Mann's accounts at Pioneer that were combined for cash purposes,

ensuring that payments would continue to be made on behalf of [Plaintiff Southwestern Payroll]'s employer clients[;]" (4) Plaintiff Southwestern Payroll "benefitted from [Defendant] Mann's centralization of tax payment processing, as it allowed [Plaintiff Southwestern Payroll] to reduce its expenses [and w]hen issues arose with regard to tax processing for [Plaintiff Southwestern Payroll]'s employer-clients, it was [Defendant] Mann who resolved them[;]" and (5) Defendant "Mann kept [Plaintiff Southwestern Payroll]'s business alive, which is enough benefit to defeat the adverse interest exception." *See* Dkt. No. 341-1 at 19. Plaintiffs, in response, argue that Defendant Pioneer has "failed to show that the purchase of [Plaintiff Southwestern Payroll stock] was funded through fraudulently-acquired monies[,]" "failed to show that [Plaintiff] Southwestern Payroll's success was driven by Mann's crime, or that Mann's crime helped Southwestern Payroll obtain new clients[,] and failed to show adequate evidence of operational benefit or reduced expenses from Defendant Mann's fraud." *See* Dkt. No. 362 at 13.

The present case presents a different situation than was contemplated in *Kirschner* because, here, Defendant Mann was engaged in his criminally fraudulent scheme prior to his purchase of controlling stock of Plaintiff Southwestern Payroll and his becoming an agent/representative of Plaintiff Southwestern Payroll. *See* Dkt. No. 341-1 at 19. As Plaintiffs argue, Defendant Pioneer seeks to impute Defendant Mann's actions—from before he did business with and held any interest in Plaintiff Southwestern Payroll—to Plaintiff Southwestern Payroll because Plaintiff Southwestern Payroll benefited from Defendant Mann's fraud through his purchase of a controlling stake in Plaintiff Southwestern Payroll. *See* Dkt. No. 362 at 13.

This first alleged benefit demonstrates the complex factual questions that need to be answered before this Court applies the defense of *in pari delicto* to the present case. The factual questions, regarding whether and how Plaintiff Southwestern Payroll benefited from Defendant

Mann's purchase of Plaintiff Southwestern, and his criminal fraud while acting as a representative and agent of Plaintiff Southwestern Payroll, must be answered by a jury--and not this Court on summary judgment--before the Court can apply the legal doctrine of *in pari delicto*. Thus, at this time, Defendant Pioneer has not carried its burden of demonstrating that the affirmative defense of *in pari delicto* applies because it cannot yet establish as a matter of law that Plaintiff Southwestern Payroll benefitted from Defendant Mann's fraud.

Therefore, the Court *denies* Defendant Pioneer's motion for summary judgment on Plaintiff Southwestern Payroll's claims based on the doctrine of *in pari delicto*.[9]

### 2. Plaintiffs' Common Law Claims

Defendant Pioneer proclaims its entitlement to judgment as to all of Plaintiffs' common law claims based on its argument that Plaintiffs lack any cognizable legal interest in the subject funds and, more specifically, that the Defendant Mann accounts at Defendant Pioneer Bank are, as a matter of law, general accounts and, thus, the funds deposited into those accounts "***became the property of Pioneer Bank the moment they were deposited.***"  *See* Dkt. No. 341-1 at 20 (emphasis added by Defendant Pioneer).  Plaintiffs, alternatively, contend that those deposits were made as a result of Defendant Pioneer's wrongful conduct, that Defendant Pioneer's setoff of those funds was improper, and that there is a genuine issue of fact regarding the payroll

---

[9] For the same reason as stated above, **the Court *denies* Defendant Pioneer's motion for summary judgment with regard to Plaintiff Southwestern Payroll's unjust enrichment claim based on the doctrine of unclean hands**.  *See Granite Partners, L.P. v. Bear, Stearns & Co.*, 17 F. Supp. 2d 275, 310 (S.D.N.Y. 1998) (stating that the doctrine of unclean hands is "[a]nalogous to the defense of *in pari delicto*").

accounts at Pioneer Bank, and whether the deposits into them, were general, special, fiduciary, or trust accounts/deposits.  *See* Dkt. No. 362 at 15-22.

