**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF NEW YORK**

SOUTHWESTERN PAYROLL SERVICE, INC. and GRANITE SOLUTIONS GROUPE, INC.,

*Plaintiffs,*

*v.*

PIONEER BANCORP INC., et al.,

*Defendants.*

NATIONAL PAYMENT CORPORATION,

*Intervenor-Plaintiff,*

*v.*

PIONEER BANCORP INC., et al.,

*Defendants.*

Case No. 1:19-cv-1349 (MAD/PJE)

**PIONEER'S PRETRIAL BRIEF**

Robert J. Alessi (NDNY Bar Roll No. 101019)
Steven M. Rosato (NDNY Bar Roll No. 703375)
1251 Avenue of the Americas
New York, New York 10020
Tel.: (212) 335-4500
robert.alessi@us.dlapiper.com
steven.rosato@us.dlapiper.com

Courtney G. Saleski (NDNY Bar Roll No. 703877)
Ben Fabens-Lassen (NDNY Bar Roll No. 707766)
M. David Josefovits (NDNY Bar Roll No. 705556)
Jon Michael Reid (NDNY Bar Roll No. 707851)
1650 Market Street, Suite 5000
Philadelphia, Pennsylvania 19103
Tel.: (215) 656-3300
courtney.saleski@us.dlapiper.com
ben.fabens-lassen@us.dlapiper.com
david.josefovits@us.dlapiper.com
jon.reid@us.dlapiper.com

*Counsel for Defendants-Counterclaimants Pioneer Bancorp Inc. and Pioneer Bank*

Dated: September 8, 2026

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES .......... iv

PRELIMINARY STATEMENT .......... 1

LEGAL ISSUES .......... 5

I. PLAINTIFFS' CONVERSION CLAIMS WILL FAIL BECAUSE THE ACCOUNTS WERE GENERAL DEPOSIT ACCOUNTS AND PLAINTIFFS LACKED A POSSESSORY INTEREST .......... 5

A. It is Impossible for a Bank to Wrongly Convert Funds in a General Deposit Account. .......... 5

B. Non-Account Holders Like Plaintiffs Cannot Prevail on a Conversion Claim Against a Bank, Even if the Accounts Were Special Deposits, Which They Are Not. .......... 6

II. PLAINTIFFS' FRAUD CLAIMS WILL FAIL BECAUSE THEY WERE OWED NO DUTY BY PIONEER .......... 7

A. The Special Facts Doctrine Does Not Impose a Duty On Banks to Disclose Information About Transactional Activity to Non-Account Holders. .......... 7

B. The Special Facts Doctrine Does Not Impose a Duty on Banks to Return Debits Sooner Than the Standard Two-Day Regulatory Window .......... 8

III. PLAINTIFFS' NEGLIGENCE CLAIMS WILL FAIL BECAUSE THEY WERE OWED NO DUTY BY PIONEER; IN ADDITION, ANY DUTY WOULD BE LIMITED TO MONITORING THE MPHR AND CLOUD ACCOUNTS .......... 9

IV. PLAINTIFFS' UNJUST ENRICHMENT CLAIMS DUPLICATE THEIR OTHER CLAIMS AND ARE ALSO DEFICIENT AS A MATTER OF LAW .......... 10

A. The Unjust Enrichment Claims Must Be Dismissed Because They are Duplicative. .......... 10

B. There Cannot be an Unjust Enrichment Claim Against a Bank's Setoff by Non-Customers Because There is No Sufficient Connection. .......... 12

V. PLAINTIFFS' AIDING AND ABETTING CONVERSION CLAIMS ARE LEGALLY DEFICIENT AND CANNOT BE AMENDED .......... 13

VI. PLAINTIFFS' AIDING AND ABETTING FRAUD CLAIMS WILL FAIL ON THE LAW AND FACTS .......... 14

VII. PLAINTIFFS' RICO CLAIMS WILL FAIL ON THE LAW AND FACTS .......... 16

A. Provision of Banking Services, Even If Made With Knowledge of the Customer's Fraud, Does Not Qualify As the Operation or Management of a RICO Enterprise .......... 16

B. Money Laundering Requires Engaging in Financial Transactions with Actual Knowledge of Unlawful Activity and Intent to Promote or Conceal the Unlawful Activity. .......... 17

C. Knowledge that Mann Temporarily Used Funds Collected for Payroll Is Not Knowledge of Unlawful Activity .......... 18

D. There Is No RICO Causation When Damages, If Any, Were Not Caused by the Predicate Money Laundering Acts. .......... 20

VIII. PLAINTIFFS' DECLARATORY JUDGMENT CLAIMS WILL FAIL BECAUSE THEY SEEK BACKWARD-LOOKING RELIEF AND ARE DUPLICATIVE .......... 21

SPECIAL TRIAL ISSUES .......... 22

I. ANTICIPATED EVIDENTIARY ISSUES .......... 22

A. Limiting Seriatim Testimony From Employer-Clients .......... 22

B. Limiting Cumulative Expert Testimony .......... 22

C. Limiting Cumulative Deposition Testimony from Witnesses Unable to Recall Information .......... 23

II. WITNESS AND EXHIBIT ISSUES .......... 24

A. Impeachment Exhibits .......... 24

B. Presentation of Michael Mann's Videotaped Deposition Testimony .......... 24

C. Instructing the Jury on the Nature of Parties and Counterclaims .......... 25

CONCLUSION .......... 25

CERTIFICATE OF SERVICE .......... 27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Agape Litig.*,
681 F. Supp. 2d 352, 365 (E.D.N.Y. 2010) ....................14, 15

*Ahles v. Aztec Enters., Inc.*,
120 A.D.2d 903 (3d Dep't 1986) ....................5

*Almeciga v. Ctr. for Investigative Reporting, Inc.*,
121 F. Supp. 3d 379 (S.D.N.Y. 2015) ....................12

*Amalgamated Bank of N.Y. v. Marsh*,
823 F. Supp. 209 (S.D.N.Y. 1993) ....................16

*AXH Air-Coolers, LLC v. Pioneer Bancorp, Inc.*,
2022 WL 16790328 (N.D.N.Y. 2022) (Scullin, J.) ....................5, 6, 9, 10

*Baptiste v. CUNY*,
680 F. Supp. 3d 415 (S.D.N.Y. 2023) ....................13

*Bates v. Abbott Laboratories*,
727 F. Supp. 3d 194 (N.D.N.Y. 2024) (Scullin, J.) ....................11

*Beck v. Metropolitan Bank Holding Corp.*,
747 F. Supp. 3d 442 (E.D.N.Y. 2024) ....................9

*Beck v. Prupis*,
529 U.S. 494 (2000) ....................20

*Berdeaux v. OneCoin Ltd.*,
561 F. Supp. 3d 379 (S.D.N.Y. 2021) ....................15

*Berman v. Morgan Keegan & Co.*,
455 F. App'x 92 (2d Cir. 2012) ....................14

*Boger v. N.Y. State Off. of Parks*,
2019 WL 6038545 (N.D.N.Y. Nov. 14, 2019) ....................22

*Bradick v. Israel*,
377 F.2d 262 (2d Cir. 1967) (per curiam) ....................14

*Brooklyn Union Gas Co. v. Exxon Mobil Corp.*,
554 F. Supp. 3d 448 (E.D.N.Y. 2021) ....................21

*Cartier Saada S.A. v. Bank of America, N.A.*,
2022 WL 195598 (S.D.N.Y. Jan. 21, 2022) ....................................................................10

*Chevron Corp. v. Naranjo*,
667 F.3d 232 (2d Cir. 2012)..............................................................................................21

*Chiste v. Hotels.com L.P.*,
756 F. Supp. 2d 382 (S.D.N.Y. 2010)...............................................................................21

*Cooper Crouse-Hinds, LLC v. City of Syracuse*,
2022 WL 976903 (N.D.N.Y. Mar. 31, 2022) ....................................................................23

*Corsello v. Verizon N.Y., Inc.*,
18 N.Y.3d 777 (N.Y. 2012) .........................................................................................10, 11

*Country Mut. Ins. Co. v. Broan Nutone*,
LLC, 2023 WL 7324516 (N.D.N.Y. Nov. 7, 2023)...........................................................23

*Cruz v. TD Bank, N.A.*,
855 F. Supp. 2d 157 (S.D.N.Y. 2012).................................................................................5

