**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF NEW YORK**

SOUTHWESTERN PAYROLL SERVICE, INC. and
GRANITE SOLUTIONS GROUPE, INC.,

*Plaintiffs,*

*v.*

PIONEER BANCORP, INC., et al.,

*Defendants.*

NATIONAL PAYMENT CORPORATION,

*Intervenor-Plaintiff,*

*v.*

PIONEER BANCORP, INC., et al.,

*Defendants.*

Case No. 1:19-cv-1349 (MAD/PJE)

**MEMORANDUM OF LAW IN SUPPORT OF PIONEER'S MOTION TO DISMISS**
**FOR LACK OF SUBJECT MATTER JURISDICTION**

Robert J. Alessi (NDNY Bar Roll No. 101019)
Steven M. Rosato (NDNY Bar Roll No. 703375)
1251 Avenue of the Americas
New York, New York 10020
Tel.: (212) 335-4500
robert.alessi@us.dlapiper.com
steven.rosato@us.dlapiper.com

Courtney G. Saleski (NDNY Bar Roll No. 703877)
Ben Fabens-Lassen (NDNY Bar Roll No. 707766)
M. David Josefovits (NDNY Bar Roll No. 705556)
Jon Michael Reid (NDNY Bar Roll No. 707851)
1650 Market Street, Suite 5000
Philadelphia, Pennsylvania 19103
Tel.: (215) 656-3300
courtney.saleski@us.dlapiper.com
ben.fabens-lassen@us.dlapiper.com
david.josefovits@us.dlapiper.com
jon.reid@us.dlapiper.com

*Counsel for Defendants-Counterclaimants Pioneer Bancorp Inc. and Pioneer Bank*

Dated: October 5, 2026

# TABLE OF CONTENTS


INTRODUCTION ....................................................................................................................1

BACKGROUND ....................................................................................................................1

LEGAL STANDARD..............................................................................................................6

ARGUMENT .........................................................................................................................7

I. NatPay Has Not Suffered a Cognizable Injury in Fact Because Its Alleged Contingent Liability to First Premier Is Neither Imminent nor Concrete. ............................................7

A. A contingent liability alone does not establish standing........................................7

B. NatPay has not established, and cannot establish, an imminent, concrete injury. ...8

C. NatPay Cannot Manufacture Standing by Promising to Pay an Alleged Debt First Premier Has Not Demanded. ......................................................................11

II. NatPay's Anticipated Responses Lack Merit. ..................................................................12

III. NatPay Is Foreclosed from Seeking Damages on Behalf of MyPayrollHR and ProData, and Lacks Standing To Do So. ........................................................................14

Conclusion ..........................................................................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arbaugh v. Y&H Corp.*, 546 U.S. 500 (2006)....................6, 12

*Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196 (2d Cir. 1992)....................7

*Avera St. Luke's Hosp. v. Karamali*, 848 F. Supp. 2d 1017 (D.S.D. 2012) ....................10

*Camenisch v. Umpqua Bank*, 2024 WL 3186552 (N.D. Cal. June 25, 2024) ....................13

*Carter v. HealthPort Technologies, LLC*, 822 F.3d 47 (2d Cir. 2016)....................5, 13

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) ....................11

*Colozzi v. St. Joseph's Hosp. Health Ctr.*, 275 F.R.D. 75 (N.D.N.Y. 2011) ....................14

*In re Goebel*, 184 F.4th 59 (2d Cir. 2026) .................... *passim*

*H. Sand & Co. v. Airtemp Corp.*, 934 F.2d 450 (2d Cir. 1991) ....................9

*Lomascolo v. Otto Oldsmobile Cadillac, Inc.*, 253 F. Supp. 2d 354 (N.D.N.Y. 2003) ....................14

*Luckett v. Bure*, 290 F.3d 493 (2d Cir. 2002) ....................7

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ....................7

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007)....................8

*Milberg LLP v. HWB Alexandra Strategies Portfolio*, 2020 WL 3833829 (S.D.N.Y. July 8, 2020) ....................7

*Protocols, LLC v. Leavitt*, 549 F.3d 1294 (10th Cir. 2008)....................7

*Rajamin v. Deutsche Bank Nat'l Tr. Co.*, 757 F.3d 79 (2d Cir. 2014) ....................15

*Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129 (2d Cir. 1998) ....................7

*Stutman Contracting, Inc. v. Hussey Seating Co.* 2026 WL 2186094 (D. Mass. July 29, 2026)....................10