"'As a common rule, bank deposits can be classified as either general or special.'" *Peoples Westchester Sav. Bank v. Fed. Deposit Ins. Corp.*, 961 F.2d 327, 330 (2d Cir. 1992) (citing 1 Natter, Schlichting, Rice & Cooper, *Banking Law* § 9.06 (1992)); *see id.* ("'Whether a deposit in a bank is general or special depends upon the mutual understanding and intention of the parties at the time such deposit is made, and a deposit made in the ordinary course of business is presumed to be general, and the burden of proof is on the depositor to overcome such presumption by proving the deposit was made upon such terms and conditions as constituted a special deposit, or a deposit for a specific purpose, as distinguished from a general deposit.'" (quoting *Keyes v. Paducah & I.R. Co.*, 61 F.2d 611, 613 (6th Cir. 1932)); *see also In re Kountze Bros.*, 103 F.2d 785, 789 (2d Cir. 1939); *Swan v. Children's Home Society*, 67 F.2d 84, 86-87 (4th Cir. 1933)).

Here, although the burden is on Plaintiffs to rebut the presumption that the deposits were general accounts, unlike the situation in *Peoples Westchester*, the facts of this case are highly contested, and Defendant Mann's banking relationship with Defendant Pioneer, given Defendant Mann's conduct, was highly abnormal.  Thus, at this stage of the litigation, Plaintiffs must merely establish that there is a triable issue of fact regarding the intent of the parties when creating the subject accounts and depositing the subject funds into those accounts.  The Court finds that Plaintiffs have, undeniably, carried that burden.

The main issue of material fact, that a jury and not this Court must answer, is whether, at the time that the subject accounts were created, and the subject funds were deposited in them, Defendant Pioneer knew, or should have known, that the funds were not general deposits.

Plaintiff has presented facts from which a jury could conclude that Defendant Pioneer engaged in its own fraud and knew or should have known of Mann's fraud, that the subject accounts were intended as special use accounts, and that Defendant Pioneer knew the funds were owned by third parties, *i.e.*, Plaintiff Granite Solutions and Plaintiff Southwestern Payroll's employer-clients, and that Defendant Pioneer knew the funds were third-party tax funds entrusted for the purpose of paying taxes. *See* Dkt. No. 362 at 15-22.

Thus, the Court cannot hold as a matter of law that the subject accounts were general accounts and that, therefore, the funds deposited into those accounts became the property of Defendant Pioneer as soon as they were deposited into those accounts. There remain numerous issues of fact, mainly regarding the parties' intent in creating and depositing the funds, that a jury must resolve in order to determine whether the accounts were general accounts. Therefore, the Court *denies* Defendant Pioneer's motion for summary judgment with regard to Plaintiffs' conversion and unjust enrichment claims.

As to Plaintiffs' negligence claims, the dispute is whether Defendant Pioneer, as a bank, owed any legal duty to Plaintiffs, who are not the accountholders of the subject bank account. *See* Dkt. No. 341-1 at 29-30; *see also* Dkt. No. 362 at 29-30; Dkt. No. 379 at 16-17. Both parties note that, although banks do not generally owe a duty to non-customers, an exception exists when the bank knows an account is a fiduciary or trust account for a third-party. *See AXH Air-Coolers, LLC v. Pioneer Bancorp, Inc.*, 1:20-CV-1022 (FJS/CFH), 2022 WL 16790328, *6 (N.D.N.Y. Aug. 2, 2022); *see also Q3 Inv. Recovery Vehicle, LLC v. McEvoy*, 2023 N.Y. Slip. Op. 30184(U), *8-*9 (Sup. Ct. N.Y. Cnty. 2023). Therefore, because an issue of fact as to the legal classification of the subject accounts and deposits remains for trial, the Court *denies* Defendant Pioneer's motion for summary judgment with regard to Plaintiffs' negligence claims.

As to Plaintiffs' fraud claims, Defendant Pioneer insists it is entitled to judgment because it lacked any duty to disclose to Plaintiffs that it had partially frozen the subject accounts and even the special facts doctrine does not create such a duty.  *See* Dkt. No. 341-1 at 31-33. Adversely, Plaintiffs contend that discovery has uncovered an overt, affirmative false representation made to Plaintiffs' attorneys that created a duty to disclose the partial freeze and that the special facts doctrine created a duty for Defendant Pioneer to disclose the partial freeze to Plaintiffs.  *See* Dkt. No. 362 at 22-23.