*Dem. Nat'l Comm. v. Russian Fed'n*,
392 F. Supp. 3d 410 (S.D.N.Y. 2019)...............................................................................16

*Doe v. Trump Corp.*,
385 F. Supp. 3d 265 (S.D.N.Y. 2019)...............................................................................20

*DT Floormasters, Inc. v. United States*,
2008 WL 2705554 (S.D. Ind. 2008) .................................................................................19

*Dubai Islamic Bank v. Citibank, N.A.*,
256 F. Supp. 2d 158 (S.D.N.Y. 2003)...............................................................................16

*Empire Merchants, LLC v. Reliable Churchill LLP*,
902 F.3d 132 (2d Cir. 2018)..............................................................................................20

*Foman v. Davis*,
371 U.S. 178 (1962)..........................................................................................................14

*FrontPoint Asian Event Driven Fund, L.P. v. Citibank, N.A.*,
2017 WL 3600425 (S.D.N.Y. Aug. 18, 2017)...................................................................13

*Fundacion Museo de Arte Contemporaneo de Caracas v. CBI-TDB Union Bancaire Privee*,
160 F.3d 146 (2d Cir. 1998)................................................................................................5

*Georgia Malone & Co., Inc. v. Rieder*,
19 N.Y.3d 511, 519 (N.Y. 2012) ......................................................................................12

*HBL Indus. v. Chase Manhattan Bank (Nat'l Ass'n)*,
45 B.R. 865 (S.D.N.Y. 1985)......6

*Hemi Grp., LLC v. City of N.Y., N.Y.*,
559 U.S. 1 (2010)......20

*Ironforge.com v. Paychex, Inc.*,
747 F. Supp. 2d 384 (W.D.N.Y. Oct. 5, 2010)......9, 18

*JPMorgan Chase Bank, N.A. v. 29-33 Ninth Avenue, LLC*,
710 F. Supp. 3d 259 (S.D.N.Y. 2024)......9

*Kleeberg v. Eber*,
2020 WL 4586904 (S.D.N.Y. Aug. 10, 2020)......21

*Lerner v. Fleet Bank, N.A.*,
459 F.3d 273 (2d Cir. 2006)......9, 14

*In re LIBOR Based Fin. Instruments Antitrust Litig.*,
27 F. Supp. 3d 447 (S.D.N.Y. 2014)......12, 13

*Luxonomy Cars, Inc. v. Citibank*,
N.A., 65 A.D.2d 549, 550 (2d Dep't 1978)......5

*Mandarin Trading Ltd. v. Wildenstein*,
16 N.Y.3d 173 (2011)......7

*McBride v. KPMG International*,
135 A.D.3d 576 (1st Dep't 2016)......6

*McClarin v. City of New York*,
181 F. 4th 260 (July 13, 2026)......24

*Merkin v. Berman*,
123 A.D.3d 523 (1st Dep't 2014)......7

*In re Morales Travel Agency*,
667 F.2d 1069 (1st Cir. 1981)......19

*Moss v. BMO Harris Bank, N.A.*,
258 F. Supp. 3d 289......17

*Musalli Factory For Gold & Jewellry v. JPMorgan Chase Bank, N.A.*,
261 F.R.D. 13 (S.D.N.Y. 2009)......15

*Nat'l Union Fire Ins. Co. of Pittsburgh v. Int'l Wire Grp., Inc.*,
2003 WL 21277114 (S.D.N.Y. June 2, 2003)......21

*NSI Int'l, Inc. v. Horizon Grp. USA, Inc.*,
2021 WL 3038497 (S.D.N.Y. July 16, 2021) ....... 12

*Nwachukwu v. Chemical Bank*,
1997 WL 441941 (S.D.N.Y. 1997) ....... 5

*Okocha v. HSBC Bank USA, N.A.*,
700 F. Supp. 2d 369 (S.D.N.Y. 2010) ....... 5

*Palatkevich v. Choupak*,
2014 WL 1509236 (S.D.N.Y. Jan. 24, 2014) ....... 17

*Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec.*,
LLC, 446 F. Supp. 2d 163 (S.D.N.Y. 2006) ....... 15

*Refco Sec. Litig.*,
759 F. Supp. 2d 301 (S.D.N.Y. 2010) ....... 5

*Regalado Cuellar v. United States*,
553 U.S. 550 (2008) ....... 18

*Remington Rand Corp. v. Amsterdam-Rotterdam Bank, N.V.*,
68 F.3d 1478 (2d Cir. 1995) ....... 7

*Renner v. Chase Manhattan Bank*,
2000 WL 781081 (S.D.N.Y. 2000) ....... 7

*Reves v. Ernst & Young*,
507 U.S. 170 (1993) ....... 16

*Ribaudo v. Citizens Nat. Bank of Orlando*,
261 F.2d 929 (5th Cir. 1958) ....... 19

*Rosario v. City of N.Y.*,
2021 WL 9455782 (S.D.N.Y. Nov. 23, 2021) ....... 22

*Rosner v. Bank of China*,
528 F. Supp. 2d 419 (S.D.N.Y. 2007) ....... 16

*Ruotolo v. City of New York*,
514 F.3d 184 (2d Cir. 2008) ....... 14

*Ryan v. Hunton & Williams*,
2000 WL 1375265 (E.D.N.Y. 2000) ....... 7

*In re Sakowitz, Inc.*,
949 F.2d 178 (5th Cir. 1991) ....... 19

*Santander Consumer USA, Inc. v. Kobi Auto Collision & Paint Ctr., Inc.*,
183 A.D.3d 984 (3d Dep't 2020) ........................................................................................12

*Sedima, S.P.R.L. v. Imrex Co., Inc.*,
473 U.S. 479 (1985)........................................................................................................16

*Sperry v. Crompton*,
8 N.Y.3d 204 (2007) ........................................................................................................12

*SPV Osus Ltd. v. UBS AG*,
882 F.3d 333 (2d Cir. 2018)...............................................................................................15

*Tang Capital Partners, L.P. v. BRC Inc.*,
661 F. Supp. 3d 48 (S.D.N.Y. 2023)...................................................................................21

*In re Teckenbrock*,
2012 WL 3818220 (Bankr. S.D.N.Y. Sept. 4, 2012).............................................................19

*Tevdorachvili v. Chase Manhattan Bank*,
103 F. Supp. 2d 632 (E.D.N.Y. 2000) ...................................................................................5

*United States v. Huezo*,
546 F.3d 174 (2d Cir. 2008)...............................................................................................17

*United States v. Lewter*,
402 F.3d 319 (2d Cir. 2005)...............................................................................................22

*United States v. Quattrone*,
441 F.3d 153 (2d Cir. 2006)...............................................................................................23

*United States v. Sandalo*,
70 F.4th 77 (2d Cir. 2023) .................................................................................................23

*United States v. Viola*,
35 F.3d 37 (2d Cir. 1994)...................................................................................................16

*United Sys. Assoc. v. Norstar Bank Upstate N.Y.*,
171 A.D.2d 922 (3d Dep't 1991) ..........................................................................................5

*In re Verestar, Inc.*,
343 B.R. 444 (S.D.N.Y. Bankr. 2006).................................................................................13

*Votsis v. ADP, LLC*,
2019 N.Y. Slip Op. 34093(U), (Sup. Ct., Monroe Cnty. 2019), *aff'd*, 187
A.D.3d 1490 (4th Dep't 2019)............................................................................................18

*XPO Enterprise Servs. Inc., v. Citibank, N.*
A., 2025 WL 2233572 (E.D.N.Y. Aug. 5, 2025)...................................................................10

*Young v. United States Dep't of Justice*,
882 F.2d 633 (2d Cir. 1989) (encouraging New York courts to recognize a duty of confidentiality between bank and customer) .......... 8

*Zamora v. JPMorgan Chase Bank*,
2015 WL 4653234 (S.D.N.Y. July 31, 2015) .......... 13

**Statutes and Rules**

12 U.S.C. § 3403(a) .......... 8

18 U.S.C. §1956 .......... 17, 18

18 U.S.C. § 1957 .......... 17, 18

Fed. R. Evid. 403 .......... 22, 23

**Other Authorities**

6 Fed. Prac. & Proc. Civ. § 1487 (3d ed.) .......... 14

Pioneer Bancorp, Inc. and Pioneer Bank (collectively, "Pioneer") respectfully submit this pretrial brief in accordance with Paragraph (E) of the Court's Final Pretrial Scheduling Order (Dkt. No. 412).