*Union Cosm. Castle, Inc. v. Amorepacific Cosmetics USA, Inc.*, 454 F. Supp. 2d 62 (E.D.N.Y. 2006)....................11

*United States v. Cambio Exacto*, 166 F.3d 522 (2d Cir. 1999) ....................15

*Vega v. Gateway Bank F.S.B.*, 2025 WL 473800 (E.D.N.Y. Feb. 12, 2025) ................................11

*Walterlakes v. From You Flowers, LLC*, 2026 WL 2676894 (S.D.N.Y. Sept. 11, 2026) .............11

**Statutes**

S.D. Codified Laws § 15-2-13(1) ..........................................................................................10

**Other Authorities**

Fed. R. Evid. 801(c), 802 ..........................................................................................................9

Fed. R. Civ. P. 12(h)(3)............................................................................................................6, 12

Fed. R. Civ. P. 23 .......................................................................................................................15

Fed. R. Civ. P. 26 .........................................................................................................................3

Fed. R. Civ. P. 50 .........................................................................................................................6

Pioneer respectfully submits this memorandum of law in support of its motion to dismiss NatPay's claims for lack of subject matter jurisdiction.

## INTRODUCTION

This motion begins and ends with a simple and evident reality: NatPay has suffered no injury. NatPay did not own or lose the funds it seeks to recover—it admits as much. Its entire injury theory rests on an alleged contractual obligation to indemnify First Premier Bank, a liability First Premier has never demanded, never sued upon, and has left entirely unenforced for more than *seven years*. Dkt. 365 at 12–13, 16 n.1; Ex. A, Pereira Decl. ¶ 40, Dkt. 366-3. NatPay's supposed contingent liability is so speculative that its own accountants saw no loss or contingent liability worth recording. Pereira Decl. ¶ 42. Yet NatPay asks this Court to proceed with a multi-week trial on its supposed obligation to indemnify a loss to First Premier—without a single First Premier document in evidence, a single First Premier document on its exhibit list or witness on its witness list. A plaintiff that owns nothing, has lost nothing, and faces no imminent payment obligation lacks an Article III injury in fact. No injury means no standing, and no standing means no subject matter jurisdiction. The Court should dismiss NatPay's claims in their entirety at this time.

## BACKGROUND

The facts establishing NatPay's lack of standing are undisputed and incurable.

***NatPay Moves Money for Payroll Companies.*** NatPay is an automated clearing house (ACH) processor, and its customers are payroll companies. Pereira Decl. ¶ 5. Those payroll companies tell NatPay what to do with the money: for each transaction, they provide NatPay with ACH instructions identifying the source account, the amount, and the recipient account. *Id.* ¶ 12. NatPay then carries out those instructions through a depository bank, First Premier. Acting at the direction of its payroll-company customers, NatPay uses First Premier to withdraw funds from the

source accounts, deposit those funds into a custodial account at First Premier, and then send the funds along to the designated receiving accounts. *Id.* ¶ 9.

At every step, NatPay is a conduit that moves money through the First Premier custodial account—not the owner of that money. When their relationship began, First Premier and NatPay agreed in a "side letter" to the parties' ACH Agreement that the funds in the First Premier custodial account are "held by the Bank for the exclusive benefit" of NatPay's customers and that such funds were to be held "separate" from the other funds in the bank. *Id.* ¶ 21. In other words, neither NatPay nor First Premier have any ownership rights to the funds in the First Premier custodial account.

***NatPay Intervened and Litigated for Years on the Claim That the Money Was Its Own.*** Although NatPay owns none of the money it moves, it intervened in this case claiming that it had been injured by a shortfall in the First Premier custodial account. NatPay's Amended Complaint alleged that Pioneer "convert[ed] $2.7 million ***from NatPay***" by causing $2,721,815.77 to move out of "NatPay's settlement account at First Premier" into the MPHR Account 0212, where it was setoff—a sum NatPay called a "***direct loss to NatPay***." Am. Compl. ¶¶ 358, 427, Dkt. 232. The additional $1.1 million rested on its allegation that payments it made went unfunded from the same settlement account after Pioneer froze Cloud Account 2440, and after employer-clients recalled debits to their accounts. Throughout the Amended Complaint, NatPay repeatedly described the money in the First Premier settlement account as "***NatPay's funds***," and every underfunded payment as a loss to NatPay itself. *See, e.g.*, *id.* ¶¶ 358, 427, 430 (emphasis added).