A fraudulent concealment claim requires that a defendant had "a duty to disclose" either through a (1) "fiduciary or other relationship of trust[,]" (2) "one party making a partial or ambiguous statement that requires additional disclosure to avoid misleading the other party," or (3) "'one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge.'"  *Remington Rand Corp. v. Amsterdam-Rotterdam Bank, N.V.*, 68 F.3d 1478, 1483-84 (2d Cir. 1995) (citing *Aaron Ferer* [*& Sons Ltd. v. Chase Manhattan Bank*], 731 F.2d [112,] 123 [(2d Cir. 1984)]; *Lightning Lube* [*Inc. v. Witco Corp.*], 4 F.3d [1153,] 1185 [(3d Cir. 1993)]; *Brass* [*v. American Film Technologies, Inc.*], 987 F.2d [142,] 150 [(2d Cir. 1993)]).

Here, although Defendant Pioneer focuses on the lack of a transaction or direct fiduciary relationship between the parties, Plaintiffs present triable issues of fact.  *See* Dkt. No. 362 at 22-24.  First, Defendant Pioneer's lawyers, at the time of the partial freeze, stated to Plaintiffs that Defendant Pioneer was not exercising a setoff.  *See id.* at 23 (citing Rhoades Decl. ¶¶ 6-7). Second, under the special facts doctrine, Defendant Pioneer had superior knowledge at the time of the partial freeze; and, as stated above, there remain issues of fact regarding Defendant Pioneer's knowledge that third-parties, like Plaintiffs, had a direct interest in the funds.  *See infra*;

- 15 -

*see also Remington Rand*, 68 F.3d at 1484 (citing Restatement (Second) of Torts § 551 cmt. k

(1977) (no liability for nondisclosure where defendant has no reason to believe plaintiff was

acting under a misapprehension)).  Defendant Pioneer certainly knew that Plaintiffs, and those

similarly situated, were continuing to deposit debits, and attempting to pull credits, out of the

partially frozen account.  A jury could easily conclude that, therefore, Defendant Pioneer knew

Plaintiffs were relying on the fact that the credits and debits would both be finalized on the

account.  Ultimately, under Rule 56, numerous issues of fact remain regarding both the

statements Defendant Pioneer made during its partial freeze and Defendant Pioneer's potential

superior knowledge of Plaintiffs' reliance on the fact that the subject accounts were not to be

setoff.

Therefore, as issues of fact remain, the Court *denies* Defendant Pioneer's motion for

summary judgment on Plaintiffs' fraud claims and all of Plaintiffs' common law claims.[10], [11]

### 3. Plaintiffs' Civil RICO claims

Plaintiffs allege civil RICO claims under two separate subsections of 18 U.S.C. § 1962.

*See* 18 U.S.C. § 1962(c) (substantive RICO claims); 18 U.S.C. § 1962(d) (conspiracy to violate

RICO claims).

---

[10] Plaintiffs' aiding and abetting fraud claims are substantially similar, if not analogous, to their RICO claims.  Therefore, the Court discusses them below.  *See supra,* n.13.

[11] For the above-stated reasons, there remains an issue of fact regarding whether Defendant Pioneer's setoff of the subject account was a "wrongful seizure" and resolution of the legality of Defendant Pioneer's setoff will "finalize the controversy and offer relief from uncertainty." *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 411 F.3d 384, 389 (2d Cir. 2005). Therefore, **the Court *denies* Defendant Pioneer's motion for summary judgment as to Plaintiffs' declaratory judgment claim**.

"To sustain a civil RICO claim under 18 U.S.C. § 1962(c), a plaintiff must show '(1) that the defendant (2) through the commission of two or more acts (3) constituting a "pattern" (4) of "racketeering activity" (5) directly or indirectly invests in, or maintains an[] interest in, or participates in (6) an "enterprise" (7) the activities of which affect interstate or foreign commerce.'" *Javino v. Denton*, 22-cv-01072-JMA-ARL, 2024 U.S. Dist. LEXIS 165439, *29 (E.D.N.Y. Sept. 13, 2024) (quoting *Williams v. Affinion Grp., LLC*, 889 F.3d 116, 123-24 (2d Cir. 2018) (quoting *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983))).