**PRELIMINARY STATEMENT**

This case arises from a multi-year check-kiting and bank-fraud scheme by Michael Mann, the controlling owner of Plaintiff Southwestern Payroll ("SWP"), who has since pleaded guilty. Mann ran the scheme through companies he owned under the umbrella of his holding company, ValueWise Corp. ("ValueWise"), including the payroll-services entities MyPayrollHR ("MPHR"), Cloud Payroll, and SWP (collectively, the "Mann entities"). Over a decade, unbeknownst to Pioneer, Mann built fictional businesses on fabricated invoices, invented illegitimate companies, kited checks to inflate his balances, and doctored audited financial statements. He used that fiction to borrow more than $40 million from Pioneer. But Mann did not act alone. Plaintiff SWP handed him its payroll-tax obligations and unfettered control of its bank accounts, then ignored his banking activity. And Intervenor-Plaintiff National Payment Corporation ("NatPay"), the processor that moved the money, abandoned its own safeguards and enabled hundreds of millions of dollars in facially illegitimate transactions.

Pioneer held deposit accounts for the Mann entities and was also the lead lender on a commercial working-capital line of credit extended to ValueWise. Mann was the sole signatory on those accounts. He asked Pioneer to link them for cash management when he opened them, and he treated them thereafter as the accounts of a single business, routinely moving funds among them to cover ordinary operating expenses including overdrafts. Mann kept deposit accounts at Bank of America too, and for years he kited checks between the two banks, with neither bank detecting it. Then, on August 30, 2019, Bank of America returned checks drawn on Mann's accounts at that institution, leaving the linked Mann-entity accounts at Pioneer substantially overdrawn for reasons

Pioneer could not then determine. Pioneer restricted those accounts that same day and, after diligence during the first week of September, exercised its contractual, statutory, and common-law rights to recover (or setoff) the overdraft from funds on deposit in the Mann-entity accounts, two of which are at issue here—the Cloud Account (ending in 2440) and the MPHR Account (ending in 0212). Mann's fraud was not discovered until the third week of September, when he disclosed it to federal prosecutors.

Pioneer Bank is a community bank. It has done business in New York's Capital Region since 1889, taking deposits, making loans, and serving the families and small businesses of upstate New York. Pioneer was, and remains, the largest victim of Mann's fraud. Mann was one of the Bank's biggest commercial customers. When Mann's scheme collapsed, Pioneer was left holding tens of millions of dollars of worthless debt, millions in uncured overdrafts, and years of expense untangling what Mann had done. Its capital was impaired. Its reputation in the community it had served for more than a century was damaged. No one lost more to Michael Mann than Pioneer Bank.

Yet Plaintiffs contend that Pioneer knowingly joined Mann's criminal enterprise despite overwhelming evidence to the contrary, including Mann's sworn testimony that "Pioneer knew nothing about the fraud scheme." Deposition Tr. of Michael T. Mann vol. II, Sept. 14, 2021 at 538:16-23. Plaintiffs' theory is contrary to the evidence and defies commercial logic, and Plaintiffs cannot prove these claims with evidence at trial.

To the contrary, the record reflects ordinary banking by Pioneer. It opened ordinary business checking accounts for its customer when he asked for them. It extended credit in reliance on independent audited financial statements it had no reason to doubt. And it waived fees for overdrafts, like it did with numerous other commercial customers, that were consistently and

promptly covered by funds that already were in linked bank accounts. Then, when Bank of America returned Mann's checks on August 30, 2019, leaving the linked Mann Entities' accounts overdrawn by more than $18 million, Pioneer did exactly what its account agreements and the law entitled it to do: it restricted the accounts and then set off the balances in linked accounts holding positive funds against the negative balances in the others. Those accounts were general deposit checking accounts, linked together at Mann's own request for cash-management purposes. Setoff in these circumstances was no extraordinary maneuver. It is precisely what banks regularly do, and have a well-established right to do, to protect the bank and its depositors from further harm.

Furthermore, Plaintiffs are not the parties whose accounts had positive balances that were set off. Nor was any Plaintiff a designated beneficiary of the linked accounts at issue. Unable to overcome that threshold lack of ownership, Plaintiffs have attempted to attach a series of self-serving labels to the funds in an effort to obscure the fact that the funds did not belong to them. To name only a few, they have called the funds "tax trust funds," "third-party funds," "third-party tax funds," and "third-party employer tax funds." The labels change nothing. Money deposited in a bank is often collected from someone else with specific intentions; that ordinary fact does not make a depositor's account the property of everyone up the chain, and it does not create duties running from the bank to strangers. For the same reason, Plaintiffs' contention that Pioneer owed them a duty to report what was happening in Mann's linked accounts cannot survive: they were not the account holders and, apart from Mann, none of them ever spoke with anyone at Pioneer, let alone engaged in business dealings that would give rise to a disclosure duty. In addition, Pioneer notified Mann, who is SWP, and whom SWP authorized to act on its behalf at Pioneer. Respectfully, all of this was appropriate for resolution at summary judgment, and Pioneer intends to request the Court to resolve these matters on a directed verdict.

Independent of these defects in Plaintiffs' claims, Pioneer will demonstrate its right to recover on its counterclaims against SWP. Mann owned and controlled SWP, and while he did, he committed countless acts of fraud, money laundering, and check kiting on SWP's behalf. SWP has long sought to distance itself from Mann, but it cannot. Mann was authorized to act on SWP's behalf, he did act on its behalf, and his acts are imputed to it—including, under settled law, acts that exceeded the authority SWP gave him. In addition, SWP's 49% owner and president, Darin Alred, created many of the key conditions for Mann's fraud and then willfully ignored them as the fraud proceeded apace. SWP must bear the consequences of the business association it chose, including its decision to cede control of its payroll-tax processing obligations and related banking functions to Mann. The evidence will show that Pioneer is entitled to recover the losses that conduct and omissions caused, and that SWP's own claims are barred under the doctrine of in pari delicto.

Pioneer will also recover on its counterclaims against NatPay. NatPay admittedly departed from its standard practices in ways unprecedented in its thirty-year history to accommodate Mann's criminal scheme, waved through Mann's repeated violations of NatPay's own policies, and processed nearly $700 million in "ePay" transactions that were illegitimate on their face. Given the fraud-detection capabilities NatPay advertises to its own customers, that activity could not have occurred without its knowing participation. Further, NatPay's own intentional misconduct led directly to the harm it now asks Pioneer to pay for. The evidence at trial will show that Pioneer is entitled to recover the losses that NatPay's participation caused, and that NatPay's claims are meritless and barred under the doctrine of in pari delicto.

## LEGAL ISSUES

### I. PLAINTIFFS' CONVERSION CLAIMS WILL FAIL BECAUSE THE ACCOUNTS WERE GENERAL DEPOSIT ACCOUNTS AND PLAINTIFFS LACKED A POSSESSORY INTEREST

#### A. It is Impossible for a Bank to Wrongly Convert Funds in a General Deposit Account.

A bank cannot convert money held in a general deposit account. New York and federal courts—including this Court—have said so repeatedly. *AXH Air-Coolers, LLC v. Pioneer Bancorp, Inc.*, 2022 WL 16790328, at *4 (N.D.N.Y. 2022) (Scullin, J.); *see also Fundacion Museo de Arte Contemporaneo de Caracas v. CBI-TDB Union Bancaire Privee*, 160 F.3d 146, 148 (2d Cir. 1998) (conversion claim "fail[ed] as a matter of law" because it involved funds in a "general account"). The authority on this point is overwhelming. *See, e.g.*, *Refco Sec. Litig.*, 759 F. Supp. 2d 301, 328-29 (S.D.N.Y. 2010) (dismissing conversion claim because once funds are deposited "the funds do in fact belong to the bank"); *Cruz v. TD Bank, N.A.*, 855 F. Supp. 2d 157, 174-75 (S.D.N.Y. 2012) (dismissing conversion claim against bank that debited wage income); *Okocha v. HSBC Bank USA, N.A.*, 700 F. Supp. 2d 369, 377 (S.D.N.Y. 2010) (dismissing conversion claim against bank); *Tevdorachvili v. Chase Manhattan Bank*, 103 F. Supp. 2d 632, 643 (E.D.N.Y. 2000); *Nwachukwu v. Chemical Bank*, 1997 WL 441941, at *6-7 (S.D.N.Y. 1997); *Luxonomy Cars, Inc. v. Citibank*, N.A., 65 A.D.2d 549, 550 (2d Dep't 1978) ("A checking account . . . cannot be converted."); *United Sys. Assoc. v. Norstar Bank Upstate N.Y.*, 171 A.D.2d 922, 923 (3d Dep't 1991); *Ahles v. Aztec Enters., Inc.*, 120 A.D.2d 903, 903 (3d Dep't 1986).