NatPay carried that same story into discovery. Under oath, it swore that "***NatPay's own funds***" were deposited at Pioneer and that it had suffered millions in "***out-of-pocket losses***." Ex.

B, NatPay's Resp. to Defs.' Interrogs. No. 8, Dkt. 376-2.[1] And when Pioneer asked NatPay to "***provide a computation of each category of alleged damages***, including . . . a detailed accounting of the alleged 'direct loss to NatPay,'" NatPay pointed to two of its own spreadsheets as "its computation of actual damages." Ex. C, NatPay's Resp. to Defs.' Interrogs. No. 23, Dkt. 376-3 (emphasis added). Those spreadsheets claimed losses to the First Premier custodial account of $617,861.05 and $3,266,253.44 as NatPay's own losses.

NatPay pointed to no other source of injury: its Rule 26(a) disclosures did not mention First Premier or identify any First Premier representative as a person with discoverable information, even though they listed more than fifty other percipient witnesses. Ex. D, NatPay's Amended Rule 26 Initial Disclosures, Dkt. 376-6. NatPay did not disclose that the money in the custodial account belongs to its payroll-company customers and was owned by neither NatPay nor First Premier.

***Discovery Exposed That NatPay Owns None of the Funds It Seeks to Recover.*** As discovery progressed, NatPay's ownership claim to the funds in the First Premier custodial account collapsed. Its own corporate representative, Steven Pereira, testified that the funds in NatPay's First Premier custodial account are "not our funds, they're off balance sheet," and that treating them as NatPay's assets "would be a misstatement of [our] assets." Pereira 30(b)(6) Tr. 205:12–21. Pereira also testified that he was unaware of NatPay ever having paid $3.8 million of its own money to cover any shortfall in the First Premier custodial account. *Id.* at 207:9–19. And NatPay's

---

[1] During discovery, NatPay disclaimed any business or reputational damages. When Pioneer sought NatPay's financial records in discovery, NatPay represented that it was seeking only the out-of-pocket losses it claimed to have incurred as a direct result of Pioneer's conduct—"not . . . damages for injury to NatPay's business or reputation." NatPay's Mem. in Opp. to Mot. to Compel 8, 13, Dkt. 261-6. Pioneer relied on that representation in not pursuing expert discovery to rebut any claimed business or reputational injury. After NatPay argued that its financial statements were irrelevant because it sought only out-of-pocket losses and not damages for injury to its business or reputation, the Court denied Pioneer's request for NatPay's financial statements from 2015 to 2018, compelling production only of the 2019 and 2020 statements. Dkt. 330 at 4–7.

own financial statements recognized no loss or contingent liability related to that account. Because NatPay lacked an injury of its own, Pioneer moved to dismiss for lack of standing.

***Only After Conceding It Owns Nothing Did NatPay Assert an Indemnity Theory.*** Faced with that record, NatPay changed course (four and a half years after intervening) and, for the first time, advanced a new theory of injury. It conceded that it had suffered no out-of-pocket loss and that, per the terms of its side letter agreement with First Premier, the funds in the First Premier custodial account belong to neither NatPay nor First Premier. It nonetheless contended that First Premier had suffered a loss and that NatPay was obligated to indemnify First Premier for it. That theory rested on the 1998 ACH Agreement between NatPay and First Premier, under which NatPay agreed to indemnify First Premier for losses connected to NatPay's ACH activity. Pereira Decl. ¶¶ 24–25. The ACH Agreement provides that NatPay will "indemnify [First Premier] ***if*** the Bank incurs any loss or liability arising from an act of [NatPay] . . . ***except*** that [NatPay] shall not be required to indemnify [First Premier] against any loss or liability caused by [First Premier]'s negligence or breach of its obligations under this Agreement." ACH Agreement ¶ 12, D-54 at 10 (emphasis added).[2]

NatPay offered no evidence that First Premier recognized itself as having suffered a loss. Nor did it offer any evidence that First Premier considered NatPay obligated to indemnify it, that First Premier regarded itself as free of the negligence that would bar indemnification, or even that First Premier had any ability or desire to recover from NatPay.