18 U.S.C. § 1962(d) "'makes it "unlawful for any person to conspire to violate" the substantive provisions of RICO.'" *Moss v. First Premier Bank*, 24-2449, 2025 U.S. App. LEXIS 15517, *4 (2d Cir. June 24, 2025) (summary order) (quoting *United States v. Pizzonia*, 557 F.3d 455, 462 (2d Cir. 2009)).

Seemingly, the parties agree that Defendant Mann, through his criminally fraudulent conduct, committed many predicate acts of money laundering and was engaged in a RICO enterprise. Thus, with regard to Plaintiffs' Section 1962(c) RICO claims, the question is whether Defendant Pioneer engaged in predicate acts of money laundering and engaged in the RICO enterprise with Defendant Mann; and, as to Plaintiffs' Section 1962(d) claims, the question is whether Defendant Pioneer conspired with Defendant Mann to violate the RICO statute. *See* Dkt. No. 341-1 at 33-39;[12] *see also* Dkt. No. 362 at 30-38.

[12] As Plaintiffs note, Defendant Pioneer conflates these two subsections and cites cases in which the plaintiff only brought civil RICO conspiracy claims, under Section 1962(d), to support its argument that the Court should grant its summary judgment motion as to Plaintiffs' claims under both subsections. *See* Dkt. No. 341-1 at 36 (relying predominantly on *Glen Flora Dental Ctr., Ltd. v. First Eagle Bank*, 17-cv-9161, 2024 U.S. Dist. LEXIS 25707 (N.D. Ill. Feb. 14, 2024) (only RICO claims under Section 1962(d)); *see also* Dkt. No. 379 at 18-19 (relying on *Moss v. First Premier Bank*, 13-cv-5438 (BMC), 2024 U.S. Dist. LEXIS 174341 (E.D.N.Y. Aug. 2, 2024), *aff'd*, 24-2449, 2025 U.S. App. LEXIS 15517 (2d Cir. June 24, 2025) in which the plaintiff brought only one RICO claim under Section 1962(d)).

Plaintiffs assert that Defendant Pioneer's predicate acts of money laundering are established, under 18 U.S.C. § 1956 and 1957, by Defendant Pioneer's conducting of financial transactions for Defendant Mann that Defendant Pioneer knew involved illegal activity and funds derived from that illegal activity.  *See* Dkt. No. 362 at 31-32 (citing 18 U.S.C. § 1956(a)(1) (imposing liability where the defendant knows "that the property involved in a financial transaction represents the proceeds of some form of unlawful activity")).  Plaintiffs offer evidence, which they contend could lead a trier of fact to conclude that Defendant Pioneer knew that Defendant Mann was engaging in fraud with third-party payroll funds, mainly reasoning that Defendant Pioneer should have known that the funds in the subject account were third-party tax funds and, thus, known that Defendant Mann was engaging in criminal fraud when engaging with their banking services.  *See id.* at 32.  Plaintiffs further contend that, after August 30, 2019, when Defendant Mann's fraud was uncovered, Defendant Pioneer's partial freeze and eventual setoff of third-party tax funds is further evidence of Defendant Pioneer's concealment of illegal activities.  *See id* at 32-33.

Defendant Pioneer objects to this, mainly arguing that, as a bank, it cannot be held liable for merely providing professional banking services to Defendant Mann as he conducted the alleged RICO acts and enterprise.  *See* Dkt. No. 379 at 19-20.  Although Defendant Pioneer attempts to argue that it is undisputed that it did not know of Defendant Mann's fraud, it is in fact in dispute whether Defendant Pioneer knew of Mann's criminal fraud and RICO enterprise.  *See id.*  As stated above, Plaintiffs do not assert that Defendant Pioneer merely provided services without knowledge but, instead, have presented sufficient evidence--from which a jury could find--that Defendant Pioneer knew or should have known of the illegality of Defendant Mann's actions and, nonetheless, continued to provide services to Defendant Mann.