Here, the evidence will show the Cloud and MPHR Accounts at issue were ordinary general deposit accounts, and funds held in such accounts cannot be converted as a matter of law.

### B. Non-Account Holders Like Plaintiffs Cannot Prevail on a Conversion Claim Against a Bank, Even if the Accounts Were Special Deposits, Which They Are Not.

A conversion claim requires that the plaintiff owns a possessory interest in the property allegedly converted. *HBL Indus. v. Chase Manhattan Bank (Nat'l Ass'n)*, 45 B.R. 865, 871 (S.D.N.Y. 1985). A non-account holder owns no such interest—even if the account were a special deposit. *See AXH Air-Coolers*, 2022 WL 16790328, at *4 (dismissing conversion claim by non-account holder). *HBL Industries* proves the point. There, the court dismissed a conversion claim brought by a contractual creditor of the account holder, because that creditor had no possessory interest in the deposited funds. *See* 45 B.R. at 871. As the court explained, even an improper setoff by the bank gave the creditor no conversion remedy because "wrongful acts do not necessarily create remedies in all parties affected by them." *Id.*

*McBride v. KPMG International* confirms the point. There, the First Department held that, under New York law, a non-account holder cannot sue a bank for conversion of funds held in another party's account. 135 A.D.3d 576, 580 (1st Dep't 2016). The plaintiffs had brought conversion claims against Bank of New York Mellon ("BNY"), alleging that BNY wrongfully converted funds in accounts belonging to Bernard L. Madoff Investment Securities LLC ("BMIS"). *Id*. According to the plaintiffs, they had originally invested those funds with BMIS, which in turn deposited them in its BNY accounts. *Id.* Yet the court dismissed the conversion claim because plaintiffs "had no possessory right or interest in BMIS's accounts at JPMorgan and BNY; rather, *BMIS* had the right and interest in those accounts." *Id.* (emphasis in original).

Here, none of SWP, Granite Solutions ("GSG") or NatPay was an account holder of the only two accounts at issue: Cloud and MPHR Accounts. They were, at most, contractual creditors of those account holders—and a contractual creditor lacks the possessory interest required to bring a conversion claim against a bank.

## II. PLAINTIFFS' FRAUD CLAIMS WILL FAIL BECAUSE THEY WERE OWED NO DUTY BY PIONEER

### A. The Special Facts Doctrine Does Not Impose a Duty On Banks to Disclose Information About Transactional Activity to Non-Account Holders.

To establish fraud by omission, the plaintiff must show that "the defendant had a duty to disclose material information and that it failed to do so." *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 179 (2011). Without a fiduciary relationship, that duty arises only when "one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge." *Remington Rand Corp. v. Amsterdam-Rotterdam Bank, N.V.*, 68 F.3d 1478, 1483-84 (2d Cir. 1995). And even then, the "special facts" duty applies "only in business dealings between parties to a prospective transaction." *Merkin v. Berman*, 123 A.D.3d 523, 524 (1st Dep't 2014).

Banks owe no such duty to non-account holders. In *Ryan v. Hunton & Williams*, for example, a non-customer lost $50,000 after wiring it into an account that was already frozen. *See* 2000 WL 1375265, at *5 (E.D.N.Y. 2000). The court held that was no fraud because the bank had no duty to inform the non-account holder that the account was frozen. *Id.* The court first doubted whether the special facts doctrine reaches a non-account holder who sends money to a bank account, because the bank and account holders are not involved in "business negotiations where parties are entering a contract." *Id.* In any event, the court explained, a bank has no disclosure duty because "a bank should keep its own customers' affairs confidential." *Id.* (citing *Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, Nat'l Ass'n*, 731 F.2d 112, 123 (2d Cir. 1984)).

Other courts agree that the special facts doctrine does not apply to banks. *See, e.g.*, *Renner v. Chase Manhattan Bank*, 2000 WL 781081, at *9 (S.D.N.Y. 2000) (holding that a bank had no duty to respond to "letters and inquiries" from non-customers because "it is implicit in the contract of the bank with its customers or depositor that no information may be disclosed by the bank or its

employees concerning the customer's or depositor's account"); *cf. Young v. United States Dep't of Justice,* 882 F.2d 633, 640–43 (2d Cir. 1989) (encouraging New York courts to recognize a duty of confidentiality between bank and customer); 12 U.S.C. § 3403(a) (prohibiting banks from disclosing "the financial records of any customer," subject to limited exceptions inapplicable here).

Here, the fraud claims fail at the threshold. No plaintiff alleges that anything Pioneer said caused it to send money to the Cloud Account or the MPHR Account. Instead, the fraud claim rests entirely on alleged silence—Pioneer's alleged failure to warn SWP, GSG, and NatPay that the accounts were frozen and that they could not withdraw funds. But an omission is actionable only if there is a duty to disclose, and Pioneer owed these Plaintiffs no such duty because none of them were the account holders or designated as the authorized representative of the Cloud Account or the MPHR Account. In addition, Pioneer notified Mann, who is SWP, and who is the only individual SWP authorized to act on its behalf at Pioneer.

**B. The Special Facts Doctrine Does Not Impose a Duty on Banks to Return Debits Sooner Than the Standard Two-Day Regulatory Window.**

SWP, GSG, and NatPay also allege that Pioneer committed fraud by "delaying" the return of ACH debits to the Cloud Account and the MPHR Account until September 4, 2019. That claim is legally defective. There is no authority—zero—that requires a bank to return debits early. The special-facts doctrine changes nothing. It does not impose an affirmative duty on a bank to accelerate the return of ACH transactions. At most, the special facts doctrine might impose a duty of disclosure (and as explained above, that duty does not require a bank to disclose confidential information to non-account holders.) The delay-based fraud claim therefore fails.

In addition, the claim will fail on the facts. Pioneer in fact returned almost all of the debits on September 3, 2019. Further, it had no obligations to return the transactions before September 4, 2019. As Plaintiffs concede, under the National Automated Clearing House Association

("NACHA") Operating Rules, "banks usually have up to two days to reject an ACH entry." Dkt. 232 ¶ 82. The transactions at issue here arrived on Friday, August 30, 2019—the day before the Labor Day weekend. With Saturday, Sunday, and the Monday holiday all counting as non-business days, the two-business-day return window closed at the end of Wednesday, September 4. Pioneer therefore did not delay by returning debits on Wednesday, September 4.

## III. PLAINTIFFS' NEGLIGENCE CLAIMS WILL FAIL BECAUSE THEY WERE OWED NO DUTY BY PIONEER; IN ADDITION, ANY DUTY WOULD BE LIMITED TO MONITORING THE MPHR AND CLOUD ACCOUNTS

Every negligence claim requires "a duty owed by the defendant to the plaintiff." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 286 (2d Cir. 2006). Under New York law, banks ordinarily "do not owe non-customers a duty to protect them from the intentional torts of their customers." *Id.* A "non-customer" for purposes of this rule is anyone who is not a customer "as it relates to the accounts at issue." *JPMorgan Chase Bank, N.A. v. 29-33 Ninth Avenue, LLC*, 710 F. Supp. 3d 259, 278 (S.D.N.Y. 2024). The only narrow exception is where the bank obtains a benefit from a diversion involving a "fiduciary account." *See AXH Air-Coolers*, 2022 WL 16790328, at *6 (citing *Lerner*); *see also Beck v. Metropolitan Bank Holding Corp.*, 747 F. Supp. 3d 442, 466 (E.D.N.Y. 2024) (bank had no duty of care "because Beck's account with Chase was not any sort of fiduciary account").