Instead, NatPay conceded, "First Premier has not yet required NatPay to reimburse/indemnify it." Pereira Decl. ¶ 40. NatPay thus did not represent that First Premier has

---

[2] The ACH agreement between First Premier and NatPay was filed under seal at Dkt. 365-2. It is on Pioneer's exhibit list as D-54 and on NatPay's exhibit list as PX-0605. These documents have been stipulated into evidence. *See* Dkt. 517.

demanded payment, intends to demand payment, or has even indicated that it believes a loss occurred. To be sure, NatPay has stated it will reimburse First Premier "[w]hether NatPay is or is not successful in this litigation," *id.* ¶ 41, but even NatPay did not treat that voluntary promise as reflecting a real liability: its own accountants "concluded that NatPay did not need to recognize a loss or a contingent liability on its financial statements," *id.* ¶ 42.

***Judge Scullin's Pre-Trial Ruling.*** On June 25, 2025, Judge Scullin denied Pioneer's pre-trial motion to dismiss NatPay's claims for lack of standing, finding on the summary-judgment record that NatPay "has sufficiently established contingent liability for the alleged funds at issue in the present action, specifically to its bank, First Premier Bank." Dkt. 392 at 23. That finding rested on the principle, drawn from *Carter v. HealthPort Technologies, LLC*, 822 F.3d 47, 55 (2d Cir. 2016), that "a liability, including a contingent liability, *may be* a cognizable legal injury"; the Court did not analyze whether NatPay's contingent liability was imminent. *Id.* (emphasis added).

***The Record Contains No Evidence That NatPay's Contingent Indemnity Obligation to First Premier Is Imminent.*** In the two years since Pioneer moved for lack of injury, the absence of any imminent liability has only grown starker. NatPay has still produced no First Premier document, accounting record, or correspondence showing that First Premier recognized or absorbed any loss from the custodial account, much less demanded payment from NatPay. And because NatPay's trial witness list identifies no First Premier witness, there is (and will be) no admissible evidence of First Premier saying anything at all: no demand, no claim, and no communication of any kind. Pereira Decl. ¶¶ 38–40. More than seven years after the September 2019 events, First Premier has stayed silent.

***NatPay switches its injury and damages mid-trial.*** On October 1, 2026, in response to a proffer request by Pioneer as to NatPay's injury, the Court asked NatPay: "With respect to the loss,

can you quantify that"? 10/1/2026 Trial Tr. at 18:25–19:1. NatPay's counsel responded:

> The loss came from when money was pulled from NatPay's account at First Premier. Its impound account. There was essentially money missing from that account. So we have accounted for that loss as $3.8 million that came out of the account[.]

*Id.* at 19:4–8.[3] As with its interrogatory responses, NatPay limited its damages to the alleged $3.8 million that it claims was sent from its First Premier custodial account. NatPay did not claim that it was somehow injured or that it was seeking damages on behalf of the employer-clients of other payroll companies, such as MyPayrollHR (whom it sued) and ProData. On October 5, 2026, however, NatPay told the Court that it also intends to recover so-called taxpayer money beyond the $3.8 million it claims to have lost from the First Premier custodial account. As discussed in Section III below, NatPay is foreclosed from seeking damages on behalf of employer-clients of MyPayrollHR and ProData and lacks both constitutional and prudential standing to do so.

## LEGAL STANDARD

This is not a motion under Rule 50. A Rule 50 motion asks whether a party "has been fully heard" and whether the trial evidence would permit a reasonable jury to find for it on the merits. Fed R. Civ. P. 50. A Rule 12(h)(3) motion, this motion, asks an antecedent question—whether the Court has power to hear the case at all—which (as this Court has noted) the Court has an independent and continuing obligation to answer "at any stage in the litigation," on its own if necessary, and which the Court, not the jury, decides. *Arbaugh v. Y&H Corp*., 546 U.S. 500, 506 (2006); *see* Fed. R. Civ P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). Because the jurisdictional facts here come from

[3] Contrary to NatPay's counsel's proffer, NatPay has not accounted for an alleged $3.8 million loss on its financial statements. *See* Pereira Decl. ¶ 42.

NatPay's own submissions and are undisputed, the Court may decide the issue now, without awaiting the remainder of NatPay's case.

NatPay "bears the burden of establishing that jurisdiction exists." *Milberg LLP v. HWB Alexandra Strategies Portfolio*, 2020 WL 3833829, at *2 (S.D.N.Y. July 8, 2020) (quotation omitted). It must carry that burden "with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). At trial, that means NatPay must prove each element of standing by a "preponderance of the evidence." *Luckett v. Bure*, 290 F.3d 493, 497 (2d Cir. 2002). "[A]rgumentative inferences favorable to the party asserting jurisdiction should not be drawn," *Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992); instead, "jurisdiction must be shown affirmatively," *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998).