Given the above, the Court finds that Plaintiffs have presented sufficient evidence from which a jury could find that Defendant Pioneer engaged in predicate money laundering acts through its knowledge of Defendant Mann's fraud and its continued transaction of business with Defendant Mann irrespective of that fraud. Therefore, the Court need not consider Defendant Pioneer's other arguments regarding Plaintiffs' RICO claim under Section 1962(c) or Section 1962(d); instead, given that issues of fact remain regarding Plaintiffs' RICO claims, the Court *denies* Defendant Pioneer's motion for summary judgment with regard to all of Plaintiffs' RICO claims.[13]

### *4. Plaintiffs' damages*

Defendant Pioneer maintains that Plaintiffs have failed to provide any evidence of any cognizable damages. *See* Dkt. No. 341-1 at 41. To the contrary, Plaintiffs assert that Plaintiff "Southwestern Payroll has suffered cognizable damages, including lost profits and diminution in value[,]" and third-party liability. *See* Dkt. No. 362 at 38 (citing [Dkt. Nos. 362-31, 362-32]). Regarding Plaintiff Granite Solutions, Plaintiffs only assert that Defendant "Pioneer declares, without explanation, that it believes the Plaintiffs are lying about their damages." *See id* (citing *Curry v. City of Syracuse*, 316 F.3d 324, 333 (2d Cir. 2003) ("This credibility dispute does not belong in a Rule 56 motion.")). In reply, Defendant Pioneer avers that Plaintiffs have now conceded that they have no cognizable damages, that Plaintiff Southwestern Payroll's proffered damages are not its own or the evidence of the proffered damages is inadmissible hearsay, and

---

[13] As an issue of fact remains regarding Defendant Pioneer's exact knowledge of Defendant Mann's fraud at the relevant times, the Court *denies* Defendant Pioneer's motion for summary judgment as to Plaintiffs' aiding and abetting fraud claims.

that Plaintiff Granite Solutions has failed to substantiate its claimed damages.  *See* Dkt. No. 379 at 21.

Generally, Supreme Court precedent "does not require Plaintiffs to *prove* damages to survive summary judgment."  *Mohammed Fezzani v. Dweck*, 779 F. App'x 815, 817-18 (2d Cir. 2019) (Summary Order) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *see, e.g., Integrated Waste Servs., Inc. v. Akzo Nobel Salt, Inc.*, 113 F.3d 296, 302-03 (2d Cir. 1997) (concluding that defendant met "its burden of pointing to a gap in plaintiff's proof on a material issue" under *Celotex*, but holding that plaintiffs' "poorly developed" and "meager" record on damages was sufficient to preclude summary judgment and "permit them to introduce more specific evidence at trial")).

Here, although Defendant Pioneer has pointed to numerous shortcomings in Plaintiffs' evidence regarding their damages, Plaintiffs have presented the Court with a record of damages that is sufficient to permit them to present further evidence of damages at trial.  Additionally, Defendant Pioneer's hearsay objections to some of Plaintiffs' proffered damages evidence can be better addressed at trial.  Therefore, the Court *denies* Defendant Pioneer's motion for summary judgment based on Plaintiffs' lack of evidence of damages.

In sum, and for the above-stated reasons, the Court *denies* Defendant Pioneer's motion for summary judgment as to Plaintiffs' claims in its entirety.

**B.**    **Defendant Pioneer's counterclaims against Plaintiff Southwestern Payroll**

Defendant Pioneer asserts the following counterclaims against Plaintiff Southwestern Payroll:[14] (1) Fraud, (2) RICO Violation – 18 U.S.C. § 1962(c), and (3) Conspiracy to Violate RICO – 18 U.S.C. § 1962(d).  *See* Dkt. No. 259 at ¶¶ 719-761.

Plaintiff Southwestern Payroll argues it is entitled to summary judgment on Defendant Pioneer's counterclaims because Defendant Pioneer has not sufficiently established that Defendant Mann, as Plaintiff Southwestern Payroll's agent, made any misrepresentation or failed to disclose anything to Defendant Pioneer when opening accounts at Pioneer Bank, that Plaintiff Southwestern Payroll did not knowingly participate in an illegal money transmitting business, and that Defendant Pioneer was not injured by any RICO violation or fraud committed by Plaintiff Southwestern Payroll.  *See* Dkt. No. 346-1 at 17-33.  In response, Defendant Pioneer contends that the wrongful conduct and knowledge of Defendant Mann is imputed to Plaintiff Southwestern Payroll through their agent-principal relationship.[15]  *See* Dkt. No. 359 at 25-26.

As the stated above, in addressing Defendant Pioneer's motions for summary judgment, a jury must address an issue of fact regarding whether and how Plaintiff Southwestern Payroll benefited from Defendant Mann's actions before it can be determined, as a matter of law, that the

---

[14] Defendant Pioneer does not assert counterclaims against Plaintiff Granite Solutions.