Here, Plaintiffs' negligence claims fail for lack of duty, among other reasons. The Cloud and MPHR accounts were ordinary depository accounts, not fiduciary accounts. *See, e.g.*, *Ironforge.com v. Paychex, Inc.*, 747 F. Supp. 2d 384, 395 (W.D.N.Y. Oct. 5, 2010) (holding payroll companies are not fiduciaries to their clients). SWP, NatPay, and GSG are noncustomers with respect to those accounts. Pioneer therefore owed them no duty to monitor or investigate transactions in accounts they did not own.

In addition, a bank's only potential duty of care to noncustomers is narrow. It arises only from the special deposit fiduciary account doctrine, and it reaches no further than a duty to monitor the accounts at issue. *See AXH Air-Coolers*, 2022 WL 16790328, at *6 (citing *Lerner*). "The Second Circuit has made clear that a general duty to non-customers would unreasonably expand banks' orbit of duty, and be the equivalent of making New York banks liable to the world's banking public." *Cartier Saada S.A. v. Bank of America, N.A.*, 2022 WL 195598, at *2 (S.D.N.Y. Jan. 21, 2022) (internal quotation omitted); *see also XPO Enterprise Servs. Inc., v. Citibank, N.*A., 2025 WL 2233572, at *4 (E.D.N.Y. Aug. 5, 2025) (noting the "almost universal rule that banks do not owe a common law duty of care to third-party customers").

Here, Pioneer anticipates that Plaintiffs will try to prove negligence with evidence that has nothing to do with monitoring the Cloud Account and MPHR Account, including whether Pioneer generally operated in a safe and sound manner that protects the public interest, and whether Pioneer conducted adequate due diligence in underwriting its line of credit to Mann. None of that is relevant. SWP, NatPay, and GSG were not owed a generalized duty by Pioneer to operate in a safe and sound manner. Nor were SWP, NatPay, or GSG customers of the bank with respect to those loans. Pioneer therefore owed them no duty in extending or underwriting credit to someone else.

## IV. PLAINTIFFS' UNJUST ENRICHMENT CLAIMS DUPLICATE THEIR OTHER CLAIMS AND ARE ALSO DEFICIENT AS A MATTER OF LAW

### A. The Unjust Enrichment Claims Must Be Dismissed Because They are Duplicative.

Unjust enrichment "is not a catchall cause of action to be used when others fail." *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (N.Y. 2012). "In a broad sense," *Corsello* explained, it "may be true in many cases" that "equity and good conscience" require a defendant to return a benefit. *Id.* Even so, unjust enrichment "is available only in unusual situations," where the defendant "has not breached a contract nor committed a recognized tort," yet equity still imposes

an obligation to pay the plaintiff. *Id.* It "is not available where it simply duplicates, or replaces, a conventional contract or tort claim." *Id.* (citing cases).

*Corsello* itself shows how this rule works. The plaintiffs sued for trespass, deceptive trade practices, and unjust enrichment after Verizon bolted a terminal box to their building without paying. *Id.* The Court of Appeals dismissed the unjust enrichment claim as duplicative. "To the extent that [the other] claims succeed, the unjust enrichment claim is duplicative; ***if plaintiffs' other claims are defective, an unjust enrichment claim cannot remedy the defects***." *Id.* at 790–91 (emphasis added).

An unjust enrichment claim is duplicative when it relies on the same facts and seeks the same damages. In *Bates v. Abbott Laboratories*, 727 F. Supp. 3d 194, 228–29 (N.D.N.Y. 2024) (Scullin, J.), the court dismissed an unjust-enrichment claim as duplicative of tort claims because "they arise from the same facts and do not allege distinct damages." The court explained that judges "need [] not compare the elements of the particular claims to determine whether they are duplicative." *Id.* Letting an unjust enrichment claim survive just because its elements differ from the tort claims "is inconsistent with the vast weight of case law." *Id.*

Here, the unjust enrichment claims are carbon copies of the tort claims. SWP, GSG, and NatPay simply repeat their conversion, negligence, fraud, and RICO allegations: that Pioneer could not set off the funds in the Cloud and MPHR Accounts and unfairly profited when it did. They allege no distinct damages either. Their own complaints say Pioneer "has been unjustly enriched *by its conversion and retention*" of the funds, and that "*Pioneer's conversion* was at the expense" of plaintiffs. Dkt. No. 232 ¶¶ 464-65; Dkt. No. 245 ¶¶ 456-57. Because the unjust enrichment claims duplicate the tort claims, they should be dismissed and never reach the jury.

### B. There Cannot be an Unjust Enrichment Claim Against a Bank's Setoff by Non-Customers Because There is No Sufficient Connection.

Unjust enrichment under New York law requires a plaintiff to show that it has a "sufficient connection" with the defendant(s). *See Georgia Malone & Co., Inc. v. Rieder*, 19 N.Y.3d 511, 519 (N.Y. 2012) (affirming grant of motion to dismiss because "the complaint fails to present a sufficient connection between" plaintiff and defendant "to form the basis of an unjust enrichment claim"). "[M]ere knowledge" of another entity "is insufficient to support a claim for unjust enrichment." *Id.*; *NSI Int'l, Inc. v. Horizon Grp. USA, Inc.*, 2021 WL 3038497, at *8 (S.D.N.Y. July 16, 2021) (rejecting argument that defendant's "awareness of how [its] conduct would affect [plaintiff] is enough" to allege sufficient connection). Where, as here, "plaintiff and defendant 'simply had no dealings with each other,' their relationship is 'too attenuated' to support an unjust enrichment claim." *In re LIBOR Based Fin. Instruments Antitrust Litig.*, 27 F. Supp. 3d 447, 479 (S.D.N.Y. 2014) (quoting *Rieder*, 19 N.Y.3d at 517-518); *see also Sperry v. Crompton*, 8 N.Y.3d 204 (2007).

For this reason, courts require a relationship between the parties that could cause reliance or inducement. *See Santander Consumer USA, Inc. v. Kobi Auto Collision & Paint Ctr., Inc.*, 183 A.D.3d 984, 988 (3d Dep't 2020) (affirming dismissal of claim because "a cause of action for unjust enrichment requires a showing of reliance which, given the absence of a prior relationship between respondent and petitioner, was manifestly absent here"); *Almeciga v. Ctr. for Investigative Reporting, Inc.,* 121 F. Supp. 3d 379, 386 (S.D.N.Y. 2015) ("[A] plaintiff must allege facts showing a sufficient relationship 'between the parties that could have caused reliance or inducement.'" (quoting *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 182 (N.Y. 2011)).

Relying on these principles, courts routinely dismiss unjust enrichment claims against banks by non-customers because there were no dealings and thus no relationship between the

parties. *Zamora v. JPMorgan Chase Bank*, 2015 WL 4653234, at *4 (S.D.N.Y. July 31, 2015) ("Plaintiffs do not allege that they were JPMorgan clients, or that they had any dealings with JPMorgan sufficient to sustain an unjust enrichment claim."); *LIBOR*, 27 F. Supp. 3d at 479 (similar); *FrontPoint Asian Event Driven Fund, L.P. v. Citibank, N.A.*, 2017 WL 3600425, at *16 (S.D.N.Y. Aug. 18, 2017) (similar).

Here, no plaintiff has the required connection to Pioneer with respect to the Cloud Account and MPHR Account. GSG never even heard of Pioneer before the events giving rise to this dispute. NatPay does not dispute that it never communicated with Pioneer at any relevant time. And SWP had no dealings with Pioneer regarding the funds that were set off. None of these relationships establishes a connection sufficient to sustain an unjust enrichment claim against a bank.

## V. PLAINTIFFS' AIDING AND ABETTING CONVERSION CLAIMS ARE LEGALLY DEFICIENT AND CANNOT BE AMENDED

An aiding-and-abetting claim fails where the defendant alleged to be the aider and abettor is also alleged to be the principal tortfeasor who committed the conversion. *See In re Verestar, Inc.*, 343 B.R. 444, 482 (S.D.N.Y. Bankr. 2006) ("ATC, as the alleged tortfeasor of the underlying claim of conversion, cannot be liable for aiding and abetting in the commission of its own tort."); *cf. Baptiste v. CUNY*, 680 F. Supp. 3d 415, 427 (S.D.N.Y. 2023) ("an individual cannot aid and abet his or her own violation").