## ARGUMENT

### I. NatPay Has Not Suffered a Cognizable Injury in Fact Because Its Alleged Contingent Liability to First Premier Is Neither Imminent nor Concrete.

#### A. A contingent liability alone does not establish standing.

A contingent liability can support standing, but only when it "creates an imminent threat of injury." *In re Goebel*, 184 F.4th 59, 70–71 (2d Cir. 2026) (quotation omitted). The Second Circuit has "never suggested . . . that a contingent liability always qualifies as an injury in fact." *Id.* A liability that "by definition, may not arise for a considerable time, if ever" is not an injury until it becomes imminent. *Protocols, LLC v. Leavitt*, 549 F.3d 1294, 1299 (10th Cir. 2008) (quoted in *Goebel*). It becomes imminent only when the creditor acts to enforce it: "unless and until" the creditor asserts its claim, the debtor "suffer[s] no cognizable immediate consequences." *Goebel*, 184 F.4th at 71.

*Goebel* controls here. The debtor there asserted that she had standing to challenge the dischargeability of her tax debts because they "represent[ed] contingent liabilities." *Id.* at 70. If her tax debts were discharged, she would owe the IRS nothing; if not, she would owe more than $500,000. *Id.* at 70. Because nothing showed that the IRS had "manifested a concrete intention to assert" its claim, the debtor had not alleged "an imminent injury" and had "suffered no cognizable immediate consequences." *Id.* at 68, 71. The Second Circuit contrasted the debtor's situation with *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007), where the plaintiff faced a creditor that had made a demand and threatened enforcement. *Id.* at 71. Because no comparable threat existed in *Goebel*, the Second Circuit held that the debtor had not plausibly alleged an injury in fact and ordered dismissal of her complaint for lack of jurisdiction. *Id.* at 74.

Under *Goebel*, then, the question is not whether NatPay might someday owe First Premier; it is whether First Premier's potential indemnity claim poses an imminent, concrete threat now. It does not. First Premier has never demanded payment, asserted an indemnity claim, or otherwise manifested a concrete intention to recover from NatPay.

### B. NatPay has not established, and cannot establish, an imminent, concrete injury.

NatPay is analogous to the *Goebel* debtor. Its asserted injury is a contingent liability to First Premier that it says it will one day have to satisfy. That contingent liability is not imminent, it is not proven, and it can no longer become either.

NatPay's theory assumes First Premier absorbed the shortfall and will look to NatPay to make it whole. NatPay states that First Premier "ultimately" funded the payments. Pereira Decl. ¶ 38. If anyone is out of pocket, then, it is an absent non-party. But whether First Premier actually lost money, and whether it intends to pursue NatPay, are facts only First Premier can establish. And the record contains no First Premier document, accounting record, or anything else that would

document a loss, and NatPay has listed no First Premier witness for trial. There has been no such testimony and, in any event, a NatPay witness's attempted account of what First Premier supposedly lost would be inadmissible hearsay. Fed. R. Evid. 801(c), 802. And NatPay's own assertion that a non-party lost money is not evidence that it did. *H. Sand & Co. v. Airtemp Corp.*, 934 F.2d 450, 456 (2d Cir. 1991), puts the point simply: "[A] party may not sue another for its liability to a third party when that liability is merely speculative." This is not a gap NatPay can close at trial; it is a structural absence of proof.

Nor has First Premier sued NatPay, threatened suit, or even asked for a dollar. Discovery turned up no letter, email, or call note between NatPay and First Premier about this supposed loss—no evidence the two ever discussed NatPay's indemnification at all. The closest NatPay comes is a single, passive line from its witness: "First Premier has not yet required NatPay to reimburse/indemnify it for the losses." Pereira Decl. ¶ 40. That sentence describes no recognized loss, no demand, and no conversation. More than seven years after the September 2019 events, there is no evidence that First Premier even regards itself as a creditor, let alone that it intends to pursue NatPay for a supposed loss. Nor is there any evidence as to whether First Premier itself was negligent, which would cut off NatPay's indemnification obligations.