[15] Defendant Pioneer also argues that, by not raising the adverse interest exception, Plaintiff Southwestern Payroll has somehow waived any argument raising it.  *See* Dkt. No. 359 at n.4. This is incorrect.  This issue (1) was briefed with regard to Defendant Pioneer's motion for summary judgment; and (2) in response to Plaintiffs' motion for partial summary judgment, Defendant Pioneer was the first party to argue imputation; thus, Plaintiff did not fail to initially assert the adverse interest exception.  Therefore, Plaintiff Southwestern Payroll has not failed to raise this argument in its original memorandum of law.

adverse interest exception applies, and Defendant Mann's actions are imputed to Plaintiff Southwestern Payroll.

Therefore, as an issue of fact remains, the Court *denies* Plaintiff Southwestern Payroll's motion for summary judgment on Defendant Pioneer's fraud and RICO counterclaims.


**C.      Defendant Pioneer's motion for summary judgment on Intervenor-Plaintiff NatPay's claims**

Defendant Pioneer maintains the following positions in support of its motion for summary judgment as to Intervenor-Plaintiff NatPay's claims: (1) that the doctrine of *in pari delicto* bars Intervenor-Plaintiff NatPay's claims; (2) that the subject funds and accounts, under New York law, are general accounts and, therefore, Intervenor-Plaintiff NatPay lacks any legal interest in the funds at issue as to all of its claims; (3) that Intervenor-Plaintiff NatPay's RICO claims fail as a matter of fact and law; and (4) that Intervenor-Plaintiff NatPay has failed to establish any legally cognizable damages.  *See generally* Dkt. Nos. 342-1, 377.

In response, Intervenor-Plaintiff NatPay posits that all Defendant Pioneer's arguments fail or fall outside the scope of Rule 56 and urges this Court to permit all its claims to proceed to trial.  *See generally* Dkt. No. 367.


**1. The doctrine of in pari delicto**

Defendant Pioneer argues, under the same caselaw and reasoning discussed as to Plaintiffs, *see supra*, Part A.4.i., that Intervenor-Plaintiff NatPay's own misconduct prohibits it from bringing its claims against Defendant Pioneer.  *See* Dkt. No. 342-1 at 14-18; *see also* Dkt. No. 377 at 8-10.  Intervenor-Plaintiff NatPay, in response, contends that the doctrine of *in pari*

*delicto* is inapplicable here and that Pioneer's assertions of Intervenor-Plaintiff NatPay's wrongdoing are unsupported, incorrect, and irrelevant. *See* Dkt. No. 367 at 11-16.

Here, unlike above as to Plaintiffs, Defendant Mann's conduct is not being imputed and the adverse interest exception is inapplicable; instead, Defendant Pioneer only asserts that Intervenor-Plaintiff NatPay and its employees engaged in wrongdoing that bars NatPay's recovery against it. *See generally* Dkt. Nos. 342-1, 377.

However, also stated above as to Plaintiffs, *see supra*, n. 8, all of Defendant Pioneer's assertions regarding Intervenor-Plaintiff NatPay's misconduct are heavily disputed and somewhat irrelevant to Intervenor-Plaintiff NatPay's claims. Defendant Pioneer argues that Intervenor-Plaintiff NatPay conducted business feloniously by operating as an unlicensed money transmitter and, through its business relationship with Defendant Mann, assisted in Defendant Mann's fraud. *See* Dkt. No. 377 at 8-9. Intervenor-Plaintiff NatPay argues that these assertions of wrongful conduct in operating business with Defendant Mann are disputed, and Defendant Pioneer's claim that NatPay operated as an unlicensed money transmitter is irrelevant. *See* Dkt. No. 367 at 11-16. The Court finds that there remains an issue of fact as to whether Intervenor-Plaintiff NatPay's conduct triggers the doctrine of *in pari delicto* and bars Intervenor-Plaintiff NatPay's claims.