Here, the aiding-and-abetting conversion claims against Pioneer fail precisely because of this defect. SWP, GSG, and NatPay each allege that "Defendants agreed that Pioneer would convert" their money. Dkt. No. 232 ¶ 501; Dkt. No. 245 ¶ 489. Because each claim names Pioneer as the principal converter, it fails on its face and should not go to the jury.

Nor may SWP, GSG, or NatPay rescue these claims by amending to make Mann the principal converter. When leave to amend is sought on the eve of trial, the Court must weigh the

reasons for the delay against the prejudice to the defendant. *See Foman v. Davis,* 371 U.S. 178, 182 (1962). "Undue prejudice arises when an amendment [comes] on the eve of trial and would result in new problems of proof." *Ruotolo v. City of New York*, 514 F.3d 184, 192 (2d Cir. 2008); *see also Bradick v. Israel,* 377 F.2d 262, 263 (2d Cir. 1967) (per curiam) (affirming denial of a motion to amend brought on the eve of trial that added new theories of law and new problems of proof); 6 Fed. Prac. & Proc. Civ. § 1487 (3d ed.) (amendment is prejudicial when it "substantially changes the theory on which the case has been proceeding and is proposed late enough so that the opponent would be required to engage in significant new preparation").

Here, amendment would impose that prejudice. No party has ever advanced the theory that Mann—rather than Pioneer—converted the funds in the Cloud and MPHR Accounts. Pioneer has had no opportunity to develop proof on that theory, to depose Michael Mann or any other witness about it, or to prepare to meet it at trial. Plaintiffs cannot switch theories now. Accordingly, the existing aiding-and-abetting theory is defective and should not go to trial.

## VI. PLAINTIFFS' AIDING AND ABETTING FRAUD CLAIMS WILL FAIL ON THE LAW AND FACTS

Plaintiffs' aiding-and-abetting fraud claim has three elements: (1) SWP, GSG, and NatPay must show an underlying fraud, (2) Pioneer's actual knowledge of that fraud, and (3) Pioneer's substantial assistance in it. *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273 (2006).

Substantial assistance demands more than ordinary banking. Performing routine business services for an alleged wrongdoer does not amount to substantial assistance "even where there is a suspicion of fraudulent activity." *In re Agape Litig.*, 681 F. Supp. 2d 352, 365 (E.D.N.Y. 2010). In *Berman v. Morgan Keegan & Co.*, the court held that executing securities transactions on a fraudster's behalf and at his direction was not substantial assistance, even assuming the defendant knew of the fraud. 455 F. App'x 92, 96 (2d Cir. 2012). And mere silence or failure to act cannot

constitute substantial assistance either. *See, e.g., SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 346 (2d Cir. 2018); *Berdeaux v. OneCoin Ltd.*, 561 F. Supp. 3d 379, 416, 417 (S.D.N.Y. 2021).

Aiding-and-abetting liability also requires proximate cause. Substantial assistance requires a showing that the defendant's actions "proximately caused the harm on which the primary liability is predicated." *Musalli Factory For Gold & Jewellry v. JPMorgan Chase Bank, N.A.*, 261 F.R.D. 13, 25 (S.D.N.Y. 2009); *see also Agape Litig.*, 681 F. Supp. 2d at 364 (the aider and abettor's conduct must "proximately cause[] the harm on which the primary liability is predicated"). But-for causation is insufficient: "aider and abettor liability requires the injury to be a direct or reasonably foreseeable result of the conduct." *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec.*, LLC, 446 F. Supp. 2d 163, 201-02 (S.D.N.Y. 2006).

Here, Pioneer's Labor Day weekend conduct cannot support an aiding-and-abetting fraud claim. The underlying fraud is Mann's failure to tell SWP, GSG, and NatPay that he would divert the tax funds to other purposes. None of Pioneer's conduct substantially assisted that fraud. Pioneer's actions before Labor Day weekend were ordinary banking activities. And although Plaintiffs catalog a list of steps Pioneer took when it froze Mann's payroll companies' accounts, none of those steps substantially assisted the underlying fraud—Mann's inducement of Plaintiffs to contract with him for payroll services—which occurred before Labor Day weekend. Pioneer's conduct therefore could not have been the proximate cause.

Plaintiffs' false concealment theory fares no better. Pioneer's alleged effort to hide the reason for the setoff—whether from NACHA or from small businesses—did not proximately cause any loss. Plaintiffs' alleged injury flowed directly from Pioneer's freeze and setoff of the accounts. Nothing connects Pioneer's communications with NACHA or with employer-clients to that loss.

## VII. PLAINTIFFS' RICO CLAIMS WILL FAIL ON THE LAW AND FACTS

### A. Provision of Banking Services, Even If Made With Knowledge of the Customer's Fraud, Does Not Qualify As the Operation or Management of a RICO Enterprise.

To establish a civil RICO claim under Section 1962(c), a plaintiff must show "'(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Sedima, S.P.R.L. v. Imrex Co., Inc*., 473 U.S. 479, 496 (1985). To distinguish those inside the enterprise from outsiders, the Supreme Court adopted the "operation or management" test, holding that to satisfy the "conduct" element, a defendant must play a part in directing the role of the enterprise. *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993). This "'operation and management requirement,'" "is an extremely rigorous test" in "this Circuit." *Dem. Nat'l Comm. v. Russian Fed'n*, 392 F. Supp. 3d 410, 440-41 (S.D.N.Y. 2019).

The most significant practical application of the insider/outsider distinction in the Second Circuit involves professional service providers. Mere provision of professional services, even if those services are "necessary" to the enterprise's fraudulent activities, does not satisfy the operation or management test. *United States v. Viola*, 35 F.3d 37, 41 (2d Cir. 1994) (finding reversible error where district court departed from this formulation). Critically, providing banking or financial services, for example, does not qualify as participating in the enterprise under section 1962(c), ***even if those services were provided with knowledge of the fraud***. *See Dubai Islamic Bank v. Citibank, N.A.,* 256 F. Supp. 2d 158, 164 (S.D.N.Y. 2003) ("That [defendant] Bank provided banking services—even with knowledge of the fraud—is not enough to state a claim under section 1962."); *Amalgamated Bank of N.Y. v. Marsh*, 823 F. Supp. 209, 220 (S.D.N.Y. 1993) (defendant who received false checks and cashed them with knowledge that they were fraudulently obtained did not participate in the conduct of enterprise's affairs); *Rosner v. Bank of China*, 528 F. Supp. 2d 419, 431 (S.D.N.Y. 2007) (holding that bank did not participate in RICO

enterprise through provision of services even if the bank engaged in a pattern of racketeering activity). "Bankers do not become racketeers by acting like bankers." *Moss v. BMO Harris Bank, N.A.*, 258 F. Supp. 3d 289, at 308 (quotation omitted).

Here, Pioneer merely provided professional banking services to Mann while he conducted the RICO enterprise. That does not satisfy the operation-or-management test, even if Pioneer allegedly "knew or should have known" of the illegality of Mann's conduct.

**B. Money Laundering Requires Engaging in Financial Transactions with Actual Knowledge of Unlawful Activity and Intent to Promote or Conceal the Unlawful Activity.**

The only RICO predicate act alleged against Pioneer is money laundering. A bank does not commit or conspire to commit money laundering in violation of 18 U.S.C. §§ 1956 and 1957 merely because it engages in a financial transaction that it "should have known" involved criminally derived property. The statutes require actual knowledge—not constructive knowledge—as the mens rea for liability. In addition, and as the Second Circuit explained, money laundering "requires proof of both knowledge and specific intent." *United States v. Huezo*, 546 F.3d 174, 178 (2d Cir. 2008).

The text of both statutes makes the knowledge requirement explicit. Section 1956 applies when a person acts "knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity." 18 U.S.C. § 1956(a)(1). Section 1957 similarly requires evidence that the defendant "knowingly engaged . . . in a monetary transaction involving criminally derived property." *See* 18 U.S.C. § 1957(a); *see also Palatkevich v. Choupak*, 2014 WL 1509236, at *18 (S.D.N.Y. Jan. 24, 2014) (requiring actual knowledge). The same knowledge requirement applies to conspiracy to commit money laundering. *See Huezo*, 546 F.3d at 180.

Likewise, money laundering requires either "intent to promote" the unlawful activity or "knowing that the transaction is designed . . . to conceal or disguise." 18 U.S.C. §§ 1956(A)(i),

(B)(i). The concealment prong requires knowledge that the "purpose—not merely its effect—was to conceal or disguise." *Regalado Cuellar v. United States*, 553 U.S. 550, 567 (2008).