That ends the inquiry under *Goebel*. Unlike here, the Goebel debtor's underlying tax debt was real and fixed. Her injury failed only because the IRS had not yet "manifested a concrete intention to assert" that her tax debts survived discharge. NatPay's injury is weaker still. The underlying indemnification obligation has never been recognized by First Premier, and it has been more than seven years without a demand. If an acknowledged debt was not an imminent injury in *Goebel* because there was no intention to assert it, a debt the creditor has never even acknowledged or asserted cannot be an imminent injury either.

Similar reasoning applies to indemnity exposure. In *Stutman Contracting, Inc. v. Hussey Seating Co.* 2026 WL 2186094, at *5 (D. Mass. July 29, 2026), the court found no Article III injury where the surety "had neither paid [the underlying] claim nor determined that payment was owed," and had not "asserted any possible indemnification rights against [the plaintiff]." The injury instead "depend[ed] upon a series of contingent events," the "speculative chain of possibilities dependent upon the discretionary decisions of independent actors" that Article III forbids. *Id.* (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)). Like the plaintiff there, NatPay "was not the subject of a demand, enforcement action, or adverse determination." *Id.* at *6.

NatPay's own accountants confirm it suffered no concrete or imminent injury. After "closely confer[ring]" with them, NatPay reports that they "concluded that NatPay did not need to recognize a loss or a contingent liability on its financial statements." Pereira Decl. ¶ 42. NatPay cannot ask this Court to treat as a concrete and imminent Article III injury an obligation its own accountants declined to record even as a contingent liability.

It is now too late for First Premier to demand payment in a manner that gives rise to a concrete, imminent injury. First Premier's indemnity claim, if any exists, would have accrued when the alleged loss occurred, in August and September 2019. South Dakota law—which governs the NatPay–First Premier ACH Agreement—imposes a six-year limitations period on an action "upon a contract, obligation, or liability." S.D. Codified Laws § 15-2-13(1). Under that provision, an indemnity-against-loss claim accrues "when money is paid by the party seeking indemnity"—here, in August and September 2019. *Avera St. Luke's Hosp. v. Karamali*, 848 F. Supp. 2d 1017, 1022 (D.S.D. 2012). Thus, even if First Premier were to demand payment today, the demand would come too late to create the sort of concrete and imminent injury required for Article III standing.

NatPay's injury depends on the prospect of an indemnification claim that has never been asserted, and there is no record evidence of a tolling agreement or that it is otherwise still enforceable.

### C. NatPay Cannot Manufacture Standing by Promising to Pay an Alleged Debt First Premier Has Not Demanded.

Unable to point to any demand from First Premier, NatPay falls back on its own promise to pay. NatPay says it will reimburse First Premier "[w]hether NatPay is or is not successful in this litigation." Pereira Decl. ¶ 41. But a voluntary commitment to pay a debt no creditor has demanded is a self-inflicted injury, and a plaintiff "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Clapper*, 568 U.S. at 416. Nor will standing confer when the complained of injury "results from a plaintiff's personal choices, rather than a defendant's conduct." *Vega v. Gateway Bank F.S.B.*, 2025 WL 473800, at *3 (E.D.N.Y. Feb. 12, 2025).

NatPay's alleged injury is self-inflicted. It asks this Court to treat its own unilateral promise to pay—made after the commencement of litigation, by a declarant with every incentive to create the appearance of injury—as proof of imminent harm. Article III does not permit such post-hoc manufacturing, and a promise within NatPay's own control to pay a debt no one has demanded is not an injury the Constitution recognizes. *See Union Cosm. Castle, Inc. v. Amorepacific Cosmetics USA, Inc.*, 454 F. Supp. 2d 62, 71 (E.D.N.Y. 2006) ("A plaintiff cannot establish Article III standing to pursue a cause of action where that plaintiff is the primary cause of its own alleged injury."); *Walterlakes v. From You Flowers, LLC*, 2026 WL 2676894, at *10 n.3 (S.D.N.Y. Sept. 11, 2026) ("[A] supposed injury that is entirely the result of a plaintiff's free choice does not support standing."). Because NatPay has no imminent, concrete injury, it lacks standing, and this Court lacks jurisdiction over all of its claims.

## II. NatPay's Anticipated Responses Lack Merit.

NatPay will likely raise several responses to this motion. None has merit.