### 2. Intervenor-Plaintiff NatPay's Common Law Claims

As stated above, numerous questions of fact exist as to Plaintiffs' common law claims against Defendant Pioneer which require that those claims proceed to trial. *See supra*, Part A.4.ii. Defendant Pioneer's arguments regarding Intervenor-Plaintiff NatPay's common law claims are, for all intents and purposes, the same as its arguments regarding Plaintiffs' common

law claims.  Therefore, for the reasons stated above with regard to Plaintiffs' common law

claims, the Court also *denies* Defendant Pioneer's motion for summary judgment as to

Intervenor-Plaintiff NatPay's declaratory judgment, conversion, fraud, negligence, unjust

enrichment, and aiding and abetting conversion claims.[16]


### 3. Intervenor-Plaintiff NatPay's Civil RICO claims

Intervenor-Plaintiff NatPay, much like Plaintiffs, *see supra*, Part A.4.iii., alleges civil

RICO claims under two separate subsections.  *See* 18 U.S.C. § 1962(c) (substantive RICO

claims); 18 U.S.C. § 1962(d) (conspiracy to violate RICO claims).  Defendant Pioneer relies on

the same legal arguments to support its contention that the Court should grant its motion for

summary judgment with regard to Intervenor-Plaintiff NatPay's RICO claims as it did to support

its motion with regard to Plaintiffs' RICO claims.  Therefore, for the same reasons discussed with

regard to Plaintiffs' RICO claims, the Court *denies* Defendant Pioneer's motion for summary

judgment as to Intervenor-Plaintiff NatPay's RICO claims.


### 4. Intervenor-Plaintiff NatPay's damages

Defendant Pioneer maintains that Intervenor-Plaintiff NatPay has failed to provide any

evidence of any cognizable damages and should not be permitted to assert a "new" theory of

liability based on indemnity to First Premier Bank.  *See* Dkt. No. 342-1 at 39; *see also* Dkt. No.

377 at 21.

---

[16] For the same reason, the Court *denies* Defendant Pioneer's motion for summary judgment as to
Intervenor-Plaintiff NatPay's aiding and abetting fraud claims.  *See supra*, n.13.

As the Court found in its recent decision regarding Article III standing, "Intervenor-Plaintiff NatPay is not raising an unpleaded theory of injury [or damages] because [NatPay's] complaint properly identifies the funds at issue." *See* Dkt. No. 392, Memorandum-Decision and Order dated June 25, 2025, at 20.  The Court also found that Intervenor-Plaintiff NatPay has "sufficiently established contingent liability for the alleged funds at issue in the present action, specifically to its bank, First Premier Bank.  Although Intervenor-Plaintiff NatPay does not own the specific funds at issue, it has identified subject funds for which it is contingently liable to a third party." *See id.* at 23 (stating that "'a liability, including a contingent liability, may be a cognizable legal injury'" (citing *Carter* [*v. HealthPort Techs., LLC*], 822 F.3d [47,] 55 [(2d Cir. 2016)] (citing, *e.g., Clinton v. City of New York*, 524 U.S. 417, 430-31, 118 S. Ct. 2091, 141 L. Ed. 2d 393 (1998); *E.M. v. New York City Department of Education*, 758 F.3d 442, 457 (2d Cir. 2014); *Denney v. Deutsche Bank AG*, 443 F.3d 253, 265 (2d Cir. 2006))).  Therefore, the Court *denies* Defendant Pioneer's motion for summary judgment based on Intervenor-Plaintiff NatPay's lack of evidence of cognizable damages.

In sum, and for the above-stated reasons, the Court *denies* Defendant Pioneer's motion for summary judgment as to Intervenor-Plaintiff NatPay's claims in its entirety because there exist numerous factual issues that a jury must resolve.

**D.    Defendant Pioneer's counterclaims against Intervenor-Plaintiff NatPay**

Defendant Pioneer asserts the following counterclaims against Intervenor-Plaintiff NatPay: (1) RICO Violations – 18 U.S.C. § 1962(c) and (2) Conspiracy to Violate RICO – 18 U.S.C. § 1962(d).  *See* Dkt. No. 332 at ¶¶ 810-835.

Intervenor-Plaintiff NatPay argues that

> [n]o evidence supports Pioneer's allegation that unspecified
> persons at NatPay "knew" and "conspired" with Michael Mann to
> misappropriate tax funds and engage in money laundering and
> bank fraud.  In order to avoid summary judgment, a RICO plaintiff
> must come forward with evidence that the defendants share the
> alleged RICO enterprise's common purpose.  Here, Pioneer's
> allegations of an "unusually risky structure and flow of funds" are
> not predicated on facts but rather are a work of fiction, buttressed
> only by the distortion of witness testimony.