Here, it is not enough for SWP, GSG, and NatPay to show that Pioneer "knew or should have known" that the funds in the Cloud Account and MPHR Account were proceeds of unlawful activity. *Contra* Dkt. No. 393 at 18. Instead, to find that Pioneer engaged in the predicate acts of money laundering, they must prove that Pioneer *actually knew* that the funds were the proceeds of unlawful activity *and* that Pioneer engaged in a transaction intended to promote the unlawful activity or to conceal it. The evidence at trial will not permit that finding.

**C. Knowledge that Mann Temporarily Used Funds Collected for Payroll Is Not Knowledge of Unlawful Activity.**

A bank does not commit or conspire to commit money laundering in violation of 18 U.S.C. §§ 1956 and 1957 merely because the bank approves transactions that involve funds in a payroll company's accounts. This is true even if the bank knows that the funds originated from a payroll company's clients.

Here, SWP, GSG, and NatPay each contend that Pioneer knew the funds at issue had been collected from third parties to pay taxes. From that single premise, they leap to a much larger conclusion: that Pioneer must also have known Mann had promised his employer-clients he would hold their money in special deposit accounts and was thus committing crimes when he moved those funds between his accounts before they came due to the taxing authorities.

The law and evidence preclude such a leap. Knowing funds were intended for taxes is not the same as knowing they were obtained through crime. Funds collected by payroll companies and deposited in an ordinary bank account are treated as ordinary funds. Payroll companies are not trustees or fiduciaries. *Ironforge.com*, 747 F. Supp. 2d at 394-95 (relationship between payroll company and employer-client is contractual, not fiduciary); *Votsis v. ADP, LLC*, 2019 N.Y. Slip

Op. 34093(U), at *5 (Sup. Ct., Monroe Cnty. 2019), *aff'd*, 187 A.D.3d 1490 (4th Dep't 2019) ("Courts have rejected claims that companies providing payroll services are fiduciaries to their clients."). Accordingly, funds collected by payroll companies and deposited become the bank's property. *See DT Floormasters, Inc. v. United States*, 2008 WL 2705554, at *1, 6 (S.D. Ind. 2008) (approving setoff of a "Payroll Account" because "money transferred" by the employer-clients "became property of the Bank"); *Ribaudo v. Citizens Nat. Bank of Orlando*, 261 F.2d 929, 933 (5th Cir. 1958) (permitting setoff of a "special payroll account" because the account holder had full control). Courts have reached the same conclusion in many other commercial contexts, holding the relationship to be "in practical fact that of debtor-creditor." *See In re Morales Travel Agency*, 667 F.2d 1069, 1072 (1st Cir. 1981) (travel agency did not hold airline ticket sale receipts in trust for airline); *see also In re Sakowitz, Inc.*, 949 F.2d 178, 182 (5th Cir. 1991) (department store was not a fiduciary for subleasing retail merchants); *In re Teckenbrock*, 2012 WL 3818220, at *3 (Bankr. S.D.N.Y. Sept. 4, 2012) (talent manager acting as intermediary for client payments was not a trustee or fiduciary).

Nor will the evidence supply any knowledge by Pioneer of Mann's criminal activity. Pioneer had no window into Mann's communications with his employer-clients, his contracts with them, or any assurances he gave them, nor did it have any view of how Mann obtained the funds in the first place. For example, Pioneer did not deal directly with any employer-client during the money-laundering scheme. There will be no proof that Pioneer ever had the kind of conversations with Mann that would have revealed how or why those clients chose to contract with Mann or his payroll companies—let alone that Mann had obtained their money through wire fraud or any other crime.

### D. There Is No RICO Causation When Damages, If Any, Were Not Caused by the Predicate Money Laundering Acts.

To recover on a RICO claim, the plaintiff must show "that a RICO predicate offense not only was a but-for cause of his injury, but was the proximate cause as well." *Hemi Grp., LLC v. City of N.Y., N.Y.*, 559 U.S. 1, 9 (2010) (cleaned up). For both RICO and RICO conspiracy, a plaintiff must show that it was injured by "an act . . . that is independently wrongful under RICO." *Beck v. Prupis*, 529 U.S. 494 (2000). "The requirements of RICO causation are stricter than those for common-law torts." *Empire Merchants, LLC v. Reliable Churchill LLP*, 902 F.3d 132, 145 (2d Cir. 2018). There must be some "direct relation between the injury asserted and the injurious conduct alleged. A link that is too remote, purely contingent, or indirect is insufficient." *Hemi Grp.*, 559 U.S. at 9 (cleaned up). "[I]n the RICO context, the focus is on the directness of the relationship between the conduct and the harm, and whether the connection is attenuated by substantial intervening factors or third-party conduct." *Doe v. Trump Corp.*, 385 F. Supp. 3d 265, 276 (S.D.N.Y. 2019).

Here, none of the injuries allegedly suffered by SWP, GSG, or NatPay were caused by Mann's money-laundering scheme. The scheme collapsed on August 30, 2019, when Bank of America froze the accounts. By then, the funds from SWP, GSG, and NatPay sat in the MPHR Account and Cloud Account—not diverted by Mann, but frozen and set off by Pioneer. The harm Plaintiffs allege thus occurred after the scheme collapsed, not because of it. As all Plaintiffs admit, all tax payments were timely paid by Mann before August 30, 2019. See Dkt. 362-1, SWP and GSG's Resp. to Pioneer's SMF ¶ 230 ("Undisputed" that "[f]rom 2017 until August 30, 2019" "all payments were timely paid"); Dkt. 367-1 NatPay's Resp. to Pioneer's SMF ¶ 230 (same).

A simple counterfactual is instructive. Had Mann never diverted a dollar and merely kited checks, his accounts would still have been overdrawn, and funds in the Cloud Account and MPHR

Account would still have been frozen and set off. Plaintiffs' alleged losses trace to Pioneer's (justified) freeze and setoff of the accounts—not to any predicate act in furtherance of the alleged enterprise. Their RICO claims therefore fail for, among many reasons, lack of causation.

## VIII. PLAINTIFFS' DECLARATORY JUDGMENT CLAIMS WILL FAIL BECAUSE THEY SEEK BACKWARD-LOOKING RELIEF AND ARE DUPLICATIVE

The declaratory judgment claims fail for three reasons. First, the Declaratory Judgment Act "does not create an independent cause of action." *Chevron Corp. v. Naranjo*, 667 F.3d 232, 244–45 (2d Cir. 2012) (internal quotation omitted). Here, the evidence will show that SWP, GSG, and NatPay cannot recover on any substantive common-law or RICO claim, and they "cannot maintain a claim for a declaratory judgment where the underlying substantive claim has been dismissed," *Brooklyn Union Gas Co. v. Exxon Mobil Corp.*, 554 F. Supp. 3d 448, 468 (E.D.N.Y. 2021) (citing *California v. Texas*, 593 U.S. 659, 671 (2021)). Second, "there is no basis for declaratory relief where only past acts are involved." *Nat'l Union Fire Ins. Co. of Pittsburgh v. Int'l Wire Grp., Inc.*, 2003 WL 21277114, at *5 (S.D.N.Y. June 2, 2003). Here, Plaintiffs ask the Court to "resolv[e] disputes over past acts," and thus their declaratory judgment claims are "inappropriate" and "must be dismissed." *See Tang Capital Partners, L.P. v. BRC Inc.*, 661 F. Supp. 3d 48, 78 (S.D.N.Y. 2023). Third, a declaratory judgment "will serve no useful purpose" and must be dismissed when it duplicates a claim the plaintiff has already pleaded. *Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 407 (S.D.N.Y. 2010); *see also, e.g.*, *Kleeberg v. Eber*, 2020 WL 4586904, at *16 (S.D.N.Y. Aug. 10, 2020) (dismissing declaratory claim that "parallels the other claims and merely seeks a declaration of the same rights and obligations"). Here, Plaintiffs' declaratory judgment claims duplicate their common-law and RICO claims already asserted against Pioneer and must therefore be dismissed.