*First*, this is not a request to reconsider Judge Scullin's ruling. Judge Scullin found Article III standing on a specific and narrow theory: NatPay's asserted contingent liability to reimburse or indemnify First Premier Bank. (Dkt. 392 at 23). Since that time, NatPay proffered to this Court that NatPay had "carried the loss in . . . [its] impound account," the South Dakota statute of limitations relevant to any contingent contractual liability has run, and the Second Circuit decided *In re Goebel*, 184 F.4th 59 (2d Cir. 2026)—which controls here. NatPay fails on the facts and under the law to identify a concrete injury belonging to NatPay itself sufficient to support Article III standing. As this Court has recognized, it has a continuing, independent duty to confirm its own power to decide the case, and a jurisdictional challenge "may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh*, 546 U.S. at 506; *see* Fed. R. Civ. P. 12(h)(3).

*Second*, even if the motion were treated as a request to reconsider, the standard is met. Reconsideration is warranted by an intervening change in controlling law and by new evidence or changed facts—both of which are present here. The Second Circuit's decision in *In re Goebel*, 184 F.4th 59 (2d Cir. 2026)—decided after Judge Scullin's ruling—establishes that a contingent liability is an injury only when it is *imminent and concrete*. Judge Scullin did not apply that standard. And the factual record has changed: seven years have passed since First Premier's purported injury, and NatPay has produced no demand, no payment, and no evidence of any First Premier loss, and the six-year limitations period on First Premier's indemnity claim has since run.

*Third*, there is no merit to NatPay's suggestion that the Court should wait until the close of evidence to take up standing. Jurisdiction is a threshold question that must be confronted before the Court and the parties expend further trial resources, not deferred until after them. The Court

recognized as much when it observed that jurisdiction "is always an issue" that it "do[es] have to confront." 10/1/26 Trial Tr. at 21:13-15. Because NatPay bears the burden and the controlling facts are undisputed and drawn from its own submissions, there is nothing to be gained by waiting—and every reason, including the burden on the Court and the jury, to resolve the issue now.

*Fourth*, the proposition from *Carter v. HealthPort Technologies, LLC*, 822 F.3d 47, 55 (2d Cir. 2016), that "a liability, including a contingent liability, may be a cognizable legal injury" does not carry the day. *Carter* says such a liability "may be" an injury, not that it always is. *Goebel* makes the limit explicit: a contingent liability qualifies only when it is imminent, and "unless and until" the creditor acts the debtor suffers "no cognizable immediate consequences." 184 F.4th at 70–71. *Carter* does not help a plaintiff whose creditor has never demanded payment and may well be time-barred from doing so.

*Fifth*, to the extent NatPay gestures—as it did in opening—at lost profits or reputational harm as a basis for standing, that theory is foreclosed. NatPay represented under oath in discovery that it sought only out-of-pocket losses and was not pursuing damages for harm to its business or reputation. Dkt. 261-6 at 8, 13. Having disclaimed those injuries to avoid discovery, NatPay cannot resurrect them now to support jurisdiction. *Cf. Camenisch v. Umpqua Bank*, 2024 WL 3186552, at *1 n.1 (N.D. Cal. June 25, 2024) (explaining plaintiffs "disclaimed any intent to pursue [certain] damages and ***will be held*** to that disclaimer").

*Finally*, NatPay may attempt to argue that its indemnity obligation has not yet accrued—and so cannot be time-barred—because it has not yet paid First Premier. That argument defeats itself. If the obligation has not even accrued, it cannot be the imminent, concrete injury *Goebel* requires; an obligation that has not arisen is not a present injury in fact. 184 F.4th at 70–71. And in all events, there is no evidence that NatPay has ever so much as discussed payment with First

Premier, let alone that First Premier has demanded it. Pereira Decl. ¶ 40. Whether the claim is time-barred or has not yet accrued, it is not imminent—and NatPay still lacks standing.

**III. NatPay Is Foreclosed from Seeking Damages on Behalf of MyPayrollHR and ProData, and Lacks Standing To Do So.**

NatPay is foreclosed from seeking to recover damages on behalf of the employer-clients of MyPayrollHR and ProData, for two reasons. First, that effort contradicts what NatPay told the Court when it sought to intervene: Pioneer opposed intervention because NatPay's claims rested on the rights of third parties, but NatPay insisted its "***claims simply do not rest on the rights of any third parties***." Dkt. No. 42 at 4. The Court adopted that representation in granting intervention. Dkt. No. 76 at 12, 15. Having won its place in this case on that promise, NatPay cannot change theories yet again and prosecute claims on behalf of allegedly injured employer-clients. *Lomascolo v. Otto Oldsmobile Cadillac, Inc.*, 253 F. Supp. 2d 354, 360 (N.D.N.Y. 2003) (judicial estoppel).