*See* Dkt. No. 347-1 at 22.

Defendant Pioneer contends in response that NatPay was a "willful participant" in

Defendant Mann's criminal enterprise "through the ACH services that it provided the Mann

Payroll Companies" and argues "a rational jury could return a verdict in [its] favor on its RICO

counterclaims."  *See* Dkt. No. 360, Defendant Pioneer's Response Memorandum of Law in

Opposition to Partial Summary Judgment, at 23-24.  Defendant Pioneer contends that a rational

jury could decide in its favor after being presented with evidence of

> the relationship between NatPay and the Mann Payroll Companies
> [which] was marked by radical departures from NatPay's
> longstanding business practices, repeated violations of NatPay's
> policies governing the volume and amount of transactions that
> NatPay disregarded altogether, and hundreds upon hundreds of
> transactions that bore obvious indicia of money laundering and
> other unlawful activity.

*See id.* at 25-36.

Intervenor-Plaintiff NatPay insists in its reply that

> Pioneer offers no evidence of communications between Mann and
> NatPay, no evidence of any motive for NatPay to join the
> purported criminal enterprise, and no evidence that NatPay was
> aware of any of Mann's illicit activities, all of which were
> occurring in Pioneer's house and under its watch.  Rather, Pioneer
> relied entirely on purported "irregularities in the way NatPay
> conducted business with the Mann Payroll Companies."  (Opp. Br.
> 18)  Not surprisingly, Pioneer cites no authority holding that
> evidence of "irregularities" in a company's operations is sufficient
> to establish the company knowingly associated with a RICO

> enterprise and agreed to engage in unlawful activity. (*See generally* Opp. Br. 18-29)

*See* Dkt. No. 375, Intervenor-Plaintiff NatPay's Reply Memorandum of Law in Support of Partial Summary Judgment, at 17; *see id.* at 17-20 (explaining that Pioneer's alleged "irregularities" are all neither illegal, contrary to industry practice, nor indicate any direct participation in or knowledge of a RICO enterprise).[17]

Defendant Pioneer has presented some evidence to support its counterclaims by pointing to supposed "irregularities" that are neither illegal nor evidence of any predicate RICO act. An issue of fact remains for the jury as to whether Intervenor-Plaintiff NatPay somehow participated or knew of Defendant Mann's RICO enterprise and participated in Defendant Mann's fraudulent schemes by offering him irregular ACH services.

Therefore, the Court *denies* Intervenor-Plaintiff NatPay's motion for partial summary judgment as to Defendant Pioneer's RICO counterclaims against it.

### IV. CONCLUSION

Having reviewed the entire file in this matter, the parties' submissions, and the applicable law and for the above stated reasons

**ORDERS** that Defendant Pioneer's motion for summary judgment as to Plaintiffs' claims, *see* Dkt. No. 341, is **DENIED**; and the Court further

**ORDERS** that Defendant Pioneer's motion for summary judgment as to Intervenor-Plaintiff NatPay's claims, *see* Dkt. No. 342, is **DENIED**; and the Court further

---

[17] Defendant Pioneer's conspiracy RICO claim is based on the same evidence and thus rises and falls with its substantive RICO claim.

**ORDERS** that Defendant Pioneer's letter motion to withdraw its fourth affirmative defense, *see* Dkt. No. 382, is **GRANTED** and, therefore, Plaintiffs' and Intervenor-Plaintiff NatPay's motions for partial summary judgment as to Defendant Pioneer's fourth affirmative defense, *see* Dkt. Nos. 346, 347, is **DENIED**; and the Court further

**ORDERS** that Plaintiff Southwestern Payroll and Intervenor-Plaintiff NatPay's motions for partial summary judgment on Defendant Pioneer's fraud and RICO counterclaims against them, *see* Dkt. Nos. 346, 347, is **DENIED**; and the Court further

**ORDERS** that, because this case is now trial ready, the parties shall confer and, after doing so, shall file a joint letter with the Court, on or before **September 26, 2025**, providing dates on which the parties will be available for trial during the months of July, August, and September 2026, and their estimate of the number of trial days they expect will be required to try this case.

**IT IS SO ORDERED.**

Dated: August 25, 2025
      Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Judge

- 28 -