## SPECIAL TRIAL ISSUES

### I. ANTICIPATED EVIDENTIARY ISSUES

#### A. Limiting Seriatim Testimony From Employer-Clients

Plaintiffs' amended initial disclosures list as witnesses representatives of "***any***" third-party employer allegedly injured by Pioneer, plus at least ten specific employer-clients. Each is offered on the same subject: the alleged "[i]mpact of Pioneer's actions on third-party employer[s]." Impact on strangers to this action is peripheral: as the Court explained, Plaintiffs must prove that ***they*** were damaged "in their own right." Dkt. No. 392, 6/25/25 Decision & Order at 15 n.8. Pioneer does not yet know the extent to which Plaintiffs intend to rely on such testimony, but Pioneer anticipates (if necessary) asking the Court, under Rule 403, to limit the number of such witnesses or the trial time devoted to them. *See* Fed. R. Evid. 403; *United States v. Lewter*, 402 F.3d 319, 324 (2d Cir. 2005) (testimony on a "peripheral issue in the case" has "minimal" value); *Boger v. N.Y. State Off. of Parks*, 2019 WL 6038545, at *5 (N.D.N.Y. Nov. 14, 2019) (same for testimony from non-parties "not similarly situated to" the plaintiff); *see also Rosario v. City of N.Y.*, 2021 WL 9455782, at *2 (S.D.N.Y. Nov. 23, 2021) (permitting limits on peripheral testimony). Any limitation would cost Plaintiffs nothing, because Plaintiff GSG is itself an employer-client and whatever the third-party employers would say about the alleged impact of Pioneer's actions, GSG can say as a party to this action.

#### B. Limiting Cumulative Expert Testimony

Plaintiffs proffer three banking and compliance experts—John D. DelPonti, Jr., C. Wayne Crowell, and Bryant Moravek—who address the same four subjects, rely on the same Bank Secrecy Act framework, reach materially identical conclusions, and rebut the same Pioneer expert. *See* DelPonti R. ¶ 41(e); Crowell R. ¶ 27; Moravek Reb. R. ¶ 6.0. Plaintiffs themselves treat the three as offering a single collective opinion: that "all of the information Pioneer needed to detect

Mann's scheme was right in front of Pioneer's face for years." Dkt. No. 362-1 at 20. But a party "may not make its case through the sheer weight of successive expert testimony . . . as to their identical conclusions on identical issues." *Cooper Crouse-Hinds, LLC v. City of Syracuse*, 2022 WL 976903, at *4 (N.D.N.Y. Mar. 31, 2022); *see* Fed. R. Evid. 403; *Country Mut. Ins. Co. v. Broan Nutone*, LLC, 2023 WL 7324516, at *4 (N.D.N.Y. Nov. 7, 2023) (precluding experts from "offering cumulative testimony at trial"). Pioneer anticipates asking the Court to require Plaintiffs to present a single expert on each topic.

### C. Limiting Cumulative Deposition Testimony from Witnesses Unable to Recall Information

Plaintiffs have designated numerous deposition excerpts in which witnesses stated they did not know or could not recall the answer to a question. Pioneer objected because such testimony lacks probative value—a witness's inability to recall historical details years after the fact proves nothing about any claim or defense, especially where Plaintiffs' questioning often conflated what witnesses could not recall at the time of their depositions with what they actually knew when the relevant events occurred. *See* Dkt. Nos. 462, 462-2; *see also United States v. Sandalo*, 70 F.4th 77, 91 (2d Cir. 2023) (holding that "failing to remember is not an admission of lying," and rejecting the argument that a witness's "unimpressive memory suggests falsity"). Playing hours of "I don't know" and "I don't recall" responses, stripped from context and often preceded by argumentative questioning, would mislead the jury and unfairly suggest that Pioneer's witnesses were evasive, untruthful, or uninformed. *See United States v. Quattrone*, 441 F.3d 153, 186 (2d Cir. 2006) ("[P]rejudicial effect may be created by the tendency of the evidence to prove some adverse fact not properly in issue or unfairly to excite emotions against the defendant.") (internal quotation omitted). Pioneer informed the Court that the parties will continue to meet and confer to try to narrow the dispute over these designations and objections. Dkt. No. 462 at 2.

The parties have, thus far, been unable to resolve this dispute. Pioneer's position is that cumulative "I don't recall" testimony has minimal, if any, probative value, and that the risk of unfair prejudice substantially outweighs whatever marginal relevance it may have under the Federal Rules of Evidence. Pioneer respectfully requests the Court's guidance on the admissibility and appropriate presentation of such testimony.

## II. WITNESS AND EXHIBIT ISSUES

### A. Impeachment Exhibits

Plaintiffs contend that Pioneer must identify on its exhibit list every document that might be used for impeachment. That is not the law. Federal Rule of Civil Procedure 26(a)(3)(A)(iii) provides that a party must, at least 30 days before trial, identify for other parties documents "that it may present at trial other than solely for impeachment." The Second Circuit has held that the plain language of Rule 26 does not require a party to disclose documents that it intends to use solely for impeachment. *McClarin v. City of New York*, 181 F. 4th 260, 285–86 (July 13, 2026); *see also* Fed. R. Civ. P. 26 advisory committee note (1993) ("By its terms, rule 26(a)(3) does not require disclosure of evidence to be used solely for impeachment purposes ...."). Nor do the Court's Local Rules or the Court's Individual Rules and Practices require such disclosure. *See McClarin*, 181 F. 4th at 286 (requiring clear requirements).

### B. Presentation of Michael Mann's Videotaped Deposition Testimony

Pioneer requests that all admitted designations and counter-designations from Michael Mann's depositions be played as a single, continuous presentation in transcript order during Plaintiffs' case-in-chief. Mann is a central figure in this case, but because he is incarcerated, his testimony can come in only through his deposition. Each side deposed Mann for one day and has designated portions of its own examination; each side has also counter-designated portions of its own examination in response to the other side's designations.

Dividing his testimony into separate presentations during the parties' respective cases would produce a fragmented and potentially misleading account of his testimony. It would separate questions and answers from the surrounding testimony necessary to place them in context—the precise problem the rule of completeness is intended to prevent. A unified presentation allows the jury to follow the chronology and evaluate Mann's testimony as a whole. Bifurcation would also be inefficient and repetitive, requiring the same testimony to be played twice: once as counter-designated testimony and again as affirmative testimony.

### C. Instructing the Jury on the Nature of Parties and Counterclaims

Pioneer anticipates raising at the pre-trial conference a potential issue concerning how the parties are identified for the jury. Pioneer is both a defendant and a counterclaim-plaintiff in this action. Likewise, SWP and NatPay are both plaintiffs and counterclaim-defendants. Introducing Pioneer to the jury as a "Defendant" and repeatedly referring to the parties only as "Plaintiffs" and "Defendants" would present the jury with inaccurate information, create jury confusion about the nature of Pioneer's counterclaims, and result in unfair prejudice to Pioneer. Pioneer believes that this concern can be addressed by the Court referring to the parties by name and by the Court giving the jury a brief, neutral explanation of the nature and existence of the counterclaims at the outset of trial.

## CONCLUSION

Judgment should be entered in favor of Defendants, together with such other and further relief this Court deems just, proper, and equitable.

Dated: September 8, 2026
New York, New York

By: */s/ Robert J. Alessi*
Robert J. Alessi (NDNY Bar Roll No. 101019)
Steven M. Rosato (NDNY Bar Roll No. 703375)
1251 Avenue of the Americas
New York, New York 10020
Tel.: (212) 335-4500
Fax: (212) 335-4501
robert.alessi@us.dlapiper.com
steven.rosato@us.dlapiper.com

Courtney G. Saleski (NDNY Bar Roll No. 703877)
Ben Fabens-Lassen (NDNY Bar Roll No. 707766)
M. David Josefovits (NDNY Bar Roll No. 705556)
Jon M. Reid (NDNY Bar Roll No. 707851)
1650 Market Street, Suite 5000
Philadelphia, Pennsylvania 19103
Tel.: (215) 656-3300
Fax: (215) 656-3301
courtney.saleski@us.dlapiper.com
ben.fabens-lassen@us.dlapiper.com
david.josefovits@us.dlapiper.com
jon.reid@us.dlapiper.com

*Attorneys for Defendants-Counterclaimants Pioneer Bancorp Inc. and Pioneer Bank*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on all parties here/known counsel of record via the CM/ECF system on this 8th day of September, 2026.

*/s/ Robert J. Alessi*
Robert J. Alessi (NDNY Bar Roll No. 101019)