Second, recovering on behalf of those employer-clients contradicts NatPay's sworn interrogatory responses, on which Pioneer relied. Asked to "provide a computation of each category of alleged damages," NatPay never identified any category of damages sought on behalf of the employer-clients of MyPayrollHR or ProData. *Colozzi v. St. Joseph's Hosp. Health Ctr.*, 275 F.R.D. 75, 80 (N.D.N.Y. 2011) (interrogatory responses "are binding judicial admissions" that generally preclude the responding party from asserting positions omitted from the responses). On the basis of those responses, there has been no discovery into any alleged losses to the employer-clients of MyPayrollHR and ProData—who have never appeared in this case.

More fundamentally, NatPay lacks constitutional standing to seek recovery of funds on behalf of employer-clients of MyPayrollHR and ProData, because recovering them would not redress any injury to NatPay. Any judgment directing the return of funds would benefit the employer-clients of MyPayrollHR and ProData, who are allegedly entitled to them. It would not

remedy any injury suffered by NatPay, which merely forwarded the money as a conduit. The Second Circuit confronted the same problem in *United States v. Cambio Exacto*, holding that a company that forwards funds to the recipients designated by its customers has no Article III standing to challenge the seizure of those funds, because any recovery belongs to the customers and their recipients, not to the company forwarding those funds. 166 F.3d 522, 528–29 (2d Cir. 1999). The same is true here. Because the requested relief would benefit MyPayrollHR, ProData, and their employer-clients rather than NatPay, it would not redress any injury suffered by NatPay.

Finally, NatPay lacks prudential standing to pursue claims on behalf of the employer-clients of MyPayrollHR and ProData. The "prudential standing rule . . . normally bars litigants from asserting the rights or legal interests of others in order to obtain relief from injury to themselves." *Rajamin v. Deutsche Bank Nat'l Tr. Co.*, 757 F.3d 79, 86 (2d Cir. 2014) (quotation omitted). However NatPay styles it, that is exactly what NatPay is now attempting to do: assert the rights and alleged damages of the employer-clients of MyPayrollHR and ProData. But those employer-clients are already pursuing their own class claims against Pioneer. *O'Malley's Oven LLC, et al. v. Pioneer Bancorp Inc. and Pioneer Bank*, Index No. 906561-22 (Sup. Ct., Albany Cnty.). NatPay cannot bypass Rule 23 (or its state law equivalent) and prosecute, in substance, a representative action on behalf of absent claimants whose claims it does not own and who are already pursuing those claims themselves. That position brings NatPay full circle. It once represented that its "claims simply do not rest on the rights of any third parties." Dkt. No. 42 at 4. Yet NatPay now seeks recovery predicated on the very third-party rights it previously disclaimed.

## CONCLUSION

The Court should dismiss NatPay's claims for lack of subject matter jurisdiction at this time.

Dated: October 5, 2026
New York, New York

Respectfully submitted,

DLA PIPER LLP

By: */s/ Robert J. Alessi*

Robert J. Alessi (NDNY Bar Roll No. 101019)
Steven M. Rosato (NDNY Bar Roll No. 703375)
1251 Avenue of the Americas
New York, New York 10020
Tel.: (212) 335-4500
Fax: (212) 335-4501
robert.alessi@us.dlapiper.com
steven.rosato@us.dlapiper.com

Courtney G. Saleski (NDNY Bar Roll No. 703877)
Ben Fabens-Lassen (NDNY Bar Roll No. 707766)
M. David Josefovits (NDNY Bar Roll No. 705556)
Jon Michael Reid (NDNY Bar Roll No. 707851)
1650 Market Street, Suite 5000
Philadelphia, Pennsylvania 19103
Tel.: (215) 656-3300
courtney.saleski@us.dlapiper.com
ben.fabens-lassen@us.dlapiper.com
david.josefovits@us.dlapiper.com
jon.reid@us.dlapiper.com

*Attorneys for Defendants-Counterclaimants*
*Pioneer Bancorp Inc. and Pioneer Bank*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on all parties in this action/known counsel of record via the CM/ECF system on this 5th day of October 2026.

*/s/ Robert J. Alessi*
Robert J. Alessi (NDNY Bar Roll No. 101019)